IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FRANK J. LAWRENCE, JR.<br>941 Westview Rd.<br>Bloomfield Hills, MI  48304<br>(248) 722-2560,<br><br>    Plaintiff,<br><br>v.<br><br>MARK S. CARLIN, in his official capacity as<br>Chairman of the Committee on Admissions,<br>1900 M St., N.W., Ste. 601<br>Washington, D.C., 20036-3519;<br><br>ALAN H. KENT, in his individual capacity,<br>1747 Pennsylvania Avenue, N.W., Ste. 300<br>Washington, D.C., 20006; and<br><br>THREE UNKNOWN INVESTIGATORS OF THE<br>COMMITTEE ON ADMISSIONS, in their<br>individual capacities,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | AMENDED<br>VERIFIED<br>COMPLAINT FOR<br>DECLARATORY<br>AND INJUNCTIVE<br>RELIEF, AND<br>DAMAGES<br><br>Civil No: 07-288 RCL |

RECEIVED

MAR 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## AMENDED VERIFIED COMPLAINT

Introductory Statement

On May 16, 2006, Plaintiff Frank J. Lawrence, Jr., a resident of Michigan, applied for a

license to practice law in the District of Columbia and Plaintiff thereafter passed the July, 2006,

District of Columbia Bar Examination.   While Plaintiff's application was pending in the District

of Columbia, he filed a civil rights lawsuit though his counsel against the Michigan Board of

Law Examiners, in the United States District Court for the Western District of Michigan.   That

action is presently on appeal in the United States Court of Appeals for the Sixth Circuit

(Lawrence v. Berry, 6th Cir. No. 07-1026).   After Plaintiff filed his Michigan civil rights lawsuit,

the District of Columbia Committee on Admissions advised Plaintiff that his application for a

license to practice law in the District of Columbia would be held in abeyance pending the conclusion of Plaintiff's federal civil rights litigation against the Michigan attorney licensing officials.

This lawsuit seeks a declaration from this Court that Defendant Mark S. Carlin's refusal to further process Plaintiff's application for a license to practice law, until Plaintiff concludes his pending litigation against Michigan licensing officials, violates Plaintiff's rights under the First, Fifth and Fourteenth Amendments to the Constitution of the United States. Plaintiff also seeks a declaration that the length of time that his application has been pending in the District of Columbia (9 months) without a decision is unreasonable and violates due process of law. Additionally, Plaintiff seeks damages from "Three Unknown Investigators" of the Committee on Admissions, in their individual capacities, who have performed investigative functions. Finally, Plaintiff seeks damages from Alan H. Kent, the Committee on Admissions' legal counsel who, upon information and belief, provided unconstitutional legal advice to Defendant Carlin and the Defendants collectively referred herein as "Three Unknown Investigators". See, e.g., Burns v. Reed, 500 U.S. 478, 496; 111 S. Ct. 1934; 114 L. Ed. 2d 547 (1991) (attorneys are not entitled to absolute immunity for the act of giving unconstitutional legal advice).

## JURISDICTION

1.    Plaintiff seeks to vindicate rights protected by the First, Fifth and Fourteenth Amendments to the Constitution of the United States and by 42 U.S.C. §1983[1]. This court has jurisdiction over this civil action pursuant to 28 U.S.C. §1331 and §1343(a)(3) and (4). Plaintiff seeks declaratory relief pursuant to §2201 and §2202.

---

[1] To the extent that Plaintiff's Michigan residency affords him the protections of the Fourteenth Amendment, he hereby gives notice that this lawsuit is also brought to enforce rights protected by the Fourteenth Amendment to the Constitution of the United States.

VENUE

2.    The principal place of business of the Committee on Admission (hereinafter "Committee") is in the District of Columbia.  Pursuant to 28 U.S.C. 1391(b), venue is proper in the United States District Court for the District of Columbia.

PARTIES

3.    Plaintiff Frank J. Lawrence, Jr. is a resident of Bloomfield Hills, Michigan.  He is 33 years old, holds the degree of Juris Doctor from an accredited Michigan law school and has a Bachelor's degree in Business Administration from the University of Michigan.  On May 16, 2006, Plaintiff filed his application for a license to practice law in the District of Columbia, and Plaintiff thereafter passed the July, 2006, District of Columbia Bar Examination.  Plaintiff is actively seeking a license to practice law in the District of Columbia.

