UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| FRANK J. LAWRENCE, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-00288 (RCL) |
| ) | |
| MARK S. CARLIN, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), defendants hereby move this Honorable

Court to dismiss the Amended Complaint based on lack of subject-matter jurisdiction and/or

plaintiff's failure to state a claim upon which relief can be granted.

The grounds and the reasons are set forth more fully in the accompanying Memorandum

of Points and Authorities and alternative proposed Orders. The accompanying Memorandum also

serves as defendants' Opposition to plaintiff's Motion for Preliminary Injunction, pursuant to

LCvR 65.1(c).

DATE: March 27, 2007           Respectfully submitted,

LINDA SINGER
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

_____/s/ Ellen A. Efros_____
ELLEN A. EFROS, D.C. Bar No. 250746
Chief, Equity Section I
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 442-9886
Facsimile: (202) 727-0431

/s/ Andrew J. Saindon
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity I Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 727-0431
andy.saindon@dc.gov

CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on March 27, 2007, copies of the foregoing Motion

and all accompanying documents were filed with the Court's Electronic Case Filing system, sent

electronically to flawrence1@hotmail.com, and sent by U.S. Mail, first-class, postage-prepaid, to:

Frank J. Lawrence, Jr.
941 Westview Road
Bloomfield Hills, MI 48304

/s/ Andrew J. Saindon
ANDREW J. SAINDON, D.C. Bar No. 456987

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ———————————————— ) | |
| FRANK J. LAWRENCE, JR.,                    ) | |
|                                                         ) | |
|                        Plaintiff,             ) | |
|                                                         ) | |
|            v.                                       ) | Civil Action No. 07-00288 (RCL) |
|                                                         ) | |
| MARK S. CARLIN, *et al.*,                 ) | |
|                                                         ) | |
|                        Defendants.        ) | |
| ———————————————— ) | |

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS AND
IN OPPOSITION TO
<u>PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>

Defendants Mark S. Carlin and Alan H. Kent,[1] pursuant to Fed. R. Civ. P. 12(b)(1) and

12(b)(6), move this Court to dismiss the Amended Complaint.[2] This memorandum of points and

authorities is provided in support of the defendants' dispositive motion in accordance with LCvR

7(a), and in opposition to plaintiff's motion for preliminary injunction, pursuant to LCvR

65.1(c).

---

[1]       Plaintiff has named as defendants in this case Mark S. Carlin, in his official capacity as the Chair of the District of Columbia Court of Appeals Committee on Admissions ("COA"), and Alan H. Kent, COA Counsel, in his individual capacity. Plaintiff also purports to sue "Three unknown investigators of the Committee on Admissions." Amended Complaint ¶ 5. The undersigned expressly reserves the right to represent these unknown defendants, to the extent they are subsequently identified as District of Columbia employees or agents acting in their official capacities, and the instant motion should be construed to encompass all defendants.

[2]       On March 6, 2007, the undersigned spoke with plaintiff, who consented to an extension of time to March 21, 2007, to respond to the original Complaint; the defendants filed a consent motion so stating that same day. Notwithstanding this, on March 20, 2007, the undersigned was served with plaintiff's Amended Complaint. It appears that the only material difference between the two pleadings is that the Amended Complaint seeks injunctive relief. *See* Amended Complaint ¶¶ 4, 24, 33; at 18, ¶ 2.

Although plaintiff purports to sue some defendants in their individual capacities, "nothing in the complaint would support an allegation that any of the individuals acted outside of their official capacities or outside of their official authority," hence the claims should be construed "as if they were brought against the defendants only in their official capacities." *Thomas v. Knight*, 257 F.Supp.2d 86, 88 (D.D.C. 2003) (citing *Briggs v. Goodwin*, 569 F.2d 10, 15 (D.C. Cir. 1977)). This Court should follow the example of *Thomas*, where the Court dismissed the claims against various defendants, including the District of Columbia Court of Appeals ("DCCA") and members of the Board on Professional Responsibility, on the same grounds argued below, including ripeness, preclusion by *Rooker-Feldman*, immunity, and lack of standing.

Additionally, and apart from the lack of subject matter jurisdiction, the Court should dismiss the Amended Complaint because plaintiff's claims are substantively meritless. As discussed herein, the COA has reasonable and legitimate bases for the actions it has taken.

The Court also should deny plaintiff's request for emergency injunctive relief, because plaintiff has shown no imminent, irreparable injury, and his predominantly local claims are premature. Plaintiff does not provide any competent evidence of the "imminent, irreparable harm" necessary for the grant of emergency injunctive relief.

Plaintiff has utterly failed to meet his high burden for the extraordinary remedy demanded here; an injunction here will *not* preserve the *status quo*, but will seek to force the District to halt the regular administrative process at work—the process, incidentally, that will provide the determination plaintiff apparently seeks.

Further, the Court should decline plaintiff's invitation to inject itself into this quintessentially local matter. Plaintiff's vague and unsubstantiated allegations do not make out a federal claim; there are *no* material facts at issue which may impede a decision on the straight-

forward legal questions in dispute concerning a local administrative process. What plaintiff claims is a breach of his constitutional rights is nothing more than a premature challenge to a matter of preeminent local concern—the licensing of attorneys to practice in the District of Columbia.

## I. Factual and Procedural Background

Plaintiff alleges that he applied for a license to practice law in the District of Columbia on or about May 16, 2006, and subsequently passed the D.C. Bar exam. Amended Complaint ¶¶ 16–18. On June 22, 2006, "in a final administrative decision," plaintiff's application for a license to practice law in Michigan was denied, and plaintiff then "brought a civil rights action against the Michigan Board of Law Examiners" and so informed the COA, as required by D.C. Bar rule. *Id*. ¶¶ 19–21. Plaintiff's Michigan suit was eventually dismissed, and he filed a notice of appeal with the Sixth Circuit. *Id*. ¶ 20.[3]

The COA determined to hold plaintiff's application in abeyance to await the conclusion of the Michigan litigation. *Id*. ¶ 22. The COA also determined, in light of the information

---

[3]    Plaintiff's recent Michigan application was denied because he "had not shown by clear and convincing evidence that he had the requisite 'good moral character' required by statute and rule for immediate admission." *Lawrence v. Berry*, ___ F.Supp. 2d ___, 2006 WL 3694631, *1 (W.D. Mich. Dec. 14, 2006), *appeal docketed*, No. 07-1026 (6th Cir. Jan. 10, 2007). "Plaintiff passed the Michigan Bar Examination in 2001, but subsequently withdrew his application while a state misdemeanor prosecution was pending against him." *Id*. Notwithstanding that withdrawal, plaintiff had previously "filed a federal suit seeking injunctive and declaratory relief against the State Bar of Michigan and the Michigan Board of Law Examiners . . . as well as other individual defendants with responsibilities for the admission process." *Id*. Plaintiff's claims in that suit were denied, and the denial was affirmed by the Sixth Circuit. *Id*. (citing *Lawrence v. Chabot*, 182 Fed. Appx. 442 (6th Cir. 2006)).

To the extent plaintiff asserts the same constitutional claims here that were rejected by courts elsewhere, his claims are precluded by *res judicata* or collateral estoppel. *See, e.g., Pharmaceutical Care Management Ass'n v. District of Columbia*, ___ F.Supp.2d ___, 2007 WL 666319 (D.D.C. Mar. 6, 2007) (in challenge to similar statute, plaintiff's "identical" constitutional claims "were actually and necessarily decided" in previous litigation, hence precluded in the instant matter).

plaintiff submitted in conjunction with his application, to consider plaintiff's "financial responsibility, as well as your response to our January 24, 2007 letter, at such time as we consider the application in its entirety." COA Letter of Mar. 9, 2007 (copy attached as Exhibit No. 3 to the Amended Complaint, and as Exhibit No. 1 attached to Plaintiff's Motion for Preliminary Injunction).

Plaintiff filed the instant suit on or about February 7, 2007, alleging a number of claims. Specifically, plaintiff alleges that the defendants' "holding" of his application violates his First Amendment rights in that such holding was "because of" his filing of the civil-rights suit against the Michigan Bar officials. Amended Complaint ¶¶ 28–30.

Plaintiff additionally alleges violations of Due Process (both the substantive and procedural aspects) because the defendants "are punishing [plaintiff] for exercising his constitutional right to file a lawsuit" and because the holding in abeyance of his application "is not rationally related to Plaintiff's ability to practice law in the District of Columbia." *Id.* ¶¶ 36– 37. Plaintiff also alleges that the amount of time his application has been pending before the COA is constitutionally "unreasonable," and that the "absence of time limits" on decision- making within the Bar rules itself violates Due Process. *Id.* ¶¶ 38–40.

Plaintiff similarly alleges that defendants "have singled out Plaintiff and he has been differentially treated as a 'class of one' without a rational basis" in violation of Equal Protection. *Id.* ¶ 41.

