UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

MAR 2 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

FRANK J. LAWRENCE, JR.

      Plaintiff,                                                    Civil No.07-288-RCL

v.

MARK S. CARLIN, <u>ET</u>. <u>AL</u>.,

      Defendants.

_____/

### PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### ORAL ARGUMENT REQUESTED

Pursuant to Fed. R. Civ. P. 65(a), Plaintiff hereby moves for a preliminary injunction, enjoining Defendant Carlin from holding in abeyance Plaintiff's application for a license to practice law. The grounds upon which this motion is based are fully set forth in the attached brief in support. Plaintiff has contacted opposing counsel, who has denied concurrence in the relief requested herein.

Dated: March 26, 2007                                    Respectfully submitted:

Frank J. Lawrence, Jr.
Plaintiff, <u>Pro</u> <u>Se</u>
941 Westview Road
Bloomfield Hills, MI 48304
(248) 722-2560

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

FRANK J. LAWRENCE, JR.

     Plaintiff,                                   Civil No.07-288 RCL

v.

MARK S. CARLIN, <u>ET</u>. <u>AL</u>.,

     Defendants.

_____/

**<u>BRIEF IN SUPPORT OF PLAINTIFF'S</u>**
**<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

ORAL ARGUMENT REQUESTED

## STATEMENT OF FACTS

A.    Introduction to Licensing System

This case involves the Defendants' refusal to process Plaintiff's application for a license to practice law until Plaintiff concludes his pending federal civil rights litigation against Michigan attorney licensing officials (Exhibit 1, Letter from Mark S. Carlin). The claims in this lawsuit have been brought pursuant to 42 U.S.C. §1983, to vindicate First, Fifth, and Fourteenth Amendment rights. (Am. Complaint, ¶ 1).

An applicant for a license to practice law in the District of Columbia initiates the licensing process by filing an application. At all times during the application process, an applicant is in control over whether his application remains pending or not. As such, application proceedings are remedial and/or non-coercive, unlike the criminal proceedings in Younger v. Harris, 401 U.S. 37, 27 L. Ed. 2d 669, 91 S. Ct. 746 (1971), or the disciplinary proceedings in Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982). (Am. Complaint, ¶ 9)[1].

The District of Columbia regulates the practice of law, as with other professions and occupations, by requiring a license as a condition of practice. An applicant for a law license must meet certain eligibility requirements, which are divided generally between integrity fitness

---

[1] Plaintiff mentions this in order to avoid any meritless argument from the Defendants that Younger abstention is warranted. The law is quite clear that Younger abstention is only applicable when the federal plaintiff is involved in an ongoing *coercive* state proceeding. See, e.g., Majors v. Engelbrecht, 149 F.3d 709 (7th Cir. 1998) (for purposes of Younger abstention, administrative proceedings are judicial in nature when they are coercive); O'Neill v. City of Philadelphia, 32 F.3d 785, 791 n.13 (3rd Cir. 1994) (same); Exec. Art Studio, Inc. v. City of Grand Rapids, 179 F. Supp. 2d 755, 759 (W.D. Mich. 2001) ("Thus, where the federal plaintiff also initiates the state proceeding, the basis for Younger abstention will usually be absent because the state is not seeking to enforce its laws."). It is also important to note that, here, no "on-going" state proceedings exist. The purpose of this lawsuit is to get the state proceedings to be "on-going".

(evaluated by review of "good moral character") and education fitness (evaluated by written examination of familiarity with standard legal concepts). The District of Columbia Committee on Admissions (hereinafter "Committee"), through Defendant Committee Chairman Mark S. Carlin, is charged with the responsibility of evaluating applications for admission to the practice of law in the District of Columbia. Defendant Carlin has been sued in his official capacity. (Am. Complaint, ¶ 4).

In conjunction with filing an application, an applicant pays a fee for a "character report" by the National Conference of Bar Examiners (hereinafter "NCBE"), pursuant to standards established by that organization. That report is then transmitted to the Committee. See, In re Baker, 579 A.2d 676, 677-678 (D.C., 1990). In cases where the NCBE "character report" discloses disqualifying matters sufficient to raise a presumption that the applicant does not presently possess "good moral character," the Committee has discretion to order an independent investigation to determine whether there is evidence of "rehabilitation". In some cases, the Committee holds a hearing concerning an applicant's character, at which hearing the applicant has the burden of proving "rehabilitation" from the disqualifying conduct by clear and convincing evidence. The Committee's ultimate findings are transmitted to the Court of Appeals. (Am. Complaint, ¶ 8)[2].

The constitutional claims in this lawsuit have been brought in order to enjoin Defendant Carlin from further holding Plaintiff's application process in investigative purgatory, to require Defendant Carlin to timely process Plaintiff's application, and for monetary damages. (Am. Complaint, p. 18, relief sought).

---

[2] Upon information and belief, Plaintiff possesses a positive NCBE Report. This would account for Defendant Carlin's October 6, 2006, notice to the public, which included Plaintiff's name. See Exhibit 3, attached hereto.

