UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

FRANK J. LAWRENCE, JR.

      Plaintiff,                                   Civil No.07-288-RCL

v.

MARK S. CARLIN, ET. AL.,

      Defendants.

_____/


**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

**AND**

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION**


**ORAL ARGUMENT REQUESTED**


# RECEIVED

APR **1 6** 2007

**NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT**

## I.    INTRODUCTION

In a stunning breach of candor required of litigants, Defendants have responded to this lawsuit by falsely representing that Plaintiff's application for a Michigan law license is "pending" (Defendants' Brief, p. 31 "...the COA is holding his application in abeyance not because he sued Michigan Bar officials, but because his application for admission is pending in that jurisdiction ..." (emphasis added)).  One would expect that Defendant Carlin, the Chairman of the Committee on Admissions, would take extra measures to ensure that his litigation statements are fair, open and honest.  Yet, as described herein, Defendants' brief is riddled with factual inaccuracies and erroneous legal arguments.

Counsel for Defendants represented to this Court that certain *unpublished* district court opinions cited in his brief are in fact *published*, perhaps in an attempt to overstate their significance (See, Defendants' Brief, p. 28, citing Sibley v. Hergenroeder, 2006 U.S. Dist. LEXIS 83951 (D. M.D. 2006), and p. 3, citing Lawrence v. Berry, 2006 U.S. Dist. LEXIS 90283 (W.D. Mich. 2006)).  It would also appear that counsel employed the use of a canned brief in this matter, as evidenced by his unnecessary section on municipal liability (Defendant's Brief, p. 33), when in fact Plaintiff's complaint is devoid of any such allegations or claims.  Other portions of his brief (i.e., standing and ripeness) appear to be lifted from the arguments advanced by the attorneys representing Plaintiff's adversaries in Michigan.

For the reasons set forth infra, Defendants' motion to dismiss should be denied and Plaintiff's motion for a preliminary injunction should be granted.

## II.    STATEMENT OF FACTS

In the name of brevity and judicial economy, Plaintiff incorporates herein the statement of facts portion of his brief in support of his motion for preliminary injunction, Docket # 9, pp. 2-

6. In addition to those particulars, the following four litigation statements made by Defendants in their motion to dismiss are material to the matter <u>sub judice</u>:

1.  "If and when the COA recommends denial of plaintiff's application, he will be entitled to a hearing." Defendants' Brief, p. 16;

2.  "But due process does not require a hearing at this stage of the proceeding; due process only requires a hearing prior to a final "deprivation." * * * Consequently, if and when the COA determines not to recommend plaintiff for admission, he will be entitled to a hearing." Defendants' Brief, p. 26;

3.  "Here, the decision of which plaintiff complains (the 'holding in abeyance' of his application) has no legal consequence." Defendants' Brief, p. 10; and

4.  "It makes eminent good sense to await final decisions of other jurisdictions on admission before the COA makes its final determination." Defendants' Brief, p. 26.

## II.    STANDARD OF REVIEW

Defendants' brief explains the standard of review for 12(b)(6) motions (Defendants' brief, p. 5-6), but negligently omits any such standard for 12(b)(1) motions, even though their motion states that they are moving pursuant to both Rules (Defendants' motion, p.1).

<u>Standard for FRCP 12(b)(1).</u>    Under Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the Court possesses jurisdiction. <u>Shekoyan v. Sibley Int'l Corp.</u>, 217 F. Supp. 2d 59, 63 (D.D.C. 2002); <u>Pitney Bowes Inc. v. U.S. Postal Serv.</u>, 27 F. Supp. 2d 15, 19 (D.D.C. 1998).    It is well established that, in deciding a motion to dismiss for lack of subject matter jurisdiction, a court is not limited to the allegations set forth in the complaint, "but may also consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case." <u>Alliance for Democracy v. Fed. Election Comm'n</u>, 362 F. Supp. 2d 138, 142 (D.D.C. 2005); <u>Lockamy v. Truesdale</u>, 182 F. Supp. 2d 26, 30-31 (D.D.C. 2001).

Standard for FRCP 12(b)(6). To survive a motion to dismiss, made pursuant to Rule 12(b)(6), a complaint need only provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (citing Fed. R. Civ. P. 8(a)). And, when reviewing such a motion, the court must accept as true all the factual allegations contained in the complaint. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993). A motion to dismiss under Rule 12(b)(6) tests not whether a plaintiff will ultimately prevail on the merits, but only whether the plaintiff has properly stated a claim for which he is entitled to relief. Woodruff v. DiMario, 197 F.R.D. 191, 193 (D.D.C. 2000). Thus, a complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

## III.    ARGUMENT

### A.    Plaintiff's Claims Are Ripe and He Has Standing To Bring This Lawsuit

Defendants' defense of ripeness is illegitimate. In essence, Defendant Carlin claims that until a "final" administrative decision is made *by him* whether or not to recommend Plaintiff's admission to the bar, Plaintiff simply has no recourse. Specifically, Defendants' brief contends:

> Plaintiff complains here, in various iterations, of the "denial" of his rights because of the COA's actions. But the COA has manifestly not reached a final decision on plaintiff's application for admission; the "injuries" of which plaintiff complains will only come about, if at all, if he is denied admission to the D.C. Bar. The COA could recommend plaintiff's admission, at which time his claims would be moot. In the alternative, the COA could decline to recommend plaintiff, at which time he would be entitled to a full evidentiary hearing.
>
> \* \* \*
>
> Either way, plaintiff's claims are dependent on "contingent future events," hence they are unripe.

(Defendants' brief, p. 7) (emphasis added)

Defendants' brief, at times, erroneously suggests that this lawsuit has been brought challenging the standards that govern whether applicants have good moral character or not. If that were the case, Plaintiff's claims could be unripe because he has not yet been denied. See, e.g., Lawrence v. Chabot, 2006 U.S. App. LEXIS 12191 (6th Cir. 2006) (finding equitable challenge to Michigan's good moral character statute unripe because the statute had not been applied to the plaintiff before he filed suit). But that is not what this case is about. This case concerns itself with *administrative delay*, something that has already been applied to Plaintiff, and this is not the same type of unripe equitable challenge brought in the 6th Circuit's unpublished decision in Lawrence[1].

A substantial amount of authority exists that supports Plaintiff's claims that unreasonable administrative delay constitutes "final" agency action for the purposes of invoking judicial

---

[1]    Defendants repeatedly cite, yet misinterpret, the 6th Circuit's Lawrence decision. That case involved an equitable claim that Michigan's good moral character statute would be used, in the future, to deny Plaintiff a license to practice law. A second, and distinct, damages claim was brought against two State Bar licensing investigators. The equitable claims were dismissed at the onset of the case. The damages claims against the investigators then went forward, but were dismissed at the summary judgment stage based upon absolute and qualified immunity. The case was then appealed.

The Sixth Circuit found, inter alia, that the challenge to the statute was not ripe because it was speculative that Plaintiff would be denied a license on account of protected First Amendment activities. The dismissal of the investigators was only affirmed on qualified immunity grounds because Plaintiff's appellate brief failed to properly brief the issue of his clearly established right to a timely hearing (a mistake not repeated here). The investigators were not awarded absolute immunity by the Sixth Circuit Court of Appeals.

Importantly, the Lawrence decision addresses a situation where there was an administrative delay on account of a pending *criminal charge* (an ordinance violation ticket that was prosecuted by the State Bar of Michigan's then president, Thomas Ryan). However, in the matter sub judice, Defendants have placed Plaintiff's application in abeyance to await the outcome of a civil rights suit. Authority exists that permits deprivations when an applicant is facing *criminal or disciplinary* charges, Sibley, supra, but that is clearly not the situation here.

intervention.  In the case of <u>Cobell v. Norton,</u> 240 F.3d 1081, 1095 (D.C. Cir. 2001), the District

of Columbia Circuit explained:

> Where an agency is under an unequivocal statutory duty to act, failure so to act
> constitutes, in effect, an affirmative act that triggers final agency action review.
> Were it otherwise, agencies could effectively prevent judicial review of their
> policy determinations by simply refusing to take final action.

