UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRANK J. LAWRENCE, JR., <br><br> Plaintiff, <br><br> v. <br><br> MARK S. CARLIN, *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 07-00288 (RCL) <br> ) <br> ) <br> ) <br> ) <br> ) |

DEFENDANTS' REPLY TO PLAINTIFF'S
SECOND SUPPLEMENTAL BRIEF

Pursuant to LCvR 7(d), defendants hereby briefly reply to plaintiff's "Response to Defendants' Motion to Dismiss" and his "Reply to Defendants' Response [sic] to Plaintiff's Motion for Preliminary Injunction."[1]

Plaintiff's filing is rife with non-controlling, outdated, or simply inapposite case law. Plaintiff has not distinguished any of the controlling cases cited by the defendants. Plaintiff has not cited any case supporting his position that the completely justifiable postponement here in processing his bar application violates his constitutional rights.

Plaintiff also engages in needlessly inflammatory rhetoric, repeatedly accusing defendants and counsel—without factual basis—of serious misconduct.

---

[1] Plaintiff's document is captioned as a "Response" and a "Reply." Consequently, because plaintiff did not file "in opposition to" defendants' dispositive motion, that motion may be treated as conceded. *See* LCvR 7(b).

*The Michigan Litigation and the First Amendment*

The defendants did, unfortunately, mistakenly indicate that plaintiff's application to the Michigan Bar is pending. That application has, in fact, been denied, and the defendants apologize for any confusion engendered by that remark. *See* Plaintiff's Exhibit No. 1 (to the Complaint). The defendants had intended to convey that plaintiff's challenge to the denial of his application is still pending before the courts.

The decision by the Michigan Board of Law Examiners indicated that plaintiff had "not sustained his burden that he currently possesses the requisite character and fitness to become a member of the Michigan Bar." *Id*. at 1. Attached is a letter dated January 24, 2007, from the D.C. Committee on Admissions ("COA") to plaintiff. In it, the COA notes that, as part of its investigation of "an applicant's general fitness and moral character," it must consider his then-pending litigation against bar officials in other jurisdictions which directly implicate that very issue. The COA letter specifically notes that "[s]ince both of your lawsuits are still under appeal, the Michigan and Florida decisions cannot be considered as final." Plaintiff subsequently informed the COA that the Florida litigation was concluded. *See also* Defendants' Motion to Dismiss at n.10.[2]

Because plaintiff has challenged the Michigan decision in federal court, it is not final, and the COA has repeatedly informed plaintiff that this lack of finality is the reason his D.C. Bar

---

[2] The COA letter is presented solely to demonstrate the legal status of plaintiff's Michigan application, *i.e.*, the decision on that application is not final pending the outcome of the Sixth Circuit litigation and any further appeal or litigation proceedings. There are no material facts in dispute here, and plaintiff cannot suggest otherwise. *See, e.g., Baker v. Henderson*, 150 F.Supp.2d 17, 19 n.1 (D.D.C. 2001) (court may consider documents "attached to or incorporated in the complaint . . . without converting the motion to dismiss into one for summary judgment.") (citations omitted). *See also Anderson v. Wiggins*, 460 F.Supp.2d 1, 6 (D.D.C. 2006) (when a motion pursuant to Fed. R. Civ. P. 12(b)(1) "focuses on the Court's power to hear the claim . . . 'the Court may give the plaintiff's factual allegations closer scrutiny and may consider matters outside the pleadings.'") (citations omitted).

application is being held in abeyance, *not* for the reason that he repeatedly asserts—that his application is on hold to "pressur[e] Plaintiff to drop his federal civil rights suit against the Michigan officials." P.Resp. at 11.

Plaintiff continues to assume causation and imply improper motive to the defendants when there is none. There is no evidence of any "retaliation" here by the defendants for any actions of plaintiff, only a prudent and reasonable waiting period pending the outcome of litigation that may resolve factual and legal issues implicated in his D.C. Bar application process.

The COA is not holding plaintiff's application in abeyance because of the *content* of his allegations against the Michigan officials, but because of the mere *fact* of the litigation, and the likelihood that it could resolve some issues implicated in his local application. *See, e.g., Hill v. Colorado*, 530 U.S. 703, 737 (2000) (government regulation impermissibly infringes on the First Amendment "if it is imposed because of the content of the speech") (Souter, J., concurring). The Supreme Court long ago determined that states may constitutionally inquire into and consider activities which may be relevant to an individual's ability to practice law, even if some of that conduct may be protected by the First Amendment. *Law Students Civil Rights Research Council, Inc. v. Wadmond*, 401 U.S. 154, 159 (1971); *Schware v. Board of Bar Examiners of N. Mex.*, 353 U.S. 232, 239 (1957). *See also Konigsberg v. State Bar of Calif.*, 366 U.S. 36, 52 (1961) (state bar not constitutionally prohibited from inquiring into matters relating to and applicant's "speech and association").

