PHILIP J. STODDARD, pro se
258 Laguna Court
St. Augustine, FL 32086
Phone/FAX (904)797-5380

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FRANK J. LAWRENCE, JR.

     Plaintiff,

v.

MARK S. CARLIN, ET. AL.,

     Defendants.

                          /

Civil No.07-288-RCL

## PHILIP J. STODDARD'S MOTION TO INTERVENE

PHILIP J. STODDARD, as a Putative Intervenor moves the Court for its orders permitting Mr. Stoddard to intervene as of right as a Plaintiff in the above styled case pursuant to Fed. R. Civ. P. 24(a)(2). As support for granting the requested relief, Mr. Stoddard shows the Complaint filed concurrently herewith, the allegations of which are hereby incorporated by reference. Additionally, Mr. Stoddard shows the following allegations:

    1. Plaintiff, Frank J. Lawrence filed the instant action on or about February 5, 2007.

    2. On or about March 9, 2007, pursuant to Rule 46(g), Rules of the District of Columbia Court of Appeals, Mr. Stoddard filed a request for interlocutory review of his pending DC Bar Application in the District of Columbia Court of Appeals (DCCA) generally alleging that the



RECEIVED

JUN 2 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

defendants were stonewalling his application and requesting an order requiring a decision on the application.

3.  On May 4, 2007, Mr. Stoddard received DCCA's order denying all relief. This Motion for intervention is timely because the litigation has not yet proceeded past the Rule 12 stage.

4.  The legal issues in this lawsuit are whether DCCOA officials are arbitrarily punishing bar applicants for exercising First Amendment Rights and violating the Due Process and Equal Protection Clauses of the Constitution of the United States by denying timely hearings on withheld moral character certifications as a matter of practice and policy. These are matters of grave concern to Mr. Stoddard, Mr. Lawrence and to every future bar applicant in the District of Columbia.

5.  The defendants have filed a Motion to Dismiss raising ripeness, standing, preclusion and immunity defenses which remains pending in this Court. A ruling on any one of these defenses adverse to the plaintiff would seriously impair Mr. Stoddard's ability to press his own claims for relief because the defendants can be expected to raise the same defenses against Mr. Stoddard, who seeks relief that is virtually identical to that requested by the Plaintiff.

6.  The common issues of fact involve: first, participation in pending civil rights litigation challenging unconstitutional conduct by bar admission officials outside of the District of Columbia; second, the denial of character and fitness certification by DCCOA, apparently on account of that pending litigation; third, DCCOA's refusal to provide the affected parties with a hearing in which to challenge DCCOA's reasons for denying certification; fourth, in both cases the applicants presented clear and convincing evidence establishing prima facie good moral character; and fifth, in neither case has DCCOA found any evidence of conduct, which if proven

at a hearing, would be sufficient to raise a presumption of lack of good moral character as measured against constitutional character standards.

7.    Mr. Lawrence cannot adequately represent Mr. Stoddard's interest because Mr. Lawrence is an individual appearing in this lawsuit, "pro-se." Whether Mr. Lawrence would appeal an adverse decision is purely speculative. Although there are common facts, Mr. Stoddard and Mr. Lawrence are unique individuals with unique histories and personalities. Fundamental Fairness requires that each should be free to advance his own view of the facts and law in support of his claims.

8.    Since the Defendants have not answered the Complaint and can be expected to file the same Motion to Dismiss against Mr. Stoddard's claims, the defendants are not prejudiced by the intervention.

9.    Many of the matters for discovery, for example, whether the defendants knew or should have known that their conduct violated clearly established law (an issue related to the claims for exemplary damages), is the same for Mr. Lawrence and Mr. Stoddard. The interest in judicial economy and expediting litigation favors intervention.

10.    Because the ongoing harm to Mr. Stoddard is substantially the same kind of ongoing harm Mr. Lawrence suffers, Mr. Stoddard expects to immediately file a Motion for a Preliminary Injunction and for Advancing Trial on the Merits. Again, the interest in judicial economy favors hearing all of the claims at one time, in one place.

11.    Defendants cannot, in good faith, oppose the intervention because they have admitted that Mr. Lawrence's and Mr. Stoddard's cases are alike (Exhibit A) and that "like cases should be treated alike.".

## MEMORANDUM OF POINTS AND AUTHORITIES

As Defendants have admitted, the Plaintiff and Putative Intervenor are presenting identical legal issues and similar facts. The requirements for Intervention pursuant to Fed. R. Civ. P. 24(a) are satisfied.  <u>Fund For Animals, Inc. v. Norton</u>, 322 F.3d 728 (D.C. Cir. 2003).

WHEREFORE, Putative Intervenor requests that his motion for leave to intervene in the above styled case pursuant to Fed. R. Civ. P. 24(a)(2)  be granted.

Respectfully submitted,

Philip J. Stoddard, Pro Se
258 Laguna Court
St Augustine, FL 32086
Phone/FAX (904)797-5380

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of the foregoing have been served on the following parties or counsel by U.S. Mail Service on _____ 2007:

Frank J. Lawrence, Jr., Pro Se
941 Westview Road
Bloomfield Hills, MI 48304

Andrew J. Saindon, Asst. Atty General
Equity I Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 2001

Philip J. Stoddard

# EXHIBIT A (TO MOTION)

DISTRICT OF COLUMBIA COURT OF APPEALS



NO. 07-BG-530

IN RE: FRANK J. LAWRENCE, JR.,
*Petitioner.*

## RECOMMENDATION OF THE COMMITTEE ON ADMISSIONS

The petitioner, Frank J. Lawrence, Jr. ("Lawrence"), is an applicant for admission to the District of Columbia Bar upon examination. In October 2006, the Committee on Admissions (the "Committee") notified him that he passed the D.C. bar examination. However, there are multiple, serious character and fitness issues raised in Lawrence's application and in his voluminous file. These, and other circumstances, discussed below, impact the Committee's investigation and the time it needs to determine its position with respect to the application. Nevertheless, Lawrence's petition for review seeks an order requiring the Committee to hold a Rule 46(f) formal hearing "within 30 days." *See,* Pet. at 1, ¶1; and 5. For the reasons discussed herein, the Committee recommends that the instant petition, and the petitioner's motion for expedited consideration, be denied.

### DISCUSSION

Lawrence's impatience with the Committee's regular procedures does not constitute the "extraordinary circumstances" that are required by the rules for court review of the Committee's processing of his bar application in the regular course of the Committee's operations. *See,* D.C. App. R. 46 (g)(3).[1] In this regard, as shown herein, the Committee has acted reasonably. And, for the reasons discussed *infra* at 5, Lawrence's contention (apparently based on his inference) that the Committee made a determination that it "is unwilling to certify" him, is simply wrong.

---

[1] D.C. App. R. 46(g), provides, in pertinent part, as follows:

> (3) Except for the review by the court provided in this section (g) [relating to Committee reports after formal hearings], no other review by the court of actions by or proceedings before the Committee shall be had except upon a showing (1) of extraordinary circumstances for instituting such review and (2) that an application for relief has previously been made in the first instance to the Committee and been denied by the Committee, or that an application to the Committee for relief is not practicable. [Emphasis added.]

As to Lawrence's motion for expedited consideration, the petition fails to show any undue prejudice to Lawrence by the court's processing and considering the instant petition in the regular course of the court's operations.

In February 2007, Lawrence filed a federal lawsuit against the Committee Chairman, Committee Counsel, and other Committee personnel, for declaratory and injunctive relief and (as to Committee Counsel in his individual capacity) for money damages. The action is currently pending in the U.S. District Court for the District of Columbia. A copy of the federal Amended Complaint (without its exhibits) is appended hereto as Exhibit A. The defendants' motion to dismiss was argued before Judge Lamberth on May 11, 2007, and currently is *sub judice*.[2]

The instant petition for review involves the same underlying issues that are currently pending in Lawrence's earlier-filed federal lawsuit against Committee personnel. In essence, Lawrence is litigating in two different courts on the same issues at the same time. Accordingly, in addition to the other reasons stated herein, the instant petition should be denied for reasons of judicial economy, to avoid the possibility of inconsistent results, and to otherwise allow for the earlier adjudication of the issues currently pending in the earlier-filed federal case.[3]

The Committee now turns to the merits of the instant petition. In October 2006, the Committee declared Lawrence successful on the previous D.C. bar exam. However, there are multiple, serious character and fitness issues raised in Lawrence's application and in his

---

[2] Following oral argument on May 11, 2007, Judge Lamberth dismissed Lawrence's motion for a preliminary injunction.

[3] Digressing from the issues at bar in this court, Lawrence fulminates at length over an unwitting and obvious fact error in defendants' motion to dismiss the federal lawsuit. *See*, Pet. at 3-4. That motion mistakenly had indicated that Lawrence's Michigan bar application is still pending, rather than that Lawrence's court challenge to the denial of that application is still pending. The defendants' attorney promptly acknowledged, corrected and apologized for, that error. *See*, Pet., Exh.2. Nevertheless, Lawrence, in his petition, uses charged rhetoric to exaggerate and mischaracterize the error, attempting to impugn the integrity of the Committee Chairman and Counsel. *See*, Pet. at 3-4.

Apparently for the same purposes, Lawrence mischaracterizes the Committee's filings in *In re Stoddard*, No. 07-BG-148. *See*, Pet. at 4. The court denied Stoddard's petition for review. Stoddard had requested, as does Lawrence now, a court order accelerating the Committee's character and fitness determination. Stoddard's petition ignored, as Lawrence's petition attempts to ignore, the circumstances reflecting both the prematurity and unreasonableness of such request, as well as the impracticality of such acceleration. The court should deny Lawrence's petition for the same reasons that it had denied Stoddard's petition. See discussion *infra* at 5-6.

voluminous file. These include, among other things, a 2002 criminal conviction, a variety of unpaid and defaulted debts and unpaid judgments, and multiple other reasons for which the bar admissions authorities (and the respective Supreme Courts) in both Michigan and Florida denied him admission on character and fitness grounds.

In 2001, Lawrence had applied for admission to the Florida Bar on examination. On February 18, 2005, following an investigation and a formal hearing, the Florida Board of Bar Examiners issued findings of fact, conclusions of law, and a recommendation that Lawrence's Florida bar application be denied on character and fitness grounds. On Lawrence's petition for review, the Florida Supreme Court denied his application for admission on December 19, 2005.[4]

In August 2004, Lawrence had applied for admission to the Michigan Bar on examination.[5] There was an investigation and formal hearings before both a Character Committee and the Michigan State Board of Law Examiners. On June 14, 2006, the Michigan State Board issued a 21-page Opinion, with findings of fact, concluding that Lawrence's Michigan bar application be denied on, among other things, character and fitness grounds.

On September 9, 2006, Lawrence filed a federal lawsuit against the Michigan Bar authorities. The action was filed in the U.S. District Court for the Western District of Michigan. The lawsuit challenges the denial of Lawrence's Michigan bar application.[6] That litigation is still pending. After the district court dismissed the suit, Lawrence appealed to the U.S. Court of Appeals for the Sixth Circuit on December 15, 2006. *See*, Pet. at 2, ¶ 6. The Committee is awaiting the finality of that litigation as a necessary part of its character and fitness investigation, as discussed in more detail *infra*.

---

[4] Lawrence had filed a federal lawsuit against the Florida Bar authorities and the Chief Justice of the Florida Supreme Court. In 2005, the U.S. District Court (N.D. Fla.) dismissed the suit. On September 21, 2006, the U.S. Court of Appeals for the 11th Circuit affirmed the dismissal.

[5] Lawrence previously had applied to the Michigan Bar in 2001. However, his bar exam results were not certified because he had not obtained character and fitness clearance from the State Bar of Michigan Standing Committee Character and Fitness. He withdrew his application in October 2002. In August 2004, Lawrence reapplied for admission in Michigan. *See, In re Lawrence*, Opinion by the State of Michigan Board of Law Examiners, June 14, 2006, at 1.

[6] Lawrence had filed an earlier federal action in Michigan against the Michigan Bar authorities and the justices of the Michigan Supreme Court. In 2003, the U.S. District Court (W.D. Mich.) dismissed the action. In 2006, the U.S. Court of Appeals for the 6th Circuit court affirmed the ruling of the district court.

Laurence's assertion that his bar application here "has lingered since its filing in May 2006," (*see* Motion at 1, ¶2), is misleading. Passing the bar examination is a prerequisite to the Committee's detailed investigation of an exam applicant's character and fitness. Lawrence was not even declared successful on the D.C. bar examination until October 2006. The Committee members first saw his file around the most recent Christmas-New Year holiday period. Thereafter the Committee responded in detail to Lawrence's various requests, and it requested additional information and documents from Lawrence. *See,* Committee letter to Lawrence, January 24, 2007, a copy of which is appended hereto as Exhibit B.

The record before the Florida and Michigan bar authorities, and the related litigation, alone, is voluminous. The Committee, with its limited resources, will be required to devote substantial time and effort to review and analyze these records, together with the other voluminous documents already in its file. In this regard, Lawrence has hindered the Committee's character and fitness investigation by refusing the Committee's formal request that he provide certain relevant litigation documents in a format other than on a compact disk ("CD").[7] (*See,* Exh. B hereto, Committee letter, Jan. 24, 2007, at page 2.)[8] This, also, has hindered the Committee in determining, preliminarily, Lawrence's present moral character and fitness to practice law, and whether or not the Committee is willing to certify him for admission.

Perhaps most significantly, there is not yet any finality to Lawrence's pending court challenge to the Michigan Bar's decision denying Lawrence admission to its Bar on character and fitness grounds. Consequently, the Committee is not in a position to determine the extent to which it may rely on findings of fact in the Michigan proceedings. Therefore, the Committee reasonably is waiting for Lawrence's current Michigan federal litigation to be concluded.

---

[7] The Committee, as an arm of the Court of Appeals, accepts documents in the same format as is required by the court. In this regard, the Clerk of Court has advised that the court accepts filings and documentary evidence only in hard copy form. The Committee has followed suit. This is particularly important since the Committee must submit to the court a paginated written record, in hard copy format, following the Committee's formal hearings.

[8] Lawrence apparently believes, mistakenly, (1) that the electronic filing procedures of the D.C. Superior Court apply to the Court of Appeals, and (2) that the Committee has accepted for consideration documents submitted in electronic format (CD) from another applicant. *See* note 7 *supra.*

4

In his petition, Lawrence attempts to shoehorn his case prematurely into the ambit of Rule 46(f)(1), which states, in pertinent part, as follows:

> **** If the Committee is unwilling to certify an applicant, it shall notify the applicant of the choice withdrawing the application or requesting a hearing. [Emphasis added..]

Laurence contends that he presently is entitled to a Rule 46(f) hearing, arguing (apparently based solely on his own inference) that the Committee has determined that it "is unwilling to certify" him. *See*, Pet at 3, ¶ 9. That is incorrect. The Committee has not completed its character and fitness investigation, and therefore it has not made – and indeed cannot yet make - a preliminary determination as to its position on his application. That is because, among other things, the final outcome of Lawrence's Michigan Bar litigation – now pending in the federal courts – will significantly affect the Committee's preliminary determination whether or not to certify Lawrence.

Curiously, Lawrence cites a bar admission case that cuts against his own arguments, *i.e.*, *In re Stoddard*, DCCA No. 07-BG-148. *See*, Pet. at 4. The similarities between the two cases are striking:

- Like Lawrence, Stoddard is an applicant for admission to the D.C. Bar on examination.
- Like Lawrence in Florida and Michigan, Stoddard had been denied admission to the Florida Bar on character and fitness grounds.
- Like Lawrence in Florida and Michigan, Stoddard filed a federal lawsuit challenging Florida's denial of his bar application.
- Like Lawrence's Michigan federal litigation, Stoddard's Florida federal litigation is still pending.
- Like Lawrence, Stoddard filed a petition seeking the Committee's immediate decision on his bar application before his federal litigation was finally adjudicated and before the Committee had determined its preliminary position on his application.

On May 2, 2007, the court denied Stoddard's petition for review. Like cases should be treated alike. On the same basis that the court denied Stoddrad's similar petition, it should deny

5

Lawrence's petition.

As to the investigation of the issues arising from Lawrence's bar application, the Committee is proceeding reasonably, in its regular order, within the constraints of its limited resources.[9] In view of the panoply of character and fitness factors arising from Lawrence's application, each of which the Committee needs to investigate and analyze, the Committee submits that Lawrence's impatience with the Committee's regular process is unfounded. That process is not yet complete, since the Committee is awaiting the final adjudication of Lawrence's Michigan court proceedings regarding his bar application there. Therefore, as discussed above, the Committee reasonably has not yet determined its preliminary position on his application. Accordingly, Lawrence presently is not entitled to a Rule 46(f) formal hearing.

### CONCLUSION

The Committee intends to investigate and analyze all of the issues raised in the petitioner's bar application, and to make a determination as to its preliminary position on them, as soon as it is able to do so. This will be done within the framework of the Committee's regular operations and workload circumstances, following final adjudication of Lawrence's pending federal court challenge to the denial of his Michigan bar application on character and fitness grounds. The instant petition is unfounded and, at best, grossly premature.

For the reasons stated herein, the Committee recommends that the relief sought in the petition, and in the motion for expedited consideration, be denied.

---

[9] The Committee currently is investigating and determining character and fitness issues on a large number of other cases pre-dating the relatively recent Lawrence matter.

Respectfully submitted,

Mark S. Carlin
Chairman
Committee on Admissions
500 Indiana Avenue, NW, Room 4200
Washington, DC 20001
202/879-2710

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was mailed this filing date to Frank J. Lawrence, 941 Westview Road, Bloomfield Hills, MI 48304.

Mark S. Carlin
Chairman
Committee on Admissions

7

# EXHIBIT A (TO MOTION)

DISTRICT OF COLUMBIA COURT OF APPEALS

NO. 07-BG-530

IN RE: FRANK J. LAWRENCE, JR.,
                    *Petitioner.*



## RECOMMENDATION OF THE COMMITTEE ON ADMISSIONS

The petitioner, Frank J. Lawrence, Jr. ("Lawrence"), is an applicant for admission to the District of Columbia Bar upon examination. In October 2006, the Committee on Admissions (the "Committee") notified him that he passed the D.C. bar examination. However, there are multiple, serious character and fitness issues raised in Lawrence's application and in his voluminous file. These, and other circumstances, discussed below, impact the Committee's investigation and the time it needs to determine its position with respect to the application. Nevertheless, Lawrence's petition for review seeks an order requiring the Committee to hold a Rule 46(f) formal hearing "within 30 days." *See*, Pet. at 1, ¶¶1; and 5. For the reasons discussed herein, the Committee recommends that the instant petition, and the petitioner's motion for expedited consideration, be denied.

### DISCUSSION

Lawrence's impatience with the Committee's regular procedures does not constitute the "extraordinary circumstances" that are required by the rules for court review of the Committee's processing of his bar application in the regular course of the Committee's operations. *See*, D.C. App. R. 46 (g)(3).[1]   In this regard, as shown herein, the Committee has acted reasonably. And, for the reasons discussed *infra* at 5, Lawrence's contention (apparently based on his inference) that the Committee made a determination that it "is unwilling to certify" him, is simply wrong.

---

[1]   D.C. App. R. 46(g), provides, in pertinent part, as follows:

(3) Except for the review by the court provided in this section (g) [relating to Committee reports after formal hearings], no other review by the court of actions by or proceedings before the Committee shall be had except upon a showing (1) of extraordinary circumstances for instituting such review and (2) that an application for relief has previously been made in the first instance to the Committee and been denied by the Committee, or that an application to the Committee for relief is not practicable. [Emphasis added.]

As to Lawrence's motion for expedited consideration, the petition fails to show any undue prejudice to Lawrence by the court's processing and considering the instant petition in the regular course of the court's operations.

In February 2007, Lawrence filed a federal lawsuit against the Committee Chairman, Committee Counsel, and other Committee personnel, for declaratory and injunctive relief and (as to Committee Counsel in his individual capacity) for money damages. The action is currently pending in the U.S. District Court for the District of Columbia. A copy of the federal Amended Complaint (without its exhibits) is appended hereto as Exhibit A. The defendants' motion to dismiss was argued before Judge Lamberth on May 11, 2007, and currently is *sub judice*.[2]

The instant petition for review involves the same underlying issues that are currently pending in Lawrence's earlier-filed federal lawsuit against Committee personnel. In essence, Lawrence is litigating in two different courts on the same issues at the same time. Accordingly, in addition to the other reasons stated herein, the instant petition should be denied for reasons of judicial economy, to avoid the possibility of inconsistent results, and to otherwise allow for the earlier adjudication of the issues currently pending in the earlier-filed federal case.[3]

The Committee now turns to the merits of the instant petition. In October 2006, the Committee declared Lawrence successful on the previous D.C. bar exam. However, there are multiple, serious character and fitness issues raised in Lawrence's application and in his

---

[2] Following oral argument on May 11, 2007, Judge Lamberth dismissed Lawrence's motion for a preliminary injunction.

[3] Digressing from the issues at bar in this court, Lawrence fulminates at length over an unwitting and obvious fact error in defendants' motion to dismiss the federal lawsuit. *See*, Pet. at 3-4. That motion mistakenly had indicated that Lawrence's Michigan bar application is still pending, rather than that Lawrence's court challenge to the denial of that application is still pending. The defendants' attorney promptly acknowledged, corrected and apologized for, that error. *See*, Pet., Exh.2. Nevertheless, Lawrence, in his petition, uses charged rhetoric to exaggerate and mischaracterize the error, attempting to impugn the integrity of the Committee Chairman and Counsel. *See*, Pet. at 3-4.

Apparently for the same purposes, Lawrence mischaracterizes the Committee's filings in *In re Stoddard*, No. 07-BG-148. *See*, Pet. at 4. The court denied Stoddard's petition for review. Stoddard had requested, as does Lawrence now, a court order accelerating the Committee's character and fitness determination. Stoddard's petition ignored, as Lawrence's petition attempts to ignore, the circumstances reflecting both the prematurity and unreasonableness of such request, as well as the impracticality of such acceleration. The court should deny Lawrence's petition for the same reasons that it had denied Stoddard's petition. See discussion *infra* at 5-6.

2

voluminous file. These include, among other things, a 2002 criminal conviction, a variety of unpaid and defaulted debts and unpaid judgments, and multiple other reasons for which the bar admissions authorities (and the respective Supreme Courts) in both Michigan and Florida denied him admission on character and fitness grounds.

In 2001, Lawrence had applied for admission to the Florida Bar on examination. On February 18, 2005, following an investigation and a formal hearing, the Florida Board of Bar Examiners issued findings of fact, conclusions of law, and a recommendation that Lawrence's Florida bar application be denied on character and fitness grounds. On Lawrence's petition for review, the Florida Supreme Court denied his application for admission on December 19, 2005.[4]

In August 2004, Lawrence had applied for admission to the Michigan Bar on examination.[5] There was an investigation and formal hearings before both a Character Committee and the Michigan State Board of Law Examiners. On June 14, 2006, the Michigan State Board issued a 21-page Opinion, with findings of fact, concluding that Lawrence's Michigan bar application be denied on, among other things, character and fitness grounds.

On September 9, 2006, Lawrence filed a federal lawsuit against the Michigan Bar authorities. The action was filed in the U.S. District Court for the Western District of Michigan. The lawsuit challenges the denial of Lawrence's Michigan bar application.[6] That litigation is still pending. After the district court dismissed the suit, Lawrence appealed to the U.S. Court of Appeals for the Sixth Circuit on December 15, 2006. *See*, Pet. at 2, ¶ 6. The Committee is awaiting the finality of that litigation as a necessary part of its character and fitness investigation, as discussed in more detail *infra*.

---

[4] Lawrence had filed a federal lawsuit against the Florida Bar authorities and the Chief Justice of the Florida Supreme Court. In 2005, the U.S. District Court (N.D. Fla.) dismissed the suit. On September 21, 2006, the U.S. Court of Appeals for the 11th Circuit affirmed the dismissal.

[5] Lawrence previously had applied to the Michigan Bar in 2001. However, his bar exam results were not certified because he had not obtained character and fitness clearance from the State Bar of Michigan Standing Committee Character and Fitness. He withdrew his application in October 2002. In August 2004, Lawrence reapplied for admission in Michigan. *See, In re Lawrence*, Opinion by the State of Michigan Board of Law Examiners, June 14, 2006, at 1.

[6] Lawrence had filed an earlier federal action in Michigan against the Michigan Bar authorities and the justices of the Michigan Supreme Court. In 2003, the U.S. District Court (W.D. Mich.) dismissed the action. In 2006, the U.S. Court of Appeals for the 6th Circuit court affirmed the ruling of the district court.

Laurence's assertion that his bar application here "has lingered since its filing in May 2006," (*see* Motion at 1, ¶2), is misleading. Passing the bar examination is a prerequisite to the Committee's detailed investigation of an exam applicant's character and fitness. Lawrence was not even declared successful on the D.C. bar examination until October 2006. The Committee members first saw his file around the most recent Christmas-New Year holiday period. Thereafter the Committee responded in detail to Lawrence's various requests, and it requested additional information and documents from Lawrence. *See,* Committee letter to Lawrence, January 24, 2007, a copy of which is appended hereto as Exhibit B.

The record before the Florida and Michigan bar authorities, and the related litigation, alone, is voluminous. The Committee, with its limited resources, will be required to devote substantial time and effort to review and analyze these records, together with the other voluminous documents already in its file. In this regard, Lawrence has hindered the Committee's character and fitness investigation by refusing the Committee's formal request that he provide certain relevant litigation documents in a format other than on a compact disk ("CD").[7] (*See,* Exh. B hereto, Committee letter, Jan. 24, 2007, at page 2.)[8] This, also, has hindered the Committee in determining, preliminarily, Lawrence's present moral character and fitness to practice law, and whether or not the Committee is willing to certify him for admission.

Perhaps most significantly, there is not yet any finality to Lawrence's pending court challenge to the Michigan Bar's decision denying Lawrence admission to its Bar on character and fitness grounds. Consequently, the Committee is not in a position to determine the extent to which it may rely on findings of fact in the Michigan proceedings. Therefore, the Committee reasonably is waiting for Lawrence's current Michigan federal litigation to be concluded.

---

[7] The Committee, as an arm of the Court of Appeals, accepts documents in the same format as is required by the court. In this regard, the Clerk of Court has advised that the court accepts filings and documentary evidence only in hard copy form. The Committee has followed suit. This is particularly important since the Committee must submit to the court a paginated written record, in hard copy format, following the Committee's formal hearings.

[8] Lawrence apparently believes, mistakenly, (1) that the electronic filing procedures of the D.C. Superior Court apply to the Court of Appeals, and (2) that the Committee has accepted for consideration documents submitted in electronic format (CD) from another applicant. *See* note 7 *supra.*

4

In his petition, Lawrence attempts to shoehorn his case prematurely into the ambit of Rule 46(f)(1), which states, in pertinent part, as follows:

> **** <u>If the Committee is unwilling to certify an applicant,</u> it shall notify the applicant of the choice withdrawing the application or requesting a hearing. [Emphasis added..]

Laurence contends that he presently is entitled to a Rule 46(f) hearing, arguing (apparently based solely on his own inference) that the Committee has determined that it "is unwilling to certify" him. *See*, Pet at 3, ¶ 9. That is incorrect. The Committee has not completed its character and fitness investigation, and therefore it has not made – and indeed cannot yet make – a preliminary determination as to its position on his application. That is because, among other things, the final outcome of Lawrence's Michigan Bar litigation – now pending in the federal courts – will significantly affect the Committee's preliminary determination whether or not to certify Lawrence.

Curiously, Lawrence cites a bar admission case that cuts against his own arguments, *i.e.*, *In re Stoddard*, DCCA No. 07-BG-148. *See*, Pet. at 4. The similarities between the two cases are striking:

- Like Lawrence, Stoddard is an applicant for admission to the D.C. Bar on examination.
- Like Lawrence in Florida and Michigan, Stoddard had been denied admission to the Florida Bar on character and fitness grounds.
- Like Lawrence in Florida and Michigan, Stoddard filed a federal lawsuit challenging Florida's denial of his bar application.
- Like Lawrence's Michigan federal litigation, Stoddard's Florida federal litigation is still pending.
- Like Lawrence, Stoddard filed a petition seeking the Committee's immediate decision on his bar application before his federal litigation was finally adjudicated and before the Committee had determined its preliminary position on his application.