4.    Defendant Mark S. Carlin is the Chairman of the District of Columbia Court of Appeals Committee on Admissions.  The District of Columbia Court of Appeals is authorized "to make such rules as it deems proper respecting the examination, qualification, and admission of persons to membership in its bar and their censure, suspension, and expulsion." D.C. Code § 11-2501(a); Thomas v. Knight, 257 F. Supp. 2d 86, 89 (D.C. Cir. 2003).  Pursuant to this authority, the District of Columbia Court of Appeals created the Committee and granted it the administrative power and duty to investigate applicants for a license to practice law and to prepare and forward its own findings and recommendations to the District of Columbia Court of Appeals.  At all times relevant hereto, Defendant Carlin was acting under color of laws enacted by the District of Columbia. Defendant Carlin is sued in his official capacity for declaratory and injunctive relief.

5.    Defendants "Three Unknown Investigators" are agents of the Committee who perform investigative functions.  These individuals "perform[] the investigative functions normally

3

performed by a detective or police officer" such as "searching for the clues and corroboration that might give [them] probable cause" to recommend an adverse licensing decision during the subsequent adjudicative phase of an applicant's application process. Because these defendants are being sued in their investigative capacities, they are entitled, at most, to qualified immunity. Buckley v. Fitzsimmons, 509 U.S. 259, 273; 113 S. Ct. 2606; 125 L. Ed. 2d 209 (1993). At all times relevant hereto, Defendants "Three Unknown Investigators" were acting under color of laws enacted by the District of Columbia. These Defendants are sued in their individual capacities.

6.     Defendant Alan J. Kent is the Committee's Bar Admissions Counsel who, while acting under color of laws enacted by the District of Columbia, provides legal advice to agents of the Committee. Attorneys who provide unconstitutional legal advice to investigators are not entitled to absolute immunity from suit. See, e.g., Burns v. Reed, 500 U.S. 478, 496; 111 S. Ct. 1934; 114 L. Ed. 2d 547 (1991). Defendant Kent is sued in his individual capacity.

GENERAL ALLEGATIONS

A.     Character Review

7.     The District of Columbia Court of Appeals regulates the practice of law by requiring a license as a condition of practice. An applicant for a law license must meet certain eligibility requirements, which are divided generally between integrity fitness (evaluated by review of "good moral character") and education fitness (evaluated by written examination of familiarity with standard legal concepts). The Committee, through Defendant Carlin, is charged with the responsibility of evaluating applications for admission to the practice of law in the District of Columbia.

8.    The Rules of the District of Columbia Court of Appeals give the Court of Appeals final administrative decision-making authority over the assessment of "good moral character". However, the Committee first conducts an investigation and formulates a recommendation concerning an applicant's character, which is then transmitted to the Court of Appeals.

9.    The "character" review of an applicant for membership in the District of Columbia starts when an applicant files an application for admission.  At all times during the application process, an applicant is in control over whether his application remains pending or not.  The applicant may withdraw from the process and the applicant has the option of requesting a hearing before the Committee.  As such, application proceedings in the District of Columbia are remedial and/or non-coercive, unlike the criminal proceedings in <u>Younger v. Harris</u>, 401 U.S. 37, 27 L. Ed. 2d 669, 91 S. Ct. 746 (1971), or the disciplinary proceedings in <u>Middlesex County Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982).  Also, the Applicant bears the burden of proof during his licensing process.   Therefore, even if there were ongoing state proceedings in this matter (by contrast, here the state proceedings are "in abeyance"), there would be no basis for abstention in this matter. <u>O'Neill v. City of Philadelphia</u>, 32 F.3d 785, 791 n.13 (3rd Cir. 1994); <u>Exec. Art Studio. Inc. v. City of Grand Rapids</u>, 179 F. Supp. 2d 755, 759 (W.D. Mich. 2001) ("Thus, where the federal plaintiff also initiates the state proceeding, the basis for Younger abstention will usually be absent because the state is not seeking to enforce its laws."); <u>Torres v. Carrion</u>, 376 F. Supp. 2d 209, 213 (D.P.R. 2005).