Although plaintiff purportedly seeks damages for these alleged injuries, he concedes that "the primary purpose of this litigation is equitable relief that would compel Defendants to cease holding in abeyance Plaintiff's application process." *Id.* ¶ 26.

On March 26, 2007, plaintiff served (electronically) his Motion for Preliminary Injunction and accompanying documents on the undersigned.

## II. <u>Argument</u>

The Court should resist plaintiff's attempts to clothe this local matter in constitutional terms. The process that plaintiff complains of is ongoing, and he has presented no evidence—or even bald allegations—supporting the extraordinary step of federal-court intervention in that process.

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, a court must accept the allegations in the complaint as true. *See*, *e.g.*, *Croixland Properties Ltd. Partnership v. Corcoran*, 174 F.3d 213, 215 (D.C. Cir. 1999). All reasonable inferences must be drawn in favor of the plaintiff, and a court should only dismiss a complaint for failure to state a claim "'if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id.* (*quoting Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984)); *see also Price v. Crestar Secs. Corp.*, 44 F. Supp. 2d 351, 353 (D.D.C. 1999).

In a Rule 12(b)(6) analysis, while the complaint is to be construed liberally, courts "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept the legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp., Inc.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Complaints filed without the assistance of counsel are held to "less stringent standards than formal pleadings drafted by lawyers." *Williams v. Moore*, 899 F.Supp. 711, 712 (D.D.C.

1995) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). However, "a *pro se* complaint, like any other, must present a claim upon which relief can be granted by the court." *Williams*, 899 F.Supp. at 712 (quoting *Henthorn v. Department of the Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994)).

*The Committee on Admissions*

The District of Columbia Bar was formally established in 1971 by the DCCA as an "arm of the court." *Sitcov v. District of Columbia Bar*, 885 A.2d 289, 295 (D.C. 2005) (quoting D.C. Official Code § 11-2501 (2001 Ed.)).

The COA is a standing committee of the D.C. Bar, consisting of seven members, one of whom serves as counsel to the committee. D.C. App. R. 46(a). The COA "receives more than 3,500 applications per year, conducts extensive character and fitness investigations including informal meetings and formal hearings, and files recommendations with the [DCCA] regarding applications or petitions." *See* http://www.dcbar.org/for_lawyers/membership/prospective_members/coa.cfm (as of March 19, 2007). Defendant Carlin is the current Chair of the Committee, and defendant Kent is a member and Committee Counsel. *Id*. COA members serve a term of three years. D.C. App. R. 46(a).

Admission to the District of Columbia Bar may be obtained either by achieving a passing score on the D.C. Bar Examination, *id*. at 46(b), or, with some qualifications, by membership in good standing in a bar of another jurisdiction. *Id*. at 46(c). Under either procedure, "[n]o applicant shall be certified for admission by the [COA] until the applicant demonstrates good moral character and general fitness to practice law." *Id*. at 46(d). Applicants bear the ultimate

burden of demonstrating, by "clear and convincing evidence," their character and fitness. *Id*. at 46(e); *In re Bedi*, ___ A.2d ___, 2007 WL 527429 (D.C. Feb. 22, 2007), *slip op.* at 7.

The COA is required "to conduct a hearing in any case in which an applicant who has been refused certification requests one." *In re Ramos*, 860 A.2d 843, 845 (D.C. 2004) (citing D.C. App. R. 46(f)(1)).

1. *Plaintiff's Claims are Unripe and He Lacks Standing.*

Plaintiff complains here, in various iterations, of the "denial" of his rights because of the COA's actions. But the COA has manifestly not reached a final decision on plaintiff's application for admission; the "injuries" of which plaintiff complains will only come about, if at all, if he is denied admission to the D.C. Bar. The COA could recommend plaintiff's admission, at which time his claims would be moot. In the alternative, the COA could decline to recommend plaintiff, at which time he would be entitled to a full evidentiary hearing. At that time he would have the right to be represented by counsel, to examine and cross-examine witnesses, and have the other procedural protections required by due process. *See* D.C. App. R. 46(f)(2)(iv).

Either way, plaintiff's claims are dependent on "contingent future events," hence they are unripe. *Flynt v. Rumsfeld*, 355 F.3d 697, 702 (D.C. Cir. 2004) (citing *Texas v. United States*, 523 U.S. 296, 300 (1998)).

A plaintiff will not have standing if a court must accept a speculative inference or assumption to link the alleged injury to the challenged action. *National Maritime Union v. Commander, Military Sealift Command*, 824 F.2d 1228 (D.C. Cir. 1987). A plaintiff must plead and prove *specifics*.

"Abstract injury is not enough. The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–102 (1983) (citations and internal quotation marks omitted). *See also Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact.") (*quoting Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). A federal court's jurisdiction can only be invoked when a plaintiff has suffered some threatened or actual injury resulting from a defendant's putatively illegal action. *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Plaintiff has not shown any "certainly impending" injury; he may or may not be admitted to the Bar. To have standing, a plaintiff must allege a "specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 14 (1972); *Field v. Brown*, 610 F.2d 981, 990 (D.C. Cir. 1980). *See also Gettman v. DEA*, 290 F.3d 430, 433 (D.C. Cir. 2002) ("The Constitution requires a concrete and particularized injury.").[4]

In the classic formulation, for a plaintiff to have standing, he must show (1) concrete, personal injury, (2) which must be fairly traceable to the defendants' conduct, and (3) such injury must be "likely" to be redressed if the relief sought is granted. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Kurtz v. Baker*, 829 F.2d 1133, 1138 (D.C. Cir. 1987), *cert. denied*,

---

[4]     Separation of powers principles underlie the concept of standing, and reflect that courts should not prematurely interfere "with legislative and executive functions which have not yet proceeded so far as to affect individual interests adversely. Accordingly, the courts should never 'anticipate a question of constitutional law in advance of the necessity of deciding it.'" *Field*, 610 F.2d at 990 (*quoting Communist Party v. Subversive Activities Control Bd.*, 367 U.S. 1, 72 (1961).

486 U.S. 1059 (1988)). If plaintiff cannot meet all three prongs of this test, the Court must dismiss the suit for lack of standing.

Plaintiff lacks standing to sue defendant Kent. Plaintiff has failed adequately to allege causation; he has not alleged any concrete injury "fairly traceable" to defendant Kent's providing "unconstitutional legal advice." Further, plaintiff's allegations against COA Counsel Kent fail to state a claim upon which relief can be granted. Plaintiff has provided no authority for the proposition that a plaintiff can sue an attorney for giving "unconstitutional" legal advice to a third party.

Plaintiff's request for emergency injunctive relief is similarly unripe, as he has suffered no cognizable "injury." As the Sixth Circuit explained, in affirming the district court's dismissal of his as-applied challenges, plaintiff "had not been denied admission to the bar. [T]he defendants had not acted upon his [a]pplication. No injury thus had occurred or was 'certainly impending.'" *Lawrence v. Chabot*, 182 Fed. Appx. at 455.

Plaintiff appears to *assume* that his application will be rejected. Such conjecture is insufficient to support standing. *See Texas*, 523 U.S. at 300 ("a claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'") (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). *Cf. Marin v. Committee on Admissions*, 1998 WL 1181013, * 1 (D.D.C. 1998) (plaintiff has suffered no actual injury, and therefore lacks standing, where he has not yet submitted an application for admission to the D.C. Bar); *id.* (citing *Marin v. Committee on Admissions*, No. 97-BG-1363 (DCCA, Order of Oct. 30, 1997) ("absent the filing of and denial of an application for admission . . . [petitioner] presented no actual case or controversy for this court to decide.")).

Plaintiff lacks standing because he has failed to allege—much less demonstrate—a "realistic danger" that Bar rules or COA procedures "will be applied so as to compromise [his] First Amendment rights." *Roe v. State Bar of Michigan*, 74 Fed. Appx. 490, 492 (6th Cir. 2003) (*per curiam*) (rejecting law students' challenge to statute requiring bar applicants to prove "good moral character," for lack of ripeness and standing). *See also Marin v. Arizona*, 246 F.3d 674 (9th Cir. 2000) (table decision) (affirming dismissal for lack of ripeness of challenge to bar rules, where challenged rules "do not affect applicants' pre-admission behavior.").[5]

Similarly, in the context of administrative agency review, a court generally may only examine final agency decisions, not "merely tentative or interlocutory" actions. *Bensenville v. FAA*, 457 F.3d 52, 68 (D.C. Cir. 2006). Courts should only examine decisions "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Id.* (citations omitted).

Here, the decision of which plaintiff complains (the "holding in abeyance" of his application) has no legal consequences; whether or not he will be admitted has yet to be determined. The COA's decision is "non-final because it does not impose an obligation, deny a right, or otherwise fix some legal relationship." *Id.* (citing *Reliable Automatic Sprinkler Co. v. CPSC*, 324 F.3d 726, 731 (D.C. Cir. 2003).