B.     Facts Regarding Plaintiff's Claims

On or about May 16, 2006, Plaintiff filed his application for a license to practice law in the District of Columbia. In doing so, Plaintiff filed an affidavit of personal history, which is an exhaustive list of an applicant's life's activities that is used to investigate the applicant's moral character and fitness to practice law. Plaintiff also tendered all applicable filing fees to the Committee. (Am. Complaint, ¶ 16). The Committee accepted Plaintiff's submissions, and then notified him that he was scheduled to attend and take the July 25th and 26th District of Columbia Bar Examination. (Am. Complaint, ¶ 17). Plaintiff passed that exam, and by reason thereof, the Committee has no present reason to question Plaintiff's educational fitness to practice law in the District of Columbia. (Am. Complaint, ¶ 18).

When Plaintiff applied for a license to practice law in the District of Columbia, he simultaneously had an application for a law license pending before the Michigan Board of Law Examiners. However, on June 22, 2006, Plaintiff was notified by the Michigan Board of Law Examiners, in a final administrative decision, that his application for a license was denied[3]. Because the adverse Michigan decision was in violation of Plaintiff's protected First Amendment activities, he retained counsel and on September 8, 2006, he sued the Michigan officials in the United States District Court for the Western District of Michigan. (Am. Complaint, ¶ 19).

On December 14, 2006, the Court dismissed Plaintiff's claims against the Michigan officials, Lawrence v. Berry, 2006 WL 3694631 (W.D.Mich. 2006); 2006 U.S. Dist. LEXIS 90283 (W.D. Mich. 2006), and on December 15, 2006, Plaintiff filed a notice of appeal to the United States Court of Appeals for the Sixth Circuit. Lawrence v. Berry, Sixth Circuit No. 07-

---

[3] In the interest of a full disclosure to this Court, Plaintiff has attached a copy of the Michigan decision denying Plaintiff a license as Exhibit 1 to the Amended Complaint.

1026. The parties are presently briefing the appeal. Exhibit 2 of Plaintiff's Amended Complaint is his appellate brief in the Sixth Circuit Court of Appeals. (Am. Complaint, ¶ 20).

The Committee requires licensing applicants to inform it of any pending civil litigation in which an applicant is involved. Pursuant to this obligation, Plaintiff apprised the Committee that he had brought a civil rights action against the Michigan Board of Law Examiners and Plaintiff has kept the Committee abreast of the developments in that litigation. (Am. Complaint, ¶ 21). After learning of the Michigan litigation, however, the Committee became suspiciously silent. On December 26, 2006, Plaintiff sent a letter to the Committee, which requested that it either certify him for admission or provide Plaintiff a hearing on or before January 26, 2007. The Committee refused to do either. On January 24, 2007, the Committee informed Plaintiff by letter, *inter alia*, that the Committee would hold Plaintiff's application in abeyance pending the conclusion of Plaintiff's litigation against the Michigan Board of Law Examiners. (Am. Complaint, ¶ 22)[4].

District of Columbia law places substantive limitations on Defendant Carlin's discretion by containing explicitly mandatory language, i.e., specific directives to Defendant Carlin that if substantive predicates are present, a particular outcome must follow. This is evidenced by District of Columbia Court of Appeals Rule 46(f)(1) , which states:

> In determining the moral character and general fitness of an applicant for admission to the Bar, the Committee may act without requiring the applicant to appear before it to be sworn and interrogated. If the Committee is unwilling to

---

[4] Plaintiff's litigation against the Michigan Board of Law Examiners is likely to last for years. An appeal, on average, in the Sixth Circuit takes between 12 to 18 months for a decision. If the case is remanded for trial, the conclusion of the proceedings will take much longer. For example, when a Michigan Bar applicant sued (former) Michigan Bar Counsel Thomas Byerley for wrongfully threatening the applicant with character rejection on account of the applicant's First Amendment activities, it took over 4 years to fully adjudicate that case through trial. See, Dean v. Byerley, 354 F.3d 540 (6th Cir. 2004).

certify an applicant, it **shall** notify the applicant of the choice of withdrawing the application or requesting a hearing.

In the matter sub judice, it is clear that Defendant Carlin is "unwilling to certify" Plaintiff for a license. It is important to note that Plaintiff has requested, and Defendant Carlin has refused to provide, a hearing. Additionally, Defendant Carlin's decision to place Plaintiff's application process in abeyance was committed without notice and hearing. In fact, since the filing of Plaintiff's Complaint in this matter, Defendant Carlin has reaffirmed in writing his refusal to further process Plaintiff's application until Plaintiff "concludes" his civil rights lawsuit against the Michigan attorney licensing officials. Exhibit 3 to Plaintiff's Amended Complaint is a March 9, 2007 letter from Defendant Carlin reiterating his position (Am. Complaint, ¶ 24).

## ARGUMENT

I.    **THIS COURT SHOULD RULE THAT DEFENDANT CARLIN MAY NOT HOLD IN ABEYANCE PLAINTIFF'S APPLICATION FOR A LICENSE TO PRACTICE LAW BECAUSE PLAINTIFF ELECTED TO FILE A FEDERAL CIVIL RIGHTS LAWSUIT AGAINST MICHIGAN ATTORNEY LICENSING OFFICIALS.**

**THIS COURT SHOULD PRELIMINARILY ORDER DEFENDANT CARLIN TO CEASE HOLDING IN ABEYANCE PLAINTIFF'S APPLICATION PROCESS, AND FURTHER ORDER DEFENDANT CARLIN TO PROVIDE PLAINTIFF A HEARING WITHIN 30 DAYS.**