<u>Cobell</u>, 240 F.3d at 1095 (D.C. Cir. 2001) (emphasis added) (quotation marks and citations

omitted) (<u>citing, e.g.</u>, <u>Public Citizen Health Research Group v. Comm'r, FDA</u>, 740 F.2d 21, 32

(D.C. Cir. 1984) ("At some point administrative delay amounts to a refusal to act, with sufficient

finality and ripeness to permit judicial review") (quotation marks omitted)).  Defendant Carlin is

under a statutory duty to act.  District of Columbia Court of Appeals Rule 46(f)(1), states:

> In determining the moral character and general fitness of an applicant for
> admission to the Bar, the Committee may act without requiring the applicant to
> appear before it to be sworn and interrogated. <u>If the Committee is unwilling to
> certify an applicant, it **shall** notify the applicant of the choice of withdrawing the
> application or requesting a hearing.</u>

Rule 46(f)(1), (emphasis added)

It is clear that Defendant Carlin is "unwilling to certify" Plaintiff, even after his

application has now been pending for 11 months.  Nevertheless, pursuant to the reasoning set

forth in <u>Cobell</u> the fact that Defendant Carlin is "simply refusing to take final action" does not

"prevent judicial review".  <u>Cobell</u>, 240 F.3d at 1095.  <u>See also, e.g.</u>, <u>Thompson v. United States

Dep't of Labor</u>, 813 F.2d 48, 52-53 (3d Cir. 1987); <u>Sierra Club v. Peterson</u>, 228 F.3d 559, 568

(5th Cir. 2000) (<u>en banc</u>); <u>Ligon Specialized Hauler, Inc. v. ICC</u>, 587 F.2d 304, 314 (6th Cir.

1978); <u>Home Builders Ass'n of Greater Chicago v. United States Army Corps. of Eng'rs</u>, 335

F.3d 607, 616 (7th Cir. 2003); <u>Houseton v. Nimmo</u>, 670 F.2d 1375, 1377-78 (9th Cir. 1982);

<u>Nat'l Parks Conservation Ass'n v. Norton</u>, 324 F.3d 1229, 1238 (11th Cir. 2003); Peter H.A.

Lehner, Note, Judicial Review of Administrative Inaction, 83 Colum. L. Rev. 627, 652-55 (1983).

Plaintiff is not obligated to seek judicial review within the District of Columbia Court of Appeals before resorting to a §1983 action in a federal district court. Patsy v. Board of Regents of Florida, 457 U.S. 496, 73 L. Ed. 2d 172, 102 S. Ct. 2557 (1982) (a plaintiff asserting a § 1983 action need not exhaust state administrative remedies before bringing an action in federal court). This is true because COA application proceedings are non-coercive in nature. Independence Public Media, Inc. v. Pennsylvania Public Television Network Com., 813 F. Supp. 335, 342-343 (E.D. PA. 1993)[2].

Therefore, this matter is ripe for review and Plaintiff has standing to pursue his claims. This case is not about "contingent future events" or conjecture. The injury has already occurred (11 months of delay) and without federal relief, it will continue to occur. This Court has before it a situation where factual developments have fully evolved and legal issues are now the focus of this litigation. Defendants' argument that "...the decision of which plaintiff complains (the 'holding in abeyance' of his application) has no legal consequence", Defendants' Brief, p. 10, is completely untrue and it is putting an immense financial strain on Plaintiff and his family. In fact, a standing and ripeness argument was considered and rejected by the 10th Circuit in Roe # 2 v. Ogden, 253 F.3d 1225, 1233-34 (10th Cir. 2001). In Roe, students brought constitutional challenges against Colorado licensing rules and mandatory questions concerning students' disabilities. The 10th Circuit expressly held that students who had not even taken the bar examination had standing to assert their federal challenges and that their claims were ripe. Roe, supra, 253 F.3d at 1231. In doing so, the Court noted "Delayed review will cause the students

---

[2] This well-researched and thoughtful district court opinion presents an excellent discussion of exhaustion and abstention principles.

hardship." Id. at 1231.  Plaintiff has passed the District of Columbia Bar Examination and delayed review by this Court will cause or allow irreparable constitutional injury, especially given the First Amendment nature of this case.

Defendants essentially ignore Plaintiff's First Amendment claim that he is experiencing a chilling effect.  It is well-settled that a chilling effect on one's constitutional rights constitutes a present injury in fact. G & V Lounge v. Michigan Liquor Control Comm'n, 23 F.3d 1071, 1076 (6th Cir. 1994); Levin v. Harleston, 966 F.2d 85, 89-90 (2d Cir. 1992) (holding that a merely implicit threat to fire a professor for his controversial views chilled professor's First Amendment rights sufficiently to confer standing); NAACP v. Button, 371 U.S. 415, 433, 9 L. Ed. 2d 405, 83 S. Ct. 328 (1963) ("The threat of sanctions may deter [the exercise of First Amendment freedoms] almost as potently as the actual application of sanctions.").  In light of the inordinate hardship to Plaintiff and the relaxed ripeness and standing standards for First Amendment challenges, Plaintiff has standing and this case is ripe for judicial review.

B.    The Rooker-Feldman Doctrine Cannot Apply Because Plaintiff Has Never Presented Any Of His Claims To The District Of Columbia Court Of Appeals

Defendants assert that this matter is "identical" to that described in Richardson v. District of Columbia Court of Appeals, 83 F.3d 1513 (D.C. Cir. 1996), Defendants' brief, p. 12. Defendants' argument in this regard is utterly frivolous.  Richardson involved a matter actually decided by the District of Columbia Court of Appeals, 83 F.3d at 1514 ("Richardson's complaint to the district court about the D.C. Court of Appeals's order falls squarely within the Rooker-Feldman doctrine, under which federal district courts lack jurisdiction to review judicial decisions by state and District of Columbia courts.") (emphasis added).  Richardson is not, by any stretch of the imagination, "identical" to the matter sub judice.

The <u>Rooker-Feldman</u> doctrine only applies to state *court* decisions, not administrative rulings. <u>Palkovic v. Johnson</u>, 451 F. Supp. 2d 448 (N.D. NY. 2006) ("the <u>Rooker-Feldman</u> doctrine applies only to judicial review of state-court judgments, and never to determinations rendered by state administrative agencies"). Here, there has been no decision by any *court*, only a ministerial decision by Defendant Carlin and Defendants "Three Unknown Investigators", which was caused by the unconstitutional legal advice of Defendant Kent. In fact, the principle that the <u>Rooker-Feldman</u> doctrine exclusively applies to *court* decisions was recently reaffirmed by the Supreme Court of the United States in <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284; 125 S. Ct. 1517; 161 L. Ed. 2d 454 (2005):

> The Rooker-Feldman doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-**court** losers complaining of injuries caused by state-**court judgments** rendered before the district court proceedings commenced and inviting district court review and rejection of those **judgments**.

<u>Exxon</u>, 544 U.S. at 284 (emphasis added)

As such, there is no basis to conclude that this action is a challenge to a state *court* judgment.

### C.     This Court Should Not Abstain

Application proceedings in the District of Columbia are remedial and/or non-coercive, unlike the criminal proceedings in <u>Younger v. Harris</u>, 401 U.S. 37, 27 L. Ed. 2d 669, 91 S. Ct. 746 (1971), or the disciplinary proceedings in <u>Middlesex County Ethics Comnm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982). Also, the applicant bears the burden of proof during his licensing process.     Therefore, even if there were ongoing state proceedings in this matter (by contrast, here the state proceedings are "in abeyance"), there

would be no basis for abstention in this matter. O'Neill v. City of Philadelphia, 32 F.3d 785, 791 n.13 (3rd Cir. 1994).