Plaintiff simply repeats his earlier allegations that the defendants' actions here have a "chilling effect" on his First Amendment rights. P.Resp. at 25. Notwithstanding this, abstention remains appropriate even where a plaintiff "levels a First Amendment challenge against a regulation and contends that its existence has a chilling effect . . . ." *JMM Corp. v. District of*

*Columbia*, 378 F.3d 1117, 1122 n.11 (D.C. Cir. 2004) (citing *Younger v. Harris*, 401 U.S. 37, 54 (1971)).

Moreover, merely asserting a "chilling effect" on the exercise of First Amendment rights is insufficient to overcome the defendants' dispositive motion. *See, e.g., Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of a specific present objective harm or a threat of specific future harm . . . ."); *DKT Memorial Fund, Ltd. v. USAID*, 887 F.2d 275, 298–99 (D.C. Cir. 1989) (despite initial rejection of claim at trial court, an opportunity to amend, and then remand, plaintiffs "still com[e] before us with a bare allegation of 'subjective chill'") ("Plaintiffs were on quite adequate notice long ago of the need for such specific present harm and have demonstrated none.") (citing *Laird*); *Hatfill v. Ashcroft*, 404 F.Supp.2d 104, 118–19 (plaintiff "having failed to show that his First Amendment rights were *actually chilled*, has not stated a claim for which relief can be granted . . . .") (emphasis in original). *Cf. Law Students Civil Rights Research Council, Inc. v. Wadmond*, 401 U.S. 154, 159 (1971) (Justices "have no difficulty" in affirming lower court's rejection of law students' claim that New York bar's character and fitness system "works a 'chilling effect' upon the free exercise of the rights of speech and association of students who must anticipate having to meet its requirements.").

Plaintiff has similarly failed to distinguish *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006). That case is unequivocal in stating that a plaintiff must "do more than merely allege a violation of freedom of expression in order to satisfy the irreparable injury prong of the preliminary injunction frame-work." *Id*. at 301.

"[W]here it is not clear that a particular [government action] will have any actual adverse effect on protected First Amendment liberties, the moving party must demonstrate some likelihood of a chilling effect on their rights." *Id*. at 301. Plaintiff has failed to show how the defendants'

actions here have a "likelihood" of chilling his rights, and his request for emergency injunctive relief should be rejected, for failure to show any threat of imminent, irreparable injury.

*Plaintiff Has Failed to Demonstrate that Abstention is Inappropriate Here.*

Plaintiff mischaracterizes a similar local case, and argues that he does not have an adequate opportunity to raise his constitutional claims at the D.C. Court of Appeals ("DCCA"), hence this Court should not abstain. *See* P.Resp. at 10–11. Plaintiff is wrong as a matter of law— he can raise any and all of his constitutional claims at the DCCA. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 436 (1982) (*Younger* abstention is appropriate in state attorney-discipline proceedings because attorney will have "abundant opportunity to present his constitutional challenges in the state [p]roceedings."); *JMM Corp*, 378 F.3d at 1121 (affirming application of *Younger* abstention where a party "can appeal to and make its constitutional challenges in the D.C. Court of Appeals, and again seek further review in the Supreme Court.").³

Further, plaintiff incorrectly asserts that defendant Carlin has taken a position in *In re Stoddard*, No. 07-BG-148 (D.C. App.), inconsistent with the instant matter. There, contrary to plaintiff's implication, defendant Carlin did *not* argue that the DCCA could not entertain Stoddard's claims because they were constitutional, but because the *sole* reason cited by the applicant for DCCA jurisdiction—his impatience with the pace of processing of his

---

³ Similarly, plaintiff claims that he "is unaware of any decision in this country—ever—where abstention was applied in a similar circumstance." P.Resp. at 10. But the defendants cited just such a case in their dispositive motion. *See Otrompke v. Chairman of the Committee on Character and Fitness*, 2004 WL 812993, *5 (N.D. Ill. 2004) (notwithstanding delay of over three years in approving applicant's admission or granting him a hearing, the "important state interest" implicated mandated the exercise of *Younger* abstention).

application—did not qualify as the "extraordinary circumstances" contemplated by D.C. App. R. 46(g).[4] *See* P.Resp. Exh. 1. In light of the "multiple, serious character and fitness issues raised in Stoddard's application and in his voluminous file[,]" the COA has not yet finished its investigation and reached a final decision, hence the DCCA should not yet intervene. *Id*. The identical situation obtains here.