On May 2, 2007, the court denied Stoddard's petition for review. Like cases should be treated alike. On the same basis that the court denied Stoddrad's similar petition, it should deny

5

Lawrence's petition.

As to the investigation of the issues arising from Lawrence's bar application, the Committee is proceeding reasonably, in its regular order, within the constraints of its limited resources.[9] In view of the panoply of character and fitness factors arising from Lawrence's application, each of which the Committee needs to investigate and analyze, the Committee submits that Lawrence's impatience with the Committee's regular process is unfounded. That process is not yet complete, since the Committee is awaiting the final adjudication of Lawrence's Michigan court proceedings regarding his bar application there. Therefore, as discussed above, the Committee reasonably has not yet determined its preliminary position on his application. Accordingly, Lawrence presently is not entitled to a Rule 46(f) formal hearing.

## CONCLUSION

The Committee intends to investigate and analyze all of the issues raised in the petitioner's bar application, and to make a determination as to its preliminary position on them, as soon as it is able to do so. This will be done within the framework of the Committee's regular operations and workload circumstances, following final adjudication of Lawrence's pending federal court challenge to the denial of his Michigan bar application on character and fitness grounds. The instant petition is unfounded and, at best, grossly premature.

For the reasons stated herein, the Committee recommends that the relief sought in the petition, and in the motion for expedited consideration, be denied.

---

[9] The Committee currently is investigating and determining character and fitness issues on a large number of other cases pre-dating the relatively recent Lawrence matter.

Respectfully submitted,

Mark S. Carlin
Chairman
Committee on Admissions
500 Indiana Avenue, NW, Room 4200
Washington, DC 20001
202/879-2710

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was mailed this filing date to Frank J. Lawrence, 941 Westview Road, Bloomfield Hills, MI 48304.

Mark S. Carlin
Chairman
Committee on Admissions

7

Philip J. Stoddard, J.D.
258 Laguna Court
St Augustine, FL 32086
(904)797-5380

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**PHILIP J. STODDARD J.D.,**

     **Plaintiff/Intervenor,**

vs.

**MARK S. CARLIN, ALAN H.
KENT, and FIVE UNKNOWN
MEMBERS OF THE DISTRICT
OF COLUMBIA COMMITTEE
ON ADMISSIONS, an
administrative agency organized
under a Rule of the District of
Columbia Court of Appeals, each in
their personal capacity and in their
official capacity, jointly and
severally,**

     **Defendants.**

                  /

Case No. _07-00288 (KCL)_

# INTERVENOR'S COMPLAINT FOR DECLARATORY AND
# INJUNCTIVE RELIEF AND DAMAGES

PLAINTIFF/INTERVENOR, PHILIP J. STODDARD, J.D., pro se, sues the

defendants, jointly and severally, and shows the court:

## I. INTRODUCTION

Whether characterized as a "right" or "privilege," a person cannot be prevented from practicing law for arbitrary reasons or in a manner that offends the Due Process or Equal Protection Clauses of the Fourteenth Amendment. "The practice of law is not a matter of the State's grace" (Schware v. Board of Bar Examiners of New Mexico, 353 U.S. 232 n. 5 (1957)): arbitrary, subjective and politically motivated bar application decisions are unlawful. While the Plaintiff has not been finally denied admission to the District of Columbia Bar, the undue administrative delay is the equivalent of final agency action considering the extreme hardship to which the Plaintiff has been and will be subjected. The allegations below and the evidence to be introduced will leave no doubt as to the unlawfulness of the Defendants' past conduct and of Defendants' intention to impose further grave constitutional injuries upon the plaintiff under color of the unconstitutional rules and policies challenged by this lawsuit and in the face of clearly established rights of which the Defendants are fully aware.

Mr. Stoddard, initiated a District of Columbia Bar application proceeding in May, 2006, that remains pending before the Defendants, all members of the District of Columbia Committee on Admissions (the "Committee"), as of the date of the filing of this action. In October, 2006, Defendants served the plaintiff with notice that he had passed the Bar Exam and that the Committee was "reviewing his application." As of the date of this filing, after more than thirteen months of application processing and an unsuccessful petition for a hearing and opportunity to contest the Defendants' refusal to act, the Defendants are still "reviewing" Mr. Stoddard's application. According to its filings in the state proceeding, the Defendants purport that Mr. Stoddard's voluminous application file (made "voluminous" by bar examiner requests for incredible amounts of immaterial information) reveals "multiple serious character

2

issues" (without any explanation as to why they consider the issues "serious") and that his voluminous file requires detailed study before the Defendants will be willing to *announce a position* on his application. According to the Defendants' own admissions and other available evidence, this "review," unless relief is forthcoming, *will not be completed within the next several years.*

In the face of plaintiff's prima facie showing of present "good moral character," Defendants have harassed plaintiff with intrusive inquiries into private matters that have no rational or relevant connection to his present fitness for law practice or "good moral character." Defendants have arbitrarily and capriciously deprived the plaintiff of his constitutionally protected right to a fundamentally fair licensing procedure and his fundamental right, as clearly stated on the face of the Constitution, to protection from legislative or administrative punishment for any reason and especially expressing protected free speech and accessing the courts.

Plaintiff asserts that Defendants' unpublished and unpromulgated general rules and policies, prolonged, extensive and unreasonable intrusive investigations and follow-up inquiries violate the Due Process Clause of the Fifth Amendment because they are a proxy for politically motivated arbitrary or capricious subjective licensing decisions. Plaintiff argues that the defendants' actions in his case are *ultra vires* and clearly violative of established constitutional, statutory and decisional law. By these allegations plaintiff shows that the defendants' conduct manifests such a callous and mean-spirited disregard for the plaintiff's constitutional rights, that he is entitled to recover money damages under 42 U.S.C. § 1983 for violations of the First and Fifth Amendments, and Article I, Sec. 9, Const. U.S. For one who has invested heavily in the educational preparation for law practice and who has passed the

3

Bar Examination, exclusion from law practice on moral character grounds, even temporarily,

is a stigmatizing punishment that is prohibited as being punishment under a "Bill of

Attainder" unless the government shows at least a rebuttable presumption of lack of "good

moral character" grounded on competent evidence (e.g., a judgment of conviction or other

reliable evidence) and provides appropriate due process for rebutting the presumption.

## II. JURISDICTION-VENUE

1. Jurisdiction of the Federal Court is pursuant to 28 U.S.C. § 1331, and 28 U.S.C. §

1343, to consider violations of Article I, Sec. 9 of the Constitution of the United States, the

First Amendment, Due Process Clause of the Fifth Amendment and 42 U.S.C. § 1983

("Section 1983").

2. The only available judicial remedy against interlocutory regulatory misconduct in

bar application proceedings in the District of Columbia lies in this Court. Although the

"Exhaustion of Administrative Remedies Doctrine" does not apply in Cases brought under

Sec. 1983, Plaintiff has exhausted available state remedies as a courtesy to the DC Court of

Appeals and to this Court (Exhibits A-F). The District of Columbia does not offer a judicial

remedy because qualifying for admission to the Bar in the District is entirely administrative in

nature from start to finish, being regulated pursuant to a congressional delegation of

legislative authority. Since no state judicial court has acted on the plaintiff's claim of a

*present right* to admission to the practice of law, the denial of that right by administrative

stonewalling is a case or controversy within the meaning of Article III of the Constitution of

the United States, and this court has jurisdiction to award all of the relief requested.

3. Plaintiff has reserved his federal claims for litigation in this court pursuant to

England vs. Louisiana Board of Medical Examiners, 375 U.S. 411 (1964), by filing an

4

appropriate notice in the state administrative proceeding. Further, the Defendants have taken

the litigation position that interlocutory review of their conduct is jurisdictionally barred

because administrative delay is not an "extraordinary circumstance."

4. Venue is proper pursuant to 28 U.S.C. § 1391(b) because all of the defendants can

be served in this district.

### III. PARTIES

5. PLAINTIFF, PHILIP J. STODDARD, is a citizen of the United States and an

applicant for admission to the practice of law in the District of Columbia, who currently

resides at 258 Laguna Court, St. Augustine, Florida 32086.

6. DEFENDANT, MARK S. CARLIN is the current Chairman of the District of

Columbia Committee on Admissions, who purports authority to investigate bar applicant

moral fitness and to adjudicate the issue of whether the applicant is morally fit to practice law

at the conclusion of such investigation. In performing his purported investigative activities,

CARLIN by misfeasance or malfeasance, was primarily responsible for applying the illegal

rules and practices of the Committee herein alleged. This defendant is sued in his personal

and in his official capacities.

7. DEFENDANT, ALAN H. KENT, is the General Counsel for the District of

Columbia Committee on Admissions who purports authority to investigate applicant moral

character, prosecute "specifications" at formal hearings, and then adjudicate the issue of

whether the applicant is morally fit. In performing his advisory duties and his purported

investigative and prosecutorial activities, KENT, by misfeasance or malfeasance, was

primarily responsible for developing the illegal rules and practices of the Committee herein

alleged. This defendant is sued in his official and in his personal capacities.

5

8. DEFENDANTS, FIVE UNKNOWN AGENTS OF THE DISTRICT OF COLUMBIA COMMITTEE ON ADMISSIONS, are individuals who have acted in concert with the above named defendants and who may be directly or vicariously liable for developing and applying unlawful rules and policies. The identities and locations of these individuals have yet to be determined.

### III. FACTS

9. Petitioner filed his application for admission to the District of Columbia Bar on May 2, 2006 and submitted the fee for an NCBE character investigation and report.

10. On October 6, 2006, Petitioner was notified that he had passed all parts of the District of Columbia Bar Examination.

11. On knowledge and belief, as of October 23, 2006, the Committee on Admissions had received the NCBE character report. On further knowledge and belief, the report disclosed nothing that could be disqualifying for bar admission in the District of Columbia.

12. On or about October 23, 2006, Petitioner was advised by letter that the Committee was reviewing his application.

13. On or about November 28, 2006, Petitioner called to ascertain the status of the application and was advised that he would be notified by letter of the Committee's decision within seven days.

14. The decision did not come. On December 5, 2006, Petitioner followed up the telephone call with a letter again requesting a decision on the application.

15. On December 15, 2006, Petitioner received a letter requesting additional documents.

16. Petitioner, as a courtesy, substantially complied with the request for additional

6

documents on January, 2, 2007, by submitting litigation and Florida Bar application materials on a Compact Disk.

17. On February 5, 2007, a full 30 days after Petitioner complied with Respondent's request for documents, Respondent replied by letter purporting a "long standing policy" of only permitting applicants to submit requested documents on paper, refusing to accept documents submitted on electronic media and demanding paper copies of all of the documents on the Compact Disk.

18. On February 8, 2007, Petitioner requested relief from the undue delay and excessive cost and labor of making hard copies by letter and again demanded a decision.

19. As of March 9, 2007, there had been no response to the Petitioner's letter of February 8th and a decision on the petitioner's application had been overdue for at least four months. Plaintiff filed a petition for review of the interlocutory agency action (stonewalling) with the District of Columbia Court of Appeals which denied relief (Exhibits A-F).

20. The withholding of Petitioner's moral character certification and license to practice law is a serious hardship and deprivation of Petitioner's opportunity to advance his earnings in his chosen profession.

21. Thirteen months of application processing in the face of a positive NCBE report is *prima facie* unreasonable. So are any unpublished policies, procedures and character standards that purport authority for such undue and lengthy investigation.

22. As evidenced by the DC Court of Appeals summary denial of relief, Plaintiff does not have an adequate remedy at law for relief from the undue delay and reasonably believes that he is being subjected to and threatened with arbitrary denial of his right to engage in his chosen profession.

7

23. The Committee on Admissions is violating the rules which controls its exercise of discretion: while the rules do not expressly state a time limit, proper regard for Due Process requires a timely decision and D.C. App. Rules 46(d), 46(e) and 46(h)(1) necessarily imply that certification or notice of reasons for withholding certification is due at the time the respondent has received and reviewed the NCBE character report.

24. In furtherance of their unlawful exclusionary scheme, the defendants are unlawfully harassing and punishing the Plaintiff with "heightened scrutiny" of his entire life. Defendants have chilled plaintiff's fundamental free speech rights, defamed the plaintiff, assassinated the plaintiff's character and are unreasonably probing into private and privileged matters without regard as to whether the matters were rationally related to plaintiff's present fitness for law practice.

25. At all times relevant to these allegations, the defendants were and are operating under color of the laws of the District of Columbia and Rules promulgated thereunder with notice and knowledge that their policies, procedures and conduct were unlawful.

FIRST CAUSE OF ACTION - ART. I, Sec. 9, Const. U.S.; Amendment V, Const. U.S. (Due
Process Clause); 42 U.S.C. § 1983

PLAINTIFF sues the Defendants and shows the Court:

26. This is an action for declaratory and injunctive relief. Plaintiff re-alleges and incorporates by reference, all prior allegations.

27. For government action adversely affecting an individual citizen, not under any civil disability, to constitute a legitimate regulatory measure, government must show that the affected party can avoid regulation by altering a present course of conduct. Otherwise, the action is per se punitive. Defendants have no competent or substantial evidence that the

plaintiff is presently engaged in any course of conduct that a reasonable official might consider disqualifying from professional licensing.

28. Defendants' purport that the Plaintiff's application shows "multiple serious character issues," including "DUI and other arrests, tax liabilities and other unpaid debts, failure to pay court ordered child support and history of alcoholism and mental disorders" (Exhibit C). Defendants, according to their own rules, the Constitution and the decisional law of the United States Supreme Court, are required to produce evidence showing that these matters, considering that the Plaintiff was never convicted of any wrongdoing, are "presently relevant to law practice" at a timely, properly convened administrative proceeding and provide detailed judicially reviewable explanations in support of any adverse decision. Otherwise, the allegations are nothing more than mere mudslinging. Failure to provide opportunity for hearing under these circumstances violates clearly established law.

29. Exclusion or Disqualification from an occupation by a state licensing authority is historically regarded as criminal punishment because it imposes a civil disability. Defining "disqualifying conduct" requires substantive lawmaking. As to the District of Columbia, defining disqualifying conduct is within the exclusive province of the United States Congress read in light of the Full Faith and Credit Clause of the United States Constitution. The District of Columbia Committee on Admissions may not lawfully erect artificial barriers to admission by making up or applying subjective moral character standards and arbitrarily characterizing applicants' past personal problems "multiple serious character issues."

30. The matters alluded to in Paragraph 28, above, are so far in the distant past or so trivial that they cannot be disqualifying for admission under any lawful standard. For example, the DUI arrest occurred in 1979 and did not result in a conviction. The child

support defaults were in 1979-1988 and the arrearage judgment arising out of those defaults was satisfied. As of the date of the Plaintiff's bar application, he was not in default on any taxes or any other legal or moral obligation. Purporting that these matters rise to the level of "serious moral character issues" in 2007 is incredible and amply demonstrates the excesses of which bar examiners are capable when they ignore lawful published objective standards (criminal code) and substitute political considerations or personal bias. On knowledge and belief, discovery will show that the real reason for the Defendants' action is that the Plaintiff was *black-balled* in Florida for whistle blowing on allegedly corrupt practices by powerfully "connected" Florida attorneys, including a former chairman of the Florida Judicial Qualifications Commission and a former state senator. Defendants are merely cooperating with their Florida colleagues.

31. Defendants are operating under the following unpublished, unpromulgated and unlawful rules of general applicability which adversely impact applicant rights and which violate clearly established law of which the Defendants are aware and of which the Defendants are required to be aware:

(a) a policy or standard, generally applicable to all applicants, that past acts of privileged conduct that are not materially related to the practice of law, that are not presently punishable under criminal law, or that were never punished and that may be merely embarrassing, may be deemed to be "adverse matters" and grounds for exclusion from the practice of law either temporarily or permanently;

(b) a rule, generally applicable to all applicants, pursuant to which the defendants may sweep in and consider "adverse matters" without any time constraints

or objective criteria by which to measure the extent to which such matters are relevant to "present fitness for law practice";

(c) a policy, generally applicable to all applicants, pursuant to which the defendants require an applicant who has never been accused of a crime or any act of moral turpitude or been the subject of an attorney disciplinary order to defend himself against allegations of past so called "misconduct" framed up out of subjective opinions or legal conclusions unsupported by any findings of fact or guilt by a competent tribunal;

(d) A policy, generally applicable to all applicants, pursuant to which the defendants purport authority for indefinite admission delays without providing a hearing to challenge any purported reasons for the delay;

(e) A policy, generally applicable to all applicants, pursuant to which the Defendants purport authority for ad-hoc in-house investigations (freelance muckraking) of applicants by committee members who then "change hats" and adjudicate issues related to moral character and fitness;

(f) a policy, generally applicable to all applicants, pursuant to which the Defendants purport authority to withhold moral character certification because an applicant is a party in pending litigation against a foreign state bar admissions authority; and,

(g) a policy, generally applicable to all applicants, pursuant to which the Defendants purport authority to consider and even re-litigate foreign state administrative bar admission decisions.

11

SECOND CAUSE OF ACTION - ART. I, Sec. 9, Const. U.S.; Amendment V, Const. U.S. (Due Process Clause); Amendment I, Const. U.S.; 42 U.S.C. § 1983

PLAINTIFF sues the Defendants and shows the Court:

32. This is an action for damages. Plaintiff re-alleges and incorporates by reference, all prior allegations.

33. Defendants have retaliated against the Plaintiff for filing civil rights suits in Florida.

34. As a result of the defendants' trampling of plaintiff's constitutional rights, plaintiff has been forced to expend considerable sums of money seeking relief from the defendants' unlawful acts and to repair the damage to his good name and reputation.

35. Plaintiff has incurred and will incur loss of revenues that plaintiff could have reasonably anticipated had his application for admission not been unlawfully delayed.

36. Plaintiff is unable at this time to calculate exactly or finally the amounts of the damages he has incurred or that he will incur as a consequence of the unlawful acts of the defendants. Plaintiff alleges that but for the unlawful acts by defendants he would have been admitted to practice law in the District of Columbia, would have opened a law office and would have established a successful practice.

37. Plaintiff has suffered and continues to suffer mental pain and anguish, emotional stress and humiliation as a direct result of defendants' unlawful conduct.

RELIEF DEMANDED

WHEREFORE, Plaintiff demands relief as follows:

A. a declaratory judgment finding that the following unpublished and unpromulgated policies or rules violate the Constitution:

(1) The policy or standard by which the Defendants consider past acts of privileged or private conduct that are not presently and materially related to the practice of law, that are not presently punishable under criminal law, or that were never punished and that may be merely embarrassing, may be deemed to be "adverse matters" and grounds for exclusion from the practice of law either temporarily (abeyance/ bureaucratic limbo) or permanently;

(2) The rule or policy, generally applicable to all applicants, pursuant to which the defendants may sweep in and consider "adverse matters" without any time constraints or objective criteria by which to measure the extent to which such matters are relevant to "present fitness for law practice";

(3) The rule or policy, generally applicable to all applicants, pursuant to which the defendants require an applicant who has never been accused of a crime or any act of moral turpitude or been the subject of an attorney disciplinary order to defend himself against allegations of past so called "misconduct" framed up out of subjective opinions or legal conclusions unsupported by any findings of fact or guilt by a competent tribunal;

(4) The rule or policy, generally applicable to all applicants, pursuant to which the defendants purport authority for indefinite admission delays without providing a hearing to challenge any purported reasons for the delay;

(5) The rule or policy, generally applicable to all applicants, pursuant to which the Defendants purport authority for ad-hoc in-house investigations of applicants by committee members who then "change hats" and adjudicate issues related to these same applicants' moral character and fitness;

13

(6) The rule or policy, generally applicable to all applicants, pursuant to which the Defendants purport authority to withhold moral character certification because an applicant is a party in pending litigation against a foreign state bar admissions authority or any other civil litigation; and,

(7) The rule or policy, generally applicable to all applicants, pursuant to which the Defendants purport authority to consider and even re-litigate foreign state administrative bar admission decisions.

B. entry of a preliminary and permanent injunction which:

(1) enjoins the Defendants from personally investigating the Plaintiff or any other Bar applicant and requiring any investigations to be performed by the National Conference of Bar Examiners or by duly licensed independent private investigators pursuant to objective investigative criteria, limiting the inquiries to matters presently relevant to law practice; and,

(2) Requires the Defendants to either hold an immediate hearing on the reasons for delaying action on the Plaintiff's bar application or compliance with the Admission Rules requiring Notice of Reasons for withholding character certification and opportunity for hearing.

C. an award of money damages to compensate the plaintiff for the injuries he has suffered because of the defendants' *ultra vires*, unlawful acts;

D. an award of punitive damages against the defendants as a deterrent against similar future conduct by these defendants or others;

E. an award of all costs of this action, including reasonable attorney fees pursuant to 42 U.S.C. § 1988 should Plaintiff retain counsel;

14

F.  such further injunctive and other relief as this Court deems appropriate; and,

G.  retention of jurisdiction for the enforcement of the injunctive orders.

Respectfully submitted,

Philip J. Stoddard, J.D., pro se
258 Laguna Court
St Augustine, FL 32086
Phone/FAX (904)797-5380

CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing together with the attached exhibits were furnished via U.S. Postal Service First Class Mail service to the following parties/counsel of record on June _26_, 2007:

Frank J. Lawrence, Jr.
Plaintiff, Pro Se
941 Westview Road
Bloomfield Hills, MI  48304

Andrew J. Saindon, Esq.
Assistant Attorney General
Equity I Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001

Philip J. Stoddard, J.D.

# EXHIBIT A (TO COMPLAINT)

IN THE DISTRICT OF COLUMBIA COURT OF APPEALS

IN THE MATTER OF                                    APPEAL NO. 07-BG-148

      PHILIP J. STODDARD,
      an applicant for admission to the Bar
      of the District of Columbia,

          Petitioner

                                     DC COA APPLICATION
          vs.                            FILE NO: 35780

      THE DISTRICT OF COLUMBIA COURT
      OF APPEALS, COMMITTEE ON ADMISSIONS,
      an administrative agency organized under
      a rule of the District of Columbia
      Court of Appeals,

          Respondent.

_____/

## PETITION FOR REVIEW OF INTERLOCUTORY AGENCY ACTION

### I. INTRODUCTION

"[W]hen the case is proved, and the hour is come, justice delayed is justice

denied." Geo. Walter Brewing Co. v. Henseleit, 132 N.W. 631, 632 (Wis. 1911)(quoting

Wm. Gladstone[1]).   To any applicant for admission to the Bar, this often quoted maxim

has special meaning.  Everyone connected with the bar admissions process understands

the portent of the following text:

        [T]he requirements of *procedural due process* must be met before a State
        can exclude a person from practicing law. "A State cannot exclude a person from
        the practice of law or from any other occupation in a manner or for reasons that
        contravene the Due Process or Equal Protection Clause of the Fourteenth

---

[1]  The statement has its origins in Par. 40 of the Magna Carta: "To no one will we sell, to
no one deny or delay right or justice."

Amendment." *Schware* v. *Board of Bar Examiners*, 353 U.S. 232, 238-239. As the Court said in *Ex parte Garland*, 4 Wall. 333, 379, the right is not "a matter of grace and favor."

Willner vs. Character and Fitness Committee, 373 U.S. 96, 102 (1963); Schware vs New

Mexico Board of Bar Examiners, 353 U.S. 232 (1957); Konigsberg v. State Bar Of

California, 353 U.S. 252 (1957)(Konigsberg I); Konigsberg vs. State Bar of California,

366 U.S. 36(1961)(Konigsberg II.); "A State can require high standards of qualification,

such as good moral character or proficiency in its law, before it admits an applicant to the

bar, but any qualification must have a rational connection with the applicant's fitness or

capacity to practice law." Schware 353 U.S. at 238.

Undue delay in certifying "good moral character" deprives an applicant of his

procedural due process right to timely consideration of his claim, is *prima facie* punitive,

has serious collateral consequences for an adversely affected bar applicant, and is

prohibited by Art. I, Sec.9 Const. U.S. and the Due Process Clause of the Fifth

Amendment. In Konigsberg II, Justice Harlan, writing for the majority observed:

> [T]he State's action [does not] bear any of the hallmarks of a bill of attainder or of an ex post facto regulation, see Cummings v. Missouri, 4 Wall. 277; cf. United States v. Lovett, 328 U.S. 303, especially in light of the fact that *petitioner was explicitly warned in advance of the consequences of his refusal to answer.* . . . So far as this record shows Konigsberg was excluded only because his refusal to answer had impeded the investigation of the Committee, *a ground of rejection which it is still within his power to remove.* (Emphasis supplied)

Konigsberg II, at 366 U.S. 47.

Here, at the moment the Respondent had possession of clear and convincing

evidence that the petitioner "possesse[s] good moral character," D.C. App. Rule 46(e),

the petitioner was entitled to the requisite certification and recommendation. D.C. App.

2

Rule 46(h)(1)[2]. This court's policy requires a determination of whether the applicant, *as of the time of application*, has the good moral character necessary for admission to the bar.  In re Manville, 538 A.2d 1128, 1132 (D.C. 1988) (en banc).

Under Manville, respondent may not lawfully hold the petitioner's application in abeyance waiting for potentially disqualifying "adverse matters" to appear.  Nor may it lawfully manufacture delay by imposing arbitrary and burdensome conditions pursuant to ad-hoc rules or policies (stonewalling) to which the Petitioner will certainly object.

As grounds for granting the relief, Petitioner shows the following allegations and memorandum of law.

## II. JURISDICTION

This court has jurisdiction pursuant to D.C. App. Rule 46(g)(3).  The facts alleged show extraordinary circumstances (rule violations) and a good faith attempt to avoid this litigation.  The DC Court of Appeals has absolute authority in bar admission matters and need neither wait for action by the Committee on Admissions nor defer to its rule interpretations or factual findings.  In re Baker, 579 A.2d 676, 680 (D.C. App. 1990). Agency inaction when action is due triggers the right to review.  In Sierra Club v. Thomas, the U.S. Circuit Court of Appeals for the District of Columbia observed that:

> [A]gency inaction may represent "agency recalcitrance . . . in the face of a clear statutory duty . . . of such magnitude that it amounts to an abdication of statutory responsibility".  Examples of such clear duties to act include provisions that require an agency to take specific action when certain preconditions have been met.  When an agency violates such a duty through inaction, 'the court has

---

[2]   The Rule provides:  The Committee shall file with the court a motion to admit the successful applicants by examination . . . after successful completion of a character and fitness study.
The Respondents, as a matter of practice and policy, delegate the "character and fitness study" to the National Conference of Bar Examiners.  The study is complete when the respondents take possession of the NCBE report.

the power to order the agency to act to carry out its substantive statutory mandates'.

Sierra Club v. Thomas, 828 F.2d 783, 793 (Circ. D.C. 1987).

### III. FACTS

1.  Petitioner filed his application for admission to the Bar on May 2, 2006 and submitted the fee for an NCBE character investigation and report.

2.  Petitioner was notified that he had passed all parts of the District of Columbia Bar Examination on October 6, 2006 (Exhibit A) and that the Committee was holding action in "abeyance."

3.  On knowledge and belief, as of October 23, 2006, the Committee on Admissions had received the NCBE character report.  On further knowledge and belief, that report disclosed nothing that could be disqualifying for bar admission in the District of Columbia.

4.  On or about October 23, 2006, Petitioner was advised by letter that the Committee was reviewing his application (Exhibit B).

5.  On or about November 28, 2006, Petitioner called to ascertain the status of the application and was advised that he would be notified by letter of the Committee's decision within seven days.

6.  The decision did not come.  On December 5, 2006, Petitioner followed up the telephone call with a letter again requesting a decision on the application.

7.  On December 15, Petitioner received a letter requesting additional documents (Exhibit C).

8.  Petitioner, as a courtesy, substantially complied with the request for additional documents on January, 2, 2007, by submitting litigation and Florida Bar application

4

materials on a Compact Disk (Exhibit D).

9.  On February 5, 2007, a full 30 days after Petitioner complied with Respondent's request for documents, Respondent replied by letter (Exhibit D) purporting a "long standing policy" of only permitting applicants to submit requested documents on paper, refusing to accept documents submitted on electronic media and demanding paper copies of all of the documents on the Compact Disk (Exhibit E).