10.    In determining the moral character and general fitness of an applicant for admission to the Bar, the Committee may act without requiring the applicant to appear before it to be sworn and interrogated.  If the Committee is unwilling to certify an applicant, it shall notify the

applicant of the choice of withdrawing the application or requesting a hearing.  Rule 46(f)(1),

Rules of the District of Columbia Court of Appeals (hereinafter "DCCA Rules").

11.    Within 30 days from the date of the notice, an applicant may file with the Committee a

written request for a hearing.  If an applicant fails to file a timely request for a hearing, the

applicant's application shall be deemed withdrawn.  If an applicant requests a hearing within the

30-day period, the request shall be granted and the Committee will conduct a hearing. DCCA

Rule 46(f)(1).

12.    Following a formal hearing on an applicant's good moral character, the Committee

delivers a report of its findings and conclusions to the District of Columbia Court of Appeals.

DCCA Rule 46(g)(1).  After receipt of a Committee report, if the District of Columbia Court of

Appeals proposes to deny admission, the Court issues an order to the applicant to show cause

why the application should not be denied.  Proceedings are thereafter heard by the Court on the

record made by the Committee. DCCA Rule 46(g)(2).

13.    Except for the review by the District of Columbia Court of Appeals provided above, no

other review by the Court of actions by or proceedings before the Committee are permitted

except upon a showing (1) of extraordinary circumstances for instituting such review and (2) that

an application for relief has previously been made in the first instance to the Committee and been

denied by the Committee, or that an application to the Committee for the relief is not practicable.

DCCA Rule 46(g)(3)

14.    Because an applicant for a license to practice law in the District of Columbia cannot

invoke judicial review to challenge an administrative decision of the Committee unless

"extraordinary circumstances" exist (prior to a final administrative decision of the Committee),

DCCA Rule 46(g)(3), an applicant is left without an adequate state remedy to challenge unconstitutional investigative action by the Committee and its agents.

15.    The DCCA Rules do not provide for time limits on administrative investigations by the Committee.  Also, the DCCA Rules do not provide for substantive or procedural limitations on Defendants' investigative functions or the exercise of administrative discretion.  In Plaintiff's case, his application for a license to practice law has been pending with the Committee for 9 months.

B.    Allegations Concerning Plaintiff

16.    On or about May 16, 2006, Plaintiff filed with the Committee his application for a license to practice law in the District of Columbia.  In doing so, Plaintiff filed an affidavit of personal history, which is required of all licensing applicants.  An affidavit of personal history is an exhaustive list of an applicant's life's activities that the Committee uses to investigate an applicant's moral character and fitness to practice law.  Plaintiff also tendered all applicable filing fees to the Committee.

17.    The Committee accepted Plaintiff's application for a license to practice law, Plaintiff's affidavit of personal history and his application fees.  The Committee then notified Plaintiff that he was scheduled to attend and take the July 25th and 26th District of Columbia Bar Examination.

18.    Plaintiff took the July 25th and 26th District of Columbia Bar Examination and he received a passing score on it.  By virtue of Plaintiff's passing Bar Exam score, the Committee and Defendants have no present reason to question Plaintiff's educational fitness to practice law in the District of Columbia.

19.    On June 22, 2006, Plaintiff was notified by the Michigan Board of Law Examiners, in a final administrative decision, that his application for a license to practice law in the State of

Michigan was denied. Specifically, Plaintiff was denied because the Michigan Board of Law Examiners felt that Plaintiff's public criticism of two Michigan "character and fitness" investigators was inappropriate [Exhibit 1, Opinion of the Michigan Board of Law Examiners]. On September 8, 2006, Plaintiff filed suit in the United States District Court for the Western District of Michigan against, *inter alia*, the President of the Michigan Board of Law Examiners, seeking relief similar to that authorized by <u>Dubuc v. Mich. Bd. of Law Examiners</u>, 342 F.3d 610 (6th Cir. 2003). Plaintiff was (and is) represented by counsel in that litigation.