Under the ripeness doctrine, a court must examine the "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Nevada v.*

---

[5]     To the extent plaintiff presents a broader challenge that D.C. Bar rules concerning character and fitness—on their face or as applied—infringe his First Amendment rights of speech and association, the Supreme Court long ago settled that question. *See Law Students Civil Rights Research Council, Inc. v. Wadmond*, 401 U.S. 154, 159 (1971) (Justices "have no difficulty" in affirming lower court's rejection of law students' claim that New York bar's character and fitness system "works a 'chilling effect' upon the free exercise of the rights of speech and association of students who must anticipate having to meet its requirements.").

*Department of Energy*, 457 F.3d 78, 84 (D.C. Cir. 2006) (quoting *Eagle-Picher Indus., Inc. v. EPA*, 759 F.2d 905, 915 (D.C. Cir. 1985)). The Supreme Court has elaborated, concluding that in ripeness challenges a court must consider "(1) whether delayed review would cause hardship to the plaintiff[;] (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Nevada*, 457 F.3d at 84 (quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998)).

Here, delayed review would cause no hardship to plaintiff, notwithstanding that there is no "right" to practice law, because he is not yet admitted in any jurisdiction. Moreover, as explained elsewhere, premature judicial intervention by this Court would inappropriately interfere with further proceedings in this matter of substantial local importance. Similarly, the "further factual development" contemplated here will occur in the local proceedings, *if plaintiff is denied admission*. Thus, plaintiff's claims are not yet ripe. *See Texas*, 523 U.S. at 301 (postponing adjudication gives state courts the opportunity to resolve any constitutional issues that may be present). *See also Lawrence v. Chabot*, 182 Fed. Appx. at 455–56 ("The mere delay of his application is not sufficient to make this controversy ripe. [T]he cost of having his application delayed is not very severe when compared to Michigan's interest in having moral members of its bar.").

2. *This Court Lacks Subject-Matter Jurisdiction.*

Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction to review judicial decisions by state and District of Columbia courts." *Richardson v. District of Columbia*

*Court of Appeals*, 83 F.3d 1513, 1514 (D.C. Cir. 1996) (citing *District of Columbia v. Feldman*, 460 U.S. 462, 476 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923)).

*Rooker-Feldman* applies to state courts' interlocutory decisions, as well as final decisions. *Richardson*, 83 F.3d at 1515 (citations omitted). Nonetheless, a federal district court may sometimes have jurisdiction to hear challenges to bar rules promulgated in a nonjudicial capacity. However, a court must determine whether a plaintiff's claims are "'inextricably intertwined' with the *judicial actions* immunized under *Rooker-Feldman*." *Id.* (emphasis in original); *Feldman*, 460 U.S. at 486 (federal district courts lack jurisdiction "over challenges to state court decision in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.").

Here, the Amended Complaint is directly aimed at one thing—the decision of the COA to hold plaintiff's application in abeyance. Although plaintiff purports to challenge the constitutionality of general bar rules and procedures, *Rooker-Feldman* is not so easily evaded:

> [Plaintiff's] attacks on [the rule's] constitutionality, however, are not merely intertwined with his attack on the decision to suspend him but are one and the same—namely, that application of [the rule's] procedures (or lack of procedures) deprives him of his liberty interest in the practice of law without due process. His attack on the rule cannot be contemplated without his attack on his suspension.

*Richardson*, 83 F.3d at 1515–16.

The instant situation is identical—plaintiff would not have brought his suit had his application not been held in abeyance by the COA; his so-called generalized claims do not exist independent of his challenge to the COA's specific action here. *Cf. Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 75 (D.C. Cir. 1997) ("the core of plaintiffs' generalized challenge was independent of the specific decision" of which they complain) (quoting *Richardson*, 83 F.3d at 1515).

Challenges to decisions regarding admission to practice law belong to local courts. Consequently, this Court lacks jurisdiction over plaintiff's claims; he "is entitled to have his claims heard through the course of proceedings in the District of Columbia courts and, if unsatisfied, through petition for certiorari under 28 U.S.C. § 1257." *Richardson*, 83 F.3d at 1516. *See also Stanton*, 127 F.3d at 76 (affirming lack of subject matter jurisdiction over plaintiff's First Amendment claim, because that claim was "inextricably intertwined" with the challenged decision of the DCCA to deny plaintiff reinstatement to the Bar).[6]

Plaintiff's general challenges to Bar rules and COA procedures are notably lacking in detail, which absence is itself a strong indicator that those claims are "inextricably intertwined" with the main decision of which he complains (the suspension of consideration of his application), and hence appropriate for dismissal under *Rooker-Feldman*. *See Thomas*, 257 F. Supp.2d at 95 (facial challenge to Bar rule "lacks any type of particularity").

This Court thus lacks subject-matter jurisdiction, and should dismiss the Amended Complaint. Plaintiff's claims, to the extent any exist that may be ripe for adjudication (which defendants refute) should be brought in a local proceeding. *See Sitcov*, 885 A.2d at 295 (the DCCA has "authority to consider challenges to decisions of the Committee on Admissions, an entity which, like the Bar, was created by this court, and which is an arm or instrumentality thereof."); *id*. at 296 ("[the DCCA] alone may make the final decision, whether express or

---

[6]    Notwithstanding the instant arguments, plaintiff's claims, while couched in constitutional terms, essentially implicate local law and, as such, are too insubstantial to invoke federal-question jurisdiction. *See, e.g., Decatur Liquors, Inc. v. District of Columbia*, ___ F.3d ___, 2007 WL 581821, *1 (D.C. Cir. 2007) ("A federal court has jurisdiction over substantial federal claims, together with local law claims that are part of a common nucleus of operative fact. But a federal court lacks jurisdiction altogether if the federal claims are insubstantial.").

implied, concerning whether to admit a particular applicant to the District of Columbia bar.")

(quoting *Powell v. Nigro*, 543 F. Supp. 1044, 1046 (D.D.C. 1982)).

3. *Even Assuming Jurisdiction, The Court Should Abstain.*

Abstention is a "threshold question" that should be determined before addressing

jurisdiction. *Worldwide Moving & Storage, Inc. v. District of Columbia*, 445 F.3d 422, 423 n.1

(D.C. Cir. 2006) (citing *Tenet v. Doe*, 544 U.S. 1, n.4 (2005)). Here, the Court, even if it

determines that it has subject-matter jurisdiction over plaintiff's claims, should abstain from

exercising it.

Except in "extraordinary circumstances," a federal district court should not enjoin

pending state proceedings that are judicial in nature and implicate important local interests. *JMM*

*Corp. v. District of Columbia*, 378 F.3d 1117, 1120 (D.C. Cir. 2004) (determining that abstention

under *Younger v. Harris*, 401 U.S. 37 (1971) applies to the District of Columbia). The only effort

plaintiff has made to allege or show such "extraordinary circumstances" is simply to quote those

words.

In *JMM*, the operator of an adult video store brought suit challenging the constitutionality

of District zoning regulations, and sought to enjoin the ongoing administrative zoning

enforcement action. The district court dismissed all of plaintiff's claims for injunctive and

declaratory relief, and the Circuit affirmed:

> The ongoing District of Columbia proceedings are judicial in nature and implicate
> important District interests; those proceedings afford [plaintiff] an adequate
> opportunity to litigate its federal claims; and there are no extraordinary
> circumstances warranting equitable relief. Accordingly, the criteria for application
> of the *Younger* doctrine have been satisfied, and the district court's dismissal of
> [plaintiff]'s complaint was appropriate.

*Id*. at 1128; *see also Bridges v. Kelly*, 84 F.3d 470, 476 (D.C. Cir. 1996) (same).

Identically here, the ongoing local proceedings are judicial in nature and implicate important District interests; the proceedings afford plaintiff an adequate opportunity to litigate his constitutional claims, and—despite plaintiff's conclusory assertions otherwise—there are no extraordinary circumstances warranting equitable relief.[7]

The ongoing COA proceeding here is indisputably "judicial in nature." *See, e.g., Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 433–34 (1982) (holding that bar disciplinary proceedings are "judicial in nature"); *In re Summers*, 325 U.S. 561, 566–67 (1945) (state supreme court's refusal to admit bar applicant held to be a judicial proceeding). *Simons v. Bellinger*, 643 F.2d 774, 780 (D.C. Cir. 1980) (D.C. Bar committee "was performing, by delegation, the inherent judicial function of determining who is authorized to practice law.").

Similarly, there can be no question that there is an "important state obligation to regulate persons who are authorized to practice law." *Middlesex County*, 457 U.S. at 432–33. The District of Columbia "has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses." *Id*. at 434. *See also, e.g., Teare v. Committee on Admissions*, 566 A.2d 23, 29 (D.C. 1989) (noting "the District's substantial interest in establishing standards for licensing of attorneys who will practice in the jurisdiction.") (citing *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975) (footnote omitted)).