The law is clear that a licensing applicant has a First Amendment right to challenge governmental decision-making; to wit, Plaintiff cannot be denied a license because he has invoked the jurisdiction of the federal courts to review how character and fitness hearings are conducted in Michigan. In Konigsberg v. State Bar of California, 353 U.S. 252, 268-269; 77 S. Ct. 722; 1 L. Ed. 2d 810 (1957), a bar applicant wrote a series of editorials for a local newspaper to bring to the public's attention the manner in which the Supreme Court of the United States

conducted its decision-making. In doing so, Konigsberg "severely criticized … this Court's decisions in <u>Dennis</u> and other cases." <u>Id</u>. at 268. In addressing Konigsberg's situation, the Supreme Court of the United States stated that character rejection on account of "severe" criticism of a governmental body is not rational:

> We do not believe that an inference of bad moral character can rationally be drawn from these editorials. Because of the very nature of our democracy such expressions of political views must be permitted. Citizens have a right under our constitutional system to criticize government officials and agencies. Courts are not, and should not be, immune to such criticism. Government censorship can no more be reconciled with our national constitutional standard of freedom of speech and press when done in the guise of determining "moral character," than if it should be attempted directly.

> <u>Id</u>. at 269.

Therefore, if Konigsburg's "severe" public criticism of the Supreme Court could <u>not</u> be the basis for character rejection, there is no constitutional way that Defendant Carlin can place Plaintiff's application in administrative purgatory on account of Plaintiff's complaint about the manner in which Michigan officials conduct their character and fitness hearings.

> A.    <u>Plaintiff's involvement in a federal civil rights suit against the Michigan officials is protected First Amendment activity.</u>

The right to initiate civil litigation is a First Amendment right, <u>Bill Johnson's Restaurants, Inc. v. N.R.L.B.</u>, 461 U.S. 731, 741; 103 S. Ct. 2161; 76 L. Ed. 2d 277 (1983), and the right to subject government action to constitutional scrutiny "implicates central First Amendment concerns." <u>Legal Services Corp. v. Velazquez</u>, 531 U.S. 533, 547; 149 L. Ed. 2d 63; 121 S.Ct. 1043 (2001). The Supreme Court has described the right to petition the government for redress of grievances as "among the most precious of the liberties safeguarded by the Bill of Rights." <u>United Mine Workers v. Illinois State Bar Ass'n</u>, 389 U.S. 217, 222; 19 L.

Ed. 2d 426; 88 S. Ct. 353 (1967). Therefore, there can be no legitimate dispute that Plaintiff's conduct is a federally secured freedom, which is protected by the First Amendment.

Because Defendant Carlin is using protected First Amendment activities as a basis to deny Plaintiff the process that he is due, Defendant Carlin's practices also violate the rule of Perry v. Sindermann, 408 U.S. 593, 597; 33 L. Ed. 2d 570; 92 S. Ct. 2694 (1972), which states:

> For at least a quarter-century, this Court has made clear that even though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests -- especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly." Speiser v. Randall, 357 U.S. 513, 526. Such interference with constitutional rights is impermissible.

Id. at 597.

Defendant Carlin may argue that the practice of law is a privilege, and therefore, any burden on Plaintiff's First Amendment rights is insignificant. However, the Supreme Court of the United States has said, time after time, that the right to practice law is not a matter of a state's "grace and favor". Willner v. Committee on Character & Fitness, 373 U.S. 96, 102; 83 S. Ct. 1175; 10 L. Ed. 2d 224 (1963), citing Ex parte Garland, 4 Wall. 333, 379 (1967); Schware v. Board of Bar Examiners, 353 U.S. 232, 239; 77 S. Ct. 752; 1 L. Ed. 2d 796 (1957) ("Certainly the practice of law is not a matter of the State's grace."); see also Baird v. State Bar of Arizona, 401 U.S. 1, 8; 91 S. Ct. 702; 27 L. Ed. 2d 639 (1971) (see separate opinions by Black, Douglas, Brennan, and Marshall, JJ.).

In order to burden Plaintiff's First Amendment rights, as Defendant Carlin has done, the Committee must justify its conduct under the strict scrutiny analysis applicable to First Amendment cases. Here, Defendant Carlin has offered no legitimate justification.

B.    Defendant Carlin's conduct is creating a chilling effect on Plaintiff's First Amendment right to petition the Michigan courts for redress of grievances. Without a preliminary injunction, Defendant Carlin's conduct poses a clear and present danger to constitutionally protected conduct.

By holding Plaintiff's District of Columbia application for a license "in abeyance" until Plaintiff concludes his Michigan litigation, Defendant Carlin's practices have chilled Plaintiff's rights and they would cause a person of ordinary firmness to cease engaging in federally secured activities, namely, litigate important and cherished constitutional interests.

Plaintiff's injuries are both certain and great, as evidenced by Plaintiff's affidavit, which has been attached hereto as Exhibit 2. Plaintiff has stated that Defendant Carlin's conduct has caused Plaintiff to be torn between litigating constitutional issues in the Michigan case, on the one hand, or dismissing those claims in exchange for a decision on his licensing application in the District of Columbia, on the other hand. This has placed Plaintiff in an egregiously unfair and unconstitutional predicament, which is precisely the type of clear and present danger that warrants preliminary equitable relief. Plaintiff is facing the exact type of injury that is beyond remediation. No adequate compensatory or other corrective relief, which may be available at a later date, would remedy the chilling effect that Plaintiff is presently experiencing. A preliminary injunction is therefore appropriate to protect Plaintiff from the chilling effect of Defendant Carlin's unconstitutional conduct.