Further, it is a false statement for Defendants to allege that their functions are "judicial in nature." First, it is clear members of the COA "are not judges" Dubuc v. Mich. Bd. of Law Examiners, 342 F.3d 610, 620, fn.4 (6th Cir. 2003). Second, and perhaps more applicable to the Younger abstention context, administrative proceedings are "judicial in nature" only when they are coercive. Majors v. Engelbrecht, 149 F.3d 709, 712 (7th Cir. 1998). Therefore, Defendants cannot even meet the first prong of Younger or Middlesex abstention. Id. This is further bolstered by the fact that there are no "on-going" proceedings before the COA. The purpose of this lawsuit is to get the COA proceedings moving. Plaintiff is unaware of any decision in this country – ever – where abstention was applied in a similar circumstance.

Additionally, Younger abstention cannot apply if there is no adequate opportunity to raise one's federal claims in a state forum. Middlesex, 457 U.S. at 429. This is where Defendant Carlin's claims become overtly disingenuous. Plaintiff was recently made aware of an applicant for licensure in the District of Columbia who filed a petition for review in the Court of Appeals alleging unconstitutional delay. In re Philip Stoddard, No. 07-BG-148. Defendant Carlin responded to that petition by alleging that the D.C. Court of Appeals was jurisdictionally barred from hearing the petition because administrative delay did not constitute an "extraordinary circumstance", and therefore the petition was unauthorized by D.C. Rule 46(g)(3). Specifically, Defendant Carlin stated, in his own words:

> Stoddard's impatience with the Committee's regular procedures does not constitute the "extraordinary circumstances" required by the rules for court review of the Committee's processing of his bar application in the regular court of its operations. See, D.C.App.R. 46(g)(3).

Exhibit 1, Carlin's March 26, 2007, response brief in In re Philip Stoddard, No. 07-BG-148

Therefore, the interests of justice should preclude Defendant Carlin from arguing out both sides of his mouth. He is already committed to (i.e., *estopped* by) his litigation position taken in Stoddard, namely, that an applicant's claim of unreasonable delay is not reviewable by the D.C. Court of Appeals because it is not an "extraordinary circumstance". This Court should not permit Defendant Carlin to play these types of games. There is no available D.C. Court of Appeals remedy available in these circumstances, by Defendant Carlin's own admission. See, Exhibit 1.

Hypothetically, if Defendant Carlin were to take an opposite approach than he did in Stoddard, and argue in this proceeding that Plaintiff is able to bring his claims in the D.C. Court of Appeals, thereby meeting the "extraordinary circumstances" threshold of D.C.App.R. 46(g)(3), then such circumstances would amount to an exception to the Younger abstention doctrine. When "extraordinary circumstances" are present, Younger is inapplicable. JMM Corp. v. District of Columbia, 378 F.3d 1117, 1120, 1122 (D.C. Cir. 2004). This is particularly applicable here, since Defendants are unconstitutionally pressuring Plaintiff to drop his federal civil rights suit against the Michigan officials. Bad faith and harassing state proceedings encompass those proceedings that are initiated for or discourage the exercise of constitutional rights. Lewellen v. Raff, 843 F.2d 1103, 1109-1110 (8th Cir. 1988), cert. denied, 489 U.S. 1033 (1989).

### D.    Individuals Who Perform *Investigative* Functions, Regardless Of Who They Are, Do Not Enjoy Absolute Immunity From Suit In A §1983 Action

Absolute immunity from civil liability is appropriate only in exceptional circumstances. Butz v. Economou, 438 U.S. 478, 507, 57 L. Ed. 2d 895, 98 S. Ct. 2894 (1978). The Supreme Court has held that courts should be "quite sparing" in endorsing absolute immunity, refuse to

expand it beyond what is justified, and require government officials to bear the burden of establishing that such immunity is appropriate on a case-by-case basis, Id. The "presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." Burns v. Reed, 500 U.S. 478, 486-87, 114 L. Ed. 2d 547, 111 S. Ct. 1934 (1991) (emphasis added).

The Defendants' investigation of applicants who desire to become "officers of the court" is no more of an adjudicative function than that employed by Judge White in Forrester v. White, 484 U.S. 219; 108 S. Ct. 538; 98 L. Ed. 2d 555 (1988), wherein the Judge terminated the employment a court officer. The Supreme Court of the United States held that Judge White acted in an administrative capacity when he demoted and dismissed his probation officer, and thus Judge White was not absolutely immune from a damages suit under § 1983. The Supreme Court further found that the threat of vexatious lawsuits by disgruntled ex-employees did not serve to distinguish judges from other public officials who hire and fire subordinates. Id. at 229-230. In Plaintiff's lawsuit, the Defendant "Three Unknown Investigators" are similarly not adjudicative decision-makers. These individuals "perform[] the investigative functions normally performed by a detective or police officer" such as "searching for clues and corroboration that might give [them] probable cause" to recommend proceedings before the Court of Appeals. Buckley v. Fitzsimmons, 509 U.S. 259, 273, 276-78, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993). Common law did not provide absolute immunity for investigators. The Defendants do not engage in functions that are "functionally comparable to that of a judge." Butz v. Economou, 438 U.S. 478, 513, 57 L. Ed. 2d 895, 98 S. Ct. 2894 (1978). (internal quotation marks and citations omitted). Therefore, absolute immunity has no place in this litigation. Plaintiff's application process has never reached any *adjudicative* stage.

It is important for this Court to distinguish between the *investigative* and *adjudicative* functions for the purposes of the immunity issue. At this stage of Plaintiff's application process, there have been no *adjudicative* decisions rendered. This distinction was addressed by the United States District Court for the District of Columbia in <u>Powell v. Nigro</u>, 601 F. Supp. 144, 148-149 (D. DC. 1985), a case involving a Bar applicant's suit against the COA:

> Plaintiff's allegation that the examination numbers assigned to applicants were used to predetermine test scores involves no exercise of discretion **by the Committee members**, and as such, the defendants are only entitled to qualified immunity. The assigning of numbers is purely a ministerial task, not involving any function similar to that of a judge. Thus, defendants are at most entitled to qualified immunity if their acts were performed in good faith. It would be premature for the Court to rule at this time on whether the defendants are protected by qualified immunity as the scope of that immunity will necessarily be related to facts as yet not established either by affidavits, admissions, or a trial record.

<u>Powell,</u> 601 F.Supp. 148-149 (emphasis added)

Here, the "Committee members" themselves are not defendants for monetary damages because Plaintiff's application has never reached the adjudicative stage and there is no presently known evidence that the Committee members themselves were involved in Plaintiff's application process. Plaintiff is suing Committee "investigators" and the Committee's attorney for damages in connection with their participation in the ministerial holding-up of his application. The function at issue here clearly does not involve *substantial* discretion, "a key feature of the tasks sheltered by judicial [i.e., absolute] immunity." <u>Wagshal v. Foster,</u> 307 U.S. App. D.C. 382, 28 F.3d 1249, 1252 (D.C. Cir. 1994). Nor does the function involve, to the slightest degree, the resolution of disputes between parties, as required in <u>Antoine v. Byers & Anderson, Inc.,</u> 508 U.S. 429, 435-36, 124 L. Ed. 2d 391, 113 S. Ct. 2167 (1993). In contrast, Plaintiff is not suing Defendant Carlin for monetary damages, only for equitable relief because "the directors of a state agency, no matter how far removed from the actions of agency employees, are proper

parties to a suit for an injunction under § 1983". <u>Futernick v. Sumpter Twp.</u>, 78 F.3d 1051, 1055, fn.5 (6th Cir. 1996).