Defendant's position in *Stoddard* is thus entirely consistent with defendants' arguments in the matter *sub judice*, and abstention remains appropriate.

*The Defendants Are Entitled to Immunity.*

Plaintiff fails to distinguish the cases demonstrating that absolute immunity is appropriate for the defendants here but, even if he had, his own cases show that the instant defendants are entitled, at the very least, to qualified immunity. *See, e.g.,* P.Resp. at 13 (citing *Powell v. Nigro*, 601 F.Supp. 144, 148–49 (D.D.C. 1985) (defendants entitled to qualified immunity in bar applicant's suit against the COA)).[5]

---

[4] That rule provides that if the COA proposes to deny an application (which, as noted, entitles an applicant to request a formal hearing before the COA, *see* D.C. App. R. 46(f)), the DCCA automatically reviews that decision. However, an aggrieved applicant is not entitled to circumvent that process unless he or she can show "extraordinary circumstances" and either that "an application for relief has previously been made in the first instance to the [COA] and been denied by the [COA], or that an application to the [COA] for the relief is not practicable." *Id*. at 46(g)(3).

[5] Plaintiff also fails to acknowledge that defendant Kent is, in addition to being counsel for the COA, a member as well. *See* Defendants' Motion to Dismiss, at 6. Plaintiff continues to try to make the tail wag the dog here, asserting without support that defendant Kent is not entitled to absolute immunity because he "provided unconstitutional legal advice" to the defendants. P.Resp. at 16 (citing *Burns v. Reed*, 500 U.S. 478, 496 (1991)). But that case is easily distinguishable in that the prosecutor in *Burns* was denied absolute immunity because "advising the police in the investigative phase of a criminal case is [not] 'intimately associated with the judicial phase of the criminal process . . . .'" *Id*. at 493 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). The instant case, of course, is not a criminal matter, and whatever advice Mr.

The defendants are entitled to absolute immunity here. *Wagshal v. Foster*, 28 F.3d 1249, 1253 (D.C. Cir. 1994) (citing *Simons v. Bellinger*, 643 F.2d 774, 779–82 (D.C. Cir. 1980) (extending absolute immunity to members of court-appointed committee)); *Sparks v. Character & Fitness Committee of Kentucky*, 859 F.2d 428, 434 (6th Cir. 1988), *cert. denied*, 489 U.S. 1011 (1989) (individuals who evaluate applications for bar admission on behalf of the jurisdiction's highest court perform a judicial function and are entitled to "absolute quasi-judicial immunity").[6]

Alternatively, the defendants are entitled to qualified immunity because their actions here were objectively reasonable in light of existing law, *i.e.*, "their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *International Action Center v. United States*, 365 F.3d 20, 24 (D.C. Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As the District demonstrated previously, there is no federal "right" to practice law without meeting the jurisdiction's requirements. Plaintiff's allegations do not state a cognizable claim of any constitutional wrongdoing by any of the defendants. A reasonable official in defendants' situation could have believed that their conduct did not violate plaintiff's constitutional rights.

---

Kent gave here was "intimately associated" with a judicial decision—the admission of candidates to the bar. Moreover, notwithstanding plaintiff's argument, the prosecutor in *Burns* was entitled to qualified immunity.

[6]    In addition to the cases cited by the defendants in their motion to dismiss, many other federal cases have taken the approach followed in *Sparks*, holding that members of bar committees and bar employees are entitled to absolute quasi-judicial immunity for their actions as part of the bar admission process. *See, e.g., Marin v. Hazelton*, 916 F.2d 716 (9th Cir. 1990); *LaNave v. Minnesota Supreme Court*, 915 F.2d 386, 387 (8th Cir. 1990); *Childs v. Reynoldson*, 777 F.2d 1305 (8th Cir. 1985); *Richardson v. McFadden*, 563 F.2d 1130, 1132 (4th Cir. 1977) (concurring opinion); *Roe v. Johnson*, 334 F.Supp.2d 415, 424 (S.D.N.Y. 2004); *Julien v. Committee of Bar Examiners*, 923 F.Supp. 707, 714–17 (D.V.I. 1996).