10.  On February 8, 2007, Petitioner requested relief from the undue delay and excessive cost and labor of making hard copies by letter (Exhibit F) and again demanded a decision.

11.  As of March 9, 2007, there has been no response to the Petitioner's letter of February 8th and a decision on the petitioner's application has been overdue for at least four months.

12.  The withholding of Petitioner's moral character certification and license to practice law is a serious hardship and deprivation of Petitioner's opportunity to advance his earnings in his chosen profession.

13.  Four months of further investigation in the face of a positive NCBE report is *prima facie* unreasonable.  So are any unpublished policies, procedures and character standards that purport authority for such undue and lengthy investigation.

16.  The Petitioner does not have an adequate remedy at law for relief from the undue delay and reasonably believes that he is being subjected to and threatened with arbitrary denial of his right to engage in his chosen profession.

17.  The circumstances are extraordinary: the Committee on Admissions is violating its rules and the law which controls its exercise of discretion: while the rules do

5

not expressly state a time limit, proper regard for Due Process requires a timely decision

and D.C. App. Rules 46(d), 46(e) and 46(h)(1) necessarily imply that certification is due

at the time the respondent has received and reviewed the NCBE character report.

18. The Petitioner, by these allegations and the incorporated memorandum has

shown that he is entitled to relief from further inquiry and investigation and the

unreasonable withholding of final agency action on the administrative determination of

his moral character and fitness to practice law.

### III. MEMORANDUM OF LAW.

A. THE COMMITTEE IS VIOLATING D.C. APP. RULE 46(f)(1).

This court understands the urgency attending licensing matters. D.C. App. Rule

46(f) provides:

> In determining the moral character and general fitness of an applicant for
> admission to the Bar, the Committee may act without requiring the applicant to
> appear before it to be sworn and interrogated. *If the Committee is **unwilling to
> certify** an applicant, it shall notify the applicant of the choice of withdrawing the
> application or requesting a hearing.* (emphasis supplied)[3]

This rule means exactly what it says: there is absolutely no authority to sit on an

application while the Committee "goes fishing" for cumulative evidence hoping to gain

support for a negative recommendation and D.C. App. Rule 46(d) impliedly prohibits that

kind of conduct[4]. The <u>Manville</u> case conclusively settles any ambiguity. Further, under

---

[3] The Committee's discretion under the first sentence is limited and qualified by the
second. The Committee must be able to show good cause for a preliminary "informal
interview." It may not use such a proceeding as a pretext for a fishing expedition. In
cases where the applicant shows a significant criminal history or other disqualifying
conduct, the interview can aid the Committee in making the decision whether to order an
independent investigation. <u>Manville</u>.

[4] Rule 46(d) provides that the Committee shall not certify an applicant for admission *until*
he or she demonstrates good moral character and general fitness to practice. The logical
corollary is "the Committee shall certify an applicant at the time the applicant has

exceptional circumstances, the Committee or an applicant may actually need unusual amounts of time – this is not one of those cases. The Committee on Admissions has a full and complete file on the petitioner including a vast collection of information that is in no way relevant to the Petitioner's "present good moral character" Petitioner has settled any "fitness" issue by passing the bar exam.

> B. THE RESPONDENT'S LETTER OF FEBRUARY 5, 2006 IS NOTICE OF THE RESPONDENT'S UNWILLINGNESS TO ISSUE CHARACTER CERTIFICATION: THE ACTION VIOLATES THE TIME RESTRICTION IMPLICIT IN D.C. APP. RULES 46(d), 46(e) AND THE HEARING REQUIREMENT OF D.C. APP. RULE 46(f)(1).

As argued above, D.C. App. Rules 46(d), 46(e) and 46(h)(1) limit the time at which the respondent must act on a bar application. Rule 46(f)(1) is carefully crafted, and the language specifically chosen, to avoid the situation the Petitioner now faces. By the Respondent's own admissions, in its response to the Petitioner's request for a decision (Exhibit C ), respondent is unwilling to certify unless the Petitioner provides the respondent with a copies of a transcript, Florida Bar application file and all of the litigation documents in two civil rights suits the Petitioner has filed against the Florida Board of Bar Examiners. Rule 46(f) does not authorize this "option." "It is 'axiomatic' that an agency is bound by its regulations." Dell v. Dep't of Employment Servs., 499 A.2d 102, 106 n.2 (D.C. App. 1985); accord, California Human Dev. Corp. v. Brock, 762 F.2d 1044, 1048 n.28 (D.C. 1985). If authority for discretionary action is not found in a valid rule or statute, it simply does not exist.

The Petitioner disclosed the application and litigation matters on his application

---

demonstrated good moral character and general fitness to practice." (the time is made specific by the word "until.") The phrase creates a substantive right to a decision at a time certain.

and the respondent has had free access to the litigation and application documents since the time of the original application. Respondent can easily obtain copies of all of the documents via PACER or upon request from the Florida Board of Bar Examiners. The Petitioner is not required to bear the unreasonable burden of satisfying the respondent's unwarranted request for thousands of pages. Petitioner has indicated that he will comply with a request for hard copies of specific documents.

To a certainty, there is nothing in those documents (well over a thousand pages) that might concern moral character or fall within the scope of a legitimate moral character investigation. Everything the petitioner did, said, or wrote in a litigation context is protected under the First Amendment "Right of Petition," and "Free Speech: it is all privileged speech or conduct. The petitioner was well within his rights filing those lawsuits[5] and the respondent is prohibited from administratively punishing the Petitioner for exercising his rights. Perry vs. Sinderman, 408 U.S. 593 (1972); Punishment under color of bar admission rules is legislative in nature. Cummings vs. Missouri, 71 U.S. 277 (1867); Forester vs. White, 484 U.S. 219 (1988); Dubuc v. Mich. Bd. of Law Examiners, 342 F.3d 610 (6th Cir. 2003).

Further, written administrative findings are hearsay: respondent cannot fairly use any documents authored by a non-judicial employee of a foreign bar admissions authority without complying with the confrontation requirement of Willner, 373 U.S. 96, at 103.

---

[5] In dismissing the Petitioner's current complaint, the District Judge found that the Defendant Officials (including FBBE's General Counsel) enjoyed qualified immunity because "the law was not clearly established," apparently conceding that the Complaint shows facts rising to constitutional right violations. Stoddard vs. Florida Board of Bar Examiners, et. al., Case No. 06-414-CV-4 (Doc. Nos. 1, 47) (N.D. Fla. 2006); Saucier vs. Katz, 533 U.S. 194, 200 (2001). The Court was somehow persuaded that the defendants had made an "honest mistake."

In other words, unless the author of a writing the respondent plans to use as evidence against the Petitioner is subject to a District of Columbia subpoena or is otherwise willing to submit to cross-examination, the writing is excluded from consideration. Refusal to provide cumulative irrelevant or immaterial documents is not grounds for character rejection.  In re Baker, 579 A.2d 676, 685 (D.C. 1990).

Respondent does not have the option of holding applications in abeyance while it "sideline sits" on applicants involved in litigation.  As a practical matter, abeyance, under the circumstances described in this petition, is a proxy for denial of the Petitioner's present claim of the right to practice law.

C. UNDUE DELAY VIOLATES THE FIFTH AMENDMENT.

The constitutional issue in this case is the Petitioner's right to practice his chosen profession for which he is qualified, having invested three years of his life, passed a difficult examination and incurred debt that exceeds $100,000.  Thus, the Petitioner shows more than a mere "unilateral expectation" of obtaining a government benefit.  An interest of this gravity demands the "highest level of due process."  Mathews vs. Eldridge, 424 U.S. 319 (1976),  Law Students Civil Rights Research Center vs. Wadmond, 401 U.S. 154, 174 (1971) (Black J., Douglas J. dissenting).  Further, the public has an interest because, if the Committee is arbitrarily stonewalling applications, the applicants' ability to repay their federally guaranteed student loans will be seriously compromised.  This court and every lawyer understand that substantial licensing delays impose severe collateral consequences on bar applicants.  The stigma attaching to having one's "good moral character" called into question is incalculable and irreparable. As Justice Brennan accurately reflected in Barchi:

9

The District Court found that, in harness racing, even a temporary suspension can irreparably damage a trainer's livelihood. Not only does a trainer lose the income from races during the suspension, but also, even more harmful, he is likely to lose the clients he has collected over the span of his career. (Footnote omitted). Where, as here, even a short temporary suspension threatens to inflict substantial and irreparable harm, an "initial" deprivation quickly becomes "final," and the procedures afforded either before or immediately after suspension are de facto the final procedures. A final full hearing and determination after Barchi had been barred from racing his horses and had lost his clients to other trainers was aptly described by the District Court as an "exercise in futility," 436 F. Supp., at 782, and would certainly not qualify as a "meaningful opportunity to be heard at a meaningful time." To be meaningful, an opportunity for a full hearing and determination must be afforded at least at a time when the potentially irreparable and substantial harm caused by a suspension can still be avoided -- i.e., either before or immediately after suspension.

Barry v. Barchi, 443 U.S. 55, 73-74 (1979) (Brennan, J., concurring in part).

Suspending action on an application for a license to practice law may not rise to the same precise level as suspending the license of a practicing attorney, but it comes in a close second. Because of the enormity of the Petitioner's investment in qualifying for a license, what has been said about suspensions applies equally to unwillingness to certify. The horse trainer in Barchi was losing clients. The Petitioner, while respondent stonewalls his application, is losing the opportunity to pursue his chosen profession. The injury is to a protected liberty interest. Woods v. District of Columbia Nurses' Examining Bd., 436 A.2d 369 (D.C. 1981). Further, the Petitioner has a property interest in his qualifying bar examination scores. The injury is ongoing, incalculable and irreparable.

### III. NOTICE OF ENGLAND RESERVATION

The Court has ample grounds for granting the requested relief under its duly promulgated and published rules regulating the bar admission process in the District of Columbia. In presenting the petition, references to Federal Court decisions and the Constitution of the United States are for the Court's guidance in framing a correct state

10

law decision and are in no way to be construed as inviting adjudication of federal constitutional issues. This Court has notice that Petitioner is expressly reserving any constitutional claims for litigation in the United States District Court for the District of Columbia. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), citing England v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411 (1964).

IV. PRAYER

WHEREFORE, Petitioner, PHILIP J. STODDARD, prays that this Court:

1. Review the material in the Petitioner's application file and issue an order requiring the respondent to issue, forthwith, a proper decision complying with either D.C. App. Rule 46(h)(1) or D.C. App. Rule 46(f)(1).

2. Award the Petitioner reasonable costs incurred in this proceeding including any travel expenses.

Respectfully submitted,

_____

Philip J. Stoddard, J.D.
App. No. 35780
258 Laguna Court
St. Augustine, FL 32086
(904)599-5741
FAX (904)797-5380

11

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of this document has been served on the

following parties: by U.S. Postal Service Certified Mail on March 9, 2007:

MARK S. CARLIN, Esq. as
Chairman of the Committee on Admissions,
1900 M St., N.W., Ste. 601
Washington, D.C., 20036-3519

ALAN H. KENT, Esq.
Counsel for DC COA
1747 Pennsylvania Avenue, N.W., Ste. 300
Washington, D.C., 20006

THE DISTRICT OF COLUMBIA COURT OF APPEALS
COMMITTEE ON ADMISSIONS
c/o JAQUELINE SMITH, Director
500 Indiana Avenue NW, Room 4200
Washington, DC, 2001

_____
Philip J. Stoddard

12

# EXHIBITS



**EXHIBIT A**



### District of Columbia Court of Appeals
#### Committee on Admissions
500 Indiana Avenue, N.W. — Room 4200
Washington, D. C. 20001
202 / 879-2710

10/6/2006

35780

Philip James Stoddard
258 Laguna Court
Saint Agusutine, FL  32086

Dear Applicant,

The Committee on Admissions takes pleasure in advising that you were successful on the July 2006 District of Columbia Bar Examination.

Unless you receive notification from this office to the contrary, your oath of admission will be administered in accordance with the instructions contained in the enclosed letter from the Clerk of the Court.

Rule 46 (b) (11) specifies that an applicant be notified of the results of the examination as well as the scaled score attained on the Multistate Bar Examination. The rule does not provide for disclosure of other scoring information to a successful applicant. The Multistate Bar Examination scaled score you attained on this examination was: 164.6 (If you submitted a prior MBE scaled score in lieu of sitting for that section, your MBE was counted as 133.0 for scoring.)

Sincerely,

*Jacqueline M. Smith*

Jacqueline M. Smith
Director of Admissions

Enclosures



COMMITTEE ON ADMISSIONS
DISTRICT OF COLUMBIA COURT OF APPEALS
500 Indiana Avenue NW, #4200
Washington, DC 20001
October 6, 2006

...........    .............. ...  ..........  ..................................... .........
    35780

RE:    Philip James Stoddard

## NOTICE

This notice is being transmitted to you in lieu of the letter from the Clerk of the District of Columbia Court of Appeals concerning the swearing-in ceremony. At this time, the Committee on Admissions is unable to certify your admission for the reason(s) set forth below:

X̶   The Committee is/will be reviewing your responses on the examination application, and your certification shall be held in abeyance until further notice. **DO NOT** contact the Committee to ascertain which responses require the Committee's consideration. You should receive a letter from the Committee in approximately two to three weeks.

____   Your file does not contain verification that you have attained a minimum scaled score of 75 on the MULTISTATE PROFESSIONAL RESPONSIBILITY EXAMINATION. Please submit the appropriate documentation; do not have the MPRE officials send a copy of your score to the Committee. You have one year's time from the date of this notice within which to attain and submit verification of the required MPRE scaled score. Return this notice with your score report.

......   Your file does not contain the CERTIFICATE OF GOOD STANDING from the jurisdiction(s) in which you have been admitted to the practice of law. Submit the required current (within 60 days) original certificate(s) from the highest state court, along with this notice.

____   As of this date, some of your character references have not responded to the Committee's communications. **You are now required to have** ____ **persons who know you well write letters of recommendation on your behalf.** These persons **MUST** be different from those you provided within **your application for Question 25.** These letters should, at a minimum, address the following: 1) his/her relationship to you or a description of the circumstances of your acquaintance; 2) his/her observations concerning your integrity, legal ability, moral character, and fitness for the practice of law; and 3) any other personal remarks he/she may wish to submit. **DO NOT** contact the Committee to ascertain which of your references may have answered the Committee's initial reference request.



**EXHIBIT B**

District of Columbia Court of Appeals
Committee on Admissions
500 Indiana Avenue, N.W. — Room 4200
Washington, D. C. 20001
202 / 879-2710

October 23, 2006

Phillip James Stoddard
258 Laguna Court
Saint Augustine, FL 32086

RE: E35780

Dear Mr. Stoddard:

This is in reference to your application for admission by examination which was filed on May 2, 2006. The members of the Committee on Admissions of the District of Columbia Court of Appeals are currently considering your admission application. In due course, you will be advised by letter of their decision or if additional information is needed.

The members remind you of your continuing obligation to update your application concerning any change in address, employment, or other circumstance (e.g., bar admissions, disciplinary matters, civil and criminal litigation, traffic offenses, credit problems, student loan obligations, etc.) since the filing of the application. Please include relevant documentation.

Sincerely,

*Jacqueline M. Smith*

Jacqueline M. Smith
Director of Admissions



**EXHIBIT C**

District of Columbia Court of Appeals
Committee on Admissions
500 Indiana Avenue, N.W. — Room 4200
Washington, D. C. 20001
202 / 879-2710

December 11, 2006

Philip J. Stoddard
258 Laguna Court
St. Augustine, FL 32086

RE: E35780

Dear Mr. Stoddard:

This is to advise you that the Committee on Admissions (Committee) has reviewed your application for admission by examination to the District of Columbia Bar, filed 5/2/2006. Your file reflects that you were successful on the July 2006 D.C. Bar exam. This is to inform you that your application for admission will be held in abeyance until you are able to provide the following documentation:

1. Copy of all pleadings, judgments, orders, and other relevant documentation in the record in the Florida bar admissions proceedings and related court litigation, including a copy of transcript(s) of the Florida bar admissions hearing, resulting report, and recommendation; and

2. Case records for any matters open within the past (5) five years, including the pending litigation regarding Florida's recent refusal to admit you on character and fitness grounds.

Additionally, the members remind you of your continuing obligation to update your application concerning any change in address, employment, or other circumstance (e.g., bar admissions, disciplinary matters, civil and criminal litigation, traffic offenses, credit problems, student loan obligations, etc.) since the filing of the application.

Sincerely,

Jacqueline M. Smith
Director of Admissions

## EXHIBIT D

---

### *PHILIP J. STODDARD, J.D.*

*258 Laguna Court/ St. Augustine, FL 32086 / (904)797-5380*
*email:pstoddardhsd@bellsouth.net*

---

January 2, 2007

District of Columbia Court of Appeals
Committee on Admissions
500 Indiana Avenue NW, Room 4200
Washington, DC 20001

      Attn: Ms. Jacqueline Smith, Director of Admissions

      Re: Applicant No. 35780: Philip J. Stoddard, Application for Admission to the Bar - the
      Committee's letter of December 11, 2006

Dear Ms. Smith:

I am pleased to comply with your request for litigation documents. The enclosed CD contains
everything you have asked for with one exception. The Florida Board of Bar Examiners has refused
to provide my attorney with a copy of the formal hearing transcript unless I reimburse the Board for
its $2,800.00 court reporter fee (they ordered the transcript). Whether I can legally be held liable for
that cost is an issue in litigation. If, after reviewing the material that I have enclosed, you feel the
transcript is necessary, the Florida Board of Bar Examiners has provided copies of transcripts to sister
state admissions authorities as a courtesy. Should your request for the subject transcript be denied,
please advise me at once of that action.

My attorney, Mr. Northcutt, has agreed to speak with you freely about the matter: I have no objection
to your conferring with him. You may consider this letter as a waiver of any attorney-client privilege
as regards the litigation involving myself and the Florida Board of Bar Examiners.

This is everything I have as of the present date. The litigation against the Florida Board of Bar
Examiners is ongoing and expected to continue into the next several years. Thank you for your
consideration. I look forward to a decision on my application at your earliest convenience.

      Respectfully submitted,


      Philip J. Stoddard, J.D.



**EXHIBIT E** 

District of Columbia Court of Appeals
Committee on Admissions
500 Indiana Avenue, N.W. — Room 4200
Washington, D. C.  20001
202 / 879-2710

February 5, 2007

Philip J. Stoddard
258 Laguna Court
St. Augustine, FL 32086

RE: E35780

Dear Mr. Stoddard:

The Committee on Admissions (Committee) acknowledges the receipt of the CD enclosed with your January 3rd letter in which you state contains your response to the Committee's request for documents related to multiple litigations.  I apologize for the delay in responding before now.  However, the Committee has agreed that we will maintain our long standing policy of only accepting documents submitted in hard copy form.

After similar recent requests, the Committee recognizes that we do not have the resources to produce these documents, nor can we be responsible for any omissions, poor downloads, etc., that could affect your intended submission.  Therefore, the Committee is requiring that you, as well as other applicants affected, furnish one (1) printed set of all documents on the CD.  Your application will receive my prompt attention upon receipt of these documents.

Sincerely,

*Jacqueline M. Smith*
Jacqueline M. Smith
Director

**EXHIBIT F**

---

*PHILIP J. STODDARD, J.D.*

*258 Laguna Court/ St. Augustine, FL 32086 / (904)797-5380*
*email:pstoddardhsd@bellsouth.net*

---

February 8, 2006

District of Columbia Court of Appeals
Committee on Admissions
500 Indiana Avenue NW, Room 4200
Washington, DC 20001

      Attn:  Ms. Jacqueline Smith, Director of Admissions

      Re:    Applicant No. 35780:  Philip J. Stoddard, Application for Admission to the Bar
              The Board's letter dated February 5, 2007.

Dear Ms. Smith:

Thank you for your response. Your letter raises some issues and I appreciate your patience and attention to resolving them. As I stated in my letter of February 2, 2007, I consider nine months of "character and fitness" investigation in professional licensing is per se unreasonable. That letter remains my final request for relief in compliance with Rule 46(g)(3), Rules of The D.C. Court of Appeals. Now, here are some of the issues that concern me.

Your letter states a rule of general applicability that you claim applies to all applicants for the DC Bar. The rule significantly expands the request on the application form. I do not doubt that the Committee is aware of the massive amount of material on the CD. Most of this material may be of questionable relevance. I am sure that we can agree that your "rule" imposes a significant cost and labor burden on the application process that must be justified by substantial evidence. I would consider providing paper copies in response to a narrowly defined request. However, my insistence on a final decision by March 2, stands and I will enforce my rights.

There are other problems. The Committee's rule-making authority is limited. The CD is, I believe, deemed filed with the Clerk of the Court of the District of Columbia Court of Appeals and rule-making regarding how information is received and filed in the Court appears to be within the Clerk's area of responsibility. Accordingly, please provide me with documentation of your authority for the rule pursuant to which you are demanding paper copies of the documents on the CD. Otherwise have your attorney contact me so that we can discuss a proper venue for the rule challenge.

              Respectfully submitted,

              Philip J. Stoddard, J.D.

# EXHIBIT B (TO COMPLAINT)

# District of Columbia
# Court of Appeals

No. 07-BG-148

IN RE: PHILIP J. STODDARD,
              Petitioner.



## ORDER

On consideration of the petition for review, it is

ORDERED that this matter is referred to the Committee on Admissions for its recommendation as to whether the relief sought by petitioner should be afforded by this court.

FOR THE COURT:

GARLAND PINKSTON, JR.
Clerk of the Court

Copies to:

Philip J. Stoddard
258 Laguna Court
St. Augustine, FL 32086

Ms. Jacqueline Smith
Director
Committee on Admissions

Alan H. Kent, Esquire
Counsel
Committee on Admissions

Mark S. Carlin, Esquire
Chair
Committee on Admissions

# EXHIBIT C (TO COMPLAINT)

DISTRICT OF COLUMBIA COURT OF APPEALS



NO. 07-BG-148

IN RE: PHILIP J. STODDARD,
           Petitioner.

## RECOMMENDATION OF THE COMMITTEE ON ADMISSIONS

The petitioner, Philip J. Stoddard ("Stoddard"), is an applicant for admission to the District of Columbia Bar upon examination. In October 2006, the Committee on Admissions (the "Committee") notified him that he passed the D.C. bar examination. However, there are multiple, serious character and fitness issues raised in Stoddard's application and in his voluminous file. These, and other circumstances, discussed below, impact the Committee's investigation and the time it needs to determine its position with respect to the application. Nevertheless, Stoddard's petition for review seeks an order requiring the Committee to make such determination "forthwith." See, Pet. at 11.[1] For the reasons discussed herein, the Committee recommends that the instant petition be denied.

### DISCUSSION

Stoddard's impatience with the Committee's regular procedures does not constitute the "extraordinary circumstances" required by the rules for court review of the Committee's processing of his bar application in the regular course of its operations. See, D.C. App. R. 46 (g)(3).[2]

---

[1] The petition also seeks an award of costs. See, Pet. at 11.

[2] D.C. App. R. 46(g), provides, in pertinent part, as follows:

    (3) Except for the review by the court provided in this section (g) [relating to Committee reports after formal hearings], no other review by the court of actions by or proceedings before the Committee shall be had except upon a showing (1) of extraordinary circumstances for instituting such review and (2) that an application for relief has previously been made in the first instance to the Committee and been denied by the Committee, or that an application to the Committee for relief is not practicable. [Emphasis added.]

In October 2006, the Committee declared Stoddard successful on the previous D.C. bar exam. However, there are multiple, serious character and fitness issues raised in Stoddard's application and in his voluminous file. These include, among other things, DUI and other arrests, tax liabilities and other unpaid debts, failures to pay court-ordered child support, and a history of alcoholism and mental disorders.

Stoddard previously had applied for admission to the D.C. Bar in 1999, but he withdrew his application in 2001 following his refusal to appear before the Committee for a formal character and fitness hearing. Since that time, Stoddard has been living in Florida and had applied for admission to the Florida Bar. In September 2006, following an investigation and formal hearing, the Florida Board of Bar Examiners issued a preliminary determination that his Florida bar application be denied on character and fitness grounds.[3] Stoddard thereupon promptly filed a federal lawsuit against the Florida Bar authorities, for declaratory and injunctive relief and for damages. Upon information and belief, that litigation is presently continuing.

The record before the Florida bar authorities, and the related litigation, alone, is voluminous. The Committee, with its limited resources, will be required to devote substantial time and effort to review and analyze these records, together with the other voluminous documents already in its file. However, despite the Committee's request, Stoddard has refused to provide the relevant Florida proceedings documentation in a format other than on a compact disk ("CD").[4] This has stymied the Committee from moving forward on making a determination of a preliminary position as to each of the many issues of character and fitness that it must

---

[3] In its "Notice of Board Action," issued September 21, 2006, the Florida Board determined that Stoddard had not met the character and fitness standards required for admission. It stated, in pertinent part:

> The Board determined that there were significant aggravating factors and will recommend that the disqualification period be for a 5-year period before an application to establish rehabilitation will be accepted.

The Notice also stated that it was not a formal notice of the Board's action, and that the Board's findings and conclusions of law would be issued within 60 days of the filing of the formal hearing transcript. For obvious reasons, the Committee is awaiting Stoddard's proper submission of these critical documents.

[4] The Committee, as an arm of the Court of Appeals, accepts documents in the same format as is required by the court. In this regard, the Clerk of Court has advised that the court accepts filings and documentary evidence only in hard copy form. The Committee has followed suit. This is particularly important since the Committee must submit to the court a paginated written record, in hard copy format, following the Committee's formal hearings.

2

address.

Additionally, until there is finality to the Florida Bar's decision not to admit Stoddard on character and fitness grounds, the Committee is not in a position to determine to what extent it may rely on findings of fact in the Florida proceedings. Therefore, the Committee reasonably is waiting for Stoddard's current Florida federal litigation to be concluded.

Moreover, as to the investigation of these issues arising from Stoddard's bar application, the Committee is proceeding with in its regular order, within the constraints of its limited resources.[5] In view of the panoply of character and fitness factors arising from Stoddard's application, each of which the Committee needs to investigate and analyze, the Committee submits that Stoddard's impatience with the Committee's regular process is unfounded.

## CONCLUSION

The Committee intends to investigate and analyze all of the issues raised in the bar application, and to make a determination as to its preliminary position on them, as soon as it is able to do so. This will be done within the framework of the Committee's regular operations and workload circumstances. The instant petition is unfounded and, at best, grossly premature. For the reasons stated herein, the Committee recommends that the relief sought in the petition be denied.

Respectfully submitted,

Mark S. Carlin
Chairman
Committee on Admissions
500 Indiana Avenue, NW, Room 4200
Washington, DC 20001
(202) 879-2710

---

[5] Committee members currently are focused primarily on the grading of the February 2007 D.C. bar examination. Also, the Committee is investigating and determining character and fitness issues on a large number of other cases pre-dating the relatively recent Stoddard matter.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was mailed this filing date to Philip J. Stoddard, 258 Laguna Court, St. Augustine, FL 32086.

Mark S. Carlin
Chairman
Committee on Admissions

4

# EXHIBIT D (TO COMPLAINT)

IN THE DISTRICT OF COLUMBIA COURT OF APPEALS


IN THE MATTER OF                                    APPEAL NO. 07-BG-148

     PHILIP J. STODDARD,
     an applicant for admission to the Bar
     of the District of Columbia,

          Petitioner

                                       DC COA APPLICATION
     vs.                             FILE NO: 35780

     THE DISTRICT OF COLUMBIA COURT
     OF APPEALS, COMMITTEE ON ADMISSIONS,
     an administrative agency organized under
     a rule of the District of Columbia
     Court of Appeals,

          Respondent.