20.    On December 14, 2006, the United States District Court for the Western District of Michigan dismissed Plaintiff's civil rights action. <u>Lawrence v. Berry</u>, 2006 U.S. Dist. LEXIS 90283 (W.D. Mich. 2006). On December 15, 2006, Plaintiff filed a notice of appeal to the United States Court of Appeals for the Sixth Circuit. <u>Lawrence v. Berry</u>, Sixth Circuit No. 07-1026. The Sixth Circuit Court of Appeals has entered a briefing schedule and the parties are presently briefing the appeal [Exhibit 2, Plaintiff's Brief in the Sixth Circuit Court of Appeals].

21.    The Committee requires licensing applicants to inform the Committee of any pending civil litigation in which an applicant is involved. Pursuant to this obligation, Plaintiff apprised the Committee that he had brought a civil rights action against the Michigan Board of Law Examiners and Plaintiff has kept the Committee abreast of the developments in that litigation.

22.    On December 26, 2006, Plaintiff sent a letter to the Committee, which requested that the Committee either certify him for admission or provide Plaintiff a hearing on or before January 26, 2007. The Committee refused to do either. On January 24, 2007, the Committee informed Plaintiff by letter, *inter alia*, that the Committee on Admissions would hold Plaintiff's application in abeyance pending the conclusion of Plaintiff's litigation against the Michigan Board of Law Examiners.

23.     Plaintiff's litigation against the Michigan Board of Law Examiners is likely to last for years.   Unless the Sixth Circuit Court of Appeals enters an order expediting briefing and submission to an appellate panel, an appeal on average takes between 12 to 18 months for an appellate decision.  If the case is remanded for trial, the conclusion of the proceedings will take much longer.   For example, when E. Stephen Dean sued (former) Michigan Character and Fitness Regulation Counsel Thomas Byerley for wrongfully threatening Mr. Dean with character rejection, it took over 4 years to fully adjudicate that case through trial.  See, Dean v. Byerley, 354 F.3d 540 (6th Cir. 2004).

24.     Plaintiff has requested, and Defendants have refused to provide, a hearing.  Additionally, Defendants placed Plaintiff's application process in abeyance without notice and hearing, and they have since refused to provide Plaintiff a hearing.  In fact, since the filing of Plaintiff's Complaint in this matter, Defendant Carlin has reaffirmed in writing his refusal to further process Plaintiff's application until Plaintiff "concludes" his civil rights lawsuit against the Michigan attorney licensing officials (Exhibit 3, March 9, 2007 letter from Mark Carlin).

25.     The DCCA Rules do not authorize Defendants Carlin and "Three Unknown Investigators" to hold "in abeyance" Plaintiff's application for a license to practice law until he concludes federal civil rights litigation against Michigan licensing officials.  There is no rational basis for the Defendants' actions and Plaintiff has suffered, and continues to suffer, injuries of constitutional dimension as a result of Defendants' conduct.

26.     The relief requested in this lawsuit would not create an undue interference with any ongoing Committee proceedings because the primary purpose of this litigation is equitable relief that would compel Defendants to cease holding in abeyance Plaintiff's application process.

## COUNT I – DECLARATORY RELIEF
## - FIRST, FIFTH AND FOURTEENTH AMENDMENTS -
### (Defendant: Carlin, in his official capacity)

27.  Plaintiff hereby incorporates and re-alleges paragraphs 1 through 26, as though fully set forth herein.

<u>First Amendment Claims</u>

28.  Whatever important interest the District of Columbia may have in regulating its own Bar, it does not outweigh the "equally important" and strong federal substantive interest in protecting Bar applicants from First Amendment violations.  The Supreme Court has stated:

> We recognize the importance of leaving States free to select their own bars, but it is equally important that the State not exercise this power in an arbitrary or discriminatory manner nor in such way as to impinge on the freedom of political expression or association. A bar composed of lawyers of good character is a worthy objective but it is unnecessary to sacrifice vital freedoms in order to obtain that goal. It is also important both to society and the bar itself that lawyers be unintimidated -- free to think, speak, and act as members of an Independent Bar.