---

[7]    "Extraordinary circumstances" may include showings of "bad faith" or "harassment" by state officials, or where the local law to be applied is "flagrantly and patently violative of express constitutional prohibitions." *JMM*, 378 F.3d at 1122 (quoting *Trainor v. Hernandez*, 431 U.S. 434, 441 (1977)). Mere allegations of bad faith, unsupported by the record, are insufficient to warrant federal intervention in the local proceeding. *See, e.g., Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975); *Perez v. Ledesma*, 401 U.S. 82, 85 (1971)).

Abstention is appropriate even where, as here, a plaintiff "levels a First Amendment challenge against a regulation and contends that its existence has a chilling effect on his free speech." *JMM*, 378 F.3d at 1122 n.11 (citing *Younger*, 401 U.S. at 54).

"The Supreme Court has held that the First Amendment does not prohibit laws justified by a valid governmental interest when those laws do not reflect an intent to control the content of speech but rather incidentally limit unfettered exercise of the right." *Lawrence v. Chabot*, 182 Fed. Appx. at 453 (citing *Konigsberg v. State Bar*, 366 U.S. 36, 50 (1961)).[8]

Under this standard, plaintiff's purported First Amendment challenge is utterly meritless—he has not cited and cannot cite to any rule or action of the DCCA or the COA which has any "effect" at all on his speech. *See Roe*, 74 Fed. Appx. at 492 ("[n]othing in the statute's language speaks to individual[s'] rights to free speech and expression.").

Indeed, the central thrust of plaintiff's claim is his disagreement with the *pace* of the COA's actions. Such a concern, however, does not implicate the Constitution. *See Stanton*, 127 F.3d at 76.[9] If and when the COA recommends denial of plaintiff's application, he will be entitled to a hearing, D.C. App. R. 46(f)(1), and will have "abundant opportunity to present his constitutional challenges in the state [p]roceedings." *Middlesex County*, 457 U.S. at 436

---

[8]     *See also Lawrence v. Chabot*, 182 Fed. Appx. at 454 (staying a final decision on an applicant's request for bar admission pending the resolution of criminal proceedings "is reasonable and does not, in any way, unreasonably implicate an applicant's right to free speech.").

[9]     *Id.* ("[T]here is no substance to [plaintiff's] First Amendment claim other than his challenge to the DCCA's application of the disciplinary rules in his case. Thus the 'core' of the claim cannot be considered independent of the [specific decision challenged].").

(footnote omitted). *See also, e.g., Teare*, 566 A.2d at 27 (considering and rejecting all the constitutional arguments of applicants to the D.C. Bar challenging their denials of admission).[10]

In light of *JMM*, on abstention grounds alone, the Court should dismiss the Amended Complaint. *See also American Tower v. Williams*, 146 F. Supp. 2d 27, 31 (D.D.C. 2001) ("Such a question is not one of constitutional import; it is a question of state law and its resolution is best left to the local courts."), *aff'd without opinion*, 50 Fed. Appx. 448 (D.C. Cir. 2002).[11]

### 4. *The Defendants Are Shielded from Liability by Absolute Immunity.*

Plaintiff claims that "[a]ttorneys who provide unconstitutional legal advice to investigators are not entitled to absolute immunity from suit." Amended Complaint ¶ 6 (citing *Burns v. Reed*, 500 U.S. 478, 496 (1991)).

Whether or not that proposition is correct as a matter of law is irrelevant; *all* the individual defendants here are entitled to absolute immunity, as they are playing an important role in an inherently judicial process—determining the qualifications of prospective members of the bar.

"Absolute immunity is designed to free the judicial process from the harassment and intimidation associated with litigation." *Burns*, 500 U.S. at 494. Moreover, absolute immunity extends to prevent interference with "conduct closely related to the judicial process." *Id*. (citing *Forrester v. White*, 484 U.S. 219, 224 (1988)). "Courts have extended absolute immunity to a

---

[10]     Plaintiff's similar constitutional and statutory challenges to the denial of his admission to the Florida Bar were dismissed on abstention principles. *Lawrence v. Rigsby*, 196 Fed. Appx. 858, 859 (11th Cir. 2006) (*per curiam*) (citing *Middlesex County*). Plaintiff's subsequent motion for relief from judgment was denied on the *Rooker-Feldman* doctrine. *Id*.

wide range of persons playing a role in the judicial process[,]" including prosecutors, law clerks, probation officers, and arbitrators. *Wagshal v. Foster*, 28 F.3d 1249, 1252 (D.C. Cir. 1994) (citing cases).

Although, "[i]n most cases, qualified immunity is sufficient to 'protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority[,]'" *Gray v. Poole*, 275 F.3d 1113, 1116 (D.C. Cir. 2002) (quoting *Butz v. Economou*, 438 U.S. 478, 506 (1978)), the Court should extend absolute immunity here.

To determine if particular actions of government officials qualify for absolute immunity, the Supreme Court has adopted a "functional approach," examining the "nature of the function performed, not the identity of the actor who performed it." *Gray*, 275 F.3d at 1116 (citing *Burns* and *Forrester*).

Factors to be considered in such an analysis include whether the functions of the challenged official are comparable to those of a judge, "whether the nature of the controversy is intense enough that future harassment or intimidation by litigants is a realistic prospect," and whether there are "safeguards" to justify doing away with private damage suits to control the alleged unconstitutional conduct. *Wagshal*, 28 F.3d at 1252 (citing, *inter alia*, *Butz*, 438 U.S. at 512).

Here, the individual defendants meet all three of these elements; as shown, the consideration and admission of candidates to practice law is a quintessential judicial function. Moreover, the continuing harassment and intimidation of COA members is unquestionably a

---

[11]     The court in *American Tower* dismissed plaintiff's federal claims "with prejudice" and dismissed plaintiff's local claims "without prejudice to their being refiled in a more appropriate forum . . . ." *American Tower*, 146 F. Supp. 2d at 36.

-18-

realistic prospect,[12] and there are numerous safeguards in the admissions process to justify extending absolute immunity to COA members.[13]

Here, of course, the COA has not yet made a final decision on plaintiff's application. But if the COA does eventually recommend denial of the application, the ultimate decision maker will be the DCCA. "Especially as the losing party will be blocked by judicial immunity from suing the judge, there may be great temptation to sue the messenger whose words foreshadowed the final loss." *Wagshal*, 28 F.3d at 1253.

Controlling and persuasive case law indicates that absolute immunity protects the individual defendants here. *See id.* (citing *Simons*, 643 F.2d at 779–82 (extending absolute immunity to court-appointed committee monitoring the unauthorized practice of law)); *In re Banks*, 805 A.2d 990, 1001 (D.C. 2002) (recognizing absolute immunity for damages conferred on Committee by *Simons*). *Cf. Powell v. Nigro*, 601 F.Supp. at 148 (members of the COA "are entitled to absolute immunity for those acts where they exercise judge-like discretion"). *See also Sparks v. Character & Fitness Committee of Kentucky*, 859 F.2d 428, 434 (6th Cir. 1988) (actions taken by state bar committee in denying plaintiff's application for admission were "judicial acts,"

---

[12]    "In *Butz*, the Court explained that absolute immunity would only be appropriate in situations where the officials who participate in the process . . . are likely to become defendants in later suits brought by litigants embittered by the outcome in the original forum." *Simons*, 643 F.2d at 781 (citing *Butz*, 438 U.S. at 512). *See also Powell*, 601 F. Supp. at 149.

[13]    *See, e.g., Simons*, 643 F.2d at 782 (pursuant to D.C. App. R. 21(a), Bar committee members are "officers" subject to writs of mandamus; "these writs effectively restrain improper action without adding the extra deterrent of monetary damages."); *id.* (because committee members are appointed to "brief three-year terms," the "safeguards . . . built into the judicial process" at the time of appointment are "capable of deterring, or correcting, unconstitutional conduct.") (footnote omitted). *See also Powell*, 601 F.Supp. at 149 (applicants denied admission may appeal to the DCCA, and thus "would have the opportunity to point out the inaccuracies in the bar admissions [process] without the need to bring a civil damage suit against the individual Committee members.").

hence individual members were entitled to absolute immunity for damages claims) (citing, *inter alia*, *Simons*).[14]

This Circuit has noted "the courts' virtually unanimous recognition of the immunity afforded individuals duly authorized to enforce rules regarding bar membership." *Simons*, 643 F.2d at 779. Plaintiff cannot meaningfully distinguish between the functions served by the individual committee members sued in *Simons* and those of the instant defendants.