C.    Defendant Carlin's conduct is retaliatory and designed to deter the exercise of protected First Amendment rights. He has no legitimate interest in awaiting the conclusion of Plaintiff's Michigan civil rights lawsuit.

As noted above, Plaintiff's Michigan litigation is constitutionally protected speech. It is a violation of due process to punish a person for asserting a protected statutory or constitutional right. North Carolina v Pearce, 395 U.S. 711; 89 S. Ct. 2072; 23 L. Ed. 2d 656 (1969). To punish a person because he has done what the law plainly allows him to do "is a due process violation of the most basic sort." Bordenkircher v Hayes, 434 U.S. 357, 363; 98 S. Ct. 663; 54 L. Ed. 2d 604 (1978). Also, bad faith and harassing state proceedings encompass those proceedings that are initiated for or discourage the exercise of constitutional rights. Lewellen v. Raff, 843 F.2d 1103, 1109-1110 (8th Cir. 1988), cert. denied, 489 U.S. 1033; 103 L.Ed. 2d 229; 109 S.Ct. 1171 (1989). Defendant Carlin's refusal to process Plaintiff's application is in bad faith and it is designed to discourage Plaintiff's exercise of constitutional rights. With respect to the interests of the Committee, it does not have any legitimate interest in holding in abeyance Plaintiff's application. Wilson v. Thompson, 593 F.2d 1375, 1383 (5th Cir.1979).

The damage Plaintiff is suffering is incalculable. As Justice Brennan accurately reflected in Barry v. Barchi, 443 U.S. 55, 73-74; 61 L. Ed. 2d 365; 99 S. Ct. 2642 (1979):

> The District Court found that, in harness racing, even a temporary suspension can irreparably damage a trainer's livelihood. Not only does a trainer lose the income from races during the suspension, but also, even more harmful, he is likely to lose the clients he has collected over the span of his career. (Footnote omitted). Where, as here, even a short temporary suspension threatens to inflict substantial and irreparable harm, an "initial" deprivation quickly becomes "final," and the procedures afforded either before or immediately after suspension are de facto the final procedures. A final full hearing and determination after Barchi had been barred from racing his horses and had lost his clients to other trainers was aptly described by the District Court as an "exercise in futility," 436 F. Supp., at 782, and would certainly not qualify as a "meaningful opportunity to be heard at a meaningful time." To be meaningful, an opportunity for a full hearing and determination must be afforded at least at a time when the potentially irreparable and substantial harm caused by a suspension can still be avoided -- i.e., either before or immediately after suspension.

443 U.S. at 73-74 (emphasis added, Brennan, J., concurring in part). See also Ritter v. Cohen, 797 F.2d 119 (3d Cir. 1986) (unreasonable delay in providing postdeprivation hearing to individual deprived of livelihood violates due process).

Although the plaintiff in Barchi had suffered a deprivation over a license *previously granted*, and in the matter sub judice Plaintiff has yet to be licensed, that distinction is insignificant for the purposes of a due process analysis. Applicants have a property and/or liberty interest in government benefits for which they have applied. See, e.g., Willner v. Committee on Character & Fitness, 373 U.S. 96, 102; 83 S. Ct. 1175; 10 L. Ed. 2d 224 (1963); Mallette v. Arlington County Employees' Retirement System II, 91 F.3d 630, 639-40 (4th Cir. 1996) ("We join our sister court in rejecting the mechanical and simplistic applicant/recipient distinction"); National Ass'n of Radiation Survivors v. Derwinski, 994 F.2d 583, 588 (9th Cir. 1992); Haitian Refugee Ctr., Inc. v. Nelson, 872 F.2d 1555, 1562 (11th Cir. 1989); Daniels v. Woodbury County, 742 F.2d 1128, 1132 (8th Cir. 1984); Holbrook v. Pitt, 643 F.2d 1261, 1278 n.35 (7th Cir. 1981); Kelly v. Railroad Retirement Bd., 625 F.2d 486, 490 (3d Cir. 1980); Griffeth v. Detrich, 603 F.2d 118, 120-22 (9th Cir. 1979); Ward v. Downtown Dev. Auth., 786 F.2d 1526, 1531 (11th Cir. 1986); Raper v. Lucey, 488 F.2d 748, 752 (1st Cir. 1973) (finding "no legitimate basis" for distinguishing between applying for a liberty "benefit" and having that benefit withdrawn).

The law is clear in the District of Columbia that the Committee must base its "good moral character" recommendation on an applicant's present character and fitness to practice law, the word "present" meaning at the time of his application. In re Manville (Manville I), 494 A.2d 1289, 1295 (D.C., 1985); In re Manville (Manville II), 538 A.2d 1128, 1132 (D.C. 1988) (en banc). In this respect, it is difficult to discern any legitimate basis for holding in abeyance Plaintiff's application process to await the outcome of an unrelated federal civil rights suit. This

is not a situation where the Committee is awaiting another state's decision on a serious criminal or disciplinary matter, see e.g. In re Dortch, 860 A.2d 346, 352-353 (D.C. 2004), but rather, this is a scenario where Plaintiff initiated a civil rights lawsuit to challenge the manner in which Michigan officials conduct their hearings. The result in Plaintiff's Michigan litigation – whatever it may be – will have absolutely no effect on his application in the District of Columbia. And Defendant Carlin has never offered any such explanation. To date, he has failed to provide any basis for his decision to suspend Plaintiff's application process, and he has failed to provide Plaintiff a hearing in order to contest that suspension.