Interestingly, Defendant Carlin's own brief argues that holding applicants, such as Plaintiff, in abeyance "is a regular COA practice" (Defendants' brief, p. 28). This, however, supports the argument that the decision to place Plaintiff's decision in abeyance was ministerial, not adjudicative. There are a host of other cases that Defendants "Three Unknown Investigators" and Defendant Kent cite, such as <u>Sparks v. Character & Fitness Comm. of Ky.</u>, 859 F.2d 428 (6th Cir. 1988) for the proposition that they are entitled to absolute immunity. However, these same cases (or their progeny) were cited to the United States Court of Appeals for the Sixth Circuit in <u>Dean v. Byerley</u>, 354 F.3d 540 (6th Cir. 2004), a case where a Bar applicant sued the Regulation Counsel of the State Bar of Michigan for chilling the applicant's First Amendment rights. In denying the Michigan Regulation Counsel absolute immunity, the Sixth Circuit accurately stated:

> The cases cited by Byerley in his appellate brief are relevant to the scope of Byerley's immunity in this action, but they do not support his assertion that he is entitled to the defense of absolute immunity. * * * First, the court must consider whether the function is normally performed by an adjudicator. * * * Second, the court must consider whether the plaintiff dealt with the defendant in the defendant's adjudicative capacity. * * * <u>Because Byerley has failed to demonstrate in any way that he was engaged in an adjudicative function when he allegedly retaliated against Dean, Byerley is not entitled to summary judgment based upon the defense of absolute immunity.</u>

Dean, 354 F.3d at 555-557 (emphasis added)

<u>See also,</u> <u>DiBlasio v. Novello</u>, 344 F.3d 292 (2d Cir. 2003) (holding that New York medical officials were not entitled to absolute immunity from radiologist's due process claims arising from summary suspension of medical license). Therefore, this Court should deny Defendants absolute immunity in this matter.

Qualified Immunity. The defense of qualified immunity shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). Where "an official could be expected to know that certain conduct would violate statutory or constitutional rights," that official may be vulnerable to suit by one who suffers injury resulting therefrom. Id. at 819.

Although a federal civil rights plaintiff need not anticipate a qualified immunity defense to state a claim, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 165-68, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993), Plaintiff's complaint did so, and Plaintiff articulated why a potential defense of qualified immunity would fail. (Plaintiff's amended complaint, ¶¶ 5, 29-30, 44). Defendants' argument that Plaintiff failed to plead enough facts to support his claims is meritless. Plaintiff's factual allegations, accepted as true, could result in a finding that the Defendants' actions were not objectively reasonable and that they violated the plaintiff's clearly established right to file a federal civil rights lawsuit against another state's attorney licensing officials. There is ample authority that would have put a reasonable state official on notice that he cannot retaliate against a person because the person filed a civil rights lawsuit. Nei v. Dooley, 372 F.3d 1003, 1007 (8th Cir. 2004); Samuels v. Mockry, 142 F.3d 134, 137 (2nd Cir. 1998) ("In sum, there remains a genuine issue of fact which may be material to Samuels' § 1983 claim, namely whether his confinement in the Clinton LPP was a retaliatory response to his January 1989 lawsuit."); Higgason v. Farley, 83 F.3d 807, 810 (7th Cir. 1995) ("If a prisoner is transferred for exercising his own right of access to the courts, or for assisting others in exercising their right of access to the courts, he has a claim under § 1983."); Smith v. Maschner, 899 F.2d 940, 949 (10th Cir. 1990) ("The circumstantial evidence in this case leads us

to conclude that a jury could reasonably find that defendants retaliated against Smith for the exercise of his right of access to the courts."). See also, Perry v. Sindermann, 408 U.S. 593, 597; 33 L. Ed. 2d 570; 92 S. Ct. 2694 (1972). Therefore, Defendants' defense of qualified immunity must fail.

Finally, Plaintiff has alleged sufficient facts to state a claim against Defendant Kent. During a telephone conversation with the COA's Executive Director, Jacqueline Smith, Plaintiff learned of Defendant Kent's role in the holding-up of his application. Defendant Kent is alleged to have provided unconstitutional legal advice to the Defendants labeled as "Three Unknown Investigators", which resulted in constitutional injury to Plaintiff. If a prosecutor is not shielded by absolute immunity for the same conduct, Burns v. Reed, 500 U.S. 478, 496; 111 S. Ct. 1934; 114 L. Ed. 2d 547 (1991), it is impossible to discern Defendant Kent's argument that he is entitled to a higher degree of protection. Further, if this Court determines that Plaintiff's complaint fails to state a claim against any of the parties, Plaintiff respectfully requests leave of the Court to file a second amended complaint.

### E.    Plaintiff's Complaint Sets Forth Sufficient Facts To Establish A Substantive Due Process Claim

#### 1.    Introduction

Defendants' motion to dismiss confuses the standards between a FRCP 12(b)(6) motion to dismiss and a FRCP 56 motion for summary judgment. This is evidenced by the fact that the cases cited by Defendants involve summary judgment issues, not pre-answers motion to dismiss. Therefore, many of the arguments set forth by Defendants are premature at this time.

Pursuant to the Federal Rules of Civil Procedure, a plaintiff's complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a). The Rules further counsel this court to construe all pleadings, "as to do substantial

justice." FRCP 8(f). Defendants' primary complaint is not that Plaintiff's complaint is facially defective, but that "Plaintiff was not deprived of substantive due process" (Defendants' brief, p. 22). Again, such an argument should be reserved for the summary judgment stage of this litigation.

### 2.    Plaintiff Has A Protected Liberty Interest

Defendants' argument that Plaintiff has no protected liberty interest is belied by the Supreme Court's pronouncements in <u>Willner v. Committee on Character and Fitness</u>, 373 U.S. 96, 102-03, 10 L. Ed. 2d 224, 83 S. Ct. 1175 (1963) and <u>Schware v. Board of Bar Examiners</u>, 353 U.S. 232, 238-39, 1 L. Ed. 2d 796, 77 S. Ct. 752 (1957). If Mr. Willner (an unlicensed applicant), for example, did not have a protected liberty interest, the Supreme Court of the United States could have never adjudicated that case on due process grounds. Defendants' arguments are further contradicted by the well-established body of case law holding that applicants for governmental benefits have protected liberty/property interests in those benefits. <u>Mallette v. Arlington County Employees' Retirement System II</u>, 91 F.3d 630, 639-40 (4th Cir. 1996); <u>National Ass'n of Radiation Survivors v. Derwinski</u>, 994 F.2d 583, 588 (9th Cir. 1992); <u>Haitian Refugee Ctr., Inc. v. Nelson</u>, 872 F.2d 1555, 1562 (11th Cir. 1989); <u>Daniels v. Woodbury County</u>, 742 F.2d 1128, 1132 (8th Cir. 1984); <u>Holbrook v. Pitt</u>, 643 F.2d 1261, 1278 n.35 (7th Cir. 1981); <u>Kelly v. Railroad Retirement Bd.</u>, 625 F.2d 486, 490 (3d Cir. 1980); <u>Griffeth v. Detrich</u>, 603 F.2d 118, 120-22 (9th Cir. 1979); <u>Ward v. Downtown Dev. Auth.</u>, 786 F.2d 1526, 1531 (11th Cir. 1986); <u>Raper v. Lucey</u>, 488 F.2d 748, 752 (1st Cir. 1973) (finding "no legitimate basis" for distinguishing between applying for a liberty "benefit" and having that benefit withdrawn).