Rooker-Feldman *Precludes Subject-Matter Jurisdiction Here.*

Plaintiff fails to escape *Rooker-Feldman*, incorrectly arguing that the Supreme Court held, in *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), that that doctrine "is confined to final state court judgments." P.Resp. at 21. Nowhere does that case so hold, however. As the District noted previously, *Rooker-Feldman* applies to state courts' *interlocutory* decisions, as well as final decisions. *Richardson v. District of Columbia Court of Appeals*, 83 F.3d 1513, 1515 (D.C. Cir. 1996).[7]

Because the COA "was created by the [DCCA], and [is] an arm or instrumentality thereof[,]" *Sitcov v. District of Columbia Bar*, 885 A.2d 289, 295 (D.C. 2005), the Court lacks subject matter jurisdiction to review its decisions, pursuant to the *Rooker-Feldman* doctrine.

*The Plaintiff Has Not Demonstrated a Violation of Due Process.*

Although plaintiff is generally correct that "one pursuing a procedural due process claim need not exhaust his local remedies," *Tri County Indus., Inc. v. District of Columbia*, 104 F.3d 455, 462 (D.C. Cir. 1997), a plaintiff pressing a *substantive* due process claim is held to a higher burden. "[U]nless the victim of a government imposition has pushed its local remedies to the hilt, it ordinarily will not be able to show the necessary substantiality." *Id*. at 459; *3883 Conn. LLC v. District of Columbia*, 191 F.Supp.2d 90, 95 (D.D.C. 2002), *affirmed*, 336 F.3d 1068 (D.C. Cir. 2003). Plaintiff has failed to make the showing required to sustain a substantive due process claim.

---

[7] Moreover, decisions by administrative bodies acting in a judicial capacity also come within *Rooker-Feldman*. See *Mitchell v. Fishbein*, 377 F.3d 157, 166–67 (2nd Cir. 2004) (collecting cases).

Plaintiff also appears to backtrack from his primary claim that he has a "liberty interest" in being admitted to the D.C. Bar. *Cf.* Amended Complaint ¶ 34 and P.Resp. at 22 ("Plaintiff's lawsuit is not based upon a liberty interest 'in his rapid admission'"). Regardless, plaintiff has again failed to cite any case or authority supporting his argument that he has a due-process right to an immediate hearing on his pending application to the D.C. Bar. *Cf. In re Shepherd*, 870 A.2d 67, 69 (D.C. 2005) (although Board on Professional Responsibility took three years to issue its report and recommendations regarding bar member's violations of bar rules, he "fails to offer any case law supporting his contention that mere delay in issuing a decision [warrants] a finding of a constitutional due process violation."); *In re Morrell*, 684 A.2d 361, 368 (D.C. 1996) ("mere delay in the disciplinary process generally does not provide a legitimate ground for dismissal of the complaint. The public interest in regulating members of the bar takes precedence over the attorney's interest in having claims speedily resolved.") (citing *In re Williams*, 513 A.2d 793 (D.C. 1986)); *id.* at 370 ("It would hardly serve the integrity of the bar, moreover, to allow [the attorney] to avoid the imposition of discipline for his serious ethical violations merely because the Hearing Committee took a long time carefully evaluating the substantial, complex evidence in this case."). *See also In re Loss*, 518 N.E.2d 981, 985 (Ill. 1987) (eighteen-month delay in reviewing application for admission to the bar did not deny applicant "fundamental fairness" in light of his prior criminal record and history of drug and alcohol abuse) ("The review was essential to the protection of the integrity of the bar and the People of this State.").

So too here. The minimal delay in processing plaintiff's application has not negatively impacted him sufficiently to outweigh the public's substantial interest in the integrity of the D.C. Bar. "States have a compelling interest in the practice of the professions within their boundaries," *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975), and "can require high

standards of qualification, such as good moral character . . . before [admitting] an applicant . . . ."

*Schware*, 353 U.S. at 239.

DATE: April 20, 2007                                     Respectfully submitted,

                                                         LINDA SINGER
                                                         Attorney General for the District of Columbia

                                                         GEORGE C. VALENTINE
                                                         Deputy Attorney General, Civil Litigation Division

                                                                /s/ Ellen A. Efros
                                                         ELLEN A. EFROS, D.C. Bar No. 250746
                                                         Chief, Equity Section I
                                                         441 Fourth Street, N.W., 6th Floor South
                                                         Washington, D.C. 20001
                                                          Telephone: (202) 442-9886
                                                         Facsimile: (202) 727-0431