_____/


PETITIONER'S OBJECTIONS TO THE COMMITTEE'S RECOMENDATION
AND
MOTION FOR SHOW CAUSE ORDER

I. INTRODUCTION


On March 12, 2007, Petitioner filed his request for relief from the Respondents'

unreasonably withholding character certification without providing notice and

opportunity for hearing in violation of DC COA Rule 46. On March 22, 2007, this Court

issued its order to the Respondent to make a recommendation. The Committee on

Admissions filed its Recommendation on March 26, 2007. Petitioner objects to the

Recommendation and shows this court the included Memorandum as support for granting

a show cause order and an evidentiary hearing. The Recommendation shows multiple

misleading factual inaccuracies and omissions[1]. Any indication that the Committee

might be inadvertently using the Court's bar admission procedures as a vehicle for

indirect political reprisals[2] warrants serious consideration by this Court, <u>Konigsberg v.</u>

---

[1]  The Recommendation contains factual misrepresentations and material omissions which might tend to mislead this Court, for instance:

(a)  Respondent's assertion (Page 2 Fn. 4) that The Clerk of the Court of Appeals accepts documents in hard copy form is certainly correct.  However, the Clerk of the Court is not prohibited from accepting documents in electronic format by any rule of which the Petitioner is aware.  Since the Respondent can not point to any rule upon which to base his assertion and cannot show that the petitioner's response to its overly broad request was unreasonable it is a "half lie" at best and a lame excuse at worst.  The idea that the entire contents of that CD might form part of a paginated record after a formal hearing is simply absurd beyond need for further discussion;

(b) The Petitioner filed suit against the Florida defendants on September 8, 2006 (Exhibit A) prior to the September 15, 2006 hearing.  The "Findings of Fact, etc." (Exhibit B) were authored by the General Counsel of the Florida Board of Bar Examiners who represented the Board at the Hearing while he knew he was a defendant in a suit for damages.

(c) Contrary to Respondent's contention (Recommendation, Page 3), the decision of the Florida Board of Bar Examiners is final because the Petitioner waived his right to appeal (Exhibit C).  The issues in the Federal litigation (Exhibit A) are whether the Petitioner must face Florida's unconstitutional rules when he reapplies after the disqualification period and whether he can collect damages for the arbitrary action.  Of course, the extent to which the Committee on Admissions can rely on the Florida record must be considered in light of the serious lack of credibility reflected by the facts alleged above and whether the Florida authorities are willing to be cross examined in the District of Columbia.

(d) The Court's attention is directed to the highly prejudicial and broad allegations of DUI, multiple arrests, mental illness, violation of court orders, etc. (Recommendation, Page 2) devoid as they are of any timeframe reference by which the Court might decide the issue of whether these matters legitimately relate to present fitness for law practice.

[2]  Petitioner has filed two civil rights suits against the Florida Board of Bar Examiners, in neither case did the Court reach the merits and the Defendants never denied the allegations.  Nor has there ever been any concern as to whether the lawsuits were brought in good faith.  Of course, any material in the court files is protected, privileged and cannot be a basis for denial of licensing without running afoul of basic constitutional principles.  There is an issue as to whether material filed by a Plaintiff, such as the petitioner, can ever be properly swept into a character and fitness inquiry related to bar licensing.

2

State Bar Of California, 353 U.S. 252 (1957).  Fundamentally, "placing the application in abeyance." is the same as withholding certification and the Respondents have ignored this point[3].  The relief prayed for is nothing more than requiring the Committee on Admissions to stop breaking the law.   The Constitution of the United States, the relevant decisions of the Supreme Court of the United States and this Court's rules are the law.

The Petition raises a number of state law due process issues including allegations that the Committee is violating its own rules: Respondent ignores those issues and offers nothing more substantial than excuses.

## II. MEMORANDUM

The Committee's Recommendation is not responsive to the Petition and largely fails to address the points raised thereby.  For instance, while the Committee claims that the petitioner's refusal to provide paper copies of everything on the CD has "stymied" its investigation, the Committee does not address the Petitioner's offer to comply with a reasonably tailored request for hard copies of relevant documents[4].  For an example of what manner of documents the Petitioner provided in response to the Committee's overly broad request (Exhibit D).  Even more troubling is the material on pages 2 and 3 of the Recommendation which suggest that the Committee has already decided that the Petitioner's file (which it claims it cannot review because it is too voluminous and in the

---

[3]   This Court has held that prolonged administrative delays violate due process. Henderson vs.  District of Columbia, 493 A.2d 982, 996 (1985).  The Respondents show excuses in lieu of rational explanation or authority.

[4]   The Petitioner's letter (Exhibit F to the Petition) shows that the Petitioner is willing to provide copies of any RELEVANT DOCUMENTS in hard copy format as a response to a reasonable request for documents.  Respondent's assertion to the contrary is not supported by the record.

wrong format) suggests "serious character issues" as evidenced by a litany of "adverse matters" stated without any relevant time reference.

The reason for the glaring omission must be clear: the matters are so old or trivial that they cannot possibly be reasonably related to present fitness for law practice. However, if the Committee truly believes that Florida had a legitimate reason for disqualifying the Petitioner, the Committee can comply with the Rules, give notice of its objections, withhold certification pending a hearing and subject its final decision to review of the record by this Court.

While the Committee brazenly claims that the Petitioner's request for relief is "grossly premature," (presumably because the character and fitness issue has only been pending for eleven months), Respondent can not and will not deny that it has had a positive NCBE character report in the Petitioner's file since a time that is prior to October 6, 2006, the date on which it announced the Petitioner's success on the July Bar Exam (Exhibit E). Five months is sufficient time for the Committee to have satisfied its curiosity: what the Petitioner is being subjected to is improper and unauthorized. That the Committee is implementing a policy and practice of arbitrary delay is cause for serious concern.

That the Committee has placed a "large number of other applicants" in *investigative abeyance*, while its focus is "primarily on grading the February 2007 Bar Exams"[5] as it admits on Page 3, fn. 5, of its Recommendation, suggests an extraordinarily

---

[5] On knowledge and belief, the Committee is not involved in actually grading the exams, except possibly where examinees have challenged the scoring of the written portion in an attempt to squeeze out a few additional points  Ordinarily, the Committee merely reviews the reported grades and compares them to established standards.  The pass/fail decision is purely ministerial.  So is the character and fitness decision unless

cavalier attitude toward applicant rights to timely decisions on their applications. This Court has reason for concern, especially in light of the Committee's admissions regarding its limited resources. There is simply no excuse for violating the Due Process clause as a matter of practice and policy because the responsible agency officials are too busy to do their jobs.

The Petitioner paid a fee for an NCBE character report when he applied and reasonably expected that if he met the NCBE standards, he would be certified as morally fit. This Court can assume that NCBE knows how to conduct a proper and constitutional character and fitness investigation. There is nothing in the Court's rules that authorize the Committee on Admissions to engage in ad-hoc investigative inquiries in an attempt to rebut the NCBE where the report shows nothing that might raise a presumption of lack of present "good moral character" and fitness for law practice. Axiomatically, if an agency cannot find a statutory or other lawful basis for an exercise of discretion, it does not have such discretion.

A positive NCBE character report, taken together with the required character references, is clear and convincing evidence of good moral character. Certification under those circumstances is mandatory because, as the Committee admits, it does not have sufficient time or internal resources for ad hoc investigations. If the Committee truly believes that, based on the Florida material, it has a good case for disqualifying the petitioner because of a non-conviction DUI arrest 28 years ago, non-compliance with a child support order 20 years ago, his 22 year commitment to a nationally recognized and

---

NCBE reports disqualifying conduct such as felony convictions, In re Manville, 538 A.2d 1128, 1132 (D.C. 1988) (en banc), or recent academic or professional discipline involving moral turpitude, In Re Mustafa, 631 A.2d 45; (D.C. App. 1993).

respected recovery program, his bankruptcy 11 years ago, and his long ago concern for

his mental health, the Committee should be willing to issue a formal denial of

certification and face the consequences[6].

Finally, the Committee's demands for hard copies of every document the

Petitioner or his attorney ever filed, in the face of the Petitioner's good faith offer to

provide copies of specifically requested RELEVANT documents is a stonewall. On page

2, Fn. 3, Respondent claims that it is "awaiting Stoddard's prompt submission" of the

document attached hereto as "Exhibit B" (which was submitted to the Committee, more

than two months ago) while it has apparently failed to request the hearing transcript copy

which is available at no cost from the Florida Board of Bar Examiners (Exhibit F). So far,

these are the only documents which the Respondents have indicated as being "critical" to

their decision.

---

[6] The Florida decision is administrative, substantially hearsay, and certainly not
preclusive as to any factual issue. Should the Committee adopt the Florida findings, the
Petitioner has the right to rebut the Florida decision in a public hearing after discovery.
The Petitioner can prove that he has been unconstitutionally "blackballed" in Florida
because of a civil rights suit the Petitioner pursued against an influential and "politically
connected" member of the Florida Bar nine years ago. The Florida Board of Bar
Examiners "Findings of Fact, Conclusions of Law and Recommendation" (Exhibit B) is
remarkably rich in lurid prose, inferences stretched to the snapping point and wild
allegations. It is shows no recent allegations of civil misconduct and certainly no
allegations of criminal behavior. It is a rare, but not quite unprecedented case of
disqualification by character assassination and innuendo. Compare, Willner v. Character
and Fitness Committee, 373 U.S. 96, 83 S. Ct. 1175 (1963); Schware v. Board of Bar
Examiners of New Mexico, 353 U.S. 232, 77 S. Ct. 752 (1957); Schware v. Board of Bar
Examiners of the State of New Mexico, 291 P.2d 607 (N.M. 1955). Coleman v. Watts,
81 So. 2d 650, (Fla. 1955).

## IV. CONCLUSION

The Committee on Admissions is sailing in perilous water without a proper rudder. First, the Committee admits to engaging in unauthorized investigative activity while it purports to "adjudicate" based on the results of unauthorized ad-hoc investigations in the face of positive character reports which are admissible evidence at formal hearings and the reliability of which the Committee is estopped to deny. Second, the Committee is apparently factoring in Florida's admission standards which have been under virtually non-stop attack in federal courts for years. Third, the Committee can not constitutionally sweep protected litigation activity into a moral character inquiry (chill on the fundamental right to petition for redress). Fourth, even if the District of Columbia is not covered by the Americans with Disabilities Act, it is certainly subject to The Rehabilitation Act and the insinuations on Page 2 of the Recommendation touching on mental health and alcoholism should alert this Court to possible violations of federal anti-discrimination law. Fifth, "limited resources" is no excuse where constitutionally protected rights are in issue.

Under the circumstance, the Petitioner shows extraordinary circumstances and ample grounds for relief.

## V. PRAYER

WHEREFORE, Petitioner, PHILIP J. STODDARD, prays that this Court:

1. Issue a show cause order requiring the Respondent Agency, by its authorized representative to appear before this Court at a time certain and show cause, at an evidentiary hearing, as to why the relief requested in the Petition should not be granted.

2.  Award the Petitioner reasonable costs incurred in this proceeding including

any travel expenses.

Respectfully submitted,

_____

Philip J. Stoddard, J.D.
App. No. 35780
258 Laguna Court
St. Augustine, FL 32086
(904)599-5741
FAX (904)797-5380

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of this document has been served on the

following parties: by U.S. Postal Service Mail Service on March 30, 2007:

MARK S. CARLIN, Esq. as
Chairman of the Committee on Admissions,
1900 M St., N.W., Ste. 601
Washington, D.C., 20036-3519

ALAN H. KENT, Esq.
Counsel for DC COA
1747 Pennsylvania Avenue, N.W., Ste. 300
Washington, D.C., 20006

THE DISTRICT OF COLUMBIA COURT OF APPEALS
COMMITTEE ON ADMISSIONS
c/o JAQUELINE SMITH, Director
500 Indiana Avenue NW, Room 4200
Washington, DC, 2001

_____

Philip J. Stoddard

# **EXHIBITS**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**PHILIP J. STODDARD,**

      **Plaintiff,**

**vs.**

| | |
|---|---|
| **THE FLORIDA BOARD OF BAR EXAMINERS, an administrative agency of the State of Florida, THOMAS ARTHUR POBJECKY, General Counsel for the Florida Board of Bar Examiners, ELEANORE MITCHELL HUNTER, Executive Director of the Florida Board of Bar Examiners, LEIGHTON D. YATES, JR., Member Emeritus of the Florida Board of Bar Examiners, R. TERRY RIGSBY, Chairman of the Florida Board of Bar Examiners, HON. R. FRED LEWIS, as Supreme Court liaison to the Florida Board of Bar Examiners and JOHN DOES ONE THROUGH TWENTY, jointly and severally, each in their personal capacity and in their official capacity,** | Case No. _4:06 cv 414 RH-WCS_ |

      Defendants.

_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES - JURY TRIAL DEMANDED

OFFICE OF CLERK
U.S. DISTRICT CT.
NORTHERN DIST. FLA.
TALLAHASSEE, FLA.

06 SEP -8 PM 2: 11
LT

**EXHIBIT A**

FILED

PLAINTIFF, PHILIP J. STODDARD, J.D., by his undersigned attorney, sues the

defendants, jointly and severally, and shows the court:

## I. INTRODUCTION

Whether characterized as a  "right" or "privilege," a person cannot be prevented from

practicing law for arbitrary reasons or in a manner that offends the Due Process or Equal

Protection Clauses of the Fourteenth Amendment. " The practice of law is not a matter of the

State's grace" (Schware v. Board of Bar Examiners of New Mexico, 353 U.S. 232 n. 5

(1957)).: arbitrary, subjective and politically motivated bar application decisions are unlawful.

While the plaintiff has not been  finally denied admission to the Florida Bar, the allegations

below and the evidence to be introduced will leave no doubt as to the defendants' intention to

impose a grave constitutional injury upon the plaintiff under color of the unconstitutional rules

and policies challenged by this lawsuit.

Mr. Stoddard, who has never been admitted (or denied admission) to the Bar in any

state, initiated a Florida Bar application proceeding in November, 1999, that remains pending

before the Florida Board of Bar Examiners (the Board) as of the date of the filing of this

action. In August, 2005, defendants served the plaintiff with notice of their intent to deny the

plaintiff a "character and fitness certificate" because he purportedly fails to meet the Board's

standards for "good moral character."

In the face of plaintiff's prima facie showing of  present "good moral character,"

defendants have raised frivolous objections and harassed plaintiff with  "further inquiry" into

personal matters that have no rational or relevant connection to his present fitness for law

practice or "good moral character." Defendants have arbitrarily and capriciously deprived the

2

plaintiff of his constitutionally protected right to a fundamentally fair licensing procedure, his

fundamental right to protection from legislative or administrative punishment, his fundamental

right to free speech and expression  and his federal statutory protections against stigmatization

and invidious discrimination related to disability, whether the disability is perceived or real.

Plaintiff hereby challenges the defendants' general rules, policies and decisions

including:

(1) a policy, generally applicable to all applicants, establishing a "protocol" by

which the defendants evaluate and determine whether bar applicants may be suffering

from mental illness;

(2) a rule, generally applicable to all applicants, requiring applicants to answer

questions on the "Florida Bar Application" which require disclosure of the diagnosis of

or treatment for specific mental illnesses;

(3) a rule, generally applicable to all applicants, requiring the mandatory release

of mental health records where an applicant has given an affirmative response to the

mental health questions;

(4) a policy, generally applicable to all applicants, requiring mandatory follow-

up inquiries, investigation and hearings, where an applicant has disclosed a history of

mental health treatment;

(5) a policy, generally applicable to all applicants, subjecting applicants who "fit

the mental illness profile" or who have disclosed a history of being diagnosed as having

and/or being treated for a mental illness to additional costs and investigatory burdens

because they are regarded as having a disability or are suspected of having a disability;

(6) a policy or standard, generally applicable to all applicants, that past acts of

privileged conduct that are not materially related to the practice of law, that are not

3

presently punishable under criminal law, or that were never punished and that may be

merely embarrassing, may be deemed to be "adverse matters" and grounds for exclusion

from the practice of law either temporarily or permanently;

(7) a rule, generally applicable to all applicants, pursuant to which the defendants

may conduct "further inquiry" related to mere "adverse matters;"

(8) a policy, generally applicable to all applicants, pursuant to which the

defendants require an applicant who has never been convicted of a crime or been the

subject of an attorney disciplinary order to produce proof of rehabilitation, in the form of

clear and convincing evidence presented at a formal evidentiary hearing, from

allegations of adverse conduct that are based upon mere opinions or allegations

unsupported by any findings of fact or guilt by a competent tribunal;

(9) a policy, generally applicable to all applicants, pursuant to which the

defendants, sua sponte and in violation of published rules, terminate applications in

cases where the applicant refuses to attend a formal evidentiary hearing;

(10) a rule, generally applicable to all applicants, by which the defendants

deprive applicants of the benefit of their passing bar examination scores where

defendants have prematurely terminated processing and have not given notice of an

opportunity for a pre-deprivation hearing; and,

(11) a policy, generally applicable to all applicants, pursuant to which the

defendants deem an "aggregate showing" of "adverse matters" unrelated to the attorney

profession and unsupported by judicial findings to be disqualifying from the practice of

law.

Plaintiff asserts that these general rules and policies, and the resultant prolonged,

extensive and unreasonable intrusive investigations and followup inquiries, violate the Due

Process Clause of the Fourteenth Amendment. Further, these rules and policies violate the

ADA's prohibition of discrimination, directly or indirectly, by public entities that regard the

individuals as having a disability where the discrimination occurs on the basis of the suspected

disability. Plaintiff also argues that the defendants' actions are *ultra vires*, and clearly violative

of established constitutional, statutory and decisional law. By these allegations plaintiff shows

that the defendants' conduct manifests such a callous and mean-spirited disregard for the

plaintiff's constitutional rights, that he is entitled to recover money damages under Article I,

Sec. 10, Const. U.S., ADA Title II and under Section 1983.

## II. JURISDICTION-VENUE

1. Jurisdiction of the Federal Court is pursuant to 28 U.S.C. § 1331, and 28 U.S.C. §

1343, to consider violations of Article I, Sec. 10 of the Constitution of the United States, Title

II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA" or "Title II"), et. seq. and

42 U.S.C. § 1983 ("Section 1983").

2. The "Younger Abstention Doctrine," Younger v. Harris, 401 U.S. 37 (1971), does

not apply in this case because, unlike the coercive bar discipline proceedings in Middlesex

County Ethics Committee v. Garden State Bar Association, 457 U.S. 423 (1982), and the

criminal proceedings in Younger, the plaintiff, not the state, has been responsible for initiating

and prosecuting the application. The pending application proceeding, including the plaintiff's

challenge to the Board's reasons for denial, is thus *remedial* and not coercive in nature. See

Smolow v. Hafer, 353 F. Supp. 2d 561, 571-572 (E. D. Penn. 2005) (and cases cited therein),

Torres v. Carrion, 376 F. Supp. 2d 209, 213 (D.P.R. 2005). See also, Exec. Art Studio, Inc. v.

City of Grand Rapids, 179 F. Supp. 2d 755, 758-762 (W.D. Mich. 2001) ("Thus, where the

federal plaintiff also initiates the state proceeding, the basis for Younger abstention will

usually be absent because the state is not seeking to enforce its laws.").

3. For the same reasons that <u>Younger</u> is inapplicable here, the "Exhaustion of Adminis-

trative Remedies Doctrine" does not apply. <u>See Patsy vs. Board of Regents,</u> 457 U.S. 496,

(1982). Further, the State of Florida does not offer a judicial remedy in the case of a denial of

admission to the Bar: qualifying for the Bar in Florida is entirely administrative in nature from

start to finish, being regulated pursuant to the delegation of legislative authority by Art. V, Sec.

15, Fla. Const. Since no state judicial court has acted, or will ever act, on the plaintiff's claim

of a present right to admission to the practice of law, the denial of that right is a case or

controversy within the meaning of Article III of the Constitution of the United States, and this

court has jurisdiction to award all of the relief requested. Plaintiff has reserved his federal

claims for litigation in this court pursuant to <u>England vs. Louisiana Board of Medical</u>

<u>Examiners,</u> 375 U.S. 411 (1964), by filing an appropriate notice in the state proceeding.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b) because all of the defendants can be

served in this district.

III. PARTIES

5. PLAINTIFF, PHILIP J. STODDARD, is a citizen of the United States and an

applicant for admission to the practice of law in Florida, who currently resides at 258 Laguna

Court, St. Augustine, Florida 32086.

6. DEFENDANT, THE FLORIDA BOARD OF BAR EXAMINERS, ("the Board") is

an administrative agency of the State of Florida established to perform bar examination

administration and character and fitness qualification investigations pursuant to the delegation

of legislative authority to the Supreme Court of Florida set forth in Art. V, Sec. 15, Fla. Const.,

and Rules of the Supreme Court Relating to Admissions to the Bar, Rule 1-12. This defendant

can be served at 1891 Eider Court, Tallahassee, Florida 32399-1750.

6

7. DEFENDANT, THOMAS A. POBJECKY, is the General Counsel for the Florida Board of Bar Examiners. POBJECKY is responsible for investigating bar applicants, preparing investigative summaries, drafting specifications to be filed against bar applicants and drafting final findings of fact and conclusions of law after formal hearings before the Board. In performing his investigative and enforcement functions, POBJECKY, by misfeasance or malfeasance, was primarily responsible for developing the illegal rules and practices of the Board herein alleged. This defendant is sued in his official and in his personal capacities. POBJECKY can be served at 1891 Eider Court, Tallahassee, Florida 32399-1750.

8. DEFENDANT, R. TERRY RIGSBY, or his successor, is the Chairman of the Florida Board of Bar Examiners. RIGSBY, by misfeasance or malfeasance, ratified and approved and enforced the illegal rules and practices of the Board herein alleged. This defendant is sued in his personal and in his official capacities. RIGSBY can be served at 1891 Eider Court, Tallahassee, Florida 32399-1750.

9. DEFENDANT, ELEANOR MITCHELL HUNTER, is the Executive Director of the Florida Board of Bar Examiners. HUNTER is responsible for the day-to-day operations of the Board in carrying out and administering its rules and policies. HUNTER, by malfeasance or misfeasance, enforced illegal rules and otherwise participated in the conduct which harmed the plaintiff. HUNTER is sued in her official and in her individual capacities. This defendant can be served at 1891 Eider Court, Tallahassee, Florida 32399-1750.

10. DEFENDANT, LEIGHTON D. YATES, JR., is a former chairman and "member emeritus" of the Florida Board of Bar Examiners who, by misfeasance or malfeasance, investigated the plaintiff and participated in harming the plaintiff. This defendant can be served at 1891 Eider Court, Tallahassee, Florida 32399-1750.

7

11. DEFENDANT, HON. R. FRED LEWIS, is the Supreme Court of Florida Agency liaison to the Florida Board of Bar Examiners. In this capacity, LEWIS is primarily responsible for overseeing the operation of that agency and advising the agency as to the scope of discretion to be applied in character and fitness investigations. LEWIS, by misfeasance or malfeasance, approved and ratified illegal policies and investigative activity and participated in harming the plaintiff. LEWIS is sued in his official and in his individual capacities. This defendant can be served at 500 South Duval Street, Tallahassee, Florida 32399-1927.

12. DEFENDANTS, JOHN DOES ONE THROUGH TWENTY, are individuals who have acted in concert with the above named defendants and who may be directly or vicariously liable for enforcing unlawful rules and policies. The identities and locations of these individuals have yet to be determined.

## III. FACTS

13. Plaintiff has established a prima facie case for good moral character because the defendants' records show that he is responsibly employed, holds two duly issued state licenses that required proof of good moral character and that he is highly regarded in his community, as evidenced by positive recommendations from long standing acquaintances, including several current Florida Bar members. The plaintiff is in full compliance with all of the laws of Florida and of the United States, including all tax laws. The plaintiff has never been convicted of any crime or committed any acts of moral turpitude.

14. Plaintiff is disabled as that term is defined by the ADA because he has a history that included a diagnosis of a mental illness, because he is an active member of a long-term recovery group and because he is regarded, by the defendants, as having a mental illness.

15. The defendants' extensive investigative file concerning Mr. Stoddard's life history includes various matters relating to:

(a) an April, 1979, Maryland divorce and child support order;

(b) severe injuries (shattered leg, multiple pelvic fractures), eight weeks of hospitalization and permanent disablement as a result of a May, 1979, motorcycle accident;

(c) loss of career, interpersonal difficulties, hospitalization for mental illness, defaults on child support obligations, untimely filed tax returns, precarious finances, business failures and periodic unemployment in the years following the motorcycle accident;

(d) enrollment in a federally funded vocational rehabilitation program in 1987;

(e) diagnosis and treatment of post traumatic stress disorder (PTSD) in 1987;

(f) termination of the plaintiff's child support obligation in 1988;

(g) a Maryland court order reducing the accrued child support arrearages to the 1979 decree in 1990;

(h) personal bankruptcy in 1996;

(i) Juris Doctor degree awarded by Thomas Jefferson School of Law in 1999, followed by success on the Bar Exams in the District of Columbia and in Florida with MBE scores of 168 and 169 and an MPRE score of 135;

(j) a consultation with a psychiatrist in April, 2000, concerning the PTSD issue and a "clean bill of health" related to the plaintiff's application for licensing as a private investigator;

(k) a consultation with a psychiatrist in October, 2001, shortly after a September, 2001, investigative hearing before the Board of Bar Examiners, at which the psychiatrist noted symptoms of a mental illness tentatively diagnosed as bipolar disorder and prescribed a treatment plan;

9

(l) financial hardship, plaintiff's partial abandonment of his private investigative agency business in January, 2002, and taking on two part-time jobs;

(m) a civil rights suit against the Supreme Court of Florida and the Florida Board of Bar Examiners in February, 2002, followed by involuntary termination of the plaintiff's bar application in April, 2002;

(n) continuous, stable, full time and progressively more responsible employment since October, 2002, and through the present day;

(o) consultation with a psychiatrist in January, 2003, and a recommendation of termination of treatment of mental illness; and,

(p) full satisfaction of the claim for child support arrearages in February, 2004.

16. The above chronology discloses personal difficulties, the plaintiff's diligent efforts to overcome those difficulties and his demonstrated success in his recovery efforts. This pattern suggests severe emotional trauma incident to the 1979 divorce and complications arising out of the 1979 motorcycle accident. The file does not show any conviction for any crime and does not show any conduct in the past five years that a reasonable person might find even "socially unacceptable." This file is ample evidence proving that the substantial delay and deprivation of the plaintiff's livelihood arises out of the defendants' unlawful policies and practices by which the defendants grant themselves unfettered discretion for "further inquiry" to discourage, frustrate and deter applicants subjectively deemed unworthy of membership in the Florida Bar.

17. In September, 2001, defendant POBJECKY prepared and published an investigative report to be used as an interrogation format by YATES at a Board investigative hearing. Neither defendant was a qualified mental health professional when they placed the plaintiff's mental health in issue and examined him for signs of a mental illness.

18. In November, 2001, and by supplemental filing in 2005 incorporating by reference the earlier document, the Board served a notice of its intent to deny the plaintiff's application unless he requested a "formal evidentiary hearing."

19. By the specifications the Board filed in the plaintiff's case in November, 2001, and by supplemental filing in August, 2005, the Board is contending that the plaintiff is guilty of "adverse matters," as evidenced by a lengthy recitation of the plaintiff's more or less idiosyncratic behavior, written statements and utterances spanning more than 25 years.

20. In February, 2002, the plaintiff filed suit in the U.S. District Court alleging agency misconduct in the processing of his application in violation of Title II of the Americans with Disabilities Act.

21. In April, 2002, defendant Board sua sponte terminated the plaintiff's application when he cancelled his request for a "formal evidentiary hearing" because of the pending lawsuit.

22. On July 7, 2004, the plaintiff paid a $425.00 stale file fee and submitted a renewed application.

23. On or about January 7, 2005, the plaintiff filed a timely motion with the Board for a waiver of Rule 4-18.2, Rules of the Supreme Court Relating to Admissions to the Bar. Said Rule states that an applicant's successful completion of the Florida Bar Examination shall remain valid for a period of 5 years and, "[i]f the 5 year period expires without admission, an applicant shall, except for good cause shown, be required to retake the Florida Bar Examination and again pass all parts of the examination." The defendants, after claiming that they had "lost" the paperwork, summarily denied the waiver request on August 3, 2006.