<u>Koninsberg v. State Bar of California</u>, 353 U.S. 252, 273; 77 S. Ct. 722; 1 L. Ed. 2d 810 (1957) (emphasis added)

29.  Plaintiff has a clearly established federal right to file a civil rights lawsuit against the Michigan licensing officials.  Defendants' conduct of holding Plaintiff's application in abeyance burdens Plaintiff's First Amendment right to petition the federal courts for redress of grievances. The right to initiate civil litigation is a First Amendment right, <u>Bill Johnson's Restaurants, Inc. v N.R.L.B.</u>, 461 U.S. 731, 741; 103 S. Ct. 2161; 76 L. Ed. 2d 277 (1983), and the right to subject government action to constitutional scrutiny "implicates central First Amendment concerns." <u>Legal Services Corp. v Velazquez</u>, 531 U.S. 533, 547, 149 L. Ed. 2d 63, 121 S.Ct. 1043 (2001). By holding Plaintiff's District of Columbia application for a license "in abeyance" until Plaintiff concludes his litigation against Michigan licensing officials, Defendant Carlin's practices have

chilled Plaintiff's rights and they would cause a person of ordinary firmness to cease engaging in federally secured activities, namely, litigate important and cherished constitutional interests.

30.    Because Defendants use an applicant's decision to file a lawsuit against another state's licensing officials as a basis to hold in abeyance the application process in the District of Columbia, Defendants' practices also violate the rule of Perry v. Sindermann, 408 U.S. 593, 597; 33 L. Ed. 2d 570; 92 S. Ct. 2694 (1972), which states:

> For at least a quarter-century, this Court has made clear that even though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests -- especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly." Speiser v. Randall, 357 U.S. 513, 526. Such interference with constitutional rights is impermissible.

31.    An applicant for licensing by the District of Columbia, whether in the realm of the legal profession, the medical profession or the plumbing profession, cannot be denied a license because he or she has exercised First Amendment rights, defended past protected expression, or challenged unlawful or questionable governmental conduct.  The Supreme Court has described the right to petition government for redress of grievances as "among the most precious of the liberties safeguarded by the Bill of Rights." United Mine Workers v. Illinois State Bar Ass'n, 389 U.S. 217, 222, 19 L. Ed. 2d 426, 88 S. Ct. 353 (1967).

32.    Defendants' decision to hold in abeyance Plaintiff's application additionally violates the unconstitutional condition doctrine because approval is linked (implicitly if not explicitly) to whether the Defendants subjectively agree with the content of an applicant's protected expression in a civil rights lawsuit.  The Defendants' practices violate the First Amendment.

33.    <u>Entitlement to Injunctive Relief</u>. Defendant Carlin's refusal to further process Plaintiff's application until Plaintiff dismisses or otherwise concludes his civil rights suit against the Michigan licensing officials is chilling Plaintiff's First Amendment right to petition the federal courts. <u>Any</u> injury to First Amendment rights constitutes irreparable loss, thus entitling Plaintiff to injunctive relief. <u>Elrod v Burns</u>, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed. 2d 547 (1976).

Due Process Claims

34.    A person's opportunity to pursue a career is a fundamental liberty interest, which is protected by due process and equal protection. <u>See</u> <u>Trifax Corp. v. District of Columbia</u>, 314 F.3d 641, 643 (D.C, Cir. 2003); <u>Willner v. Committee on Character and Fitness</u>, 373 U.S. 96, 102-03, 10 L. Ed. 2d 224, 83 S. Ct. 1175 (1963); <u>Schware v. Board of Bar Examiners</u>, 353 U.S. 232, 238-39, 1 L. Ed. 2d 796, 77 S. Ct. 752 (1957).

35.    A state cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the due process or equal protection clauses of the Fourteenth Amendment. <u>Willner v. Committee on Character & Fitness</u>, 373 U.S. 96, 102; 83 S. Ct. 1175; 10 L. Ed. 2d 224 (1963). The full protection of the Fourteenth Amendment has been extended to the District of Columbia through the Fifth Amendment's Due Process Clause. <u>See</u> <u>Bolling v. Sharpe</u>, 347 U.S. 497, 499; 74 S. Ct. 693; 98 L. Ed. 884 (1954).