> Thus, the Committee acts as a surrogate for those who sit on the bench. Indeed, were it not for the Committee, judges themselves might be forced to engage in the sort of inquiries which the plaintiffs have put in issue. In sum, the Committee members, as a bona fide arm of the Court of Appeals of the District of Columbia, must almost by definition make decisions comparable to those of a judge. The near-judicial nature of their work and the comparability, in this case, of that work to the protected efforts of a prosecutor point strongly to the appropriateness of a grant of absolute immunity.

*Id*. at 781 (footnote omitted).

Case law is clear that consideration of candidates for admission to the bar is a central judicial function, and absolute immunity protects not only the judges making the final decisions in such cases, but those persons who wield the powers given them by those judges.

Even if the Court determines that absolute immunity is inappropriate here, it is well-established that qualified immunity shields government officials from liability for civil damages. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *See also Farmer v. Moritsugu*, 163 F.3d 610, 613 (D.C. Cir. 1998).

---

[14]    The Sixth Circuit, in nearly identical litigation involving the instant plaintiff, agreed with the district court, which extended "absolute quasi-judicial immunity" to some Michigan defendants, despite plaintiff's claims that those defendants "did not exercise any sort of judgment when they held his application in abeyance . . . ." *Lawrence v. Chabot*, 182 Fed. Appx. at 451. Two other defendants sued in their individual capacities were entitled to qualified immunity. *Id*. at 452 n.3.

Where an official's conduct is objectively reasonable in light of existing law, that official will enjoy protection from liability. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Qualified immunity "protects government officials from [personal] liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *International Action Center v. United States*, 365 F.3d 20, 24 (D.C. Cir. 2004) (quoting *Harlow*, 457 U.S. at 818).

"Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Indeed, it is well settled that questions of qualified immunity should be resolved "at the earliest possible stage of the litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

A court evaluating a claim of qualified immunity must first determine whether plaintiff has alleged the deprivation of an actual constitutional right and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation. *Stewart v. Evans*, 351 F.3d 1239, 1243 (D.C. Cir. 2003) (*quoting Wilson v. Layne*, 526 U.S. 603, 609 (1999)). In other words, if no constitutional right has been violated, there is no need determine whether that right is "clearly established." *See, e.g., Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Here, as demonstrated below, there is no federal "right" to practice law without meeting the jurisdiction's requirements; hence, at a minimum, the individual defendants are entitled to qualified immunity. Plaintiff's allegations do not state a cognizable claim of any constitutional wrongdoing by any of the defendants. A reasonable official in defendants' situation could have believed that their conduct did not violate plaintiff's constitutional rights.

Plaintiff has utterly failed to allege, much less demonstrate, that the individual defendants' conduct was objectively "unreasonable" in light of existing law. Consequently, the individual defendants are entitled to protection from liability. *See Anderson*, 483 U.S. at 639. Because the individual defendants' conduct did not violate a clearly established law of which a reasonable official would have known, they are entitled to qualified immunity and plaintiff's claims against the individual defendants should be dismissed.

5. *Plaintiff Was Not Deprived of Substantive Due Process.*

The first step in any due process analysis is "to determine whether constitutional safeguards apply at all, *i.e.*, whether a private party has a property or liberty interest that triggers Fifth Amendment due process protection." *Reeve Aleutian Airways, Inc. v. U.S.*, 982 F.2d 594 (D.C. Cir. 1993) (*citing Cleveland Bd. of Education v Loudermill*, 470 U.S. 532, 538–41 (1985)). *See also Bloch v. Powell*, 348 F.3d 1060, 1068 (D.C. Cir. 2003) (to have a property interest in a government benefit, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.") (*quoting Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

This Circuit has made it clear that substantive due process "normally imposes only very slight burdens on the government to justify its actions . . . ." *George Washington Univ. v. District of Columbia*, 318 F.3d 203, 206 (D.C. Cir. 2003) ("*GWU*"). In fact, in the absence of a protected liberty or property interest, there can be no substantive due process violation. *Id*. (*citing Roth*, 408 U.S. at 569–70).

## A. There Is No Protected Liberty Interest Involved Here.

Contrary to plaintiff's implications, the practice of law is not a "right," but acquired only on a showing of appropriate "learning and [m]oral character." *Baird v. State Bar of Arizona*, 401 U.S. 1, 8 (1971); *Brooks v. Laws*, 208 F.2d 18, 28 (D.C. Cir. 1953) ("There is no inherent right to practice law. The right arises after qualification under the rules has been established."). "[I]f one's learning or moral character does not qualify him to practice law then that person has no right to practice law." *Piccone v. Moatz*, 136 F.Supp.2d 525, 530 (E.D. Va. 2001). *Cf. Conn v. Gabbert*, 526 U.S. 286, 292 (1999) (the "generalized due process right to choose one's field of private employment . . . is nevertheless subject to reasonable government regulation.").

The Circuit has indicated that, if statutes or regulations place substantial limits on the government's exercise of its discretion in conferring a "benefit," an applicant may have an constitutionally cognizable interest it. *GWU*, 318 F.3d at 207–209. In *GWU*, the Circuit found that there were "substantial limits" on the District's discretion to issue a land-use permit, hence the applicant had a property interest in it. *Id. at* 208.[15]

Here, in contrast, there are no such "substantial limits" on the defendants' discretion in handling plaintiff's bar application, and hence plaintiff has no liberty interest in immediate admittance without meeting the character and fitness requirements. *See Lawrence v. Chabot*, 182 Fed. Appx. at 451 (defendant bar officials and staff "exercised significant discretion" in reviewing bar applicant's character and fitness information and determining whether to recommend for admission).

---

[15]     If the governing statutory or regulatory language does not limit government officials' discretion to confer such a "benefit," no liberty interest is created. *Meachum v. Fano*, 427 U.S. 215, 224–26 (1976). *Cf. Sandin v. Conner*, 515 U.S. 472, 483–84 (1995) (to determine if there is a liberty interest, courts should focus less on the language of specific regulations and more on the nature of the interest at stake) (citing, *inter alia*, *Meachum*).

The DCCA possesses considerable discretion to determine who to admit to the bar, especially in determinations of character and fitness. *See, e.g., Dortch*, 860 A.2d at 355–56; *Manville*, 494 A.2d at 1288–89. Because of this significant discretion, plaintiff cannot have a reasonable expectation of an immediate entitlement to a license to practice law.

### B. Even Assuming a Protected Interest, The District's Conduct Here Was Reasonable.

"Once a [constitutional] interest is found, however, the doctrine of substantive due process constrains only egregious government misconduct." *GWU*, 318 F.3d at 209 (*citing Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988) (doctrine prevents only "grave unfairness"), *cert. denied*, 488 U.S. 956 (1988)); *Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003) (*per curiam*).[16]

In assessing the conduct of the District in this case against the substantive component of due process, "the threshold question is whether the behavior . . . [was] so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). Plaintiff cannot make such a dramatic showing.

In this Circuit, a substantive due process claim is limited "to actions that in their totality are genuinely drastic." *Tri County Industries, Inc. v. District of Columbia*, 104 F.3d 455, 459 (D.C. Cir. 1997). The District's action here falls far short of this standard, which is regularly reaffirmed by the Supreme Court. *See, e.g., City of Cuyahoga Falls v. Buckeye Community Hope Found.*, 538 U.S. 188 (2003) (unanimous decision) ("[O]nly the most egregious official conduct

---

[16]     *Silverman* identified two ways by which a plaintiff might show such unfairness: "a substantial infringement of state law prompted by personal or group animus, or a deliberate flouting of the law that trammels significant personal or property rights . . . ." *Silverman*, 845 F.2d at 1080. *See also GWU*, 318 F.3d at 209 (*quoting Silverman*). Plaintiff has not met and cannot meet neither standard.

can be said to be 'arbitrary in the constitutional sense.'" (*quoting County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Plaintiff cannot show such misconduct here.

Moreover, even if plaintiff demonstrates that the defendants violated local law by improperly "delaying" his application, "a breach of local law does not of itself violate substantive due process." *GWU*, 318 F.3d at 210 (*citing Tri County*, 104 F.3d at 459).

Plaintiff's substantive due process claims must be dismissed.

6. *Plaintiff Has Not Been Denied Procedural Due Process.*

Plaintiff has not been deprived of *any* constitutionally protected rights. Plaintiff can point to no "entitlement" of which he has been denied without due process. *See Tri County*, 104 F.3d at 460 (in procedural due process analysis, "the central issue is the adequacy not of [the agency director's] facts but of the *process* that he purported to follow.").

> It is clear that state law which generates a legitimate claim of entitlement can create an interest the deprivation of which triggers application of the Due Process Clause. It is equally clear, however, that state-created *procedures* do not create such an entitlement where none would otherwise exist. "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."

*Doe by Fein v. District of Columbia*, 93 F.3d 861, 868 (D.C. Cir. 1996) (*per curiam*) (emphasis in original) (*quoting Olim v. Wakinekona*, 461 U.S. 238, 250–51 (1983) (further citations omitted)).