## II.   THE FACTS AND CIRCUMSTANCES OF THIS CASE MEET THE FOUR PREREQUISITES FOR PRELIMINARY INJUNCTIVE RELIEF

In considering Plaintiff's request for a preliminary injunction, the Court must consider four factors: (1) whether Plaintiff would suffer irreparable injury if an injunction were not granted; (2) whether Plaintiff has a substantial likelihood of success on the merits; (3) whether an injunction would substantially injure other interested parties; and (4) whether the grant of an injunction would further the public interest. Al-Fayed v. CIA, 254 F.3d 300, 303 (D.C. Cir. 2001). "These factors interrelate on a sliding scale and must be balanced against each other." Serono Labs, Inc. v. Shalala, 158 F.3d 1313, 1318 (D.C. Cir. 1998). "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995). As set forth below, all four of these factors are met.

### A.    Irreparable Harm

Defendant Carlin's unconstitutional conduct is presently having a chilling effect on Plaintiff and it would deter a person of ordinary firmness from engaging in federally secured

freedoms, namely, file a federal civil rights case.  <u>Any</u> injury to First Amendment rights constitutes irreparable loss.  <u>Elrod v Burns,</u> 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed. 2d 547 (1976).  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  <u>Elrod,</u> 427 U.S. at 373.  Because this is a First Amendment case, and it involves Defendant Carlin's suppression of Plaintiff's speech and access to the courts, the "irreparable injury" element is easily proven by virtue of the Supreme Court's pronouncements in <u>Elrod</u>[5].

      B.      <u>Likelihood of Success on the Merits</u>

The likelihood of Plaintiff's success is strong because holding Plaintiff's application in abeyance on account of Plaintiff's participation in a civil rights suit is an affront to protected First Amendment rights, <u>Perry, supra, Konigsberg, supra,</u> and <u>Baird v. State Bar of Arizona,</u> 401 U.S. 1, 8; 91 S. Ct. 702; 27 L. Ed. 2d 639 (1971).  Defendant Carlin's conduct has been completely arbitrary, it would chill a person of ordinary firmness from desiring to engage in First Amendment activity (such as litigate or criticize government officials, etc.), and it was in bad faith (i.e., to deter the exercise of First Amendment rights).  The rights to free speech and access to the courts have always been considered sacred and provided special consideration within our Constitution, laws and traditions.  Accordingly, based upon the arguments advanced in Argument I of this brief, <u>supra,</u> Plaintiff is likely to prevail on his First Amendment claims in this lawsuit.

Plaintiff is also likely to prevail on his Due Process claims.  "[O]nce it is determined that

---

[5] Recoverable monetary loss may constitute irreparable harm where the loss threatens the very existence of the movant's business. <u>See</u> <u>Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.</u>, 559 F.2d 841, 843 n.2 (D.C. Cir. 1977).  Here, by analogy, Plaintiff is being *completely* deprived of his right to earn a living in his chosen profession.

the due process clause applies, 'the question remains what process is due,'" <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (quoting <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). The most basic requirement of due process is "the opportunity to be heard . . . at a meaningful time and in a meaningful manner." <u>Goldberg v. Kelly</u>, 397 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970) (citations and internal quotation marks omitted).  The Supreme Court has described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest", <u>Loudermill</u>, 470 U.S. at 542 (emphasis added); <u>accord</u> <u>UDC Chairs Chapter, Am. Ass'n of Univ. Professors v. Board of Trustees</u>, 56 F.3d 1469, 1472 (D.C. Cir. 1995).  This ensures that before the deprivation occurs, the person facing the threatened loss is given an "opportunity to present his side of the story." <u>Loudermill</u>, 470 U.S. at 542; <u>see also</u> <u>Jifry v. FAA</u>, 370 F.3d 1174, 1183 (D.C. Cir. 2004) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner").

While "[t]he formality and procedural requisites for the hearing can vary, depending on the nature of the subsequent proceedings," <u>Loudermill</u>, 470 U.S. at 545, and "something less than a full evidentiary hearing is sufficient prior to adverse administrative action", the fact remains that the essential elements of due process are adequate notice and "[t]he opportunity to present reasons, either in person or in writing, why [the] proposed action should not be taken." <u>Id</u>. at 546; <u>accord</u> <u>Lepre v. DOL, Emple. Compensation Appeals Bd.</u>, 275 F.3d 59, 69 (D.C. Cir. 2001) ("due process generally requires that a property interest in government benefits be preceded by adequate notice and an opportunity to respond, either in person or in writing.")

This conclusion is in no way affected by the fact that Plaintiff is able, years down the road, to have a hearing once his Michigan litigation is concluded. "The right to prior notice and a hearing is essential to the Constitution's demand of due process. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment – to minimize substantively unfair or mistaken deprivations of property" <u>United States v. James Daniel Good Real Prop.</u>, 510 U.S. 43, 53; 114 S. Ct. 492; 126 L. Ed. 2d 490 (1993). For that reason, the Supreme Court will "tolerate some exceptions to the general rule requiring pre-deprivation notice and hearing, but only in extraordinary situations where some valid government interest is at stake that justifies postponing the hearing until after the event." <u>Id</u>. at 53.