17

Defendant Carlin's argument that "Plaintiff can point to no 'entitlement' of which he has been denied without due process" is equally off the mark because of Rule 46(f)(1)'s requirement that Plaintiff is guaranteed a hearing "if the Committee is unwilling to certify" Plaintiff. Indeed, Plaintiff is *entitled* to a hearing, something that Defendant Carlin has repeatedly refused to provide after repeated requests by Plaintiff for one. Defendant Carlin also argues that Plaintiff has no legitimate expectation of a license (Defendant's brief, p. 24). Yet, he cannot dispute that Plaintiff has a legitimate claim of entitlement, especially since Defendant Carlin, in his own words, was responsible for fostering it:

> **It is expected that** [Frank Lawrence] will be administered the oath of admission at a formal ceremony before a panel of Judges of the District of Columbia Court of Appeals on Monday, November 6, 2006, in the Court of Appeals Courtroom on the sixth level of the District of Columbia Courthouse at 500 Indiana Avenue NW.
>
> Mark S. Carlin, Chairman
> October 6, 2006

Exhibit 2, Defendant Carlin's October 6, 2007 Notice (emphasis added)

Aside from the tremendous financial strain imposed upon Plaintiff, the public notice mentioned above also stigmatizes and prejudices him. By virtue of Defendant Carlin's announcement, Exhibit 2, the public is now on notice that Plaintiff has a character problem. Any member of the community can verify this by using the DC Bar's web site to see that Plaintiff has not been licensed, as Defendant Carlin publicly "expected" on October 6, 2006. Case in point, since Defendant Carlin "expected" that Plaintiff would receive his license, it is absurd for Defendant Carlin to argue in his brief that Plaintiff had no such expectation.

3.    Substantive Due Process Claim

Plaintiff has adequately alleged a substantive due process claim because Plaintiff has alleged that the holding-up of his application burdens a fundamental right and such action cannot

18

withstand strict scrutiny. Here, there are two fundamental rights at issue: First, Defendants' conduct has burdened Plaintiff's First Amendment right to petition the courts for redress of grievances. Second, Defendants' conduct has burdened Plaintiff's Fifth Amendment right to due process of law, given his protected liberty interest, discussed above. The District of Columbia Circuit has recognized that an act of "grave unfairness," such as "a deliberate flouting of the law that trammels significant personal or property rights," may violate the right to "substantive" due process under the Fifth Amendment. Tri County Indus., Inc. v. District of Columbia, 104 F.3d 455, 459 (D.C. Cir. 1997) (quoting Silverman v. Barry, 269 U.S. App. D.C. 327, 845 F.2d 1072, 1080 (D.C. Cir. 1988)). Indeed, this is one of those cases.

F.    Plaintiff's Complaint Sets Forth Sufficient Facts To Establish A Procedural Due Process Claim

For the reasons set forth above, it is not open to dispute that Plaintiff has a protected liberty interest. "[O]nce it is determined that the due process clause applies, the question remains what process is due," Cleveland Board of Education v. Loudermill, 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). The most basic requirement of due process is "the opportunity to be heard . . . at a meaningful time and in a meaningful manner." Goldberg v. Kelly, 397 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970) (citations and internal quotation marks omitted). In the matter sub judice, Plaintiff has set forth sufficient facts to state a claim for denial of his right to procedural due process[3].

Plaintiff's brief in support of his motion for a preliminary injunction provides the facts, arguments and authority that support his procedural due process claims, and in the name of

---

[3] Interestingly, this Court has another civil rights case pending before it wherein the plaintiffs are alleging unconstitutional deprivations of their liberty because of the District of Columbia's administrative processing delays. Barnes v. Dist. of Columbia, 1:06-cv-00315-RCL.

brevity, Plaintiff elects not to repeat them here. Plaintiff will, therefore, confine this argument to three erroneous arguments of Defendants.

First, Defendants claim that Plaintiff "has had ample opportunities to present his case; due process requires no more" (Defendants' brief, p. 27). If lying to the Court about Plaintiff having a "pending" application in Michigan were not enough, Defendants again in their brief demonstrates a lack of candor by stating that Plaintiff had "ample opportunities" to present his case. The truth is that Defendants placed Plaintiff's application in abeyance and never told him about it. It was only after Plaintiff inquired into the delay that he was advised that his application was being held in abeyance. Therefore, Plaintiff never had "[t]he opportunity to present reasons, either in person or in writing, why [the] proposed action should not be taken." Loudermill, 470 U.S. at 546. Plaintiff's post-deprivation request for a hearing was also denied.

Second, Defendants misleadingly cite an attorney *disciplinary* case for the proposition that "a final decision from a disciplining court of professional misconduct by an attorney is conclusively established for purposes of District of Columbia Bar reciprocal disciplinary proceedings", and therefore, "it makes eminent good sense to await final decisions of other jurisdictions on admission before the COA makes its final determination." (Defendant's brief, p. 27). This is deceptive because the D.C. Court of Appeals has made it clear that a D.C. Bar applicant's prior admission or denial in one jurisdiction does not control admission or denial in D.C., because the D.C. Court of Appeals makes its own *independent* decision. In re Levi, 853 A.2d 702 (D.C., 2004). *A fortiori*, Plaintiff has no "pending" application in another jurisdiction.

There are cases not mentioned by the Defendants where courts permitted liberty or property deprivations in situations where individuals were presently facing *criminal* charges. However, in those cases, the criminal charges were serious enough to justify the deprivation. For

example, in Gilbert v. Homar, 520 U.S. 924; 117 S. Ct. 1807; 138 L. Ed. 2d 120 (1997), a case involving a police officer charged with a felony that was "very serious in nature," the Supreme Court found that a deprivation of property was not a violation of due process because the delay was relatively short and the state had a significant interest in immediately suspending employees in high profile positions when felony charges were filed against them. See also, FDIC v. Mallen, 486 U.S. 230, 245; 108 S. Ct. 1780; 100 L. Ed. 2d 265 (1988) ("We are therefore persuaded that the congressionally recognized interest in maintaining confidence in our banking institutions, coupled with the finding of probable cause that the officer has committed a felony involving dishonesty, is sufficient ground for a regulatory suspension of up to 90 days without the benefit of a post-suspension ruling"). Here, there are no criminal charges pending against Plaintiff. The only thing pending is a federal civil rights suit. Defendants' stated basis for holding Plaintiff's application in abeyance is illegitimate, to say the least.

Third, Defendants cite a number of (apparently not appealed) district court decisions where judges appeared to be very deferential towards the Bar licensing authorities. Yet a fair review of those decisions reveals that they each contain at least one glaring misapplication of federal law. For example, in Sibley v. Hergenroeder, 2006 U.S. Dist. LEXIS 83951 (D. M.D. 2006), a case involving an attorney presently facing *disciplinary* charges, Judge Chasanow failed to address, let alone mention, the Supreme Court's recent decision in Exxon Moble, where it was held that the Rooker-Feldman doctrine is confined to final state **court judgments**. Exxon, 544 U.S. at 284. The case of Piccone v. Moatz, 136 F. Supp. 2d 525 (E.D. VA. 2001) similarly lends no assistance to Defendants because the district court judge in Piccone likely mischaracterized the liberty interest involved in that matter ("Piccone points to no case law or authority suggesting he has a liberty or property interest in his rapid admission to practice before the PTO."), Id. at

21

530. To be clear, Plaintiff's lawsuit is not based upon a liberty interest "in his rapid admission", but rather upon the rationale that unreasonable administrative delay violates due process, as set forth above. And the district court's decision in Otrompke v. Chairman of the Comm. on Character & Fitness, 2004 U.S. Dist. LEXIS 6367 (N.D. IL. 2004), does not even address due process. Otrompke is an abstention case, incidentally one that completely avoids any discussion of the well established principle that administrative proceedings are "judicial in nature" only when they are coercive. Majors v. Engelbrecht, 149 F.3d 709, 712 (7th Cir. 1998).