                                                               /s/ Andrew J. Saindon
                                                         ANDREW J. SAINDON, D.C. Bar No. 456987
                                                         Assistant Attorney General
                                                         Equity I Section
                                                         441 Fourth Street, N.W., 6th Floor South
                                                         Washington, D.C. 20001
                                                         Telephone: (202) 724-6643
                                                         Facsimile: (202) 727-0431
                                                         andy.saindon@dc.gov


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on April 20, 2007, copies of the foregoing Reply and all accompanying documents were filed with the Court's Electronic Case Filing system, sent electronically to flawrence1@hotmail.com, and sent by U.S. Mail, first-class, postage-prepaid, to:

    Frank J. Lawrence, Jr.
    941 Westview Road
    Bloomfield Hills, MI 48304


                                                                /s/ Andrew J. Saindon
                                                         ANDREW J. SAINDON, D.C. Bar No. 456987



# District of Columbia Court of Appeals
## Committee on Admissions
### 500 Indiana Avenue, N.W. — Room 4200
### Washington, D. C. 20001
### 202 / 879-2710

January 24, 2007

Frank J. Lawrence, Jr.
941 Westview Road
Bloomfield Hills, MI 48304

    RE:    E35882

Dear Mr. Lawrence:

    The members of the Committee on Admissions have considered your letter of December 26, 2006, together with your voluminous current file.  Your file was submitted to the Committee members for consideration just prior to the Christmas-New Year holiday period and our receipt of your December 26th letter.  This responds to the questions raised in your letter, and outlines the additional information that the Committee now seeks from you.

    The Committee understands that your lawsuits against the bar admissions authorities in both Michigan and Florida, including your appeals from the adverse court decisions in both cases, denying your admission to the Bars of those jurisdictions, are continuing.  Your letter includes the following request:

> [I]f the Committee on Admissions adopts the Michigan and Florida decisions, I respectfully request a declaratory ruling from the Committee on the constitutionality of the conduct upon which those two decisions are based.

Please be advised that, in connection with any investigation of an applicant's general fitness and moral character, the Committee does not render declaratory rulings on the constitutionality of an applicant's past speech and conduct.  Moreover, regardless of the constitutionality issue, the U.S. Supreme Court has made clear that a bar admissions authority is allowed to consider speech and conduct in making determinations of an applicant's character. *See, e.g., Law Students Research Council v. Wadmond*, 401 U.S. 154 (1971).

    In further connection with your pending Michigan and Florida litigation, please be advised that the Committee does not consider adopting foreign court decisions, rulings, opinions or judgments, including any findings of fact that may be contained therein, unless and until such decisions are deemed final.  Since both of your lawsuits are still under appeal, the Michigan and Florida decisions cannot be considered as final.  Therefore, the Committee will hold your

application in abeyance pending the conclusion of both cases. The Committee requests that you continue to keep it apprised as to the status and final disposition of these cases.

Apart from the Florida and Michigan litigation, there is another issue as to which the Committee requires further information from you, namely the issue of financial responsibility. On your application for admission, you responded affirmatively to Question Nos. 19, 20 and 21, concerning credit card revocations, debts more than 90 days past due, and defaulted loans. Your supplemental answers to these questions indicate a variety of unpaid and defaulted debts and judgments. You state that some are "in dispute," and that as to others (including a defaulted debt to MBNA America in the sum of $10,680.00) your "present financial situation precludes me from paying this debt."

Your supplemental answers to Question Nos. 19, 20 and 21, are conclusory and unsupported by any submitted documentary evidence. The Committee requests that you provide it with evidence of your present financial condition and evidence of your efforts to address your unpaid debts responsibly consistent with that condition. This would include, without limitation, the following:

1. A current balance sheet showing all of your assets and liabilities.

2. A month-by-month breakdown of your 2006 income and expenses, showing all sources of income.

3. Copies of all correspondence to and from each of your creditors, including any discussion of payment plans, deferment of debt, compromise, and forgiveness.

4. Copies of any documents reflecting your financial obligations to counsel in your on-going Michigan and Florida litigation, and an explanation as to how you are funding such litigation.

5. Copies of any documents reflecting payment of the court costs assessed against you in connection with your Michigan and Florida litigation.

The Committee will hold your application in abeyance pending its receipt of the foregoing information and documents.

Lastly, we acknowledge receipt of the CD enclosed with your December 26th letter, which, you state, contains a complete copy of certain enumerated litigation documents. However, please be advised that the Committee does not accept documents in other than hard copy form. Please furnish the Committee with one (1) printed set of all documents on the CD.

Sincerely,

*Jacqueline M. Smith*
Jacqueline M. Smith
Director of Admissions

cc: Alan H. Kent, Counsel