24. Under the Admissions Rules, the Board is charged with determining the character and fitness of each applicant for the Florida Bar to "assure the protection of the public and

11

safeguard the justice system." These determinations are to be made after an investigation and

inquiry that must be "thorough, with the object of ascertaining the truth." The Rules provide

the following guidance to the Board:

> 3-11 Disqualifying Conduct. A record manifesting a deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant or registrant may constitute a basis for denial of admission. The revelation or discovery of any of the following may be treated as cause for *further inquiry* before the Board recommends whether the applicant or registrant possesses the character and fitness to practice law:
>
> ....
> (j) evidence of mental or emotional instability;
> ....
> (n) any other conduct which reflects adversely upon the character or fitness of the applicant.

(emphasis added)

25. These Rules provide no guidance as to what may be considered as "evidence of

mental or emotional instability" and are plainly not self-executing. The phrase, "any other

conduct which reflects adversely upon the character or fitness of the applicant," is so vague

and elastic as to literally invite ADA violations and other invidiously discriminatory unlawful

enforcement actions. Nor are there any boundaries limiting the scope of "further inquiry" or

the methods by which an applicant can be the subject of "further inquiry."

26. On knowledge and belief, the Board is enforcing a policy, applicable to all

applicants, by which it deems past innocent and constitutionally protected speech and conduct

that falls within the potentially infinite breadth of Rule 3-11 to be potentially disqualifying

"adverse matters."

27. As a policy, applicable to all applicants, disclosure of a history of mental illness

spawns diligent "further inquiry" to uncover "adverse matters" because the ADA prohibits the

Board from using a disclosed history of mental illness as grounds for disqualification. Further,

the ADA prohibits the imposition of any burden of proving good mental health upon an applicant, yet the Board requires proof of "rehabilitation" from behavior that may have been symptomatic of a mental illness or other condition covered by the ADA.

28.  Upon information and belief, this "further inquiry" ranges - in the unfettered discretion of the Board , with neither promulgated standards nor guidelines and without scientific or competent professional support - from supplemental requests for information requiring answers in the form of affidavits to a highly invasive and expensive inquisition characterized as a "formal evidentiary hearing," during which an applicant must attempt to provide clear and convincing evidence of "rehabilitation."

29.  On knowledge and belief, the Board enforces a policy, applicable to all applicants, requiring termination of an application without a final decision unless an applicant who has been the recipient of specifications filed pursuant to Rule 3-23 requests a formal hearing pursuant to Rule 3-23.2.

30.  Plaintiff's bar application has remained pending before the Board for more than six years and the plaintiff reasonably believes that the defendants, pursuant to unpublished and unlawful rules and standards, have prevented him from practicing law based on defamatory "innuendo" contained in an investigative report prepared by defendants POBJECKY and YATES, published at a Board meeting held in September, 2001, and republished by POBJECKY, at a Board meeting in June, 2005.

31.  The defendants unlawfully, arbitrarily and capriciously targeted the plaintiff for punishment by denial of moral character certification because the Board, in the course of its investigation, discovered that the plaintiff had been diagnosed with and received treatment for a mental illness.

32.  In furtherance of their unlawful and discriminatory exclusionary scheme, the

defendants violated their own rules and unlawfully harassed and punished the plaintiff with

"heightened scrutiny" of his entire life.  Defendants chilled plaintiff's fundamental free speech

rights, defamed the plaintiff, assassinated his character and unreasonably probed into the

plaintiff's most private matters without regard as to whether the matters were rationally related

to plaintiff's present fitness for law practice.

33.  At all times relevant to these allegations, the defendants were operating under

color of the Constitution and laws of Florida and the Rules promulgated thereunder with notice

and knowledge that their policies, procedures and conduct were unlawful.

FIRST CAUSE OF ACTION - Const. U.S., Amendment I; 42 U.S.C.§1983
(Defendants: Pobjecky, Yates, Rigsby, John Does One-Twenty)

34.  "Specification 8" of the "Specifications" document the defendants served on the

plaintiff states as follows:

Specification 8

That following your investigative hearing held on September 8, **2001,** the
Board's Executive Director notified you by letter dated September **14, 2001** that
the Board had ruled to prepare and file Specifications in your case. That by
letter dated September 27, **2001,** you objected to the payment of the transcript
of your investigative hearing. That in your letter, you stated in part:

Considering the speed with which the board's letter arrived at my
doorstep after the hearing it is plain that the decision to file
specifications was made in advance of the hearing.

That your above-quoted statement was unprofessional in that it was made
without any reasonable basis in fact or belief in that you were specifically
advised by the presiding officer at the close of your investigative hearing of the
following:

MR. ARAN:  Okay.  That concludes this proceeding.  As I
mentioned to you, we're part of the overall Board meeting here
this weekend.  What we will do is deliberate; make a
recommendation to the full Board, and you [sic] should be able to
have a written response to you within a week.

14

THE APPLICANT: Yes. I thoroughly thank you.

(Hearing transcript at pages **137-138**).

35. The defendants, under Rule 3-22.5 Board Action Following an Investigative Hearing, are only permitted to allege "matters which if proven would preclude a favorable finding by the Board."

36. Plaintiff's letter of September 27, 2001, implied that the Board "rubber stamped" an investigative summary that the defendants prepared prior to the investigative hearing and the facts alleged in this Complaint support that proposition.

37. Even if the plaintiff's speech were subject to regulation by the Board, which it is plainly not, the content of the aforementioned letter is not defamatory of any person and it is not subject to the standards of regulation and scrutiny that would apply to a legal argument presented in court by a member of the Bar. It was published to a Board staff officer and the statement required no evidentiary support at the time it was written - about five years ago.

38. Not only is Specification 8 frivolous, it shows a clear intent to punish the plaintiff by "further inquiry," to chill the further exercise of his free speech rights and, ultimately, to exclude him from the practice of law for having exercised those rights.

### SECOND CAUSE OF ACTION - 42 U.S.C.§1983
(Defendants: Pobjecky, Rigsby, Hunter and John Does One through Twenty)

39. The plaintiff has a constitutionally protected property interest in his passing bar examination scores and is entitled to the full panoply of procedural due process protections, including an opportunity for an evidentiary hearing and judicially reviewable final agency action prior to any discretionary deprivation of that interest by the Board. Under the

Admission Rules, the Board has discretion to waive the re-examination requirement for good

cause shown.

40. Defendants, by their summary refusal of the plaintiff's timely motion for a waiver

of re-examination, failed to provide the plaintiff with the constitutionally required process and

the order invalidating the plaintiff's scores is, therefore, void and of no effect.

41. Defendants are equitably estopped from invalidating the plaintiff's passing bar

exam scores because the delay was the result of agency actions and misconduct.

THIRD CAUSE OF ACTION - ART. I, Sec. 10, Const. U.S.; 42 U.S.C. § 1983;
42 U.S.C. § 12321, ET. SEQ.
(Defendants: all)

42. The plaintiff is being and has been substantially affected by a particularly onerous

unpromulgated rule, with the force and effect of a "standard," pursuant to which defendants

POBJECKY, RIGSBY, HUNTER, THE FLORIDA BOARD OF BAR EXAMINERS and

JOHN DOES ONE THROUGH TWENTY deem "potentially disqualifying" any purported

"adverse matters" disclosed by a bar application or investigative report.  By reference to this

novel standard the defendants allege subjective conclusions summarizing any derogatory

information it collects as "specifications," without regard to the passage of time since the

conduct or whether the conduct was judicially determined to have been wrongful in the

relevant time frame.  This rule, in general and as applied to the plaintiff, supersedes the

objective standards inherent in Florida's published bar admission rules.

43. The unpromulgated illicit standard triggers "further inquiry" of individuals who

have a history of treatment for substance abuse, mental illness or who are otherwise

subjectively viewed as undesirable.  Such a standard can also be applied to any other person

who is simply disliked and who has lived long enough to have passed through embarrassing

personal and/or business difficulties, such as extended unemployment; divorce; disputes with

16

employers or creditors; minor brushes with law enforcement; and pro se litigation. The list is potentially endless. If the Board cannot find a single major incident, it may collect minor or even trivial matters to make an "aggregate showing."

44. The "aggregate showing of adverse matters" is a euphemism for "suspected of being emotionally or mentally unstable." Unusual lifestyles, seemingly poor choices in personal relationships or employment, idiosyncratic behavior patterns and questionable decisions in one's past are diagnostic criteria professionals consider in tentatively diagnosing: "metabolic disorders" such as hypoglycemia, thyroid deficiency or diabetes; "anxiety disorders" such as general anxiety disorder or post-traumatic stress disorder; "neurobiological disorders" such as major depression or bipolar disorder (in all of its many variations); traumatic brain injury and many other conditions, all of which present overlapping symptoms. Such symptoms often dissipate with medication, cognitive therapy, other recognized treatment modalities, membership in recovery or support groups or simply disappear over time. Because of co-morbidity issues and the overlapping symptomology associated with such disorders, a reliable diagnosis can only be achieved by long term patient evaluation and ongoing periodic review of treatment plans.

45. For these reasons, the ADA impliedly prohibits considering mere erratic or idiosyncratic behavior as constituting a "moral issue," whether the conduct is isolated or a pattern, and the First Amendment of the U.S. Constitution absolutely prohibits it. If an incident or pattern of unusual behavior is of such recency and seriousness as to raise a legitimate "fitness" issue, the Board is required to refer the applicant to a competent professional and pay for an evaluation. If a positive diagnosis of a treatable condition results, the Board must consider a "reasonable accommodation."

17

46. Defendants, LEWIS and JOHN DOES ONE THROUGH TWENTY, have repeatedly ratified the "adverse matters standard" by publishing administrative orders affirming Board recommendations and issuing unpublished decisions ratifying arbitrary license denials. These policy statements are an invalid exercise of the delegated legislative authority of Art. V, Sec. 15 of the Florida Constitution.

47. Disqualification from an occupation is historically regarded as criminal punishment. Definining "disqualifying conduct" requires substantive lawmaking and is the exclusive province of the Florida Legislature. Florida's current Rules of the Supreme Court Relating to Admissions to the Bar, even though vaguely worded, are not in conflict with this principle. However, the State may not lawfully erect "artificial barriers" to admission by enforcing an arbitrary, infinitely elastic, invidiously discriminatory and illegal standard of conduct.

### FOURTH CAUSE OF ACTION - ART. I, SEC. 10, CONST. U.S.
(Defendants: Pobjecky, Yates, Lewis and John Does One-Twenty)

48. The document captioned "Specifications" which the defendants served on the plaintiff is substantially nothing more than "notice of pending adverse agency action" which announced that the Board had determined the plaintiff is guilty of "adverse matters" and that the determination will ripen into a denial of moral character certification unless the plaintiff appears at a formal evidentiary hearing and proves rehabilitation by clear and convincing evidence or proves that the Board's subjective conclusion that he lacks good moral character is wrong.

49. The Specifications document is a *bill of attainder* falsely, maliciously and arbitrarily finding that the plaintiff is guilty of: (1) a violation of 18 U.S.C. § 228 (Deadbeat Parent Punishment Act); (2) perjury; (3) statutory misdemeanors; and (4) various actionable

18

civil wrongs. The document is framed by innuendo and inferences stretched to the snapping point. It is defamatory per se and does not allege even a single incident of purported misconduct by reference to a lawful objective standard or judicial finding of guilt. Defendants published this illicit document with the intent of attaching a badge of infamy to the plaintiff, inflaming the prejudices of the individual Board members and seducing the Florida Supreme Court into affirming defendants' *ultra vires* and fraudulent conduct on review and finally punishing the plaintiff by barring him from the practice of law.

50. Imposing a presumption of criminal guilt and the burden of producing clear and convincing evidence of "rehabilitation" from mere character assassination is unlawful under Article I, Sec. 10 of the United States Constitution. Constitutionally, such a qualification is punishment and only appropriate where the applicant has been proven guilty of an infamous crime in a judicial court or is subject to judicial prosecution for such a crime.

## FIFTH CAUSE OF ACTION - 42 U.S.C. § 12321 ET. SEQ.
(Defendant: the Board)

51. Plaintiff is a "qualified person with a disability" who is protected from discrimination by state licensing authorities pursuant to Title II of the Americans with Disabilities Act because he has acquired the requisite education for law practice and has passed all parts of the Florida Bar Examination and presented a prima facie case of good moral character. Plaintiff has a history of treatment for a specific ADA listed mental illness and is regarded by the defendant as having a disability. Title II and the Rules promulgated pursuant thereto expressly prohibit state licensing boards from imposing additional burdens on protected individuals and blanket exclusionary policies based in stereotypes.

52. The defendant THE FLORIDA BOARD OF BAR EXAMINERS specifically targets certain bar applicants for "further inquiry" and stonewalling or exclusion where the defendant suspects the applicant has a "mental illness" listed in Question 26(b) of the

Application for Admission to the Florida Bar. The listed illnesses are: (a) schizophrenia; (b)

bipolar disorder; (c) kleptomania; and, (d) pedophilia. A positive response to this inquiry

triggers a requirement for the mandatory release of confidential mental health records.

53. The defendant's exclusionary targeting policies violate Title II of the Americans

with Disabilities Act. From the text of Question 26(b) it readily appears that the defendant is

targeting only persons whom they suspect of having "bipolar illness." Kleptomania and

pedophilia are generally regarded as untreatable "mental defects" and involve moral issues.

Those suffering from these disorders are not protected by Title II and are subject to civil

commitment. The chance that the defendants might review the application of an admitted

schizophrenic is extremely remote.

54. There is no statistical or historical basis for defendants' unpromulgated and illicit

rule, declared in the form of a "protocol," by which it harasses and stonewalls anyone who fits

a secret "bipolar profile." The defendants are unlawfully diagnosing mental illness in star-

chamber type proceedings by comparing investigative material with secret "protocols" to

determine whether an applicant's history presents symptoms of mental illness or substance

abuse as described in professional literature such as the *DSM-IV(R)*. A match of an

applicant's history to the "profile" triggers "further inquiry." By this egregiously unlawful

practice, the Board is discriminating not only against applicants suspected of having bipolar

disorder, but against applicants who have *recovered* or who are *recovering* from any of a

number of disabling conditions.

55. The defendant has absolutely no statistical or other evidentiary support for its

theory that a bar applicant who discloses that he has received a prior diagnosis or treatment of

mental illness presents a danger to the public. The discrimination evident in the defendants'

20

practices and policies is exactly the sort of Stone Age prejudicial stereotyping expressly

prohibited from professional licensing procedures by Title II.

<u>SIXTH CAUSE OF ACTION - 42 U.S.C. § 12321, ET. SEQ.</u>
(Defendant: the Board)

56.  Defendants' latest revisions of the "mental health questions" on the Bar application

reveal an intent to stigmatize an entire class of individuals: applicants who either disclosed a

history of treatment for bipolar illness or, who, in the opinion of the defendant's staff

investigators (who are not licensed psychiatric practitioners), are suspected of having "latent"

or undiagnosed bipolar illness.

57.  On multiple occasions, defendants went out of their way to stigmatize the plaintiff

by inserting matters related to the plaintiff's mental health history into the application records

for publication to individual Board members even though there is not a single reference to a

mental health issue in the Specifications document.

58.  As a result of the publication of the defamatory document to individual members

of the Board of Bar Examiners, all of whom are volunteers and most of whom are members of

the Florida Bar associated with prospective employers of the plaintiff,  the Board deprived the

plaintiff of his livelihood for an indeterminate period of time and caused lasting harm and

prejudice to his employment prospects and his professional reputation.

<u>DAMAGES</u>

59.  As a result of the defendants' trampling of plaintiff's statutory and constitutional

rights, plaintiff has been forced to expend considerable sums of money seeking relief from the

defendants' unlawful acts and to repair the damage to his good name and reputation.

60.  Plaintiff has incurred and will incur loss of revenues that plaintiff could have

reasonably anticipated had his application for admission not been unlawfully delayed.

61. Plaintiff is unable at this time to calculate exactly or finally the amounts of the damages he has incurred or that he will incur as a consequence of the unlawful acts of the defendants. Plaintiff alleges that but for the unlawful acts by defendants he would have been admitted to practice law in Florida, would have opened a law office and would have established a successful practice. Plaintiff estimates his current and future losses of revenue and business opportunities at $2,500,000.

62. Plaintiff has suffered and continues to suffer mental pain and anguish, emotional stress and humiliation as a direct result of defendants' unlawful conduct.

63. As a result of the unlawful actions of defendants, plaintiff avers that he is entitled to punitive damages in the amount of $7,250,000.

64. The Board is not vested with rulemaking authority, and neither the Board nor its individual members are cloaked with legislative immunity against damage suits for rights violations, see generally, Supreme Court of Virginia v. Consumers Union, 446 U.S. 719 (1980)(concluding that no immunity would exist for the Virginia Bar or the Virginia Supreme Court when acting to enforce the Virginia Bar Code). Nor is the Board cloaked with judicial immunity (in fact, by rule, three of its members are not even attorneys): whatever it is doing or has done, its functions must be viewed as entirely administrative in nature. See generally, Forrester vs. White, 484 U.S. 219 (1988)(holding that a judge did not have judicial immunity when he acted in an administrative capacity to fire a court officer, and noting that in Supreme Court of Virginia v. Consumers Union, supra, the court concluded that neither promulgating nor enforcing a Bar Code was a judicial function).

65. The Board, as an agency of the State of Florida, has no available Eleventh Amendment immunity defense against damage suits arising out of substantive Fourteenth

22

Amendment violations of Title II of the Americans with Disabilities Act. See U.S. vs.

Georgia, 546 U.S. ___, 126 S. Ct. 877 (2006).

66.  Plaintiff has no adequate remedy at law to prevent defendants from further

enforcement of their unlawful rules, policies and procedures.  Defendants' continuing refusal

to conform their conduct to the rule of law will cause the plaintiff to suffer irreparable injury.

## RELIEF DEMANDED

WHEREFORE, Plaintiff demands relief as follows:

A.  a declaratory judgment finding that:

(1) the policy, generally applicable to all applicants, establishing a "protocol"

by which the defendants evaluate and determine whether bar applicants may be suffering

from mental illness, described in paragraph 54 above, is an illicit unpromulgated rule;

(2) the rule, generally applicable to all applicants, requiring applicants to answer

questions on the Florida Bar Application which require disclosure of the diagnosis of or

treatment for specific mental illnesses, described in paragraphs 52 through 55 above, is

an illicit unpromulgated rule;

(3) the rule, generally applicable to all applicants, requiring the mandatory

release of mental health records where an applicant has given an affirmative response to

the mental health questions, described in paragraph 52 above, is an illicit unpromulgated

rule;

(4) the policy, generally applicable to all applicants, requiring mandatory follow-

up inquiries, investigation and hearings, where an applicant has disclosed a history of

mental health treatment, described in paragraph 54 above, is an illicit unpromulgated

rule ;

23

(5) the policy, generally applicable to all applicants, subjecting applicants who "fit the mental illness profile" or who have disclosed a history of being diagnosed as having and/or being treated for a mental illness to additional costs and investigatory burdens because they are regarded as having a disability or are suspected of having a disability, described in paragraphs 51 and 54 above, is an illicit unpromulgated rule;

(6) the policy or standard, generally applicable to all applicants, that past acts of privileged conduct that are not materially related to the practice of law, that are not presently punishable under criminal law, or that were never punished and that may be merely embarrassing, may be deemed to be "adverse matters" and grounds for exclusion from the practice of law either temporarily or permanently, described in paragraphs 35 and 42 above, is an illicit unpromulgated rule;

(7) the rule, generally applicable to all applicants, pursuant to which the defendants may conduct "further inquiry" related to mere "adverse matters," described in paragraphs 34 through 38 above, is an illicit unpromulgated rule;

(8) the policy, generally applicable to all applicants, pursuant to which the defendants require an applicant who has never been convicted of a crime or been the subject of an attorney disciplinary order to produce proof of rehabilitation, in the form of clear and convincing evidence presented at a formal evidentiary hearing, from allegations of adverse conduct that are based upon mere opinions or allegations unsupported by any findings of fact or guilt by a competent tribunal, described in paragraph 50 above, is an illicit unpromulgated rule;

(9) the policy, generally applicable to all applicants, pursuant to which the defendants, sua sponte and in violation of published rules, terminate applications in

cases where the applicant refuses to attend a formal evidentiary hearing, described in paragraphs 39 through 41 above, is an illicit unpromulgated rule;

(10) the rule, generally applicable to all applicants, by which the defendants summarily deprive applicants of the benefit of their passing bar examination scores if their applications have been on file for more than five years, described in paragraph 39 above, is an illicit unpromulgated rule;

(11) the policy, generally applicable to all applicants, pursuant to which the defendants deem an "aggregate showing" of "adverse matters" unrelated to the attorney profession and unsupported by judicial findings to be disqualifying from the practice of law, described in paragraphs 43 through 45 above, is an illicit unpromulgated rule.

(12) the word "rehabilitation," as discussed in paragraphs 48 and 50 above, is interpreted according to its traditional meaning in the penal law context: *the act by which a man is restored to his former ability, of which he had been deprived by a conviction, sentence or judgment of a competent tribunal; and,*

(13) the plaintiff currently possesses "good moral character" sufficient for admission to the Florida Bar.

B. entry of a preliminary injunction which:

(1) enjoins the defendants from considering the plaintiff's mental health status as reflective of lack of character or fitness to practice law;

(2) enjoins the defendants from enforcing in the current application proceeding or in any future application proceeding any rule or policy that has not been duly promulgated as a rule by the Supreme Court of Florida;

(3) enjoins the defendants from maintaining a record of any statement relating to the plaintiff's mental health, whether such statement is on the plaintiff's original application, any supplement thereto, or is the product of inquiry or investigation; and,

(4) enjoins the defendants from enforcing any decision that invalidates the plaintiff's passing bar application scores; and,

(5) requires the defendants to certify the plaintiff as being of "good moral character" and to file that certification with the Florida Supreme Court.

C.  entry of a permanent injunction which:

(1) enjoins the defendants from considering the plaintiff's mental health status as reflective of lack of character or fitness to practice law;

(2) enjoins the defendants from enforcing in the current application proceeding or in any future application proceeding any rule or policy that has not been duly promulgated as a rule by the Supreme Court of Florida;

(3) enjoins the defendants from maintaining a record of any statement relating to the plaintiff's mental health, whether such statement is on the plaintiff's original application, any supplement thereto, or is the product of inquiry or investigation; and,

(4) enjoins the defendants from enforcing any decision that invalidates the plaintiff's passing bar application scores;

D.  an award of money damages to compensate the plaintiff for the injuries he has suffered because of the defendants' *ultra vires*, unlawful acts;

E.  an award of punitive damages against the defendants as a deterrent against similar future conduct by these defendants or others;

F.  an award of all costs of this action, including reasonable attorney fees pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12205;

G.  such further injunctive and other relief as this Court deems appropriate; and,

H.  retention of jurisdiction for the enforcement of the injunctive orders.

NOTICE OF DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues triable before a jury.

JEFFREY H. NORTHCUTT
Florida Bar No. 0538361
1814 Cedar River Dr.
Jacksonville, FL 32210
(904) 982-7527

## BEFORE THE FLORIDA BOARD OF BAR EXAMINERS

IN RE:    APPLICATION OF      )
             PHILIP JAMES STODDARD   )
             FOR ADMISSION TO      )   FILE NO. 81929
             THE FLORIDA BAR       )
_____)

## FINDINGS OF FACT,
## CONCLUSIONS OF LAW,
## AND
## RECOMMENDATION

## EXHIBIT B

## FINDINGS BACKGROUND

The applicant, Philip James Stoddard, was born on November 1, 1944, in Mobile, Alabama. The applicant attended the University of Delaware, Newark, Delaware, from September 1962 to June 1968, when a BEA degree was awarded him. The applicant entered Thomas Jefferson School of Law, San Diego, California, on August 23, 1995, through May 1998. The applicant attended Florida State University College of Law from August 1998 to June 1999, and on May 23, 1999, the degree of Juris Doctor was conferred on him by Thomas Jefferson School of Law.

The applicant executed an Application for Admission to The Florida Bar on November 1, 1999. The applicant successfully completed the August 1999 Multistate Professional Responsibility Examination and the February 2000 General Bar Examination. The applicant's examination scores were deleted in February 2005 under Rule 4-18.2, Rules of the Supreme Court Relating to Admissions to the Bar (hereinafter designated as "the Rules").

During the course of the character and fitness investigation conducted by the Board, certain items of information that reflected adversely upon the applicant's character and fitness under Rules 2-12, 3-10, 3-11, and 3-12 of the Rules came to the Board's attention. An extensive investigation of the applicant's activities in question was undertaken.

The applicant was invited to appear before the Board for an investigative hearing and the applicant did so appear on September 8, 2001. Following the investigative hearing, the Board determined that Specifications should be prepared and served upon the applicant and that the matter of the applicant's character and fitness be considered at a formal hearing.

2

The Specifications were served upon the applicant on November 28, 2001. The applicant was advised of his right to a formal hearing on the Specifications and the right to present witnesses and any other evidence that might be pertinent to the issues. The Board's authority to issue subpoenas was made available to the applicant.

The applicant filed an Answer to Specifications on December 13, 2001. The applicant filed the Amended/Supplemental Answer to Specifications on February 5, 2002. By letter dated April 10, 2002, the applicant notified the Board that he would "have no further dealings with the Florida Board of Bar Examiners" during the pendency of litigation filed by the applicant in the United States District Court against the Board. In response, the Board notified the applicant by letter dated April 16, 2002, that his file would "be inactivated and held in abeyance until such time as you elect to proceed."

The applicant's Bar Application became obsolete on November 2, 2002. The applicant executed an updated Florida Bar Application on July 7, 2004.

During the course of the updated character and fitness investigation conducted by the Board, certain additional items of information that reflected adversely upon the applicant's character and fitness under Rules 2-12, 3-10, 3-11, and 3-12 of the Rules came to the Board's attention. An extensive investigation of the applicant's activities in question was undertaken.

The applicant was invited to appear before the Board for a second investigative hearing and the applicant did so appear on May 20, 2005. Following the investigative hearing, the Board determined that Supplemental Specifications should be prepared and served upon the applicant and that the matter of the applicant's character and fitness be considered at a formal hearing.

The Supplemental Specifications were served upon the applicant on July 26, 2005. The applicant was advised of his right to a formal hearing on the

3

Specifications and the right to present witnesses and any other evidence that might be pertinent to the issues.  The Board's authority to issue subpoenas was made available to the applicant.

The applicant was granted an extension to file the Answer to Supplemental Specifications until October 14, 2005, and the Amended/Supplemental Answer to Specifications was filed on October 11, 2005. By letter dated November 3, 2005, the applicant's attorney requested the hearing be scheduled during the Board's May 2006 meeting.  The Board was unable to schedule the applicant's formal hearing during the May 2006 meeting of the Board, as all procedural matters required for scheduling had not been completed at that time.  The applicant was offered formal hearing time at the July 2006 meeting of the Board.  By letter dated March 21, 2006, the applicant's attorney requested a formal hearing at the September 2006 meeting of the Board.

The formal hearing was convened on September 15, 2006, in Tampa, Florida.  The applicant appeared at the hearing and was represented by Jeffrey H. Northcutt, Esquire.  The Office of General Counsel was represented by Thomas Arthur Pobjecky.

The Specifications, including the Supplemental Specifications, previously served upon the applicant read as follows:

### Specification 1

That you have demonstrated a continuing lack of respect for the law and for the rights of your children and former spouse as evidenced by the following:

(A)    That a Maryland divorce decree was entered on April 30, 1979 ordering you to make monthly payments of child support of $500.00 for your four minor children.  That a Nevada Judgment & Order was entered on April 19, 1985 ordering you to make monthly

4

payments of child support of $250.00. That you have failed to make any payments as required by the aforementioned orders.

(B)    That during the period of 1979-1985, you made it difficult for your former spouse to enforce your child support obligation in that you:

    (i)    Changed your last name;

    (ii)   Relocated across the country and changed your residence on several occasions; and

    (iii)  Failed to file federal income tax returns.

(C)    That your youngest children (twins) became emancipated in 1988. That during the period of 1979-1988, you failed to pay any child support payments notwithstanding your receipt of the following funds:

    (i)    An inheritance from your grandmother during the early 1980s; and

    (ii)   A personal injury settlement in or about 1981.