36.    Defendants' practices alleged herein are conducted in a manner and for reasons that contravene the due process clause (both substantive and procedural due process of law). Plaintiff is being subjected to arbitrary administrative practices and Defendants are punishing him for exercising his constitutional right to file a lawsuit. It is a violation of due process to punish a person for asserting a protected statutory or constitutional right. <u>North Carolina v Pearce</u>, 395 U.S. 711; 89 S. Ct. 2072; 23 L. Ed. 2d 656 (1969). To punish a person because he has done what

the law plainly allows him to do "is a due process violation of the most basic sort."
Bordenkircher v Hayes, 434 U.S. 357, 363; 98 S. Ct. 663; 54 L. Ed. 2d 604 (1978).

37.    The Defendants' decision to hold in abeyance Plaintiff's application on account of his
complaints about Michigan licensing officials is not rationally related to Plaintiff's ability to
practice law in the District of Columbia.  For example, in Konigsberg v. State Bar of California,
353 U.S. 252, 268-269; 77 S. Ct. 722; 1 L. Ed. 2d 810 (1957), a bar applicant wrote a series of
editorials for a local newspaper where he "severely criticized … this Court's decisions in Dennis
and other cases." Id. at 268.   In addressing the bar applicant's "severe" criticism of public
officials, our nation's highest Court stated that an applicant's challenge to, or disagreement with,
governmental action is not a rational basis for character rejection:

> We do not believe that an inference of bad moral character can
> rationally be drawn from these editorials. Because of the very nature of
> our democracy such expressions of political views must be permitted.
> Citizens have a right under our constitutional system to criticize
> government officials and agencies. Courts are not, and should not be,
> immune to such criticism. Government censorship can no more be
> reconciled with our national constitutional standard of freedom of
> speech and press when done in the guise of determining "moral
> character," than if it should be attempted directly.
> Id. at 269.

Similarly, Defendants' decision to hold in abeyance Plaintiff's District of Columbia application
to practice law because Plaintiff has challenged Michigan officials in a federal civil rights
lawsuit is patently irrational.

38.    Plaintiff's application for a license to practice law has been pending with the Defendants
for an unreasonable amount of time.  See, Mathews v. Eldridge, 424 U.S. 319, 330, 342, 96 S.Ct.
893, 900, 906, 47 L.Ed.2d 18 (1976) (characterizing an eleven-month delay in administrative
action as "torpid").  While there is "no bright-line rule ... for determining when a delay is so
burdensome as to become unconstitutional," Kraebel v. New York City Dept. of Housing

Preservation and Development, 959 F.2d 395, 405 (2nd Cir. 1992), the Supreme Court acknowledged as early as 1926 that delay is an element to be considered by courts in evaluating the constitutionality of administrative procedures that affect substantive rights. See, Smith v. Illinois, 270 U.S. 587, 591, 70 L. Ed. 747, 46 S. Ct. 408 (1926).

39.     The Supreme Court has recognized that the length of time of a wrongful deprivation of a benefit is an important factor to be considered in assessing the impact of government action on private interests. Fusari v. Steinberg, 419 U.S. 379, 389, 95 S.Ct. 533, 539, 42 L.Ed.2d 521 (1975) (state unemployment benefits); Steinberg v. Fusari, 364 F.Supp. 922, 937-938 (D.Conn. 1973), vacated and remanded on other grounds, 419 U.S. 379, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975) (a delay of just over 100 days was held to frustrate due process requirements). Given the invalidity of the basis for Defendants' decision to hold Plaintiff's application in abeyance, Defendants' practices violate due process of law.

40.     The absence of time limits on decision-making in the DCCA Rules violates Plaintiff's federal right to procedural and substantive due process of law.  By their conduct alleged herein, Defendants have violated Plaintiff's rights through random and unauthorized acts.  Defendants have additionally violated Plaintiff's rights through established state procedures.  Plaintiff was entitled to a hearing (pre-deprivation and/or post-deprivation) before Defendants denied Plaintiff due process of law by placing his application for a license in abeyance.

Equal Protection Claims

41.     The Equal Protection Clause prohibits states from making distinctions that burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference.  By holding Plaintiff's District of Columbia application process "in abeyance" because Plaintiff elected to file a civil rights lawsuit

against Michigan officials, Defendants have treated Plaintiff in an arbitrary, capricious and irrational manner. Defendants have singled out Plaintiff and he has been differentially treated as a "class of one" without a rational basis. <u>Village of Willowbrook v. Olech</u>, 528 U. S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000).