Thus, to the extent that plaintiff claims a right to a District-of-Columbia-created procedure, the deprivation of that "right" is not of constitutional dimension, if (as the District asserts above), plaintiff has no property or liberty interest at stake independent of that claimed procedure.

Assertion of a procedural due process claim requires a plaintiff to identify the process that is due. *Doe by Fein*, 93 F.3d at 869–70. Plaintiff appears (at least implicitly) to claim the right to a hearing to challenge the delay in his application. *See* Amended Complaint ¶¶ 10–15. But due

process does not require a hearing at this stage of the proceeding; due process only requires a hearing prior to a final "deprivation." And D.C. Bar rules provide for just such a hearing. *See* D.C. App. R. 46(f) (if the COA is unwilling to recommend an applicant for admission, applicant may either withdraw the application or request a hearing). Consequently, if and when the COA determines not to recommend plaintiff for admission, he will be entitled to a hearing. *Id*.

Generally, procedural due process requires the government to provide the deprived party "notice and opportunity for hearing appropriate to the nature of the case." *Jones v. Flowers*, 547 U.S. 220, ___, 126 S.Ct. 1708, 1712 (2006) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). The District here easily satisfied that standard, even assuming a "deprivation," as plaintiff himself admits that he has regularly been in communication with the COA regarding his application. Amended Complaint ¶¶ 16, 17, 21, 22, 24. *See also* P.Br. at 14 (citing *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 546 (1985) ("something less than a full evidentiary hearing is sufficient prior to adverse administrative action") (due process requires notice and "[t]he opportunity to present reasons, either in person or in writing, why [the] proposed action should not be taken.")).[17]

Even if plaintiff shows that the District did not comply with its *own* procedures (which is not the case), that fact alone is insufficient—as a matter of law—to constitute a due process violation. *See Duckett v. Quick*, 282 F.3d 844, 848 (D.C. Cir. 2002) (although "obvious" that agency failed to comply with D.C. regulations, due process was not violated thereby) (citing *Brandon v.*

---

[17]    Plaintiff is simply incorrect when he asserts, in his Motion for Preliminary Injunction, that defendant Carlin "has failed to provide *any* basis for his decision to suspend Plaintiff's application process . . . ." P.Br. at 12 (emphasis in original). Plaintiff's correspondence with the COA (only partially reflected in his exhibits) clearly reflects the bases for the suspension. Plaintiff has been fully informed at all times regarding the reasons for the COA's actions, notwithstanding that he believes those bases to be insufficient to hold his application in abeyance.

*District of Columbia Bd. of Parole*, 823 F.2d 644, 648–49 (D.C. Cir. 1987) (state does not violate individual's due process rights by deviating from its own procedures; "state procedural law requirements must be enforced in state courts under state law")).

By plaintiff's own admission, as set forth in the Amended Complaint and Motion for Preliminary Injunction and attachments thereto, he thus far has had ample opportunities to present his case; due process requires no more. *See Lightfoot v. District of Columbia*, 448 F.3d 392, 401 (D.C. Cir. 2006) (*per curiam*) (Silberman, J., concurring) ("[T]he Supreme Court's due process jurisprudence carefully distinguishes process from substance. The issue is always, in its due process cases, whether or not the claimant has had a fair opportunity—sometimes rather informal—to present his case and not whether the agency's substantive decision was reasonable."). *See also American Towers*, 146 F.Supp.2d 27, 33 (D.D.C. 2001), *aff'd without opinion*, 50 Fed. Appx. 448 (D.C. Cir. 2002).

A. The "Delay" Here is Constitutionally Meaningless.

Generally, a final decision from "a disciplining court" of professional misconduct by an attorney is "conclusively establish[ed]" for purposes of District of Columbia Bar reciprocal disciplinary proceedings, although an attorney has an opportunity to rebut the presumption that the local discipline should be the same. *Ramos*, 860 A.2d at 846 (quoting D.C. Bar Rule XI, § 11(c)).

Accordingly, it makes eminent good sense to await final decisions of other jurisdictions on admission before the COA makes its final determination.

Indeed, the COA has the "inherent power to conduct independent investigations" of applicants, and the Supreme Court "has recognized that such an investigation is one of the basic

tools an admissions committee has for testing an applicant's prima facie showing of fitness to practice law." *Manville*, 494 A.2d 1289, 1293 (D.C. 1985) (citing *Konigsberg*, 366 U.S. at 41–42). Holding applications in abeyance pending further investigation—especially for applicants with criminal backgrounds—is a regular COA practice, fully supported by local case law, and entirely constitutional. *See, e.g.*, *Manville*, 494 A.2d at 1294 n.7 ("[F]urther investigation while the application is held in abeyance does no injustice . . . ."). Plaintiff cites no case rebutting this basic proposition.

Plaintiff's contention that the time spent holding his application in abeyance, standing alone, "deprived" him of a liberty interest fails to state a constitutional claim. Delay alone does not create a constitutional deprivation under these circumstances. *City of Cuyahoga Falls v. Buckeye Community Hope Found.*, 538 U.S. 188, 200 (2003) (Scalia, J., concurring) ("Freedom from delay in receiving" a government license is not among the "fundamental liberty interests" protected by the substantive component of due process). *See also Silverman v. Barry*, 845 F.2d 1072, 1079 (D.C. Cir. 1988) (D.C. Circuit has yet to address issue of when delay constitutes a substantive due process violation); *cf. Givens v. United States Railroad Retirement Board*, 720 F.2d 196 (D.C. Cir. 1988), *cert. den.*, 469 U.S. 870 (1988) (where statute does not set specific time limit for administrative action, government delay does not constitute a due process delay merely because statutory rights have been lost in the interim).

Here, plaintiff's claims that "delay" rises to constitutional proportions should be dismissed. *See Piccone v. Moatz*, 136 F.Supp.2d 525, 530 (E.D. Va. 2001) (even if court were to find that defendants deprived plaintiff of some interest in being admitted "rapidly" to practice law, the procedures afforded constitute sufficient process) (five-year delay in granting application did not violate due process). *See also Sibley v. Hergenroeder*, ___ F.Supp. 2d ___,

2006 WL 3354137, *3–4 (D.Md. Nov. 17, 2006) (court, per *Rooker-Feldman*, lacked subject-matter jurisdiction to determine whether state bar board members "improperly delayed" finalizing an individual's application for admission; applicant's constitutional claims were "inextricably intertwined" with his challenge to board's decision to hold application pending resolution of discipline pending in another jurisdiction);[18] *Otrompke v. Chairman of the Committee on Character and Fitness*, 2004 WL 812993, *5 (N.D. Ill. 2004) (notwithstanding delay of over three years in approving applicant's admission or granting him a hearing, the "important state interest" implicated mandated the exercise of *Younger* abstention); *In re Charlton*, 834 F.Supp. 1089, 1094 (E.D. Wisc. 1993) (six-year delay between filing of first grievance against attorney and filing of disciplinary board's complaint leading to his disbarment was not a *per se* violation of procedural due process)

This Circuit has noted that "a plaintiff suing under § 1983 must prove that his injury was due not merely to the law's delay and [the government's] errors but to defendant's *deliberate disregard* of the state's *fundamental* process." *Silverman*, 845 F.2d at 1079 (emphasis in original) (quoting *Roy v. City of Augusta*, 712 F.2d 1517, 1524 (1st Cir. 1983)). Plaintiff has failed to allege, much less demonstrate, that the defendants deliberately disregarded a fundamental process.

---

[18]    Plaintiff complains that, because his "litigation against the Michigan Board of Law Examiners is likely to last for years," Amended Complaint ¶ 23, there is no rational basis to hold his pending application in abeyance. The court in *Sibley* rejected a nearly identical claim, concerning Maryland's holding of an application pending the resolution of litigation in Florida. *Sibley*, 2006 WL 3354137 at *4 (while applicant complained that "the Florida matter was 'likely to drag on for years,'" the Court held that, pursuant to *Rooker-Feldman*, it lacked subject-matter jurisdiction to determine whether that delay was improper, which question "is within the exclusive jurisdiction of the Court of Appeals of Maryland.").

"The District was not only justified in proceeding with deliberation and caution on appellants' application, it had an affirmative duty to do so." *Silverman*, 845 F.2d at 1081. To paraphrase *Silverman*, the COA does not exist exclusively to process bar applications speedily for those who want to begin practicing law; it has a strong countervailing duty to the residents of the District to proceed with caution and to grant such applications only when it has ascertained that the applicant has demonstrated that he or she has met the high standards promulgated by the DCCA. *Id.*

Plaintiff has "fallen far short of meeting [his] burden of demonstrating 'no rational connection' between" the District's actions and the District's substantial interests in licensing only those bar applicants demonstrating good character and fitness. *Washington Teachers Local No. 6 v. Board of Education of the District of Columbia*, 109 F.3d 774, 781 (D.C. Cir. 1997) (quoting *Committee of United States Citizens Living in Nicaragua v. Reagan*, 859 F.2d 929, 943–44 (D.C.Cir.1988)).