To determine whether "extraordinary conditions" are present, a court must consider the government's interest, the private interest affected by the official action, and the risk of erroneous deprivation of that interest through the procedures used, as well as the probable value of additional safeguards provided by a pre-deprivation hearing. <u>James Madison Ltd. by Hecht v. Ludwig</u>, 82 F.3d 1085, 1099 (D.C. Cir. 1996). In Plaintiff's case, all three factors mandated a pre-"hold in abeyance" hearing, especially given the First Amendment nature of this case. First, Defendant Carlin has never articulated what interest he has, if any, in awaiting the conclusion of Plaintiff's Michigan civil rights suit, and no legitimate interest is readily discernable to Plaintiff. Second, the hardship on Plaintiff is great and immediate, given the financial strain on him and the fact that he is unable to earn a living in his chosen profession. Third, there is no "risk" to speak of here, because Defendant Carlin's conduct <u>is</u> an erroneous deprivation, for the reasons set forth in Argument I of this brief. Finally, the District of Columbia has the safeguard of the

established attorney disciplinary system, wherein Plaintiff could be prosecuted at a date in the future, if it were later determined that he committed serious misconduct.    Therefore, all three factors militate against Defendant Carlin.

And even if this Court finds that no pre-deprivation hearing was required, Defendant Carlin would still have been required to provide Plaintiff "a sufficiently prompt post-deprivation hearing" <u>Federal Deposit Ins. Corp. v. Mallen</u>, 486 U.S. 230, 241; 108 S. Ct. 1780; 100 L. Ed. 2d 265 (1988).  Although the Supreme Court has not set an outside limit for the period that would qualify as "prompt", it was made clear that a 90-day period between deprivation and hearing is right at the outer periphery of "prompt".  <u>Id.</u> at 243 (90 days between suspension and hearing "is not so long that it will always violate due process").  Here, of course, Defendant Carlin suspended Plaintiff's licensing process without any pre-deprivation hearing, without ensuring that Plaintiff was actually informed of the deprivation (Plaintiff had to write to Defendant Carlin to inquire into the delay), and without promptly convening a post-deprivation hearing within a period that did not "violate due process."  Plaintiff's application for a license to practice law in the District of Columbia has now been pending for nearly 11 months.

<u>C.     Whether Granting The Injunction Will Cause Substantial Harm To Others</u>

It is expected that a federal court will enforce federal law upon state actors who have injured constitutional rights.  The Supreme Court has made it clear:

> The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights -- to protect the people from unconstitutional action under color of state law, whether that action be executive, legislative, or judicial.

<u>Patsy v. Board of Regents</u>, 457 U.S. 496, 503; 73 L. Ed. 2d 172; 102 S. Ct. 2557 (1982).

In this respect, no harm will come to the public if injunctive relief is granted in this lawsuit because the public has an interest in being protected from state actors who fail to abide

by the U.S. Constitution. Indeed, administrative punishment inflicted upon an applicant who files a civil rights suit against another state's licensing officials constitutes a stunning display of retaliation. There is no conceivable harm that would result if this Court grants the relief requested herein.

      D.    The Impact On The Public Interest

The public interest is served by preventing the violation of constitutional rights. Therefore, if this Court determines that Defendant Carlin's practices violate the Constitution, the public would be well-served if this Court granted preliminary injunctive relief.

## CONCLUSION AND RELIEF SOUGHT

WHEREFORE, Plaintiff prays for a preliminary injunction that prohibits Defendant Carlin from continuing to hold in abeyance Plaintiff's application process. Additionally, Plaintiff requests an Order from this Court requiring Defendant Carlin to provide Plaintiff a hearing within 30 days.

Dated: March 26, 2007                    Respectfully submitted:

                                         Frank J. Lawrence, Jr.
                                         Plaintiff, Pro Se
                                         941 Westview Road
                                         Bloomfield Hills, MI  48304
                                         (248) 722-2560

**VERIFICATION OF MOTION AND BRIEF**
**PURSUANT TO 28 U.S.C. §1746**

In addition to my Affidavit, which has been attached hereto as Exhibit 2, I also designate my Motion for Preliminary Injunction and supporting Brief, as my attestation.  I verify under penalty of perjury that the foregoing is true and correct.

Executed on:  March 26, 2007                                        Respectfully submitted:

Frank J. Lawrence, Jr.
Plaintiff, <u>Pro</u> <u>Se</u>
941 Westview Road
Bloomfield Hills, MI  48304
(248) 722-2560

18

**INDEX OF EXHIBITS**

Exhibit 1            Letter dated March 9, 2007 from Defendant Mark S. Carlin

Exhibit 2            Affidavit of Plaintiff

Exhibit 3            Notice to the Public, dated October 6, 2006

Exhibit 4            Proposed Preliminary Injunction

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY pursuant to LCvR 65.1(c) that on March 26, 2007, a true and correct copy of the foregoing Motion for Preliminary Injunction and Brief in Support, with supporting Exhibits, was:

1.  Electronically sent to opposing counsel, Andrew J. Saindon, at his CM/ECF designated e-mail address: andy.saindon@dc.gov; and

2.  Mailed to opposing counsel, Andrew J. Saindon, via the United States Postal Service, by First Class mail, postage prepaid.