The delay in processing Plaintiff's application is depriving him of the ability to earn a living in his chosen profession, at the same time that he has over $100,000 in student loans. As indicated in Goldberg v. Kelly, 397 U.S. 254, 262, 25 L. Ed. 2d 287, 90 S. Ct. 1011 (1970), the timeliness of a required hearing can, under certain circumstances, be the most critical element of due process guarantees. The extraordinary hardship caused by deprivations has also been the subject of other Supreme Court cases. See, e.g., Memphis Light, Gas, & Water Div., 436 U.S. 1, 56 L. Ed. 2d 30, 98 S. Ct. 1554 (1978) (the plaintiffs had suffered shut-offs of their utilities); Fuentes v. Shevin, 407 U.S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972) (the plaintiff's household belongings had been seized); Mitchell v. W. T. Grant, 416 U.S. 600, 40 L. Ed. 2d 406, 94 S. Ct. 1895 (1974) (the plaintiff's furniture had been repossessed because he had fallen behind on the payments); Sniadach v. Family Finance Corp., 395 U.S. 337, 23 L. Ed. 2d 349, 89 S. Ct. 1820 (1969) (the plaintiff's wages were garnished because of his inability to pay certain bills). See also, Kraebel v. New York City Dep't of Housing Preservation, 959 F.2d 395 (2nd Cir. 1992) (landlord brought viable claim against city for its lengthy delays in processing landlord's application for payments). In an eminent domain context, the Supreme Court has suggested that although "mere fluctuations" in property value during an unsuccessful condemnation proceeding

are simply "incidents of ownership," government action that causes "extraordinary delay" in "the process of governmental decisionmaking" may constitute "a taking in the constitutional sense." Agins v. Tiburon, 447 U.S. 255, 263 n.9, 65 L. Ed. 2d 106, 100 S. Ct. 2138 (1980). Here, the unreasonable administrate delay at issue here presents a classic due process case and Plaintiff has set forth sufficient facts to state a claim. This Court should find that Defendants' arguments are meritless.

G.    Plaintiff's Complaint Sets Forth Sufficient Facts To Establish An Equal Protection Claim

Defendants' assert that Plaintiff has failed to state a claim for an equal protection violation "Because there is no fundamental right or suspect class at issue here" and "an equal protection challenge requires plaintiff first to prove that similarly situated individuals were treated differently." (Defendants' brief, p. 32-33). This case does implicate a fundamental right, as repeatedly discussed above. Also, Plaintiff does not need to "prove" anything at this stage of the litigation. His is only required to allege enough facts to state a claim, which Plaintiff has done.

Plaintiff has alleged the two essential elements of his "class of one" equal protection claim: (1) disparate treatment of similarly situated parties (2) and no rational basis. Village of Willowbrook v. Olech, 528 U.S. 562, 564, 145 L. Ed. 2d 1060, 120 S. Ct. 1073 (2000) ("Our cases have recognized successful equal protection claims brought by a class of one, where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."); Morgan v. Fed. Home Loan Mortgage Corp., 328 F.3d 647, 650 (D.C. Cir. 2003). Plaintiff has done all that is necessary to state a claim for relief.

And even if this case were at the summary judgment stage, Plaintiff could still prove his case right now. Plaintiff has evidence that another Bar applicant, Philip Stoddard, who has pending litigation against another jurisdiction's licensing officials, and whose application in D.C. has been pending longer than Plaintiff's, was not subjected to "hold in abeyance" status until this lawsuit was filed. In fact, after Defendant Carlin was served with *this lawsuit*, he then notified Mr. Stoddard, for the first time, that his application would also be held in abeyance. In other words, this lawsuit is what prompted the adverse action against Mr. Stoddard, in Defendant Carlin's transparent attempt to cover-up governmental malfeasance. In any event, Plaintiff stated a cause of action and because his matter is presently at the FRCP 12 stage, Plaintiff's equal protection claims should be permitted to proceed.

Also, there is no rational basis for Defendants' conduct and they failed to offer any in their motion to dismiss. What they did offer, was a lie: "holding District of Columbia Bar applications in abeyance pending the outcome of investigations or disciplinary proceedings in other jurisdictions is well within the authority of the COA, is a regular (and rational) method used for processing applications, and is part of an applicant's ultimate burden to demonstrate character and fitness." (Defendants' brief, p. 32) (emphasis added). Here, there are no "investigations or disciplinary proceedings in other jurisdictions" presently "pending", and therefore, Defendants' explanation is premised upon deceit[4].

## IV.    REPLY TO RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

Defendants base their responsive arguments to Plaintiff's request for a preliminary injunction around the premise that "Plaintiff makes no competent showing of any injury, much

---

[4] If Defendants are correct that "holding District of Columbia Bar applications in abeyance ... is a regular method used for processing applications", then this would lend credibility to the argument that their conduct herein was ministerial, not adjudicative.

less irreparable injury." (Defendants' brief, p. 33). For this Court to adopt Defendants' reasoning, it would have to discount Plaintiff's claim that he is suffering a chilling effect as a result of Defendants' pressure to drop his Michigan federal civil rights suit. Incredibly, Defendants ask this Court to find that Plaintiff's affidavit is self-serving and unreliable, yet this comes from the same individuals who have falsely represented to this Court that "...the COA is holding his application in abeyance not because he sued Michigan Bar officials, but because his application for admission is pending in that jurisdiction ..." (Defendants' Brief, p. 31) (emphasis added). Plaintiff respectfully requests that this Court remember that, ironically, it is the licensing officials here that have the candor problem.

Defendants claim that "imminent violation of constitutional rights - even if proven – does not, by itself, constitute irreparable injury", and in support of that proposition they cite the establishment clause case of Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 301 (D.C. Cir. 2006). But that is not what England says. In fact, England supports Plaintiff's claims since Plaintiff's lawsuit is a free speech access to the courts case. The distinction between establishment clause cases and free speech cases was made clear in England ("Indeed, in almost all of the many subsequent cases in which our sister circuits have invoked the Elrod plurality's statement, the operative First Amendment liberties allegedly violated were variants of expressive liberties, such as the rights to speak, associate, petition, or exercise one's religion."). Id. at 300. England says:

> But the crucial distinction Appellees fail to recognize, and which ultimately undermines their position, is that freedom of expression is not the operative First Amendment right at issue in this case. It is not the freedom to speak, to associate, to petition, to exercise one's religion, or any other liberty that protects an individual's freedom to engage in a particular activity. Rather, the pertinent liberty here is protection against government imposition of a state religion or religious preference.

Id. at 301-302

Therefore, since this litigation is not an establishment clause case, Defendants have continued their troubling practice of citing misleading case law.

Defendants also claim that "Plaintiff here seeks to enjoin the local judiciary from proceeding with a process of substantial local importance, and to require a pre-determined outcome for that process" (Defendants' brief, p. 37) (emphasis added). However, as noted above, this lawsuit has been brought because Defendants are not "proceeding" with Plaintiff's application process and nowhere in this litigation does Plaintiff seek relief from this Court directing the COA to make a favorable character recommendation. Defendants' advance an overly-expansive prediction when they tell this Court "If plaintiff's relief were to be granted, the door would be opened to allow every applicant unhappy with (potential) COA decisions to bypass the mandated process", (Defendants' brief, p. 38). The law allows litigants to bring §1983 claims without exhausting state administrative or appellate remedies, if the litigants are involved in non-coercive state proceedings. Patsy v. Board of Regents of Florida, 457 U.S. 496, 73 L. Ed. 2d 172, 102 S. Ct. 2557 (1982). This is true because "The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights -- to protect the people from unconstitutional action under color of state law, whether that action be executive, legislative, or judicial." Id. at 503 (emphasis added). Defendants' argument in this respect is something that they need to take up with Congress. The fact is that individuals aggrieved by unconstitutional administrative delay are permitted to bring §1983 actions. There is no valid basis for Defendants to be immune from federal district court jurisdiction.

26

Preliminary injunctive relief is warranted and necessary because Defendants are engaging in egregious conduct in the hopes of forcing Plaintiff to drop his federal civil rights suit against the Michigan officials. They have offered no valid reason for their actions, they have lied to this Court about the status of Plaintiff's application process in Michigan, and Defendant Carlin has stubbornly refused to provide Plaintiff a hearing wherein Plaintiff can contest Defendants' actions. This case is a perfect candidate for preliminary injunctive relief.