(D)    That in 1990, you filed a Motion in Opposition to Plaintiff's Motion to Reduce Arrearages to Judgement. That in your motion, you requested the court to "summarily dismiss the motion on the grounds that the plaintiff has failed to join the children of the marriage who are parties indispensible [sic] to a fair adjudication of the issues." That your motion was frivolous and was filed by you to delay the proceeding or to annoy the opposing party.

(E)    That by order of a Maryland court entered on December 18, 1990, a judgment was entered that established your arrears for court ordered child support at $46,535.00. That as of the date of your investigative hearing before the Board on September 8, 2001, you had not paid any of the aforementioned judgment.

(F)    That in July 2003, your former spouse filed a Writ of garnishment in the amount of $104,703.75 attaching your beneficial interest in an inter vivos trust established by your parents. That in February 2004, you settled this matter by consenting to the release of $28,603.24 (the net proceeds of the Writ of Garnishment) to your former spouse.

## Specification 2

That you appeared before a Division of the Board at an investigative hearing held on September 8, 2001 at which you were questioned on matters material to the Board's investigation into your character and fitness for admission to The Florida Bar. That at said hearing you gave the following testimony under oath in response to the following questions:

> Q.    Isn't it true that since the day of your divorce, you have never darkened the doors of the state of Maryland?
>
> A.    That's not true.
>
> Q.    That's not true?
>
> A.    No. I've visited Maryland many times.

(Hearing transcript at page 9)    That your testimony was false, misleading or lacking in candor in that you had not physically been in the State of Maryland from the date of your divorce in 1979 to, at least, May 21, 1990.

## Specification 3

(A)    That you have exhibited a pattern of irresponsibility or lack of respect for the law or both by your failure to comply with the federal income tax laws and regulations requiring the timely filing of federal income tax returns and the timely payment of federal income taxes for tax years 1980 through 1987. That the Internal Revenue Service assessed your liability for unpaid taxes, penalties and interest at over $20,000.00 for those years. That you failed to pay such liability and such liability was subsequently discharged by you by your 1996 bankruptcy.

(B)    That you have exhibited a pattern of irresponsibility or lack of respect for the law or both by your failure to comply with the federal income tax laws and regulations requiring the timely payment of federal income taxes for tax year 1994. That as of the date of your investigative hearing before the Board on September 8, 2001, your outstanding tax liability for tax year 1994 was approximately $2,800.00.

6

(C)    That you have exhibited a pattern of irresponsibility or lack of respect for the law, or both, by your failure to comply with the federal income tax laws and regulations requiring the timely payment of federal income taxes for tax years 2001, 2002, and 2003. that as of the date of your investigative hearing before the Board on May 20, 2005, your outstanding tax liability was approximately $5,800.00.

## Specification 4

(A)    That on or about August 1, 1998, you were driving a taxi in St. Augustine, Florida when you were stopped by a police officer for running a stop sign. That following such stop, you conducted yourself in an irresponsible and inappropriate manner as evidenced by the following:

That you went to the officer's patrol car where the officer was writing the citation, and you screamed and cursed at the officer. That the officer escorted you back to your vehicle and advised you to remain at your vehicle. That you left your vehicle and stood in the middle of the road demanding information from the officer. That the officer ordered you out of the roadway, and you responded by telling the officer to perform a sexual act on your person. That the officer placed you under arrest for resisting arrest without violence. That you further told the officer that you were going to sue him, the police chief and the city, and that you were waiting for this to happen so that you could get rich.

That after being unsuccessful in your efforts to have the charge dismissed, you entered a plea of no contest to the charge of resisting arrest without violence. That the court withheld adjudication, ordered you to pay court costs in the amount of $250.00 and placed you on unsupervised probation.

(B)    That by letter dated August 3, 1998, you filed a complaint against the arresting police officer alleging that the officer engaged in "abusive, unprofessional, and unlawful conduct." That in your letter, you accused the arresting officer of being a "thin skinned" officer, who did not like your attitude. That your complaint was vexatious and harassing in nature. That following an investigation by an internal affairs investigator, your complaint was determined to be without merit.

7

## Specification 5

That in 1998, you filed suit against the Florida Department of Children and Family Services, its Secretary and two of its employees, the law firm of Upchurch, Baily and Upchurch, P.A. and others in federal district court. That during the course of such litigation, you conducted yourself in an unprofessional and/or inappropriate manner as evidenced by the following:

(A)    That by order of the court, you were required to appear for a hearing on various pending motions scheduled for February 25, 1998. That as a result of your failure to appear either in person or through counsel at such hearing, the federal district judge imposed the sanction of dismissing your case without prejudice.

(B)    That contrary to the rules of the federal district court, you attempted to represent your mother-in-law in such litigation by claiming to be "Next Friend" for her. That in dismissing your case, the federal district judge specially precluded you from representing your mother-in-law until your admission to practice law. In his order, the judge stated in part:

> The Court also notes that Philip J. Stoddard, who filed the Complaint in this case as well as numerous pleadings and responses, is not a member of the Bar of the State of Florida, nor a member of the Bar of this Court, nor as far as the Court can tell, a member of any bar of the highest court of any state or of any federal court in the United States. Mr. Stoddard is therefore precluded by the rules of this Court from representing his mother-in-law.

> In addition, not being a member of the Bar is a serious matter in the State of Florida dealing with the question of unauthorized practice of law, and before Mr. Stoddard will be allowed to appear in this Court, he must be admitted to practice. The Court suggests in the alternative that he seek proper guardianship of his mother-in-law under the laws of the State of Florida. Under those circumstances, Mr. Stoddard still would not be entitled to practice law in this Court, but must retain an attorney admitted to practice.

## Specification 6

That you filed an Application for Admission to The Florida Bar, the accuracy of which was duly sworn to by you under oath on November 1, 1999.

(A)   That in response to said Item 16.f. you disclosed the litigation as more particularly described in Specification 5 above. That in your "complete explanation," you stated that your pro se civil rights case had been dismissed without prejudice for the following reason: "I failed to physically attend a scheduling conference in Jacksonville while I was attending Law School in San Diego, California. The judge refused to permit a telephonic appearance." That you failed to provide the Board with a copy of the judge's order as required by Item 16.f.

That Item 30. of your bar application asked the following: "Has it ever been alleged that you engaged in the unlicensed practice of law in any jurisdiction? If yes, give full details below." That in response to said item, you checked "No."

That your responses to Item 16.f. and 30 were false, misleading or lacking in candor in that you failed to disclose the ruling of the federal district judge prohibiting you from further representation of your mother-in-law until your admission to the practice of law.

(B)   That by letters dated March 23, 2000, March 27, 2000 and April 3, 2000, the Board requested you to amend Item 30. to include your warning for the alleged unlicensed practice of law and to provide an explanation of your failure to report this in your original bar application.   That in response to the Board's request, you submitted an amendment to your bar application, the accuracy of which was duly sworn to by you under oath on April 12, 2000. That in your amendment, you stated:

> I respectfully stand on my answer to Application item 30. I have never practiced law with or without a license and am not aware of any "warnings" by any regulatory authority with jurisdiction of matters concerning the practice of law.   My present activities are entirely concerned with reviewing proposed legislation, lobbying the legislature, and with executive agency procedural

matters related to claims for unclaimed property in Florida and in other states.

That your statement was false, misleading or lacking in candor in that you provided legal representation to your mother-in-law prompting a federal district judge to prohibit you from future representation until your admission to the Bar as more particularly alleged in Specification 5(B) above.

## Specification 7

(A)    That you filed a Complaint for Declaratory Relief against The National Association For Asset Recovery in the Circuit Court for St. Johns County, Florida. That your complaint was served on the defendant on August 22, 2000.

That in your complaint, you specifically sought the following relief: "[A] declaratory judgment establishing that defendants owe the Plaintiff 25% commission for the fees received prior to the time Plaintiff left defendant's employment...." That such claim for relief was without merit and was vexatious and harassing in nature in that on July 29, 2000, you had executed a "Release" whereby you acknowledged receipt of $1,556.51 from the defendant in satisfaction of any and all claims for compensation you had against the defendant.

(B)    That you appeared before a Division of the Board at an investigative hearing held on September 8, 2001 at which you were questioned on matters related to your complaint as more particularly alleged in Specification 7(A) above. That at said hearing you gave the following testimony under oath in response to the following questions:

Q.    Mr. Stoddard, that is a copy of the release.

Is that a true and accurate copy of a release that you signed on July 20, 2000?

A.    Let's see what's going on here. Yes.

I released, and the consideration for this release was their paying the - their paying the 1,200 bucks.

Q.    So a few days later, you sue them for the same money they just paid you for?

A.    No, I didn't sue them for the money.  I sued them for declaration that -- I sued them for declaration that the noncompete was void.

(Hearing transcript at pages 111-112).  That your testimony was false, misleading or lacking in candor in that your complaint specifically sought the following relief:  "[A] declaratory judgment establishing that defendants owe the Plaintiff 25% commission for the fees received prior to the time Plaintiff left defendant's employment...."

### Specification 8

That following your investigative hearing held on September 8, 2001, the Board's Executive Director notified you by letter dated September 14, 2001 that the Board had ruled to prepare and file Specifications in your case.  That by letter dated September 27, 2001, you objected to the payment of the transcript of your investigative hearing.  That in your letter, you stated in part:

Considering the speed with which the board's letter arrived at my doorstep after the hearing it is plain that the decision to file specifications was made in advance of the hearing.

That your above-quoted statement was unprofessional in that it was made without any reasonable basis in fact or belief in that you were specifically advised by the presiding officer at the close of your investigative hearing of the following:

MR. ARAN:    Okay.    That concludes this proceeding.

As I mentioned to you, we're part of the overall Board meeting here this weekend.  What we will do is deliberate; make a recommendation to the full Board, and you [sic] should be able to have a written response to you within a week.

THE APPLICANT:  Yes.  I thoroughly thank you.

(Hearing transcript at pages 137-138).

11

## Specification 9

That you have demonstrated financial and/or professional irresponsibility as evidenced by the following:

That in 1994, you were driving a car without insurance that was involved in an accident. That the insurance company for the driver of the other car brought suit against you for damages. That a Final Judgment was entered against you in such suit in March 1996 in the principal sum of $1,666.20 plus costs of $64.50 and prejudgment interest of $160.01. That you failed to satisfy such judgment, and you obtained discharge of such legal obligation as a result of your June 1996 filing for bankruptcy.

## Specification 10

That in connection with the garnishment proceeding filed by your former spouse as more particularly alleged in Specification 1(F) above, you sent a letter dated November 26, 2003, to Julian Karpoff, the attorney for your former spouse. That in your letter, you stated in part:

It appears that in 1998 an attorney negligently "renewed" the non-final order of Dec. 18, 1990 after Lynda retained him to enforce her claim in California or Florida. Apparently, the lawyer abandoned the effort when he discovered the mistake. He either misled Lynda as to the real reason why he could not proceed or Lynda is ignoring reality. My concern is that your maintaining the present action is inadvertently advancing deception. You're right about one thing - even to some pretty well-trained eyes, the 1990 order looks like a "judgment." On close inspection however, though the document "looks like a duck," it does not "walk like a duck" or even quack.

I suspect that the court is not fooled at all and set the motions hearing in the hope that the attorneys would more carefully research their positions and amicably dispose of the case. Even the Florida Board of Bar Examiners knows that the document Lynda is suing on is not a "judgment." The Bar Examiners investigated the

12

matter via an investigative interview with an Anne
Arundel County Circuit Judge and came to the same
conclusion I did. If the Board could make out a good
faith allegation that there is an unsatisfied judgment
against me they would do it. After their investigation, all
they are alleging is failure to satisfy a moral obligation.
My defense is simple - for most of the past 20 years I .
have been broke.

That your statements that the Board had investigated this matter
had had determined that there was no unsatisfied judgment against
you and that there was only a failure to satisfy a moral obligation were
false, misleading or lacking in candor in that Specifications were
pending against you at the time of your letter to Mr. Karpoff that
alleged "a continuing lack of respect for the law" by you regarding
your outstanding arrears for court ordered child support including the
unsatisfied December 18, 1990, judgment for $46,535.00.

## FINDINGS OF FACT

Specification 1 includes six subparts related to the applicant's lack of respect
for the law and for the rights of his children and former spouse. Specification 1(A)
alleges the applicant was ordered to pay child support by orders entered in
Maryland in 1979 and Nevada in 1985, both of which the applicant disregarded.
Specification 1(B) alleges the applicant made it difficult for his former spouse to
enforce the Maryland child support order by changing his last name, relocating
across the country and changing his residence on numerous occasions, and failing
to file federal income tax returns between 1979 and 1985. Specification 1(C)
alleges that the applicant received an inheritance from his grandmother during the
early 1980s and proceeds from a personal injury settlement around 1981 but still
failed to make any child support payments. (Formal Hearing Record – Board
Exhibit 4, hereinafter designated by "FHR-BE" followed by the exhibit number)

By his Answer executed on February 5, 2002, the applicant denies that he
showed a continuing lack of respect for the law and the rights of his former spouse

13

and children.   (FHR-BE 5)   In his Amended/Supplemental Answer to Specifications dated October 11, 2005, the applicant admits the remaining allegations of those Specifications. (FHR-BE 9) At his first investigative hearing, the applicant admitted that he did not make any child support payments as ordered, that his former spouse pursued him for that support, and that he changed his name while in Oregon only months after the April 1979 order was entered. (FHR-BE 3 at 6-9)

The applicant testified that he had obtained a college degree and that he had prior work experience when the child support order was entered. (FHR-BE 3 at 10-11) Moreover, the applicant admitted that he settled a personal injury claim for $50,000.00 in 1981 or 1982 but chose not to make any child support payments from that settlement. (FHR-BE 3 at 16) He stated he inherited money from his grandmother's estate after she died and that he used that inheritance to sustain himself until he received the personal injury settlement funds. (FHR-BE 3 at 25) The applicant stated that when he initially received the inheritance checks from his grandmother's estate, he never considered the possibility of applying part of those funds to pay his delinquent child support obligation, explaining, "By that time, I was letting sleeping dogs lie." (FHR-BE 3 at 27) Instead, he took the funds and invested in a business for himself. (FHR-BE 3 at 28)

The applicant acknowledged that he received approximately $110,000.00 between 1980 and 1982 from the settlement and the inheritance. (Formal Hearing Transcript, page 283, hereinafter designated as "T" followed by the page number) He testified that there were times when he did have money that he could have sent to comply with the orders but that he did not do so, explaining that he "abandoned" his children. (T 310) Thus, by his own admission, the applicant had sufficient funds to make some payments and chose not to do so.

14

The child support order, entered in April 1979, resulted from a separation agreement signed by the applicant at a time when he was represented by counsel. (Formal Hearing Record – Office of General Counsel, Exhibit 3, hereinafter designated by "FHR-OGCE" followed by the exhibit number) That same year, the applicant relocated across the country to Oregon, married the mother of one of his friends, and changed his surname. (FHR-BE 3 at 19, 8) When asked whether he made it easy for his former spouse to locate him, he acknowledged that he had not done so. (FHR-BE 3 at 7) While he suggests that his former spouse could have contacted him through his father, he testified that at the time of the divorce he did not have a good relationship with his father and did not speak with his father for seven years. (FHR-BE 3 at 8) The applicant further testified, "My ex-wife had nothing but a sincere desire for revenge against me. It was my sincerely-held belief that any contact with her or with those children would have resulted in repercussions against me that I was not prepared to deal with." (FHR-BE 3 at 27) He said, "even though I wasn't hiding from her, I really didn't want to be found." (T 311)

The applicant described his many moves throughout the western part of the country from 1979 through 1985. The order of support was issued in April 1979 while the applicant was in Atlanta. After that order was entered, he moved to Oregon in October 1979 (FHR-BE 3 at 19), and then relocated to Marina del Rey, California, in August 1980. (FHR-BE 3 at 25) He left there and moved to Malibu, then San Luis Obispo, followed by Cambria, California, and finally to Incline Village, Nevada. (FHR-BE 3 at 34) The State of Maryland finally tracked him down in Incline Village in 1985. (FHR-BE 3 at 36-37) The applicant testified that he did not volunteer his whereabouts because he was afraid. When asked what he was afraid of, he responded, "I was afraid. I knew she would - - she would try to collect child support if she thought she could get it." (T 313) In addition to the

15

multitude of moves, the applicant admitted that he did not file any tax returns from 1980 through 1987. (FHR-BE 3 at 29)

Based upon the consideration of the complete record before it, the Board finds that the allegations contained in Specifications 1(A), 1(B), and 1(C) have been established. Accordingly, the Board finds Specifications 1(A), 1(B), and 1(C) proven, and the language of the Specifications reproduced above under the Findings Background is hereby adopted by the Board as its specific Findings of Fact. The Board further finds the applicant's evidence fails to mitigate the seriousness of the proven allegations of Specifications 1(A), 1(B), and 1(C), each of which the Board finds individually disqualifying.

The remaining sections of Specification 1, as well as Specification 10, pertain to the applicant's conduct with respect to collection efforts commenced after his youngest children (twins) became emancipated in 1988. In September 1989, his former wife filed a Motion to Reduce Arrearages to Judgment. (FHR-OGCE 3) Specification 1(D) alleges that the applicant filed a frivolous Motion in Opposition to the Plaintiff's Motion to Reduce Arrearages to Judgment. Specification 1(E) alleges that the Maryland court entered a judgment for the arrearages on December 18, 1990, and that as of September 8, 2001, the applicant had failed to make any payment to satisfy that judgment. Specification 1(F) alleges that the Applicant's former wife filed a writ of garnishment attaching the applicant's beneficial interest in an inter vivos trust in July 2003 and that the applicant finally settled the matter in February 2004, his first and only payment in 25 years. (FHR-BE 4) Specification 10 alleges the applicant made statements that were false, misleading, or lacking in candor in a letter he sent to his former wife's counsel in the garnishment proceeding when he wrote that the Board

16

investigated the matter via an investigative interview with an Anne Arundel County Circuit Judge and came to the same conclusion I did. If the Board could make out a good faith allegation that there is an unsatisfied judgment against me they would do it. After their investigation, all they are alleging is failure to satisfy a moral obligation."
(FHR-BE 8, page 2)

By his Amended/Supplemental Answer to Specifications dated October 11, 2005, the applicant admits that he "filed papers in the divorce action in 1990," that the trial court entered an order establishing the arrearages for child support at $46,535.00, that as of September 8, 2001, he had not made any payments on the child support arrearage, that his former wife filed a writ of garnishment, and that a recorded satisfaction as to all claims against the applicant was filed in February 2004. (FHR-BE 9) In response to Specification 10, the applicant admits that he wrote the statements set forth in the Specification, but he denies that statements were false, misleading, or lacking in candor. (FHR-BE 9)

The Board had before it for consideration a copy of a "Motion in Opposition to Plaintiff's Motion to Reduce Arrearages to Judgement" filed in the Maryland court by the applicant. It is dated May 21, 1990, and was filed in response to the former wife's motion to reduce the arrearages to judgment. (FHR-OGCE 3) In his responsive motion, the applicant "requests that the court summarily dismiss the motion on the grounds that the plaintiff has failed to join the children of the marriage who are parties indispensable to a fair adjudication of the issues." (*Id.*) When asked about that statement, the applicant acknowledged such request was a "bunch of crap" (FHR-BE 3 at 38) and was unnecessary. (FHR-BE 3 at 53) By letter dated November 30, 1990, the applicant stated he would no longer oppose the motion to reduce the arrearage to "judgment" explaining that he filed the objections merely to place his side of the story on the record. (FHR-OGCE 3)

17

Despite these prior written communications authored by the applicant, in a letter dated November 26, 2003, the applicant wrote to the attorney representing his former wife in the garnishment proceeding. The letter was written four years after the applicant had graduated from law school and almost two years after he had received the first Specifications filed by the Board. In Specification 1(E), charged in the first Specifications, the Board asserted that a "judgment" was entered by the Maryland court on December 18, 1990, and that the Applicant had not made any payments to satisfy that "judgment." (FHR-BE 4 at 2-3) This language clearly put the applicant on notice that the Board had properly construed the December 18, 1990, judgment as a "judgment."

By his Amended/Supplemental Answer to Specifications dated October 11, 2005, the applicant readily acknowledges that the Board disagreed with his characterization of the judgment:

> Applicant truthfully stated that there was no "judgment" because, in fact, no "money judgment" had been issued as that term is defined in Maryland law. . . . Rather, there was a non-final, non-appealable, interlocutory "order" entered in 1990 as an exercise of the court's continuing equity jurisdiction to enforce the 1979 divorce decree. *The Board has erroneously characterized that order as a "judgment."*

(FHR-BE 9 at 18-19) [emphasis added] Moreover, during the formal hearing, the applicant, once again, attempted to justify his characterization of the judgment as a moral obligation:

> Well, it may be an unsatisfied judgment, but an unsatisfied judgment merely gives the other party, who is the judgment predator [sic], the right to execute on it. And if that - - if that party can't execute on that judgment then it remains a moral obligation.
> (T 307)

Accordingly, the applicant's representation in the November 2003 letter that the Board was alleging that he merely failed to satisfy a "moral obligation" is false,

misleading, and lacking in candor. Furthermore, his representation that the Board conducted an investigation and "came to the same conclusion" as he did is also false, misleading, and lacking in candor.

Based upon the consideration of the complete record before it, the Board finds that the allegations contained in Specifications 1(D), 1(E), 1(F), and 10 have been established. Accordingly, the Board finds Specifications 1(D), 1(E), 1(F), and 10 proven, and the language of the Specifications reproduced above under the Findings Background is hereby adopted by the Board as its specific Findings of Fact. The Board also finds the applicant's evidence fails to mitigate the seriousness of the proven allegations of Specifications 1(D), 1(E), and 1(F), each of which the Board finds individually disqualifying. The Board further finds the applicant's evidence fails to mitigate the seriousness of the proven allegations of Specification 10, which the Board finds collectively disqualifying.

Specification 2 alleges the applicant provided testimony during the investigative hearing that was false, misleading, or lacking in candor when he testified that he had traveled to Maryland after the date of his divorce and before the date of the investigative hearing. Based upon complete consideration of the record before it, the Board finds that the evidence is insufficient to support the allegation. Accordingly, the Board finds that Specification 2 is not proven.

Specification 3 alleges the applicant displayed a pattern of irresponsibility or lack of respect for the law or both based on the applicant's failure to comply with the federal income tax laws. Specification 3(A) alleges the applicant failed to timely file federal income tax returns and failed to timely pay federal income taxes for the tax years 1980 through 1987. Specification 3(B) alleges the applicant failed to timely pay federal income taxes for the tax year 1994 and that as of September 8, 2001, the applicant had failed to satisfy his outstanding tax liability for that tax year. Specification 3(C) alleges the applicant failed to timely pay

federal income taxes for the tax years 2001 through 2003, and that as of May 20, 2005, the applicant had failed to satisfy his outstanding tax liability. (FHR-BE 4)

By his Answer executed on February 5, 2002, the applicant admitted that he failed to timely file income tax returns during the years 1980 through 1987 and that he failed to pay his 1994 income taxes when due. (FHR-BE 5) By his Amended/Supplemental Answer to Specifications dated October 11, 2005, the applicant admitted that as of September 8, 2001, he had failed to pay the outstanding tax liability for the 1994 tax year, but he satisfied that liability as of August 6, 2005. (FHR-BE 9) He further admitted that he had executed an installment agreement for his 2001 tax liability and that a balance of $5,893.00 remained outstanding as of August 6, 2005. (FHR-BE 9) The applicant alleged he filed timely requests for extensions in 2002 and 2003 and that he paid the outstanding obligations when he filed the tax returns for those years. (FHR-BE 9)

The Board had before it for consideration a copy of Internal Revenue Service Literal Transcripts for the tax years 1980 through 1987, 1994, and 2001 through 2003. (FHR-OGCE 6 and 15) The transcripts for the tax years 1980 through 1987 show that each of those returns were filed on a single date – December 19, 1988. The applicant acknowledged that he failed to file any tax returns from 1980 through 1987 and that the IRS determined he owed approximately $23,000.00 once he finally did file those returns. (FHR-BE 3 at 29; T 155)

The transcript for the tax year 2001 shows that as of September 28, 2004, the applicant still had a balance outstanding (FHR-OGCE 15), and the applicant admitted he had failed to pay his 2001 taxes timely. (T 250) However, the Applicant alleged that he was unable to pay due to financial hardship. (T 251) The applicant provides no documentation to support his assertion that he did not

pay due to "financial hardship" nor does he provide any explanation as to what he deemed "financial hardship."

The applicant testified that he set up a C corporation, did not capitalize the corporation, borrowed cash from the corporation via undocumented loans, and later wrote off the debt. He then needed to count that forgiveness as income. (T 237) He did not withhold any Social Security tax or FICA. (T 239) Thus, his 2001 tax liability arose from these choices.

The applicant testified he timely filed his income tax return for the tax year 2002 but he did not timely pay the taxes due. He testified that he did not have taxes deducted for earnings reported on a Form 1099 and he failed to keep his records together. When he finally prepared his taxes in July 2002, "it turned out that I owed more money than had been withheld." (T 251-252)

The transcript for the tax year 2003 reflects the applicant failed to timely pay the amount due and thus, was assessed interest and subjected to a penalty. (FHR-BE 15) In his updated Bar Application executed on July 7, 2004, the applicant swore that he had an outstanding tax liability of approximately $7,500.00. (FHR-BE 6) During the investigative hearing held on May 20, 2005, the applicant testified that his outstanding tax liability was about $5,800.00. (FHR-BE 7 at 11)

Based upon the consideration of the complete record before it, the Board finds that the allegations contained in Specifications 3(A), 3(B), and 3(C) have been established. Accordingly, the Board finds Specifications 3(A), 3(B), and 3(C) proven, and the language of the Specifications reproduced above under the Findings Background is hereby adopted by the Board as its specific Findings of Fact. The Board further finds the applicant's evidence fails to mitigate the seriousness of the proven allegations of Specification 3(A), 3(B), and 3(C), each of which the Board finds individually disqualifying.

21

Specification 4 relates to the applicant's behavior surrounding an August 1, 1998, traffic stop and arrest, which is alleged to be inappropriate and irresponsible. Specification 4(A) alleges the applicant exhibited inappropriate and irresponsible behavior when he screamed and cursed at the officer after being stopped, refused to obey the police officer who was writing a traffic citation, and threatened to sue the officer, the police chief, and the city. Specification 4(B) alleges the applicant filed a complaint that was vexatious and harassing in nature as a result of the arrest and that an internal investigation determined the complaint to be meritless. (FHR-BE 4)

By his Amended/Supplemental Answer to Specifications dated October 11, 2005, the applicant admits that he was stopped by the officer, was verbally abusive, and entered a plea of no contest to the criminal charges arising from the arrest. (FHR-BE 9) He further admits to filing the complaint against the police officer and that no sanctions resulted therefrom. (FHR-BE 9)

During the first investigative hearing, when the applicant was asked about his conduct during that traffic stop, he declared, "I exploded." (FHR-BE 3 at 96) He stated he used a lot of profanity and refused to obey the directive of the officer on the scene. (FHR-BE 3 at 97) The applicant remarked, "Had I been an attorney, conducting myself under those circumstances, I was a disgrace. . . . I was thoroughly enraged." (FHR-BE 3 at 103)

Thereafter, despite his testimony at the investigative hearing, the applicant filed an Answer, which he executed on February 5, 2002. (FHR-BE 5) In that Answer, he denied "any wrongdoing in the episode." (FHR-BE 5 at 2) When he appeared at the formal hearing, he was asked what he said to the police officer during that incident. He replied, "I guess what I'm saying is that what I said was absolutely unmentionable in mixed company; would have made a Marine blush." (T 288) The applicant testified that what he did was wrong. (T 288) At the time

22

of this incident, the applicant had completed two years of law school and was 54 years old. (T 287-288)

The record contains a copy of a letter dated August 3, 1998, authored by the applicant. (FHR-OGCE 8) In that letter, the applicant alleged that the police officer intentionally inflicted excruciating pain by use of unlawful excessive force during an unlawful arrest. He alleged the stop was a pretextual basis to inspect his taxicab. In the letter, the applicant refers to the officer as "thin skinned" and alleges the arrest arose from the department's "apparent indifference to my free speech rights." (*Id.*) The letter is replete with allegations pertaining to the applicant's constitutional rights being violated and it explicitly requests that the officer be disciplined "for his abusive, unprofessional, and unlawful conduct." (*Id.*) At the time this letter was authored, the applicant had completed two years of law school and was on summer recess.