42.      Therefore, this Court should declare that Defendant Carlin's decision to hold Plaintiff's application for a license "in abeyance" until Plaintiff concludes his Michigan civil rights litigation impermissibly impinges upon protected federal rights guaranteed to Plaintiff by the Constitution of the United States.

**COUNT II – DAMAGES**
**- FIRST, FIFTH AND FOURTEENTH AMENDMENTS -**
**(Defendants: Kent and "Three Unknown Investigators", in their individual capacities)**

43.      Plaintiff hereby incorporates and re-alleges paragraphs 1 through 42, as though fully set forth herein.

44.      To be clear, Defendants "Three Unknown Investigators" are being sued for their unconstitutional conduct during the *investigative* phase of Plaintiff's application process. As such, these Defendants are entitled only at most to qualified immunity. <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 273, 125 L. Ed. 2d 209, 113 S. Ct. 2606 (1993). Further, Defendant Kent is being sued for providing the Defendants unconstitutional legal advice, and as such, he is entitled only at most to qualified immunity. <u>See</u>, e.g., <u>Burns v. Reed</u>, 500 U.S. 478, 496; 111 S. Ct. 1934; 114 L. Ed. 2d 547 (1991).

45.      Defendants "Three Unknown Investigators" are not insulated from outside political influences because there are no rules prohibiting Committee investigators from having ex parte contact. Plaintiff's research of District of Columbia law has not produced any precedence governing these Defendants' functions. Also, there are insufficient safeguards to prevent

15

Defendants' from abusing their authority because the DCCA Rules do not authorize judicial review of investigative actions, absent "extraordinary circumstances". DCCA Rule 46(g)(3).

46.     The actions and conduct of Defendants "Three Unknown Investigators" violated the First and Fourteenth Amendment rights of the Plaintiff in that said conduct constitutes unconstitutional acts of bad faith and violations of the First and Fourteenth Amendments. Defendants "Three Unknown Investigators" placed Plaintiff's application in abeyance in bad faith and for the purposes of harassing Plaintiff by chilling his federal rights. Also, because Defendants "Three Unknown Investigators" punished Plaintiff for doing what the law plainly allowed Plaintiff to do (i.e, file a lawsuit against another licensing body), Defendants' conduct "is a due process violation of the most basic sort." Bordenkircher v Hayes, 434 U.S. 357, 363; 98 S. Ct. 663; 54 L. Ed. 2d 604 (1978).

47.     The First Amendment guarantees the fundamental right to file a lawsuit, as well as to engage in constitutionally protected speech. See, Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 741, 103 S. Ct. 2161, 2169, 76 L. Ed. 2d 277 (1983) ("The right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances."). "Retaliation by the government that is motivated, at least in part, by a lawsuit or constitutionally protected speech may violate the First Amendment and support an action under 42 U.S.C. § 1983." Campagna v. Mass. Dep't of Envtl. Prot, 206 F. Supp. 2d. 120, 124 (D. Mass. 2002). Therefore, an investigator performing a discretionary function would have known that holding in abeyance Plaintiff's application because Plaintiff's sued Michigan licensing officials would not be objectively reasonable. Additionally, case law like Perry v. Sindermann, 408 U.S. 593, 597; 33 L. Ed. 2d 570; 92 S. Ct. 2694 (1972) would have placed a reasonable official on

notice that a licensing application cannot be held in abeyance because the applicant filed a civil rights lawsuit against another licensing body.

48.    Defendants "Three Unknown Investigators" retaliated against Plaintiff because of Plaintiffs openly and honestly held belief that a federal civil rights suit should be filed against Michigan licensing officials for the purposes of protecting fragile, and cherished, constitutional rights.  Defendants' conduct would likely chill a person of ordinary firmness from continuing to engage in constitutionally protected conduct, namely, file a civil rights lawsuit.