Plaintiff's due process claims must be dismissed.

7. *Plaintiff Has Not Been Deprived of Equal Protection.*

Plaintiff, in two paragraphs of his Amended Complaint, alleges that the defendants are holding his application in abeyance "because" he filed a civil-rights suit against Michigan officials. Amended Complaint ¶¶ 41–42. Plaintiff asserts that this violates his rights to equal protection because he has been "singled out" and "differentially treated" without a rational basis. *Id.*

To survive an equal protection challenge, government action need only bear a rational relationship to a legitimate government interest, so long as no fundamental rights or suspect

classifications are implicated. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439–40 (1985). There is no fundamental right or suspect classification implicated here.

Plaintiff's equal-protection claim fails at the threshold. Preliminarily, of course, plaintiff is simply incorrect on the facts when he asserts causation—the COA is holding his application in abeyance not *because* he sued Michigan bar officials, but because his application for admission is pending in that jurisdiction, and because it awaits further information on plaintiff's "financial responsibility."

The DCCA has rejected a *per se* rule which would automatically disallow an applicant for admission who has a previous criminal conviction, preferring instead to "consider the facts of each case in light of the totality of circumstances surrounding an application for bar admission." *In re Dortch*, 860 A.2d 346, 356 (D.C. 2004) (quoting *In re Manville*, 494 A.2d 1289, 1293 (D.C. 1985)).

There are a large number of factors that the DCCA must analyze when considering the character and fitness of an applicant with a previous criminal conviction. *See, e.g., Dortch*, 860 A.2d at 356 (nature and character of crimes committed, number and duration of offenses, age and maturity of the applicant at the time, sufficiency of the punishment, years that have elapsed since the last offense, applicant's candor and sincerity). This "illustrative rather than exhaustive" list can only be rationally undertaken *after* the conclusion of proceedings first started elsewhere implicating those same factors. *Id*. at 357. *See also Manville*, 494 A.2d at 1294 n.7 ("further investigation while the application is held in abeyance does no injustice").

The rational basis inquiry is "highly deferential," *Calloway v. District of Columbi*a, 216 F.3d 1, 9 (D.C. Cir. 2000), and "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Heller v. Doe*, 509 U.S. 312, 320 (1993).

-31-

Equal protection "is essentially a direction that all persons similarly situated should be treated alike." *Cleburn*, 473 U.S. at 439. Plaintiff has clearly failed the initial hurdle in any equal protection claim—alleging that he has been treated differently than any other similarly situated applicants. *See, e.g., 3883 Connecticut, LLC v. District of Columbia*, 336 F.3d 1068, 1075 (D.C. Cir. 2003) (two essential elements in a "class of one" equal protection claim: (1) disparate treatment of similarly situated parties, (2) without a rational basis) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Plaintiff has failed to even allege that any other applicant with a similar background has had his application granted immediately without investigation and without awaiting the results of litigation in other jurisdictions.

As noted, holding District of Columbia Bar applications in abeyance pending the outcome of investigations or disciplinary proceedings in other jurisdictions is well within the authority of the COA, is a regular (and rational) method used for processing applications, and is part of an applicant's ultimate burden to demonstrate character and fitness. The DCCA, as well as the Supreme Court, has regularly noted that the "burden shifting" approach of Rule 46 (requiring an applicant to prove character and fitness by "clear and convincing evidence") is clearly constitutional, and is rationally related to the District's substantial interest in licensing attorneys. *See, e.g., Bedi*, ___ A.2d at ___, 2007 WL 527429, at *6 (citing, *inter alia, Konigsberg*, 366 U.S. at 41–42); *Ramos*, 860 A.2d at 845–46 (DCCA may await the outcome of disciplinary proceedings in another jurisdiction, where D.C. Bar rule "conclusively establish[es]" guilt on finding of guilt from elsewhere) (citing *In re Mbakpuo*, 829 A.2d 217, 220 (D.C. 2003) (decision not to admit applicant was "guided by the fact that petitioner has already been adjudicated in Ohio)).

Because there is no fundamental right or suspect class at issue here, an "as applied" equal protection challenge requires plaintiff first to prove that similarly situated individuals were

-32-

treated differently. *See Steffan v. Perry*, 41 F.3d 677, 695 (D.C. Cir. 1994) (*en banc*) ("[I]n making an as-applied challenge, it is [plaintiff's] burden . . . to show exactly how the [regulations] were applied against him illegally."). Even if plaintiff makes that showing, however, "the government may avoid violating equal protection principles if it can demonstrate that its reasons for treating an individual differently bear some rational relationship to a legitimate state purpose." *Brandon v. District of Columbia Bd. of Parole*, 823 F.2d 644, 650 (D.C. Cir. 1987).

Plaintiff cannot meet his "heavy burden of proof." *United States v. Grace*, 778 F.2d 818, 822 & n.7 (D.C. Cir. 1985). *See also Pryor-El v. Kelly*, 892 F.Supp. 261, 270 (D.D.C. 1995) (equal protection claim dismissed where plaintiff "only baldly asserts that he was treated differently than other[s]" and fails to allege "a constitutionally impermissible motive" for that treatment). Thus, plaintiff's equal protection claims must be dismissed.

8. *Plaintiff Cannot Establish Municipal Liability Under 42 U.S.C. § 1983.*

To hold the District liable under 42 U.S.C. 1983, a plaintiff must show that the District implemented or executed a policy or custom that causes the deprivation of plaintiff's constitutional rights. *Monell v. Dept. of Social Svcs*, 436 U.S. 658, 690–91 (1978); *Rogala v. District of Columbia*, 161 F.3d 44, 56 (D.C. Cir. 1998) (*per curiam*). Plaintiff thus has the burden of proving (1) that he was deprived of constitutional rights, and (2) that the deprivation was caused by a policy or custom of the District. *Warren v. District of Columbia*, 353 F.3d 36, 38 (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 123–24 (1992)).

Plaintiff cannot prove these two elements; plaintiff has not been deprived of any constitutional right.

-33-

Plaintiff cannot meet the difficult burden established by case law. Merely invoking § 1983 buzzwords is not sufficient to state a claim. Plaintiff's claims under 42 U.S.C. § 1983 must be dismissed.

9. *Plaintiff Fails to Meet Any of the Elements Necessary for Emergency Injunctive Relief.*

Notwithstanding the above, in order to obtain emergency injunctive relief, plaintiff must satisfy *each* prong of the following four-part test, by demonstrating: (1) a substantial likelihood of success on the merits; (2) irreparable injury in the absence of an injunction; (3) less injury to the non-moving party than the moving party if an injunction is ordered; and (4) that a preliminary injunction is consistent with the public interest. *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317–18 (D.C. Cir. 1998).

Because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly. *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004) (emergency injunctive relief "is an extraordinary remedy that should be granted only when the party seeking relief, by a clear showing, carries the burden of persuasion.") (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (interim injunctive relief is "an extraordinary and drastic remedy")).

While a strong showing on one of the four factors may make up for a weaker showing on another, *Serono Labs.*, 158 F.3d at 1318, a particularly weak showing on one factor may be more than the other factors can "compensate" for. *Taylor v. RTC*, 56 F.3d 1497, 1506 (D.C. Cir. 1995), *amended on other grounds on reh'g.*, 66 F.3d 1226 (D.C. Cir. 1995).

Plaintiff failed to make a satisfactory showing on *any* of the four factors, hence his demand for emergency injunctive relief should be denied.

-34-

A. Plaintiff Fails to Establish A Substantial Likelihood of Success On the Merits.

For all the reasons stated above, plaintiff's claims must be dismissed, hence plaintiff has no chance of success on the merits.

B. Plaintiff Has Failed to Establish Irreparable Harm As A Matter of Law.

Plaintiff has failed to make any showing of irreparable harm and therefore his demand for emergency injunctive relief must fail.

An essential prerequisite to injunctive relief is a sufficient showing by plaintiff that he will suffer irreparable harm if the injunctive relief is not granted. *See*, *e.g.*, *Davenport v. International Brotherhood of Teamsters,* 166 F.3d 356, 360 (D.C. Cir. 1999). *See also Sampson v. Murray*, 415 U.S. 61, 88–90 (1974).

At a minimum, a plaintiff seeking emergency injunctive relief must make a threshold showing of irreparable injury. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) ("we require the moving party to demonstrate at least 'some injury . . . .'") (citing, *inter alia, Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1208 (D.C. Cir. 1989) (preliminary injunction properly denied "where moving party may have been 'likely to succeed' but did not carry burden of showing irreparable harm, since 'the basis of injunctive relief in the federal courts has always been irreparable harm.'") (quoting *Sampson*, 415 U.S. at 88 and *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506 (1959))).