Additionally, a copy of these submissions will also be sent to opposing counsel via the Court's ECF electronic notice filing system.

Dated: March 26, 2007                                 Respectfully submitted:

                                                      _____
                                                      Frank J. Lawrence, Jr.
                                                      Plaintiff, Pro Se
                                                      941 Westview Road
                                                      Bloomfield Hills, MI  48304
                                                      (248) 722-2560

# Exhibit 1



**District of Columbia Court of Appeals**
Committee on Admissions
500 Indiana Avenue, N.W. — Room 4200
Washington, D. C. 20001
202 / 879-2710

March 9, 2007

Frank J. Lawrence, Jr.
941 Westview Road
Bloomfield Hills, MI 48304

        RE:  E35882

Dear Mr. Lawrence:

        The Committee appreciates the updated information you
recently provided concerning the status of the Florida
application.  The Committee will continue to hold your
application in abeyance until the conclusion of the Michigan
litigation.  The Committee will consider the issue of financial
responsibility, as well as your response to our January 24, 2007
letter, at such time as we consider the application in its
entirety.

                                    Sincerely,

                                    Mark S. Carlin, Esq.
                                    Chairman

# Exhibit

# 2

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

FRANK J. LAWRENCE, JR.

      Plaintiff,                             Civil No.07-288 RCL

v.

MARK S. CARLIN, ET. AL.,

      Defendants.

_____ /

## **AFFIDAVIT OF PLAINTIFF**

County of Oakland     )
                      )
State of Michigan      )

1.      I am the Plaintiff in this lawsuit.

2.      I incorporate into this Affidavit the facts articulated in my Amended Complaint. Those facts are true to the best of my information, knowledge and belief.

3.      Defendant Carlin's conduct has caused me to be torn between litigating constitutional issues in my Michigan civil rights case, on the one hand, or dismissing those claims in exchange for a decision on my application in the District of Columbia, on the other hand.

4.      This has placed me in a predicament and it is chilling my desire to litigate my constitutional claims in the Michigan litigation.  Defendant Carlin is unfairly pressuring me to drop the Michigan lawsuit, although I do not want to do so. However, I also have an immediate need to become licensed in the District of

Columbia so that I can begin earning a living in my chosen profession.  The

absence of a license is causing me and my family financial hardship.

### VERIFICATION OF AFFIDAVIT
### PURSUANT TO 28 U.S.C. §1746

I verify under penalty of perjury that the foregoing is true and correct.

Executed on:  March 26, 2007                    Respectfully submitted:

                                                Frank J. Lawrence, Jr.
                                                Plaintiff, <u>Pro</u> <u>Se</u>
                                                941 Westview Road
                                                Bloomfield Hills, MI  48304
                                                (248) 722-2560

24

# Exhibit

# 3



## NOTICE OF THE JULY 2006 BAR EXAMINATION RESULTS

Notice is hereby given that the list published herewith contains the names of 173 successful applicants of the District of Columbia Bar Examination administered on July 25th and 26th, 2006, to 352 applicants. This represents a 76.3 percent pass rate among first-time takers or an overall pass rate of 49.1 percent.

The members of the Committee on Admissions request that any information tending to affect the eligibility of any of these applicants on moral or ethical grounds be furnished to the Committee on Admissions on or before Friday, November 3, 2006.

It is expected that these applicants will be administered the oath of admission at a formal ceremony before a panel of Judges of the District of Columbia Court of Appeals on Monday, November 6, 2006, in the Court of Appeals Courtroom on the sixth level of the District of Columbia Courthouse at 500 Indiana Avenue NW.

Mark S. Carlin, Chairman
October 6, 2006

Adams, Tashiana R.
Aitken, Natalie Diana Elvie
Aleo, Michael E.
Auerbach, Donald Carl
Batipps, Mark Jeffrey
Bocanegra, Lauren Isela
Bromeland, Matthew John
Bronk, Jennifer-Joy
Brown, Lisa Marie
Brown, Robert D.
Brown, Turkessa Lynn
Burgess, Mary J.
Calvo, Paul Anthony
Carpenter, Krista Lynn
Catlett, Cynthia Nesanovis
Chan, Vichet J.
Chang, Karl Shih
Choe, Jay Joon
Chu, Daniel Young
Cohen, Andrew Laurence
Cohen, Jeremy T.
Collins, Chris William
Collins, Michael Garrett
Conlon, Phillip Gregory
Cook, James Kent
Corkran, Kelsi Brown
Cotca, Ramona Raula
Crowell, Lee M.
Daugirdas, Kristina B.
Davis, Mark Christopher
Davis, Kelly Jo
De la gueronniere, Gabrielle
Delgadillo, Gabriela Margarita
Diggs, Damien Marcus
Dillon, George Tsakoff
Donovan, Brian Michael
Dunlap, Andrew Lawson
Dunlap, Robyn Elaine
Dunlop, Kimberlee M.
Duran, Cecilia Maria
Ellis, Carrie Elizabeth
Escudero, Maria Luisa
Fahrenholz, Kimberly Kay
Farmer, Stacey J.
Feierabend, Allison Victoria
Feinberg, Robert Saul
Fisher, Danielle Kathleen
Fisher, Christy Ann
Fisler, Whitney CaLeen
Fletcher, Amy Frances