Finally, Defendants claims that "The public interest favors denying plaintiff's request for a preliminary injunction", (Defendants' brief, p. 39), yet they cite no authority for this proposition. Therefore, this Court should consider Defendants' argument waived. In fact, "the public interest is served by preventing the violation of constitutional rights" Tucker v. City of Fairfield, 398 F.3d 457 (6th Cir. 2005). Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles. See Homans v. Albuquerque, 264 F.3d 1240, 1244 (10th Cir. 2001) ("We believe that the public interest is better served by following binding Supreme Court precedent and protecting the core First Amendment right of political expression."); Iowa Right to Life Comm'e, Inc. v. Williams, 187 F.3d 963, 970 (8th Cir. 1999) (finding a district court did not abuse its discretion in granting a preliminary injunction because "the potential harm to independent expression and certainty in public discussion of issues is great and the public interest favors protecting core First Amendment freedoms"); Suster v. Marshall, 149 F.3d 523, 530 (6th Cir. 1998) (holding candidates for judicial office were entitled to preliminary injunction of expenditure limit given likelihood of success on the merits, irreparable harm and lack of public interest in enforcing a law that curtailed political speech); Elam Constr., Inc. v. Regional Transp. Dist., 129 F.3d 1343, 1347 (10th Cir. 1997) (stating, in context of a request for injunctive relief, that "the public

interest ...favors plaintiffs' assertion of their First Amendment rights"); Cate v. Oldham, 707 F.2d 1176, 1190 (11th Cir. 1983) (holding the "strong public interest in protecting First Amendment values" favored preliminary injunctive relief). Because the public interest is in favor of granting the relief Plaintiff seeks, this Court should vindicate Plaintiff's First and Fourteenth Amendment rights.

<strong>CONCLUSION</strong>

Apparently the Defendants will do anything to get this case dismissed, even submit false litigation statements about the status of Plaintiff's prior Michigan licensing attempt. They would like to have this Court believe that what is happening to Plaintiff is routine and that they have done absolutely nothing to harm him. Everyone involved assuredly knows better. In the words of Justice Oliver Wendell Holmes, "even a dog distinguishes between being stumbled over and being kicked." C & a Carbone v. Town of Clarkstown, 511 U.S. 383, 424, fn. 12; 114 S. Ct. 1677; 128 L. Ed. 2d 399 (1994), citing The Common Law 3 (1881).

**WHEREFORE**, Plaintiff prays that this Court deny Defendants' motion to dismiss. Plaintiff also requests that this Court grant his motion for preliminary injunction.

Dated: April 12, 2007                                          Respectfully submitted:


                                                              _Frank J. Lawrence, Jr._
                                                              Plaintiff, Pro Se
                                                              941 Westview Road
                                                              Bloomfield Hills, MI  48304
                                                              (248) 722-2560

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY pursuant to LCvR 65.1(c) that on April 12, 2007, a true and correct copy of the foregoing document, with supporting Exhibits, was:

1.    Electronically sent to opposing counsel, Andrew J. Saindon, at his CM/ECF designated e-mail address: andy.saindon@dc.gov; and

2.    Mailed to opposing counsel, Andrew J. Saindon, via the United States Postal Service, by First Class mail, postage prepaid.

Additionally, a copy of these submissions will also be sent to opposing counsel via the Court's ECF electronic notice filing system.

Dated:  April 12, 2007

Respectfully submitted:

Frank J. Lawrence, Jr.
Plaintiff, Pro Se
941 Westview Road
Bloomfield Hills, MI  48304
(248) 722-2560

29

## INDEX OF EXHIBITS

Exhibit 1    Defendant Carlin's March 26, 2007, Response in <u>In re Philip Stoddard,</u> No. 07-BG-148

Exhibit 2    Defendant Carlin's October 6, 2007 Notice

# Exhibit
# 1

DISTRICT OF COLUMBIA COURT OF APPEALS



NO. 07-BG-148

IN RE: PHILIP J. STODDARD,
Petitioner.

## RECOMMENDATION OF THE COMMITTEE ON ADMISSIONS

The petitioner, Philip J. Stoddard ("Stoddard"), is an applicant for admission to the District of Columbia Bar upon examination. In October 2006, the Committee on Admissions (the "Committee") notified him that he passed the D.C. bar examination. However, there are multiple, serious character and fitness issues raised in Stoddard's application and in his voluminous file. These, and other circumstances, discussed below, impact the Committee's investigation and the time it needs to determine its position with respect to the application. Nevertheless, Stoddard's petition for review seeks an order requiring the Committee to make such determination "forthwith." *See*, Pet. at 11.[1] For the reasons discussed herein, the Committee recommends that the instant petition be denied.

## DISCUSSION

Stoddard's impatience with the Committee's regular procedures does not constitute the "extraordinary circumstances" required by the rules for court review of the Committee's processing of his bar application in the regular course of its operations. *See*, D.C. App. R. 46 (g)(3).[2]

---

[1] The petition also seeks an award of costs. *See*, Pet. at 11.

[2] D.C. App. R. 46(g), provides, in pertinent part, as follows:

> (3) Except for the review by the court provided in this section (g) [relating to Committee reports after formal hearings], no other review by the court of actions by or proceedings before the Committee shall be had except upon a showing (1) of extraordinary circumstances for instituting such review and (2) that an application for relief has previously been made in the first instance to the Committee and been denied by the Committee, or that an application to the Committee for relief is not practicable. [Emphasis added.]

In October 2006, the Committee declared Stoddard successful on the previous D.C. bar exam. However, there are multiple, serious character and fitness issues raised in Stoddard's application and in his voluminous file. These include, among other things, DUI and other arrests, tax liabilities and other unpaid debts, failures to pay court-ordered child support, and a history of alcoholism and mental disorders.

Stoddard previously had applied for admission to the D.C. Bar in 1999, but he withdrew his application in 2001 following his refusal to appear before the Committee for a formal character and fitness hearing. Since that time, Stoddard has been living in Florida and had applied for admission to the Florida Bar. In September 2006, following an investigation and formal hearing, the Florida Board of Bar Examiners issued a preliminary determination that his Florida bar application be denied on character and fitness grounds.[3] Stoddard thereupon promptly filed a federal lawsuit against the Florida Bar authorities, for declaratory and injunctive relief and for damages. Upon information and belief, that litigation is presently continuing.

The record before the Florida bar authorities, and the related litigation, alone, is voluminous. The Committee, with its limited resources, will be required to devote substantial time and effort to review and analyze these records, together with the other voluminous documents already in its file. However, despite the Committee's request, Stoddard has refused to provide the relevant Florida proceedings documentation in a format other than on a compact disk ("CD").[4] This has stymied the Committee from moving forward on making a determination of a preliminary position as to each of the many issues of character and fitness that it must

---

[3] In its "Notice of Board Action," issued September 21, 2006, the Florida Board determined that Stoddard had not met the character and fitness standards required for admission. It stated, in pertinent part:

> The Board determined that there were significant aggravating factors and will recommend that the disqualification period be for a 5-year period before an application to establish rehabilitation will be accepted.

The Notice also stated that it was not a formal notice of the Board's action, and that the Board's findings and conclusions of law would be issued within 60 days of the filing of the formal hearing transcript. For obvious reasons, the Committee is awaiting Stoddard's proper submission of these critical documents.

[4] The Committee, as an arm of the Court of Appeals, accepts documents in the same format as is required by the court. In this regard, the Clerk of Court has advised that the court accepts filings and documentary evidence only in hard copy form. The Committee has followed suit. This is particularly important since the Committee must submit to the court a paginated written record, in hard copy format, following the Committee's formal hearings.

address.

Additionally, until there is finality to the Florida Bar's decision not to admit Stoddard on character and fitness grounds, the Committee is not in a position to determine to what extent it may rely on findings of fact in the Florida proceedings. Therefore, the Committee reasonably is waiting for Stoddard's current Florida federal litigation to be concluded.

Moreover, as to the investigation of these issues arising from Stoddard's bar application, the Committee is proceeding with in its regular order, within the constraints of its limited resources.[5] In view of the panoply of character and fitness factors arising from Stoddard's application, each of which the Committee needs to investigate and analyze, the Committee submits that Stoddard's impatience with the Committee's regular process is unfounded.