One month later, on September 21, 1998, the applicant wrote a letter to the police officer involved in the incident. In this letter, the applicant apologizes for escalating the problem, admits that his problem was not with the officer, states that he was "over the top" after the stop, and acknowledges that the officer had a constitutional right to arrest him and to command him to remain in his vehicle.

Despite this second letter, the applicant executed his Answer in February 2002 stating, "The complaint against Officer Adams was an accurate description of the facts and properly alleged an unlawful stop, fraudulent citation, excessive force and torture." (FHR-BE 5 at 2) During the formal hearing, the applicant once again stated his own conduct was inappropriate. (T 290) When asked to reconcile these two statements, the applicant explained that his representations had changed because he had a different view of the incident. (*Id.*) Moments later, however, the applicant reiterated that he believed the officer's conduct was inappropriate despite his September 21, 1998, letter. (T 292-293)

23

Based upon the consideration of the complete record before it, the Board finds that the allegations contained in Specifications 4(A) and 4(B) have been established. Accordingly, the Board finds Specifications 4(A) and 4(B) proven, and the language of the Specifications reproduced above under the Findings Background is hereby adopted by the Board as its specific Findings of Fact. The Board further finds the applicant's evidence fails to mitigate the seriousness of the proven allegations of Specification 4(A) and 4(B), each of which the Board finds collectively disqualifying.

Specifications 5 and 6 relate to litigation the applicant initiated in the United States District Court for the Middle District of Florida following his mother-in-law's admission to a nursing home. Specification 5(A) alleges the applicant conducted himself in an unprofessional or inappropriate manner when he failed to appear for a scheduled hearing set by the trial judge. Specification 5(B) alleges that contrary to the rules of the federal district court, the applicant attempted to represent his mother-in-law by claiming to be her "Next Friend" at a time when he was not licensed to practice law.

Specification 6(A) alleges the applicant failed to provide to the Board a copy of the judge's order as directed on the Bar Application and that he falsely stated on his 1999 Bar Application that he had never been accused of engaging in the unlicensed practice of law. Specification 6(B) alleges that the applicant submitted an amendment to his Bar Application on April 12, 2000, wherein he denied that he had ever engaged in the unlicensed practice of law and denied that he had ever been warned about doing so. (FHR-BE 4)

By his Amended/Supplemental Answer to Specifications dated October 11, 2005, the applicant admits that he filed the complaint, that the hearing was scheduled, and that he failed to appear at the hearing. He further admits that for purposes of filing the complaint, he claimed to be his mother-in-law's "Next

24

Friend." Finally, he admits that he failed to submit a copy of the order as required. The applicant denies that his responses were false, misleading, or lacking in candor, denies that he engaged in the unlicensed practice of law, and denies that he was warned about engaging in the unlicensed practice of law. (FHR-BE 5, 9)

While the applicant admits that he did not attend the hearing scheduled by the court, he states that he had read in the local rules that telephonic appearances were acceptable in that court. (T 168) He testified he asked the judge's courtroom deputy about applying for telephonic hearings but was informed the trial judge does not permit such appearances. (T 168) According to the applicant, he filed a formal petition for permission to appear telephonically, it was denied, and he was without sufficient funds to travel to Jacksonville from San Diego. (T 167-168) However, the court's docket sheet does not list any petition to appear telephonically nor does it list any order denying same. (Formal Hearing Record – Applicant's Exhibit 9, hereinafter designated "FHR-AE" followed by the exhibit number).

Office of General Counsel Exhibit 9 contains a copy of the 33-page complaint filed by the applicant. In that complaint, the applicant alleges that his mother-in-law suffered from senile dementia, among other conditions, and that she was a patient in a nursing home in Florida. (FHR-OGCE 9) At the time the complaint was filed, the applicant was attending law school in California. (T 167) The applicant admitted that he drafted the complaint and drafted all of the pleadings filed on behalf of his mother-in-law in the litigation. (T 293-294)

It is undisputed that the applicant was not admitted to practice law in any jurisdiction at the time he filed the complaint. By filing the litigation on behalf of his mother-in-law, the applicant was attempting to represent her without being licensed to practice law. While a party may represent himself *pro se*, such representation does not extend to mentally incapacitated individuals. By the

25

language employed in the complaint, the applicant acknowledged that his mother-in-law was such a person. Thus, it is undisputed that the applicant could not lawfully represent her interest in the federal district court litigation. As a second-year law student, the applicant was well aware of this restriction.

What is more problematic, however, is the applicant's interactions with the Board. First, he refused to provide to the Board a copy of the trial judge's written order despite being requested to do so on numerous occasions. In effect, he concealed the content of the order. The record reflects that three separate letters were sent to the applicant's address of record between March 23, 2000, and April 3, 2000. (FHR-OGCE 10) Each letter is sent to the same address. The applicant, during his formal hearing, denied receiving those letters. (T 180-181) It is noted, however, that his April 12, 2000, amendment specifically references the April 3, 2000, letter. (FHR-BE 2)

Having failed to provide a copy of the order, the applicant then falsely stated on his 1999 Application for Admission to The Florida Bar that it had never been alleged that he engaged in the unlicensed practice of law. (FHR-BE 2) Even after he was specifically notified that the Board had unverified information indicating he had been warned for the alleged unlicensed practice of law, the applicant continued to maintain that he had received no such warning. The warning is clearly set forth in the trial court's order, which the applicant refused to provide:

> The Court also notes that Philip J. Stoddard, who filed the Complaint in this case as well as numerous pleadings and responses, is not a member of the Bar of the State of Florida, nor a member of the Bar of this Court, nor as far as the Court can tell, a member of any bar of the highest court of any state or of any federal court in the United States. Mr. Stoddard is therefore precluded by the rules of this Court from representing his mother-in-law.
>
> In addition, not being a member of the Bar is a serious matter in the State of Florida dealing with the question of unauthorized practice of

26

> law, and before Mr. Stoddard will be allowed to appear in this Court,
> he must be admitted to practice. The Court suggests in the alternative
> that he seek proper guardianship of his mother-in-law under the laws
> of the State of Florida. Under those circumstances, Mr. Stoddard still
> would not be entitled to practice law in this Court, but must retain an
> attorney admitted to practice.

(FHR-OGCE 9)

When asked about this language during the first investigative hearing, the applicant continued to deny that he had been warned about the unlicensed practice of law. (FHR-BE 3 at 92-93) He professed not to know what it meant to serve as an attorney for someone else without a law license, stating, "I'm not sure what an attorney is. I don't know what serving as an attorney means." (FHR-BE 3 at 92)

During the formal hearing, the applicant stated that the defense counsel in the underlying litigation had filed motions to dismiss, which alleged he was engaged in the unlicensed practice of law:

> [T]hey were - - I believe - - again, they were arguing a motion to
> dismiss. This is docket number twenty. These were the motion to
> dismiss 12(b)(6) motions and they had mentioned UPL in those
> motions; claimed that I was practicing UPL.

(T 329-330)

Despite the court's written order and the written motions filed by the defense counsel, the applicant refused to acknowledge that he had engaged in the unlicensed practice of law. More importantly, he refused to acknowledge that he had been accused of engaging in the unlicensed practice of law:

> Q.    So you think it might have been a warning, now is your
> position?
>
> A.    You know, it might have been. He might have thought it
> was a warning and when I read it in 2002 I didn't think so. And today
> I'm - - I could see your point. I mean, I can see your point and I - - I
> would, you know. I would just have to say that yes, in 2002 I didn't
> believe it was a warning. *In 2006, I'm saying, well maybe it could be,
> but then again read literally and with the language all parsed out of*

*it, and each word examined and the phrasing carefully considered, reasonable men can differ.*

(T 297) [emphasis added]

Based upon the consideration of the complete record before it, the Board finds that the allegations contained in Specifications 5(A), 5(B), 6(A), and 6(B) have been established. Accordingly, the Board finds Specifications 5(A), 5(B), 6(A), and 6(B) proven, and the language of the Specifications reproduced above under the Findings Background is hereby adopted by the Board as its specific Findings of Fact. The Board also finds the applicant's evidence fails to mitigate the seriousness of the proven allegations of Specifications 5(A) and 5(B), which the Board finds collectively disqualifying. The Board further finds the applicant's evidence fails to mitigate the seriousness of the proven allegations of Specifications 6(A), and 6(B), each of which the Board finds individually disqualifying.

Specification 7 relates to litigation initiated by the Applicant against the National Association for Asset Recovery in St. Johns County. Specification 7(A) alleges the applicant served a complaint seeking a declaratory judgment establishing the defendant owed the applicant a commission after the applicant had signed a release acknowledging the receipt of that same commission and therefore, the claim for relief was meritless and vexatious. (FHR-BE 3) Specification 7(B) alleges the applicant gave testimony that was false, misleading, or lacking in candor during the first investigative hearing when he denied filing a claim for the monetary damages as part of that complaint. The applicant denies these allegations. (FHR-BE 5, 9)

The record before the Board includes a copy of a release dated July 29, 2000. (FHR-OGCE 11) The applicant acknowledged he signed the release. (FHR-BE 3 at 110) The release indicates the applicant received $1,556.51 on that

28

date. In the release, the executor (the applicant) does "remise, release, acquit, satisfy, and forever discharge" the defendants "from any and all claims, demands, agreements, contracts, covenants, actions, suits, causes of action, obligations, controversies, debts, costs, expenses, accounts, damages, judgments, losses or liabilities of whatever kind, in law or in equity." (FHR-OGCE 11)

The applicant indicated he had attempted to file the complaint with the clerk of the court by paying the filing fee and dropping the actual complaint in the basket where instructed. (T 195) The clerk, according to the applicant, lost the original complaint. Meanwhile, the applicant had already mailed a courtesy copy of the complaint to the defendant.

Counsel for the defendant began negotiating a settlement with the applicant upon receipt of the courtesy copy. They agreed to settle the monetary claim but not the claim related to the non-compete clause. The applicant maintained that the defendant attempted to enforce the non-compete clause after he signed the release. (T 198) Believing he had no other marketable expertise, the applicant needed to have that non-compete provision nullified. (T 195-197) Therefore, he concluded he needed to have the original complaint served so that he could pursue the claim relating to the non-compete clause.

When he went to the clerk's office to get the summons issued, he discovered the original complaint had been lost. (T 198-199) Because he had mailed a copy of the original complaint, he felt he needed to serve that same complaint, even though he had signed the release. Thus, he submitted another original to the clerk's office, obtained a summons, and had the original complaint served. (T 199-200)

A copy of the summons and complaint, served on August 22, 2000, is included in the record. (FHR-OGCE 11) In paragraph 15 of that complaint, the applicant references acts that took place two days after he signed the release.

(FHR-OGCE 11, Complaint for Declaratory Relief)  Thus, it seems implausible that the complaint served on August 22, 2000, was the very same complaint the applicant originally mailed to the defendants prior to July 29, 2000, and which was purportedly lost by the clerk.

This discrepancy was brought to the applicant's attention during the first investigative hearing. (FHR-BE 3 at 111)  During this investigative hearing, the applicant continued to maintain that the complaint served on August 22, 2000, did not contain a claim for money damages. (FHR-BE 3 at 112)  The record belies this assertion.  Moreover, the applicant produced no documentation that shows he paid to have any complaint filed at a previous time.  While the applicant testified that the defendant was attempting to enforce the non-compete clause, he provides no supporting documentation.

The defendant served a motion to dismiss on September 11, 2000.  (FHR-OGCE 11)  In that motion, the defendant alerted the court to the fact that the applicant signed a General Release only two weeks earlier.  Thereafter, the applicant filed his First Amended Complaint, which did not include the claim for monetary relief. (FHR-OGCE 11)

When asked whether he could have just filed the amended complaint and had it served with a cover letter explaining the amendment, the applicant indicated that he did not consider that option. (T 299)  He stated he made a decision that it was more important to maintain consistency rather than attempt to explain the amendment. (T 300)  He had already been paid the commission due when he caused the complaint and summons to be served in August 2000.

The terms of the release are very broad.  A fair reading of the release certainly appears to have included the very claims included in the complaint, and the first amended complaint for that matter.  Based upon the totality of the facts, the explanation provided by the applicant is not credible.

30

Based upon the consideration of the complete record before it, the Board finds that the allegations contained in Specifications 7(A) and 7(B) have been established. Accordingly, the Board finds Specifications 7(A) and 7(B) proven, and the language of the Specifications reproduced above under the Findings Background is hereby adopted by the Board as its specific Findings of Fact. The Board further finds the applicant's evidence fails to mitigate the seriousness of the proven allegations of Specifications 7(A) and 7(B), which the Board finds collectively disqualifying.

Specification 8 pertains to correspondence written to the Board by the applicant after the September 8, 2001, investigative hearing. Specification 8 alleges that certain statements made in the applicant's letter dated September 27, 2001, and addressed to the Executive Director of the Board, were unprofessional and without any reasonable basis in fact or belief. (FHR-BE 4)

In the letter, the applicant writes, "Considering the speed with which the board's letter arrived at my doorstep after the hearing it is plain that the decision to file specifications was made in advance of the hearing." (FHR-OGCE 2) By his Answer executed on February 5, 2002, the applicant denies "any wrongdoing in the matter whatever [sic]. I was merely expressing an opinion based on the board's conduct including the crude interrogation at the informal hearing." (FHR-BE 5) By his Answer executed on October 11, 2005, the applicant admits that he wrote the letter. (FHR-BE 9)

When asked about his statement during the formal hearing, the applicant defended his conduct by stating he was irritated as a result of his investigative hearing. (T 258) He explained he was angry when he wrote the letter. (T 258-259) The applicant testified, "I think that the letter was snotty, quite frankly. I mean, it was a little snotty, I'll admit it." (T 259-260) He explained that he had looked back over some of the letters that he had written in the past and if he were

31

to write those letters again he did not believe he would use the same tone. (T 260) He further explained, that in his view "That was not…a true investigative hearing." He suggested the tone was inappropriate and the encounter was prosecutorial. (*Id.*)

While acknowledging that he had been told that he would receive a written communication within one week, the applicant said he viewed that statement as "basically a throw away." (T 261) He decided that the speed with which he received the notice was an indication that there had been bias. (T 262) When asked whether he was aware that each applicant who appears for an investigative hearing is informed that a response would be sent within one week, he stated he did not understand that at all. (*Id.*) More importantly, he testified that he did not take any steps to discern what was the Board's routine practice regarding the length of time it took to communicate with applicants following investigative hearings. (T 301)

The explanation given for the letter is indicative of troublesome conduct repeatedly displayed throughout the applicant's life. With less than complete information, and without doing any investigation, the applicant reaches numerous negative conclusions. More problematic, however, is the fact that the applicant then acts on those baseless conclusions. The behavior displayed by the applicant, one seeking to become an attorney, is unprofessional and disturbing.

Based upon the consideration of the complete record before it, the Board finds that the allegations contained in Specification 8 have been established. Accordingly, the Board finds Specification 8 proven, and the language of the Specification reproduced above under the Findings Background is hereby adopted by the Board as its specific Findings of Fact. The Board further finds the applicant's evidence fails to mitigate the seriousness of the proven allegations of Specification 8, which the Board finds collectively disqualifying.

Specification 9 alleges the applicant demonstrated financial or professional irresponsibility when he operated his vehicle without auto insurance, became involved in an auto accident, was successfully sued by the insurance company for the driver of the other vehicle, and failed to satisfy the judgment entered against him. (FHR-BE 4) By his Answer, the Applicant denies any intentional wrongdoing in this matter. (FHR-BE 5, 9)

The record shows that a complaint was filed by the insurance company on December 21, 1995, and that a Final Judgment was entered on March 14, 1996. (FHR-OGCE 12) The applicant testified that he forgot to renew his insurance. According to the applicant, the insurance had lapsed by a couple of weeks and he had not been advised of the lapse in coverage. He was then involved in a "little fender bender." (T 161-162) The applicant testified that the insurance company for the driver got a default judgment. The applicant's attempt to get the default set aside was unsuccessful. The insurance company notified the Department of Highway Safety and Motor Vehicles about the unsatisfied judgment and the applicant's driver's license was suspended. The applicant testified he did not have the ability to pay the judgment so he declared bankruptcy to save his driver's license. (T 162)

As can be gleaned from the applicant's description, he takes no responsibility for the lapse in his insurance coverage but claims the insurance company failed to notify him. Generally, under Florida law, auto insurance cannot be canceled without providing advance notice. Moreover, after the complaint was served, the applicant had an opportunity to file a responsive pleading.

Based upon the applicant's representation that a default was entered, it appears that the applicant failed to timely file a responsive pleading. He provides no explanation for his failure to file any responsive pleading. After the judgment was entered, it appears the applicant made no payments to satisfy the judgment. It

33

was not until his driver's license was suspended that he took any action. The applicant's behavior demonstrated a total disregard for the financial responsibilities associated with operating a motor vehicle on the roadways.

Based upon the consideration of the complete record before it, the Board finds that the allegations contained in Specification 9 have been established. Accordingly, the Board finds Specification 9 proven, and the language of the Specification reproduced above under the Findings Background is hereby adopted by the Board as its specific Findings of Fact. The Board further finds the applicant's evidence fails to mitigate the seriousness of the proven allegations of Specification 9, which the Board finds collectively disqualifying.

In addition to his own testimony, the applicant presented testimony from two others. Robert Grier met the applicant in January 2002 at Alcoholics Anonymous meetings. (T 40) Mr. Grier testified that he had not seen any signs that the applicant was dishonest (T 49), but found him to be honest and stable. (T 61) The applicant told Mr. Grier that the applicant expected to receive a trust distribution arising from his father's death, that he wanted to use those funds to pay some of his outstanding child support and lower the heat and pressure with his ex-wife, and obtain some healing with his children. (T 52) Mr. Grier was suspended from practicing law in Florida in 1994. (T 61) With the exception of the outstanding child support, the applicant did not discuss with Mr. Grier the facts surrounding of the allegations raised in these proceedings. (T 66)

Fred Goodman has known the applicant for approximately eight years. (T 348) While the applicant worked for the Division of Banking and Finance, the applicant was helpful in getting claims filed by Mr. Goodman's firm resolved. (T 349) When the applicant sued the National Association for Asset Recovery, Mr. Goodman was not surprised because that firm had a reputation for breaking their promises. (T 351-352)

34

Mr. Goodman later retained the applicant to serve as his firm's Qualified Representative with regard to matters pending before the Division of Banking and Finance. (T 354) Mr. Goodman had only been made aware of the allegations in the Specifications two days before the hearing. (T 358)

By their own admissions, the applicant's witnesses did not have knowledge of the facts giving rise to the allegations with the exception of his failure to pay child support for 25 years. Even the character affidavit submitted by Ralph G. Mitchell indicates that he had no personal knowledge of the facts alleged in the Specifications. Thus, the testimony of these individuals carries little weight and does not mitigate the seriousness of the proven allegations. *See Florida Board of Bar Examiners re: M.L.B.*, 766 So. 2d 994, 997 (Fla. 2000) (It is important for those attesting to an applicant's moral character to be aware of his or her past misconduct, and recommendations from those who are unaware of it may be given less weight.")

Upon consideration of the applicant's formal hearing presentation, the Board finds that such evidence is insufficient to establish a defense to the allegations of the Specifications, except for Specification 2, which the Board finds not proven. Moreover, to the extent that the applicant intended to establish the affirmative defense of rehabilitation, he failed to present sufficient evidence in support of that defense.

## CONCLUSIONS OF LAW

The Board concludes that the misconduct described in proven Specifications 1(A), 1(B), 1(C), 1(D), 1(E), 1(F), 3(A), 3(B), 3(C), 6(A), and 6(B) is individually disqualifying for admission to The Florida Bar. The Board additionally concludes that the misconduct found proven in Specifications 4(A), 4(B), 5(A), 5(B), 7(A),

7(B), 8, 9, and 10 is disqualifying when viewed collectively with other disqualifying conduct.

The record in this case discloses particularly aggravating facts. Specifications 1 and 3 reflect an extensive history of financial irresponsibility spanning 25 years, which includes the applicant's failure to make any court-ordered child support payments. The applicant's failure to provide any support for his children not only displays financial irresponsibility, it also establishes a complete disregard for the judicial system.

The applicant's testimony at the formal hearing was lacking in candor as it related to Specifications 5(A), 5(B), 6(A), 6(B), and 10. The Board's cumulative findings demonstrate that the applicant displayed a lack of candor in communications with opposing parties, in his Bar Application, in amendments to the Bar Application, and in his testimony during the formal hearing.

These findings raise concerns as to whether the applicant will be able to communicate candidly and civilly with clients, attorneys, and courts. The Board further finds that the applicant does not possess the ability to reason logically and accurately analyze legal problems based upon its findings related to Specifications 7(A), 7(B), and 10. The Board therefore concludes that the applicant has failed to establish he can meet the essential eligibility requirements as set forth in Rule 3-10.1, Rules of the Supreme Court Relating to the Admissions to the Bar.

Rule 3-23.6(d) of the Rules states, in part:

. . . In cases involving significant aggravating factors (including but not limited to material omissions or misrepresentations in the application process), the Board shall have the discretion to recommend that the applicant or registrant be disqualified from reapplying for admission for a specified period greater than 2 years but not more than 5 years.

It is appropriate to apply this Rule to the present applicant, who has engaged in a continuing pattern of misrepresentation to the Board.

It is therefore the conclusion of the Board that the evidence before it as set forth in the foregoing Findings, clearly and unequivocally establishes that the applicant fails to meet the standards of conduct and fitness required under the provisions of Rule 2-12 of the Rules. It is further the conclusion of the Board that, under the provisions of Rule 3-23.6(d) of the Rules, the applicant has made material misrepresentations or false statements in the application process and should be disqualified from reapplying for admission to the Bar in an attempt to show rehabilitation for five years.

## RECOMMENDATION

The Board recommends that Philip James Stoddard not be admitted to The Florida Bar under the provisions of Rule 5 of the Rules and that he be disqualified from reapplying for admission for a period of five years from the date of these findings.

DATED this 7th day of December, 2006.

Michele A. Gavagni
Executive Director
Florida Board of Bar Examiners

Copies:     Jeffrey H. Northcutt, Attorney for the Applicant
            Thomas Arthur Pobjecky, Office of General Counsel

CERTIFIED MAIL NO. 7001 2510 0007 6219 4379
RETURN RECEIPT REQUESTED

## BEFORE THE FLORIDA BOARD OF BAR EXAMINERS

IN RE:                                    )
                                          )          File No: 81929
APPLICATION OF                            )
PHILIP JAMES STODDARD                     )
_____  )

## APPLICANT'S NOTICE OF WAIVER OF RIGHT TO SEEK REVIEW
## OF INTERLOCUTORY AGENCY ACTION

TO:    MICHELE GAVAGNI, Executive Director of the Florida Board of Bar Examiners
       R. TERRY RIGSBY, ESQ., Chairman of the Florida Board of Bar Examiners
       THOMAS A. POBJECKY, General Counsel for the Florida Board of Bar Examiners

       YOU WILL PLEASE TAKE NOTICE, that PHILIP JAMES STODDARD, a present

applicant for admission to the Florida Bar, by and through his undersigned attorney, hereby

waives all rights of review of the Board's recommendation promulgated by the "Findings of Fact

and Conclusions of Law" dated December 7, 2006. This waiver does not admit the truth of any

findings of fact, conclusions or allegations set forth in said document. The document fails to

comply with Rule 3-23.7 and is non-reviewable because it is utterly devoid of reference to

objective standards or application of any existing law to specific proven allegations.

       Further, the instrument supplements the "Specifications" with several new "adverse

matters" purported as grounds for disqualification of which the Applicant had no prior notice nor

opportunity to challenge at the formal hearing. Due process requires that the Board make a

further hearing available for opportunity to rebut those allegations. See WILLNER VS.

COMMITTEE ON CHARACTER AND FITNESS, APPELLATE DIVISION OF THE

SUPREME COURT OF NEW YORK, FIRST JUDICIAL DEPARTMENT, 373 U.S. 96 (1963).

However, because of the pending action in the United States District Court for the Northern

## EXHIBIT C

District of Florida, Case No. 4:06cv414 RH-WCS, the Board is institutionally incompetent to render a final decision. See GIBSON VS. BERRYHILL, 411 U.S. 564, 567-579 (1973).

The instrument is substantially nothing more than an "investigative report and recommendation" justifying the Board's decision of September 22, 2006, to administratively disqualify the Applicant from applying for the bar for five years. Because it raises issues not addressed at the formal hearing, it is substantially interlocutory, subject to review and revision and Mr. Stoddard's character and fitness review has yet to be properly concluded by a reviewable final order.

Mr. Stoddard is fully apprised of the consequences of the waiver of review rights and argues that the "Specifications" served on him in November, 2001 are void and that all proceedings related to those "Specifications" are void ab initio as violative of Article I, Sec. 10 and the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States.

Mr. Stoddard will challenge the legality of what is substantially a *verdict of attainder*, the civil disability administratively imposed upon him and the policies and procedures underlying that action in the United States District Court for the Northern District of Florida. Mr. Stoddard has reserved his right to litigate his federal claims in that court pursuant to the *England Reservation* (England vs. Louisiana State Board of Medical Examiners, 375 U.S. 411 (1964)) filed in the application proceeding. He need not raise these claims in state court review proceedings as a condition precedent to obtaining federal relief. Patsy vs. Board of Regents, 457 U.S. 496 (1982).

Mr. Stoddard will seek relief from the disqualification in 2012 unless the Federal Court

2

orders relief from the disqualification and other agency action, policies and procedures

challenged in the pending suit.

DATED December 22, 2006

_____
Jeffrey H. Northcutt
Attorney for Mr. Stoddard
Florida Bar No. 0538361
1814 Cedar River Drive
Jacksonville, FL 32210-1302
(904) 982-7527
(904) 786-6044 (fax)

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been forwarded via U.S.

Mail this 22nd day of December, 2006, to:  Thomas Arthur Pobjecky, Esq., General Counsel for

the Florida Board of Bar Examiners, 1891 Eider Court, Tallahassee, Florida 32399-1750.

_____
Jeffrey H. Northcutt

3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

PHILIP J. STODDARD,

        Plaintiff,

vs.                              CASE NO.: 4:06-CV-414 RH/WCS

THE FLORIDA BOARD OF BAR
EXAMINERS, et al.,

        Defendants.

_____/

## DEFENDANT CHIEF JUSTICE R. FRED LEWIS'S MOTION TO EXCEED PAGE LIMITATION, FOR MOTION TO DISMISS

The Defendant, CHIEF JUSTICE R. FRED LEWIS[1], sued both in his official capacity as the Florida Supreme Court liaison to the Florida Board of Bar Examiners and in his individual capacity, pursuant to N. D. Fla. Loc. R. 7-1, moves this Court to enter an order granting leave to file the attached Motion to Dismiss, which exceeds 25 pages in length. As grounds therefore, Defendant would states:

    1.      On October 3, 2006, Plaintiff served a 27 page complaint on Defendant. Chief Justice Lewis firmly believes that abstention operates to bar any claim for declaratory and injunctive relief in this action. However, in an effort to avoid this result, Plaintiff has included a claim for damages. Additionally, to further "muddy the waters," Plaintiff purports to sue Chief Justice Lewis, not in his capacity as a Supreme Court Chief Justice, but rather as a Supreme Court

_____

[1]/Effective July 1, 2006, the Honorable R. Fred Lewis became the chief justice of the Florida Supreme Court.

## EXHIBIT D

liaison to the Florida Board of Bar Examiners. (Complaint, ¶ 11)  This appears to be an effort

to avoid judicial immunity in this case (although Chief Justice Lewis believes this effort to be ill-

conceived).