49.    By definition, bad faith and harassing state proceedings encompass those proceedings that are initiated for or discourage the exercise of constitutional rights. Lewellen v. Raff, 843 F.2d 1103, 1109-1 110 (8th Cir. 1988), cert. denied, 489 U.S. 1033; 103 L.Ed. 2d 229; 109 S.Ct. 1171 (1989). Defendants' conduct was in bad faith and it was designed to discourage the exercise of constitutional rights. With respect to the interests of the Committee, it by definition does not have any legitimate interest in holding in abeyance Plaintiff's application, an act of retaliation designed to deter the exercise of federally secured freedoms. Wilson v. Thompson, 593 F.2d 1375, 1383 (5th Cir.1979).

50.    Upon information and belief, Defendant Kent provided Defendants "Three Unknown Investigators" with unconstitutional legal advice, resulting in Plaintiff's application being placed in abeyance.  A reasonable official in Mr. Kent's position would have known that his advice to Committee investigators was not objectively reasonable and that it would violate Plaintiff's First, Fifth and Fourteenth Amendment rights.   Plaintiff has suffered damages as a result of Defendant Kent's unconstitutional legal advice.

51.    Any immunity provided to Defendants pursuant to District of Columbia law cannot apply in this federal question case. Dubuc v. Mich. Bd. of Law Examiners, 342 F.3d 610, 617 (6th Cir.

2003) ("no state law or rule can immunize anyone from liability for violating the United States Constitution").

52.    By reason of the aforementioned acts of Defendants Kent and "Three Unknown Investigators", Plaintiff's constitutional rights were infringed, to his damage in an amount to be determined by proof at trial.

53.    Defendants Kent's and "Three Unknown Investigators'" acts were committed and carried out by each individual Defendant knowingly, deliberately and maliciously, with the intent to oppress, injure and harass Plaintiff, and with reckless indifference to the civil rights of Plaintiff. By reason thereof, Plaintiff prays for punitive and exemplary damages from and against the individual Defendants in an amount according to proof at trial.

## CONCLUSION

WHEREFORE, Plaintiff prays that this Court grant the following relief:

1.    Issue a declaratory judgment that Defendant Carlin's conduct in holding in abeyance Plaintiff's licensing application violates and First, Fifth and Fourteenth Amendments to the Constitution of the United States;

2.    Issue a preliminary and permanent injunction that prohibits Defendant Carlin from holding in abeyance Plaintiff's application process;

3.    Issue a declaratory judgment that the delay in processing Plaintiff's application for a license to practice law has been unreasonable;

4.    Award monetary damages against Defendants Kent and "Three Unknown Investigators" for their unconstitutional conduct, as outlined above;

5.    Award the Plaintiff costs and attorneys fees for having to bring this action; and

6.    Any other relief that is just and appropriate.

Dated: March 16, 2007                                    Respectfully submitted:


                                                         Frank J. Lawrence, Jr.
                                                         941 Westview Road
                                                         Bloomfield Hills, MI  48304
                                                         (248) 722-2560




## VERIFICATION OF COMPLAINT
## PURSUANT TO 28 U.S.C. §1746

I verify under penalty of perjury that the foregoing is true and correct.



Executed on: March 16, 2007                              Respectfully submitted:


                                                         Frank J. Lawrence, Jr.
                                                         941 Westview Road
                                                         Bloomfield Hills, MI  48304
                                                         (248) 722-2560

# Exhibit 1

Plaintiff herein incorporates Exhibit 1 of his original Complaint, which was filed with this Court on February 7, 2007.

# Exhibit
# 2

Plaintiff hereby incorporates herein Exhibit 2 of his original Complaint, which was filed with this Court on February 7, 2007.

# Exhibit 3



# District of Columbia Court of Appeals
## Committee on Admissions
### 500 Indiana Avenue, N.W. — Room 4200
### Washington, D. C. 20001
### 202 / 879-2710

March 9, 2007

Frank J. Lawrence, Jr.
941 Westview Road
Bloomfield Hills, MI 48304

      RE:  E35882

Dear Mr. Lawrence:

      The Committee appreciates the updated information you
recently provided concerning the status of the Florida
application.  The Committee will continue to hold your
application in abeyance until the conclusion of the Michigan
litigation.  The Committee will consider the issue of financial
responsibility, as well as your response to our January 24, 2007
letter, at such time as we consider the application in its
entirety.

                              Sincerely,

                              Mark S. Carlin, Esq.
                              Chairman