Plaintiff makes no competent showing of any injury, much less *irreparable* injury. Consequently, the Court may deny his request for emergency injunctive relief without considering any other factors. *CityFed*, 58 F.3d at 747. *See also PhRMA v. Walsh*, 538 U.S. 644, 671 (2003) (plaintiff "cannot obtain a preliminary injunction simply by showing minimal or quite 'modest' harm") (*Breyer, J., concurring*).

*Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985), sets forth the guiding principles for determining whether irreparable harm exists: (1) the injury must be both *certain* and *great*, not something merely feared as likely to occur at some indefinite time; (2) the injury must be of such imminence that there is a "clear and present" need for relief to prevent it; and (3) economic loss is insufficient to constitute irreparable harm unless the plaintiff's very existence is threatened. *See also Sampson*, 415 U.S. at 88–90.

All of the threatened harms alleged by plaintiff are entirely speculative and, even if they occur, may be remedied financially. Plaintiff's self-serving and conclusory declaration is insufficient to support the grant of emergency injunctive relief. *See, e.g.*, *Nat'l Assn. of Psychiatric Health Sys. v. Shalala*, 120 F.Supp.2d 33, 44 & n.9 (D.D.C. 2000) (preliminary injunction denied where plaintiffs "offer[ed] no concrete, reliable evidence to support their contentions of irreparable harm.").[19]

To the extent plaintiff claims his constitutional rights are now (or will be) violated, he has similarly failed to meet his burden. *See, e.g., Wagner v. Taylor*, 836 F.2d 566, 577 n. 76 (D.C.Cir.1987) ("[I]n cases involving a claim by movant of interference with protected freedoms or other constitutional rights, . . . the finding of irreparable injury cannot meaningfully be rested on a mere contention of a litigant."); *Veitch v. Danzig*, 135 F.Supp.2d 32, 37 (D.D.C. 2001) (violation of constitutional rights is not itself an irreparable harm) (citing *Elrod v. Burns*, 427

---

[19]    While plaintiff is correct that "[r]ecoverable monetary loss may constitute irreparable harm where the loss threatens the very existence of the movant's business," P.Br. at 13 n.5 (citing *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 n.2 (D.C. Cir. 1977), that proposition is inapposite here. The relevant cases concern existing, ongoing businesses threatened with destruction. Here, however, plaintiff has not yet been denied a license to practice law in the District of Columbia, hence nothing has or will be "destroyed." Moreover, while practicing law is plaintiff's chosen career, the District's actions here have no effect on the other, ample career opportunities available to a law school graduate.

U.S. 347, 373 (1976)); *Ashland Oil, Inc. v. FTC*, 409 F.Supp. 297, 307 (D.D.C. 1976) ("[T]he required showing of irreparable injury is not eliminated simply by virtue of a claim alleging violation of statutory or constitutional rights."), *aff'd*, 548 F.2d 977 (D.C.Cir.1976).

Plaintiff claims that "[*a*]*ny* injury to First Amendment rights constitutes irreparable loss . . . ." Amended Complaint ¶ 33 (emphasis in original) (citing *Elrod*, 427 U.S. at 373). Plaintiff is wrong as a matter of law.

Imminent violation of constitutional rights—even if proven—does not, by itself, constitute irreparable injury. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 301 (D.C. Cir. 2006) (holding that, "in this court, as in several others, there is no *per se* rule that a violation of freedom of expression *automatically* constitutes irreparable harm.") (emphasis in original). *Cf. Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382 (1992) (the prospect of an "imminent" state civil or criminal enforcement suit of an unconstitutional law *may* comprise the necessary irreparable injury to qualify for emergency injunctive relief).

There is nothing remotely "imminent" here in the broad sense of the word; nothing has happened yet or may occur in the immediate future requiring *emergency* injunctive relief. Plaintiff seeks to force a specific result prior to the completion of the mandated process, which process may still give plaintiff precisely the relief he seeks.

Plaintiff fails to make any showing of irreparable harm and therefore his request for a preliminary injunction must fail.

C. The Balance of Equities Favors Denying Injunctive Relief.

Plaintiff here seeks to enjoin the local judiciary from proceeding with a process of substantial local importance, and to require a pre-determined outcome for that process. The

balance of equities tips decidedly in favor of defendants where plaintiff essentially is asking this Court to issue a mandatory injunction before the COA has made *any* final administrative decision. In other words, plaintiff seeks the ultimate relief at the beginning of the litigation.

An injunction would substantially injure the District of Columbia, its citizens, and the bar-admission process. "[A]ny time a State [or local government] is enjoined by a court from effectuating statutes enacted by the representatives of its people, it suffers a form of irreparable injury." *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers). *See also Greene*, 806 A.2d at 223 (quoting *New Motor Vehicle Bd.*).

If plaintiff's relief were to be granted, the door would be opened to allow every applicant unhappy with (potential) COA decisions to bypass the mandated process. To allow this type of challenge would undermine this important local proceeding. Any "aggrieved party" would be able to ignore preliminary COA decisions with which it disagreed and go straight into federal court.

Moreover, a preliminary injunction here would *not* preserve the status quo, but would require the COA and, presumably, the DCCA, to take *affirmative steps* to prevent the mandated administrative processes from going forward. As such, a preliminary injunction would be a "mandatory injunction" requiring plaintiff to meet a *higher* standard than the typical four-part test for the usual "prohibitory" injunction. *Veitch*, 135 F.Supp.2d 32, 35 & n.2 (D.D.C. 2001) (citing, *inter alia, University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) and *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969)).

Plaintiff must therefore show "clearly" that he is entitled to immediate relief or that "extreme or very serious damage" will result from the denial of the emergency injunction. *Veitch*, 135 F.Supp.2d at 35 n.2 (quoting *Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2nd Cir. 1997)).

Plaintiff has failed to show that he is clearly entitled to immediate relief and has not shown any "extreme or very serious damage" in the absence of emergency injunctive relief.

In these circumstances, the District of Columbia enjoys the balance of the equities in its favor.

*4. The Public Interest Favors the District.*

It is plaintiff's self-interest, not the public interest, which is at the root of the Amended Complaint. The public interest favors denying plaintiff's request for a preliminary injunction.

In essence, plaintiff asserts that he is not bound by the same process that applies to every other applicant to the District of Columbia Bar.

Allowing plaintiff to avoid that mandated process would turn the statutory scheme on its head. The public interest demands more than plaintiff's self-interest.

III. <u>Conclusion</u>

The defendants' actions here did not violate any of the fundamental principles of the Constitution. For the foregoing reasons, the defendants move to dismiss the Amended Complaint. Alternative proposed Orders are attached hereto.

DATE: March 27, 2007             Respectfully submitted,

                                 LINDA SINGER
                                 Acting Attorney General for the District of Columbia

-39-

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division


        /s/ Ellen A. Efros
ELLEN A. EFROS, D.C. Bar No. 250746
Chief, Equity Section I
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 442-9886
Facsimile: (202) 727-0431


        /s/ Andrew J. Saindon
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity I Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 727-0431
andy.saindon@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
FRANK J. LAWRENCE, JR.,               )
                                      )
               Plaintiff,             )
                                      )
        v.                            )        Civil Action No. 07-00288 (RCL)
                                      )
MARK S. CARLIN, *et al.*,             )
                                      )
               Defendants.            )
_____ )

ORDER

Upon consideration of the Defendants' Motion To Dismiss, the Memorandum of Points and Authorities in Support thereof and in opposition thereto, the entire record herein, and it appearing that the relief should be granted, it is hereby:

ORDERED, that the Defendants' Motion To Dismiss be, and hereby is, GRANTED, and it is

FURTHER ORDERED, that the Amended Complaint is hereby DISMISSED with prejudice, for failure to state a claim upon which relief may be granted, and it is

FURTHER ORDERED, that the Motion for Preliminary Injunction is hereby DENIED as MOOT.

SO ORDERED.


DATE: _____          _____
                                     ROYCE C. LAMBERTH
                                     United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| FRANK J. LAWRENCE, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-00288 (RCL) |
| ) | |
| MARK S. CARLIN, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

ORDER

Upon consideration of the Defendants' Motion To Dismiss, the Memorandum of Points and Authorities in Support thereof and any opposition thereto, the entire record herein, and it appearing that the relief should be granted, it is hereby:

ORDERED, that the Defendants' Motion To Dismiss be, and hereby is, GRANTED, and it is

FURTHER ORDERED, that the Amended Complaint is hereby DISMISSED with prejudice for lack of subject-matter jurisdiction, and it is

FURTHER ORDERED, that the Motion for Preliminary Injunction is hereby DENIED as MOOT.

SO ORDERED.


DATE: _____           _____
                                              ROYCE C. LAMBERTH
                                              United States District Judge