Gelston, Jennifer Barley
Goldin, Alicia Fagen
Gowel, Katherine Scott
Gowel, John Joseph
Green, Stuart Cotter
Grewal, Amandeep
Gripp, David Arden
Halbert, Jessica Lee McHugh
Halbert, Jason Herman
Hansen, Sandra Luz
Hayes, Mark L.
Hayes, Sean Andrew
Himowitz, Joseph Isaac
Holdheim, Sylvia Margaret
Hopkins, Gabrielle T.
Hoverter, Terence Francis
Howald, Blake Stephen
Hranek, Melissa Susan
Imam, Ali Mohammed
Jacobs, Rebecca Elizabeth
Jenkins, Paul Daniel
Jensen, Lars M.
Jimenez, Julio Manuel
Jones, Adrienne Antoinette
Judkins, Quo Mieko S.
Kagle, Killian Bach
Kang, Min Gu
Katz, Paula Rebecca
Kilday, Lisa Anne
Kramer, Kai Robert
Krasovsky, Gregory
Lane, Takeshia A.
Lara, Juan
Lawrence, Frank Joseph
Leavitt, Michael Smith
Lee, Jason Tremain
Lee, Scott Wai-Hong
Lefeve, Donald Arthur
Legaspi, M. Bryan P.
Li wai suen, Rachel Sharon
Lieberman, Ross Jeffrey
Maltz, Gideon Daniel
Marie, Caroline Suzanne
Masi, Brina Rose
Matamoros-Indorf, Marcela A.
Mathis, Paulette Evelyn
Maurer, Jeannette Hargrove
McDuffie, Shannon Daspit
Mejia, Austin Lee
Mignano, Joseph Flanigan

Monnig, Danielle Erin
Morgan, Sarah Elizabeth
Mukherjee, Sulolit
Murphy, Jerold Bernard
Muto, Joseph Francis
Myers, Kathleen Irene
Najhram, Cindy Gita
Neal, Betye Lucille
Needham, Abigayle Suzanne
Nesbitt, Lawrence Kenneth
Nguyen, Michelle Phu
Nyoh, Peter
Oksanen, Seth David
Onigbinde, Bamidele Gbolagade
Oppenheimer, Michael Scott
Orenstein, Jeffrey
Osborne, Bambi Nicole
Park, Seung Hee
Park, Susan Leah
Payne, Natalie Ann
Peace, Christopher Kilian
Phillip, Ruthven Reuben
Pinckney, Christopher Ryan
Poblete, Jason Ian
Prestwood, Nathanael David
Puterman, Liza Judith
Rainfray, Arnaud Pierre
Randall, Curtis Frankey
Reid, Steven Marshall
Ricciardi, Matthew Joseph
Richardson, Jacqueline Michele
Richardson, Rodney Eugene
Riley, Sean Michael
Rodari, Sophie
Ryan, Kimberly Denise
Saffran, Rachelle Julie
Schaeffer, Jennifer Renee
Schindler, Gina
Schuett, Ruediger Ralf
Schwartzman, Robert Andrew
Seibert, John Hunter
Shiffrin, Joshua B.
Shulman, Arthur
Smilowitz, Matthew Craig
Spangenberg, Maria Rachel
Spearman, Nancy
Spitzer, Max Anthony
Sprague, Jeffrey Taylor
Stimson, Daniel Thomas
Stoddard, Philip James

Sun, Howard Ching-Hao
Sun, Qixiang
Takis, Benjamin
Tapia, Barrie Lynn
Taylor, Nicole Renee
Teel, Elliott Rollins
Thomas, Dana Emily
Tillery, Jani Sanura
Tilly, Elena
Trincal, Delphine Ann-Gaetane
Valentine, Jennifer Ann
Vanderpool, Amee Elizabeth
Volokh, Alexander
Vrakatitsis, Michael Gregory
Wachs, Heidi Laura
Waggoner, Nakia L.
Weatherford, Holly Catherine
Williams, John Matthew Deweese
Winkler, Ulrike
Wright, Coriell Shane
Wright, Wesley Kyle
Yoder, Chung-Hi Hernandez
Yoo, Sunil

# Exhibit

# 4

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

FRANK J. LAWRENCE, JR.

     Plaintiff,                               Civil No.07-288-RCL

v.

MARK S. CARLIN, ET. AL.,

     Defendants.

_____/

**ORDER**

Upon consideration of the Plaintiff's Motion for Preliminary Injunction, the Defendant's Response thereto, and the entire record herein, it is hereby: ORDERED,

1.     that Plaintiff's Motion for Preliminary Injunction be, and hereby is, granted;

2.     that Defendant Carlin, and all persons acting in concert or participation with him, shall be enjoined from holding in abeyance Plaintiff's application for a license to practice law; and

3.     that Defendant Carlin, and all persons acting in concert or participation with him, shall either certify Plaintiff for admission to the District of Columbia Bar within 30 days, or pursuant to District of Columbia Court of Appeals Rule 46(f)(1), provide Plaintiff a hearing within 30 days.

SO ORDERED.

DATE: _____

                                   _____
                                   ROYCE C. LAMBERTH
                                   United States District Judge