## CONCLUSION

The Committee intends to investigate and analyze all of the issues raised in the bar application, and to make a determination as to its preliminary position on them, as soon as it is able to do so. This will be done within the framework of the Committee's regular operations and workload circumstances. The instant petition is unfounded and, at best, grossly premature. For the reasons stated herein, the Committee recommends that the relief sought in the petition be denied.

Respectfully submitted,

Mark S. Carlin
Chairman
Committee on Admissions
500 Indiana Avenue, NW, Room 4200
Washington, DC 20001
(202) 879-2710

---

[5] Committee members currently are focused primarily on the grading of the February 2007 D.C. bar examination. Also, the Committee is investigating and determining character and fitness issues on a large number of other cases pre-dating the relatively recent Stoddard matter.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was mailed this filing date to Philip J. Stoddard, 258 Laguna Court, St. Augustine, FL 32086.

Mark S. Carlin
Chairman
Committee on Admissions

4

# Exhibit
# 2



## NOTICE OF THE JULY 2006 BAR EXAMINATION RESULTS

Notice is hereby given that the list published herewith contains the names of 173 successful applicants of the District of Columbia Bar Examination administered on July 25th and 26th, 2006, to 352 applicants.  This represents a 76.3 percent pass rate among first-time takers or an overall pass rate of 49.1 percent.

The members of the Committee on Admissions request that any information tending to affect the eligibility of any of these applicants on moral or ethical grounds be furnished to the Committee on Admissions on or before Friday, November 3, 2006.

It is expected that these applicants will be administered the oath of admission at a formal ceremony before a panel of Judges of the District of Columbia Court of Appeals on Monday, November 6, 2006, in the Court of Appeals Courtroom on the sixth level of the District of Columbia Courthouse at 500 Indiana Avenue NW.

Mark S. Carlin, Chairman
October 6, 2006

| | |
|---|---|
| Adams, Tashiana R. | Gelston, Jennifer Barley |
| Aitken, Natalie Diana Elvie | Goldin, Alicia Fagen |
| Aleo, Michael E. | Gowel, Katherine Scott |
| Auerbach, Donald Carl | Gowel, John Joseph |
| Batipps, Mark Jeffrey | Green, Stuart Cotter |
| Bocanegra, Lauren Isela | Grewal, Amandeep |
| Bromeland, Matthew John | Gripp, David Arden |
| Bronk, Jennifer-Joy | Halbert, Jessica Lee McHugh |
| Brown, Lisa Marie | Halbert, Jason Herman |
| Brown, Robert D. | Hansen, Sandra Luz |
| Brown, Turkessa Lynn | Hayes, Mark L. |
| Burgess, Mary J. | Hayes, Sean Andrew |
| Calvo, Paul Anthony | Himowitz, Joseph Isaac |
| Carpenter, Krista Lynn | Holdheim, Sylvia Margaret |
| Catlett, Cynthia Nesanovis | Hopkins, Gabrielle T. |
| Chan, Vichet J. | Hoverter, Terence Francis |
| Chang, Karl Shih | Howald, Blake Stephen |
| Choe, Jay Joon | Hranek, Melissa Susan |
| Chu, Daniel Young | Imam, Ali Mohammed |
| Cohen, Andrew Laurence | Jacobs, Rebecca Elizabeth |
| Cohen, Jeremy T. | Jenkins, Paul Daniel |
| Collins, Chris William | Jensen, Lars M. |
| Collins, Michael Garrett | Jimenez, Julio Manuel |
| Conlon, Phillip Gregory | Jones, Adrienne Antoinette |
| Cook, James Kent | Judkins, Quo Mieko S. |
| Corkran, Kelsi Brown | Kagle, Killian Bach |
| Cotca, Ramona Raula | Kang, Min Gu |
| Crowell, Lee M. | Katz, Paula Rebecca |
| Daugirdas, Kristina B. | Kilday, Lisa Anne |
| Davis, Mark Christopher | Kramer, Kai Robert |
| Davis, Kelly Jo | Krasovsky, Gregory |
| De la gueronniere, Gabrielle | Lane, Takeshia A. |
| Delgadillo, Gabriela Margarita | Lara, Juan |
| Diggs, Damien Marcus | Lawrence, Frank Joseph |
| Dillon, George Tsakoff | Leavitt, Michael Smith |
| Donovan, Brian Michael | Lee, Jason Tremain |
| Dunlap, Andrew Lawson | Lee, Scott Wai-Hong |
| Dunlap, Robyn Elaine | Lefeve, Donald Arthur |
| Dunlop, Kimberlee M. | Legaspi, M. Bryan P. |
| Duran, Cecilia Maria | Li wai suen, Rachel Sharon |
| Ellis, Carrie Elizabeth | Lieberman, Ross Jeffrey |
| Escudero, Maria Luisa | Maltz, Gideon Daniel |
| Fahrenholz, Kimberly Kay | Marie, Caroline Suzanne |
| Farmer, Stacey J. | Masi, Brina Rose |
| Feierabend, Allison Victoria | Matamoros-Indorf, Marcela A. |
| Feinberg, Robert Saul | Mathis, Paulette Evelyn |
| Fisher, Danielle Kathleen | Maurer, Jeannette Hargrove |
| Fisher, Christy Ann | McDuffie, Shannon Daspit |
| Fisler, Whitney CaLeen | Mejia, Austin Lee |
| Fletcher, Amy Frances | Mignano, Joseph Flanigan |

Monnig, Danielle Erin
Morgan, Sarah Elizabeth
Mukherjee, Sulolit
Murphy, Jerold Bernard
Muto, Joseph Francis
Myers, Kathleen Irene
Najhram, Cindy Gita
Neal, Betye Lucille
Needham, Abigayle Suzanne
Nesbitt, Lawrence Kenneth
Nguyen, Michelle Phu
Nyoh, Peter
Oksanen, Seth David
Onigbinde, Bamidele Gbolagade
Oppenheimer, Michael Scott
Orenstein, Jeffrey
Osborne, Bambi Nicole
Park, Seung Hee
Park, Susan Leah
Payne, Natalie Ann
Peace, Christopher Kilian
Phillip, Ruthven Reuben
Pinckney, Christopher Ryan
Poblete, Jason Ian
Prestwood, Nathanael David
Puterman, Liza Judith
Rainfray, Arnaud Pierre
Randall, Curtis Frankey
Reid, Steven Marshall
Ricciardi, Matthew Joseph
Richardson, Jacqueline Michele
Richardson, Rodney Eugene
Riley, Sean Michael
Rodari, Sophie
Ryan, Kimberly Denise
Saffran, Rachelle Julie
Schaeffer, Jennifer Renee
Schindler, Gina
Schuett, Ruediger Ralf
Schwartzman, Robert Andrew
Seibert, John Hunter
Shiffrin, Joshua B.
Shulman, Arthur
Smilowitz, Matthew Craig
Spangenberg, Maria Rachel
Spearman, Nancy
Spitzer, Max Anthony
Sprague, Jeffrey Taylor
Stimson, Daniel Thomas
Stoddard, Philip James

Sun, Howard Ching-Hao
Sun, Qixiang
Takis, Benjamin
Tapia, Barrie Lynn
Taylor, Nicole Renee
Teel, Elliott Rollins
Thomas, Dana Emily
Tillery, Jani Sanura
Tilly, Elena
Trincal, Delphine Ann-Gaetane
Valentine, Jennifer Ann
Vanderpool, Amee Elizabeth
Volokh, Alexander
Vrakatitsis, Michael Gregory
Wachs, Heidi Laura
Waggoner, Nakia L.
Weatherford, Holly Catherine
Williams, John Matthew Deweese
Winkler, Ulrike
Wright, Coriell Shane
Wright, Wesley Kyle
Yoder, Chung-Hi Hernandez
Yoo, Sunil