2.      In light of the arguments made by Plaintiff in this case, it is necessary to raise

twelve separate defenses to the claims brought by Plaintiff, in order to fully defeat all of

Plaintiff's claims.  This case presents issues regarding whether Plaintiff pleads facts which would

establish that Chief Justice Lewis is sued for judicial, legislative or executive acts, and the

applicable immunities which pertain to these acts.  Additionally, Plaintiff does not specify the

capacity in which he sues Chief Justice Lewis for damages, requiring presentation of an Eleventh

Amendment immunity defense.  Additionally, there is an issue as to whether Plaintiff states a

cause of action for injunctive and declaratory relief in this case at all (should the abstention

argument fail).  Plaintiff has brought a claim, pursuant to 42 U.S.C. §1983, alleging violations

of Article I, Section 10 of the United States Constitution (asserting an unlawful bill of attainder),

as well as a claim brought pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C.

§12131 *et seq.*.  There are issues about whether Plaintiff adequately states a claim under either

§1983 or the ADA.

3.      Unfortunately, appropriate and adequate presentation of these defenses has taken

more than the 25 pages allotted to motions, pursuant to N. D. Fla. Loc. R. 7.1(A).

4.      Raising all potential defenses will aid in achieving judicial economy in this matter,

as it will permit the Court to make a reasoned determination whether Plaintiff can plead any claim

for relief in this cause.

2

5.     The foregoing constitutes good cause to permit Defendant to exceed the page limitation for motions.

## Memorandum of Law

_____Pursuant to Northern District of Florida Local Rule 7.1(A) motions shall not exceed 25 pages in length, absent good cause shown and prior order of the court. Chief Justice Lewis contends that the foregoing constitutes good cause to permit him to file a motion to dismiss which exceeds 25 pages in length.

WHEREFORE Chief Justice Lewis moves this Court to enter an order granting leave to file the attached motion to dismiss, which exceeds 25 pages in length.

## CERTIFICATE OF ATTEMPTS TO CONFER WITH OPPOSING COUNSEL

On October 20, 2006, at 2:37 p.m., the undersigned sent an email to Jeffrey Northcutt, counsel for Plaintiff, seeking his position on this motion. No response was received. On October 23, 2006, at 10:57 a.m., the undersigned called Mr. Northcutt regarding this motion, but was only able to leave a voice mail message. After leaving the voice mail message, the undersigned sent another email to Mr. Northcutt, providing the same information as was described in the email. To date, the undersigned has been unsuccessful in securing Plaintiff's response to this motion. Should Mr. Northcutt contact the undersigned about this motion and provide Plaintiff's position, the undersigned will advise the Court.

Respectfully Submitted,

CHARLES J. CRIST, JR.
ATTORNEY GENERAL


s/ Stephanie A. Daniel

3

STEPHANIE A. DANIEL
SENIOR ASSISTANT ATTORNEY GENERAL
Fla. Bar No. 332305

Florida Office of the Attorney General
The Capitol, Suite PL01
Tallahassee, Florida 32399-1050
Tele. No.: 850/414-3300
FAX No.: 850/488-4872
Stephanie_Daniel@oag.state.fl.us

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished, by Notice of Electronic Filing, to JEFFREY H. NORTHCUTT, ESQUIRE, at 1814 Cedar River Drive, Jacksonville, Florida 32210, and to JAMES J. DEAN, ESQUIRE, at Post Office Box 1876, Tallahassee, Florida 32302-1876, this 23rd day of October, 2006.

s/ Stephanie A. Daniel
Stephanie A. Daniel
Senior Assistant Attorney General



## NOTICE OF THE JULY 2006 BAR EXAMINATION RESULTS

Notice is hereby given that the list published herewith contains the names of 173 successful applicants of the District of Columbia Bar Examination administered on July 25th and 26th, 2006, to 352 applicants. This represents a 76.3 percent pass rate among first-time takers or an overall pass rate of 49.1 percent.

The members of the Committee on Admissions request that any information tending to affect the eligibility of any of these applicants on moral or ethical grounds be furnished to the Committee on Admissions on or before Friday, November 3, 2006.

It is expected that these applicants will be administered the oath of admission at a formal ceremony before a panel of Judges of the District of Columbia Court of Appeals on Monday, November 6, 2006, in the Court of Appeals Courtroom on the sixth level of the District of Columbia Courthouse at 500 Indiana Avenue NW.

Mark S. Carlin, Chairman
October 6, 2006

## EXHIBIT E

Adams, Tashiana R.
Aitken, Natalie Diana Elvie
Aleo, Michael E.
Auerbach, Donald Carl
Batipps, Mark Jeffrey
Bocanegra, Lauren Isela
Bromeland, Matthew John
Bronk, Jennifer-Joy
Brown, Lisa Marie
Brown, Robert D.
Brown, Turkessa Lynn
Burgess, Mary J.
Calvo, Paul Anthony
Carpenter, Krista Lynn
Catlett, Cynthia Nesanovis
Chan, Vichet J.
Chang, Karl Shih
Choe, Jay Joon
Chu, Daniel Young
Cohen, Andrew Laurence
Cohen, Jeremy T.
Collins, Chris William
Collins, Michael Garrett
Conlon, Phillip Gregory
Cook, James Kent
Corkran, Kelsi Brown
Cotca, Ramona Raula
Crowell, Lee M.
Daugirdas, Kristina B.
Davis, Mark Christopher
Davis, Kelly Jo
De la gueronniere, Gabrielle
Delgadillo, Gabriela Margarita
Diggs, Damien Marcus
Dillon, George Tsakoff
Donovan, Brian Michael
Dunlap, Andrew Lawson
Dunlap, Robyn Elaine
Dunlop, Kimberlee M.
Duran, Cecilia Maria
Ellis, Carrie Elizabeth
Escudero, Maria Luisa
Fahrenholz, Kimberly Kay
Farmer, Stacey J.
Feierabend, Allison Victoria
Feinberg, Robert Saul
Fisher, Danielle Kathleen
Fisher, Christy Ann
Fisler, Whitney CaLeen
Fletcher, Amy Frances

Gelston, Jennifer Barley
Goldin, Alicia Fagen
Gowel, Katherine Scott
Gowel, John Joseph
Green, Stuart Cotter
Grewal, Amandeep
Gripp, David Arden
Halbert, Jessica Lee McHugh
Halbert, Jason Herman
Hansen, Sandra Luz
Hayes, Mark L.
Hayes, Sean Andrew
Himowitz, Joseph Isaac
Holdheim, Sylvia Margaret
Hopkins, Gabrielle T.
Hoverter, Terence Francis
Howald, Blake Stephen
Hranek, Melissa Susan
Imam, Ali Mohammed
Jacobs, Rebecca Elizabeth
Jenkins, Paul Daniel
Jensen, Lars M.
Jimenez, Julio Manuel
Jones, Adrienne Antoinette
Judkins, Quo Mieko S.
Kagle, Killian Bach
Kang, Min Gu
Katz, Paula Rebecca
Kilday, Lisa Anne
Kramer, Kai Robert
Krasovsky, Gregory
Lane, Takeshia A.
Lara, Juan
Lawrence, Frank Joseph
Leavitt, Michael Smith
Lee, Jason Tremain
Lee, Scott Wai-Hong
Lefeve, Donald Arthur
Legaspi, M. Bryan P.
Li wai suen, Rachel Sharon
Lieberman, Ross Jeffrey
Maltz, Gideon Daniel
Marie, Caroline Suzanne
Masi, Brina Rose
Matamoros-Indorf, Marcela A.
Mathis, Paulette Evelyn
Maurer, Jeannette Hargrove
McDuffie, Shannon Daspit
Mejia, Austin Lee
Mignano, Joseph Flanigan

Monnig, Danielle Erin
Morgan, Sarah Elizabeth
Mukherjee, Sulolit
Murphy, Jerold Bernard
Muto, Joseph Francis
Myers, Kathleen Irene
Najhram, Cindy Gita
Neal, Betye Lucille
Needham, Abigayle Suzanne
Nesbitt, Lawrence Kenneth
Nguyen, Michelle Phu
Nyoh, Peter
Oksanen, Seth David
Onigbinde, Bamidele Gbolagade
Oppenheimer, Michael Scott
Orenstein, Jeffrey
Osborne, Bambi Nicole
Park, Seung Hee
Park, Susan Leah
Payne, Natalie Ann
Peace, Christopher Kilian
Phillip, Ruthven Reuben
Pinckney, Christopher Ryan
Poblete, Jason Ian
Prestwood, Nathanael David
Puterman, Liza Judith
Rainfray, Arnaud Pierre
Randall, Curtis Frankey
Reid, Steven Marshall
Ricciardi, Matthew Joseph
Richardson, Jacqueline Michele
Richardson, Rodney Eugene
Riley, Sean Michael
Rodari, Sophie
Ryan, Kimberly Denise
Saffran, Rachelle Julie
Schaeffer, Jennifer Renee
Schindler, Gina
Schuett, Ruediger Ralf
Schwartzman, Robert Andrew
Seibert, John Hunter
Shiffrin, Joshua B.
Shulman, Arthur
Smilowitz, Matthew Craig
Spangenberg, Maria Rachel
Spearman, Nancy
Spitzer, Max Anthony
Sprague, Jeffrey Taylor
Stimson, Daniel Thomas
Stoddard, Philip James

Sun, Howard Ching-Hao
Sun, Qixiang
Takis, Benjamin
Tapia, Barrie Lynn
Taylor, Nicole Renee
Teel, Elliott Rollins
Thomas, Dana Emily
Tillery, Jani Sanura
Tilly, Elena
Trincal, Delphine Ann-Gaetane
Valentine, Jennifer Ann
Vanderpool, Amee Elizabeth
Volokh, Alexander
Vrakatitsis, Michael Gregory
Wachs, Heidi Laura
Waggoner, Nakia L.
Weatherford, Holly Catherine
Williams, John Matthew Deweese
Winkler, Ulrike
Wright, Coriell Shane
Wright, Wesley Kyle
Yoder, Chung-Hi Hernandez
Yoo, Sunil



November 22, 2006

Pursuant to the post-examination review provisions of D.C.
App. Rule 46 (b)(12)(v), the applicants named below are now
successful on the July 2006 District of Columbia Bar
Examination.

    Alex Leroy Davis
    Umuna M. Ghirmay
    Cyrus Pyun

The members of the Committee on Admissions request that any
information tending to affect the eligibility of this
applicant on moral or ethical grounds be furnished to the
Committee on Admissions on or before Tuesday,
December 26, 2006.

                                     Mark S. Carlin
                                     Chairman

---

### *PHILIP J. STODDARD, J.D.*

*258 Laguna Court/ St. Augustine, FL 32086 / (904)797-5380*
*email:pstoddardhsd@bellsouth.net*

---

December 15, 2006

District of Columbia Court of Appeals
Committee on Admissions
500 Indiana Avenue NW, Room 4200
Washington, DC 20001

    Attn: Ms. Jacqueline Smith, Director of Admissions

    Re: Applicant No. 35780: Philip J. Stoddard, Application for Admission to the Bar - the Committee's letter of December 11, 2006

Dear Ms. Smith:

This letter acknowledges my receipt of your request for litigation documents. I am able to provide you with the documents you are requesting except for one. By letter (copy attached), I am advised that the Florida Board of Bar Examiners will provide me a copy of the September 15, 2006 "formal hearing" at no additional charge if I pay the Court Reporter's invoice. I do not have funds available with which to pay the fee. My attorney will request a transcript copy pursuant to Rule 1-63.5

However, the Florida Bar Admissions Rules (Rule 1-63.4) and my personal knowledge inform that the Florida Board of Bar Examiners routinely supplies these transcripts as a courtesy to sister state bar admissions officials upon request. I suggest that if you FAX your request to the attention of the Board's Executive Director on your letterhead together with a copy of the release I executed at the time I applied for admission to the District of Columbia Bar, the transcript will be shortly forthcoming.

Meanwhile, I have ordered a docket report for the 1979 Maryland divorce case that was purportedly open for collection of arrearages in July, 2003 (after the apparently applicable statute of limitations had run) and which settled, out of court, in February, 2004.

Thank you for your consideration. Best wishes for a Merry Christmas and a prosperous new year.

    Respectfully submitted,

    Philip J. Stoddard, J.D.

**EXHIBIT F**

# Florida Board of Bar Examiners
### ADMINISTRATIVE BOARD OF THE SUPREME COURT OF FLORIDA



R. TERRY RIGSBY
CHAIR

MIGUEL M. DE LA O
VICE CHAIR

MEMBERS
JANET W. BEHNKE
ALEXANDER CABALLERO
REGINALD J. CLYNE
LORETTA FABRICANT
ZALA L. FORIZS
REGINALD D. HICKS
SUZANNE MEYER JUDAS
JOAN PANCHAL
BENJAMIN W. REDDING
KIMBERLY RODGERS
CAROLYN MOORE STEWART
J. JEFFRY WAHLEN
VERONICA Y. WHITE

TOPPIN-MOORE BUILDING
1891 EIDER COURT
TALLAHASSEE, FL 32399-1750

(850) 487-1292
FAX (850) 414-6822
WWW.FLORIDABAREXAM.ORG

MICHELE A. GAVAGNI
EXECUTIVE DIRECTOR

THOMAS ARTHUR POBJECKY
GENERAL COUNSEL

YENNA H. COLVIN
DIRECTOR OF ADMINISTRATION

October 13, 2006

Jeffrey H. Northcutt, Esq.
1814 Cedar River Drive
Jacksonville, FL 32210-1302

Dear Mr. Northcutt:

In Re:   Stoddard, Philip James
File No:   81929

As indicated in the Board's letter dated September 21, 2006, please treat this letter as an invoice for $2,821.00 for the cost of the transcript of the formal hearing as required by rule 3-23.8, Rules of the Supreme Court Relating to Admissions to the Bar (available on the Web site above). Upon receipt of payment, a copy of the hearing transcript will be provided at no additional cost.

Your early attention to this matter is anticipated. Thank you for your cooperation

Sincerely,

Janey M. Stuart
Director of Finance and Human Resources

MC.   Thomas Arthur Pobjecky, General Counsel

JMS.tm

Supreme Court of Florida for approval.

**1-51.1 Income.** Subject to the approval of the Court, the Board may classify applicants and registrants and fix the charges, fees and expenses which shall be borne by them.

**1-51.2 Expenses**. The Board shall make such disbursements as are required to pay the necessary expenses of the Board.

**1-52 Audit.** The Board shall cause proper books of account to be kept and shall have an annual audit made by a Certified Public Accountant. The annual audit shall be filed with the Clerk of the Supreme Court of Florida.

**1-53 Staffing**. The Board shall employ an Executive Director and such other assistants as it may deem necessary. It shall provide for the compensation of such employees and shall pay all other expenses. All employees shall be bonded as may be directed by the Board.

## 1-60 Confidentiality

**1-61 Confidentiality**. All information maintained by the Board in the discharge of those responsibilities delegated to it by the Supreme Court of Florida shall be confidential except as provided by these Rules or otherwise authorized by the Court.

**1-62 Custodian of Records.** All matters including, but not limited to, registrant and applicant files, investigative reports, examination material, and interoffice memoranda shall be the property of the Supreme Court of Florida and the Board shall serve as custodian of all such records.

**1-63 Release of Information.** The Board is authorized to disclose information relating to an individual registrant, applicant or member of The Florida Bar, absent specific instructions from the Court to the contrary, in the following situations:

**1-63.1 Public Request.** Upon request the staff shall confirm if a person has filed a student registration, bar examination application or bar application with the Board and shall provide the date of admission of any attorney admitted to The Florida Bar.

**1-63.2 National Data Bank.** The name, date of birth, Social Security number and date of application shall be provided for placement in a national data bank operated by or on behalf of the National Conference of Bar Examiners.

**1-63.3 The Florida Bar.** Upon written request from The Florida Bar for information relating to disciplinary proceedings, reinstatement proceedings or unlicensed practice of law investigations, provided, however, that information received by the Board under the specific agreement of confidentiality or otherwise restricted by law shall not be disclosed.

**1-63.4 National Conference of Bar Examiners or Foreign Bar Admitting Agency.** Upon written request from the National Conference of Bar Examiners, or from foreign bar admitting agencies,

# Florida Board of Bar Examiners

### ADMINISTRATIVE BOARD OF THE SUPREME COURT OF FLORIDA



R. TERRY RIGSBY
CHAIR

MIGUEL M. DE LA O
VICE CHAIR

MEMBERS
JANET W. BEHNKE
ALEXANDER CABALLERO
REGINALD J. CLYNE
LORETTA FABRICANT
ZALA L. FORIZS
REGINALD D. HICKS
SUZANNE MEYER JUDAS
JOAN PANICHAL
BENJAMIN W. REDDING
KIMBERLY RODGERS
CAROLYN HOUSE STEWART
J. JEFFRY WAHLEN
VERONICA Y. WHITE

TIPPIN-MOORE BUILDING
1891 EIDER COURT
TALLAHASSEE, FL 32399-1750

(850) 487-1292
FAX (850) 414-6822
WWW.FLORIDABAREXAM.ORG

ELEANOR MITCHELL HUNTER
EXECUTIVE DIRECTOR

MICHELE A. GAVAGNI
DEPUTY EXECUTIVE DIRECTOR

THOMAS ARTHUR POBJECKY
GENERAL COUNSEL

YENNA H. COLVIN
DIRECTOR OF ADMINISTRATION

## NOTICE OF BOARD ACTION

IN RE: APPLICATION OF )
STODDARD, PHILIP JAMES )    File No.: 81929
FOR ADMISSION TO THE )
FLORIDA BAR )
_____ )

TO:    Jeffrey H. Northcutt, Esquire
1814 Cedar River Drive
Jacksonville, FL 32210-1302

The Florida Board of Bar Examiners, while in formal session on September 14-16, 2006 subsequent to your client's appearance, decided that your client has not established the character and fitness standards required under rule 3-23.6(d), Rules of the Supreme Court Relating to Admissions to the Bar available on the website above.

The Board determined that there were significant aggravating factors and will recommend that the disqualification period be for a 5-year period before an application to establish rehabilitation under rule 2-14 will be accepted.

This notice is intended to advise you of the Board's action, but is not formal notice of the "Board's recommendation" under rules 3-30 or 3-40.1 for purposes of calculating the 60-day period for filing either a petition for Board reconsideration or a petition for Supreme Court review. The 60-day period for filing a petition begins on the date you receive the Board's written Findings of Fact and Conclusions of Law. The Board's findings and conclusions of law will be mailed to you within 60 days of the filing of the formal hearing transcript.

Jeffrey H. Northcutt, Esquire
September 21, 2006
Page 2

The $300 administrative cost for the formal hearing is outstanding. The applicant is responsible for the cost of the formal hearing transcript under rule 3-23.8. When we receive a statement from the court reporter, we will send an invoice.

Dated this 21st day of September, 2006.

Reported by,

Michele A. Gavagni
Deputy Executive Director

MC:   Thomas Arthur Pobjecky, General Counsel

MAG:ebt

foreign bar associations, or other similar agencies, when accompanied by an authorization and release duly executed by the person about whom such information is sought, provided, however, that information received by the Board under a specific agreement of confidentiality or otherwise restricted by law shall not be disclosed.

**1-63.5 Documents Filed by Registrant or Applicant.** Upon written request from registrants or applicants for copies of documents previously filed by them, and copies of any documents or exhibits formally introduced into the record at an investigative or formal hearing before the Board and the transcript of such hearings. Cost of copies are set out below:

> (a) each request for a copy of any document or portion of a document shall be accompanied by a fee of $25.00 for the first page and $.50 for each additional page.
> (b) each request for a copy of the Form 1, Bar Application, shall be accompanied by a fee of $35.00.

**1-63.6 Documents Filed on Behalf of the Registrant or Applicant.** Upon written request from registrants or applicants for copies of documents filed on their behalf or at the request of the Board with the written consent of the party submitting such documents. If such documents would be independently available to the requesting registrant or applicant, then consent of the party submitting such documents shall be deemed waived. Each request for a copy of any document or portion of a document shall be accompanied by a fee of $25.00 for the first page and $.50 for each additional page.

**1-63.7 Grand Jury or Florida State Attorney.** Upon service of a subpoena issued by a Federal or Florida Grand Jury, or Florida State Attorney only in connection with a felony investigation, provided, however, that information otherwise restricted by law shall not be disclosed.

**1-63.8 Third Parties.** The Board may divulge the following information to all sources contacted during the background investigation:
name
former names
date of birth
current address
Social Security number.

**1-63.9 List of Candidates.** Following the Board's recommendation under <u>Rule 5-10</u> and the Court's approval for an applicant's admission to The Florida Bar, such applicant's name and mailing address shall be public information.

**1-64 Breach of Confidentiality**. Whenever any person intentionally and without authority discloses confidential information maintained by the Board, the person may be in contempt of the Board. The Board shall report to the Supreme Court of Florida the fact that the person is in contempt of the Board for such proceedings against the person as the Court may deem advisable.

withheld for a specified period of time not to exceed 2
years. At the end of the specified period of time, the Board
shall recommend the applicant's admission if the applicant
has complied with all special conditions outlined in the
Findings of Fact and Conclusions of Law;

(d) that the applicant or registrant has not established his
or her qualifications as to character and fitness. In cases
of denial, a 2-year disqualification period shall be
presumed to be the minimum period of time required
before an applicant or registrant may reapply for
admission and establish rehabilitation. In cases involving
significant mitigating circumstances, the Board shall have
the discretion to recommend that the applicant or
registrant be allowed to reapply for admission within a
specific period of less than 2 years. In cases involving
significant aggravating factors (including but not limited to
material omissions or misrepresentations in the
application process), the Board shall have the discretion
to recommend that the applicant or registrant be
disqualified from reapplying for admission for a specified
period greater than 2 years but not more than 5 years.

**3-23.7 Findings of Fact and Conclusions of Law.** In cases
involving a recommendation other than under rule 3-23.6(a), the
Board shall expeditiously issue its written Findings of Fact and
Conclusions of Law. The Board's findings shall be supported by
competent, substantial evidence in the formal hearing record. The
Board's findings, conclusions, and recommendation shall be subject
to review by the Court as specified under <u>rule 3-40</u>. The Board's
findings, conclusions, and recommendation shall be final if not
appealed except in cases involving a favorable recommendation for
applicants seeking readmission to the practice of law after having
been disbarred or having resigned pending disciplinary proceedings.
In those cases, the Board shall file a report containing its
recommendation with the Court for final action by the Court.
Admission to The Florida Bar for those applicants shall occur only by
public order of the Court. All reports, pleadings, correspondence, and
papers received by the Court in those cases shall be public
information and exempt from the confidentiality provision of <u>rule 1-61</u>.

**3-23.8 Formal Transcript Cost.** The cost of a transcript
by the Board in the conduct of investigative or adjudicative
functions shall be paid by such applicant or registrant.

**3-23.9 Negotiated Consent Judgments.** Counsel for the Board and
an applicant or registrant may waive a formal hearing and enter into a
proposed consent judgment. Such consent judgment shall contain a
proposed resolution of the case pursuant to one of the Board action
recommendations specified above. If the consent judgment is
approved by the full Board, then the case shall be resolved in
accordance with the consent judgment without further proceedings.

**3-30 Petition for Board Reconsideration** Any applicant or registrant who is dissatisfied
with the Board's recommendation concerning his or her character and fitness may, within 60

# EXHIBIT E (TO COMPLAINT)

DISTRICT OF COLUMBIA COURT OF APPEALS

NO. 07-BG-148

IN RE: PHILIP J. STODDARD,
            Petitioner.



F I L E D
APR  6 2007
DISTRICT OF COLUMBIA
COURT OF APPEALS

## THE COMMITTEE ON ADMISSIONS' RESPONSE TO OBJECTIONS
## AND TO MOTION FOR SHOW CAUSE ORDER

The petitioner, Philip J. Stoddard ("Stoddard"), filed a petition seeking an order requiring the Committee on Admissions (the "Committee") to make a determination of his character and fitness for admission to the Bar "forthwith." *See*, Pet. at 11. The Committee filed a Recommendation that Stoddard's petition be denied for the reasons stated therein. Stoddard has now filed "petitioner's objections to the Committee's recommendation [,] and motion for show cause order."

The Committee disagrees with many of the factual assertions in the "petitioner's objections." Stoddard's stated assumptions and assertions about the Committee's purpose, responsibilities and basic operations, are simply wrong. For example, Stoddard wrongly asserts that the Committee's grading of the bar exam, the Committee's investigation of character and fitness issues and the Committee's initial determination whether or not to certify an applicant for admission following its receipt of an NCBE report,[1] are "purely ministerial" tasks. *See*, Objections at 4-5, note 5. However, given the court's familiarity with the Committee, a point-by-point rebuttal is unnecessary for the court's disposition of the petition for review. The Committee relies on the matters previously set forth in its Recommendation.

Embedded in Stoddard's most recent filing is a motion seeking an order requiring the Committee to "show cause, at an evidentiary hearing, as to why the relief requested in the

---

[1] A National Conference of Bar Examiners ("NCBE") report primarily verifies the accuracy of the applicant's information on his or her bar application, such as dates of employment, criminal records, and the like. An NCBE report also contains copies of written responses to NCBE questionnaires from the applicant's listed employers and personal references. However, the Committee does not delegate to the NCBE the Committee's responsibilities to investigate and determine character and fitness issues, which occasionally arise from matters outside an applicant's bar application. An NCBE report is merely the earliest element of the Committee's investigation of these issues.

petition should not be granted." *See*, Objections at 7. The Committee submits that the instant motion should be denied.[2]

The instant motion is procedurally bad because, among other things, it seeks an evidentiary hearing before this appellate court of review, on exactly the same issue already before the court on the pending petition for review.

As previously stated in its Recommendation, the Committee intends to investigate and analyze all of the issues raised in the petitioner's bar application, and to make a determination as to its preliminary position on them, as soon as it is able to do so.[3] This will be done within the framework of the Committee's regular operations and workload circumstances.

## CONCLUSION

For the reasons stated herein and in the Committee's Recommendation, the motion for an order to show cause, and the petition for review, should be denied.

Respectfully submitted,

Alan H. Kent
Counsel
Committee on Admissions
500 Indiana Avenue, NW, Room 4200
Washington, DC 20001
(202) 879-2710

---

[2] The instant procedural motion does not contain the required statement of consent or opposition. *See*, D.C. App. R. 27(b)(4). Not unsurprisingly, the Committee opposes the motion.

[3] As a courtesy to the petitioner, the Committee previously requested from the Florida Bar authorities a copy of their character and fitness record and hearing transcript regarding its decision recommending denial of Stoddard's admission to the Florida Bar on character and fitness grounds. The Committee currently is awaiting a response from Florida to its document request.

Additionally, Stoddard's federal lawsuit, filed in September 2006, challenging the validity of the Florida Bar authorities' "general rules, policies and decisions" regarding his denial of admission to the Florida Bar, is still pending. *See*, Objections, Exh. A, copy of federal Complaint, at 3, emphasis added.

The foregoing, together with the other factors mentioned in the Committee's Recommendation, underscores the unreasonableness of Stoddard's impatience and demand for relief "forthwith."

2

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of this document was mailed this filing date to Philip J. Stoddard, 258 Laguna Court, St. Augustine, FL 32086.

Alan H. Kent
Counsel
Committee on Admissions

3

# EXHIBIT F (TO COMPLAINT)

# District of Columbia
# Court of Appeals

MAY – 2 2007

No. 07-BG-148

IN RE: PHILIP J. STODDARD,
                    Petitioner

BEFORE: Farrell and Glickman, Associate Judges, and Terry, Senior Judge

## ORDER

On consideration of petitioner's petition for review of interlocutory agency action, the recommendation of the Committee on Admissions, petitioner's objection to the Committee on Admissions' recommendation and motion for show cause order, and the Committee on Admissions' response thereto, it is

ORDERED that petitioner's motion for an order requiring the Committee to show cause as to why a proper decision as to petitioner's character and fitness and certify petitioner for admission to the D.C. Bar is denied. It is

FURTHER ORDERED that petitioner's request for reasonable cost incurred in this proceeding and travel expenses are denied. It is

FURTHER ORDERED that petitioner's petition for review is denied.

PER CURIAM

Copies to:

Mr. Philip J. Stoddard
258 Laguna Court
St. Augustine, FL 32086

Ms. Jacqueline Smith
Director
Committee on Admissions

Alan H. Kent, Esquire
Counsel
Committee on Admissions

Mark S. Carlin, Esquire
Chair
Committee on Admissions