UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

FRANK J. LAWRENCE, JR.

     Plaintiff,                              Civil No.07-288-RCL

v.

MARK S. CARLIN, ET. AL.,

     Defendants.

_____/

## PLAINTIFF'S SUCCESSIVE MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. 65(a), Plaintiff hereby moves for a preliminary injunction, enjoining Defendant Carlin from holding in abeyance Plaintiff's application for a license to practice law. The new grounds upon which this motion is based are set forth in the attached brief in support.

Dated:  July 24, 2007

                                               Respectfully submitted:

                                               Frank J. Lawrence, Jr.
                                                 Plaintiff, Pro Se
                                                 941 Westview Road
                                                 Bloomfield Hills, MI  48304
                                                 (248) 722-2560

**RECEIVED**

JUL 2 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

FRANK J. LAWRENCE, JR.

      Plaintiff,

                              Civil No.07-288 RCL

v.

MARK S. CARLIN, ET. AL.,

      Defendants.

_____/

**BRIEF IN SUPPORT OF PLAINTIFF'S
SUCCESSIVE MOTION FOR PRELIMINARY INJUNCTION**

## I.    STATEMENT OF FACTS

This case involves Defendant Carlin's refusal to further process Plaintiff's application for a license to practice law until Plaintiff concludes his pending civil rights litigation against Michigan attorney licensing officials.  On May 11, 2007, this Court heard oral argument on Plaintiff's Motion for Preliminary Injunction (Docket # 9).

During oral argument, Plaintiff argued that he was unable to seek the equitable relief sought in this action from the District of Columbia Court of Appeals (hereinafter "DCCA") because DCCA Rule 46(g)(3) jurisdictionally barred Plaintiff from making such a filing.  As further evidence of this, Plaintiff provided this Court with a copy of Defendant Carlin's litigation statements in In re Philip Stoddard, 07-BG-148, a case in which Defendant Carlin argued that Mr. Stoddard's claim of unreasonable administrative delay was barred by Rule 46(g)(3) (Docket # 13, p. 10-11, and Exhibit 1 to that brief (Part 3 of Docket # 13)).

On May 11th, Defendant Carlin's counsel argued to this Court that Plaintiff could (and should) bring his claims for relief before the DCCA because this essentially was "a local matter".  This Court suggested that Plaintiff do so, and it denied Plaintiff's motion for a preliminary injunction (Docket # 16, Order), while suggesting that Plaintiff may be able to renew his motion at a later time.

On June 7, 2007, Plaintiff filed a petition for interlocutory review in the District of Columbia Court of Appeals (Exhibit 1, attached hereto, Petition for Review).  In doing so, Plaintiff asserted a reservation of federal claims and defenses, and he thereafter omitted raising any federal claims or defenses in that proceeding (Exhibit 1, Petition or Review, ¶ 2). Plaintiff litigated two primary issues in the DCCA and Plaintiff requested that the DCCA grant the following two forms of relief:

(a)    Resolve an unsettled issue of District of Columbia law, namely, whether District of Columbia Court of Appeals Rule 46(g), which requires "extraordinary circumstances" to invoke this Court's interlocutory review of agency action, permits Petitioner to bring this action to require Respondent to provide him a hearing; and

(b)    Order Respondent to provide Petitioner a hearing within 30 days.

(Exhibit 1, Petition or Review, p. 5).

Thereafter, on June 13, 2007, Carlin filed a response (recommendation) with the DCCA (Exhibit 2, Recommendation of Carlin), in which he advanced the identical litigation statement that he did in Stoddard. Specifically Carlin stated that Plaintiff's petition for interlocutory review was jurisdictionally barred:

Lawrence's impatience with the Committee's regular procedures does not constitute the "extraordinary circumstances" required by the rules for court review of the Committee's processing of his bar application in the regular court of its operations. See, D.C.App.R. 46(g)(3).

(Exhibit 2, Recommendation of Carlin, p. 1 and fn.1)

On June 21, 2007, Plaintiff filed a reply in response to Carlin's recommendation (Exhibit 3, reply brief). On July 12, 2007, the DCCA issued an Order denying Plaintiff's petition for review without explanation (Docket # 19, Exhibit to Praecipe, Order of DCCA).

## II.    ARGUMENT - CHANGED CIRCUMSTANCES IN THIS CASE WARRANT A PRELIMINARY INJUNCTION

### A.    This Court Has the Authority to Entertain Plaintiff's Successive Motion

In cases where there are *changes in facts, law, or circumstances* after a district court's ruling denying a motion for a preliminary injunction, a party may again move for relief, despite the fact that the party did not appeal (but could have appealed) the prior adverse ruling. Gill v.

3

Monroe County Dep't of Social Services, 873 F.2d 647, 648-649 (2nd Cir. 1989); Birmingham Fire Fighters Ass'n 117 v. Jefferson County, 290 F.3d 1250, 1254 (11th Cir. 2002); Securities and Exchange Commission v. Suter, 832 F.2d 988, 990 (7th Cir. 1987); Winfield v. St. Joe Paper Co., 663 F.2d 1031, 1032 (11th Cir. 1981); Squillacote v. Local 248, Meat & Allied Food Workers, 534 F.2d 735, 750 (7th Cir. 1976).

Defendant Carlin had a duty to disclose to this Court that he would oppose Plaintiff's DCCA Petition for Review on the grounds that Plaintiff was jurisdictionally barred from even making such a filing. Rather, Carlin allowed this Court to believe that a DCCA Petition for Review was a viable alternative to federal jurisdiction, and in doing so, he wasted considerable time and resources of this Court and the Plaintiff. For example, this Court graciously placed this case in abeyance pending the DCCA's decision. Had Carlin been upfront with everyone, this Court could have resolved all of the pending motions on May 11, 2007.

To be clear, Plaintiff is not complaining about Carlin's opposition *on the merits* to Plaintiff's Petition for Review. That was Carlin's right, if he had a good faith basis for doing so. Plaintiff is, however, alleging that Carlin's opposition *on jurisdictional grounds* demonstrated a lack of candor to this Court. Carlin should not have told this Court one thing and then the DCCA quite another.

B.    This Court Should Grant A Preliminary Injunction That Prohibits Carlin From Further Holding In Abeyance Plaintiff's Application For A License To Practice Law

Rather than restating the factual background and legal basis for this successive motion, Plaintiff incorporates herein, word for word, his prior Motion for Preliminary Injunction (Docket # 9). While a party is generally not permitted to file a successive motion for a preliminary injunction that is premised upon a former unsuccessful motion, here an important development in

this case has occurred since this Court's May 11, 2007 Order denying relief. Now, there is no dispute that the only forum in which Plaintiff can secure a judicial decision requiring a timely hearing *is in federal court*.

Attached hereto is Exhibit 4, which is Plaintiff's Affidavit detailing the continuing chilling effect on his First Amendment rights. This Court should evaluate Plaintiff's motion for a preliminary injunction in light of the new development discussed above, and grant the requested relief.

## III.    CONCLUSION AND RELIEF SOUGHT

WHEREFORE, Plaintiff prays for a preliminary injunction that prohibits Defendant Carlin from continuing to hold in abeyance Plaintiff's application process. Additionally, Plaintiff requests an Order from this Court requiring Defendant Carlin to either certify Plaintiff for a license to practice law within 30 days, or in the alternative, provide Plaintiff a hearing within 30 days.

Dated:  July 24, 2007                                    Respectfully submitted:

                                                        Frank J. Lawrence, Jr.
                                                        Plaintiff, Pro Se
                                                        941 Westview Road
                                                        Bloomfield Hills, MI  48304
                                                        (248) 722-2560

## INDEX OF EXHIBITS

Exhibit 1          Plaintiff's Petition for Review in the DCCA

Exhibit 2          Carlin's Response (Recommendation) to Plaintiff's Petition
                   for Review in the DCCA

Exhibit 3          Plaintiff's Reply to Carlin's Response to Plaintiff's Petition
                   for Review in the DCCA

Exhibit 4          Affidavit of Plaintiff

Exhibit 5          Proposed Order

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY pursuant to LCvR 65.1(c) that on July 24, 2007, a true and correct copy of the foregoing document was:

1.  Electronically sent to opposing counsel, Andrew J. Saindon, at his CM/ECF designated e-mail address: andy.saindon@dc.gov;

2.  Mailed to opposing counsel, Andrew J. Saindon, via the United States Postal Service, by First Class mail, postage prepaid; and

3.  Mailed to Proposed Intervenor Philip J. Stoddard, via the United States Postal Service, by First Class mail, postage prepaid.

Additionally, a copy of these submissions will also be sent to opposing counsel via the Court's ECF electronic notice filing system.

Dated:  July 24, 2007

Respectfully submitted:

Frank J. Lawrence, Jr.
Plaintiff, Pro Se
941 Westview Road
Bloomfield Hills, MI  48304
(248) 722-2560

# Exhibit
# 1

DISTRICT OF COLUMBIA COURT OF APPEALS

FRANK J. LAWRENCE, JR.,

    Petitioner,

v.

DISTRICT OF COLUMBIA COURT OF APPEALS,
COMMITTEE ON ADMISSIONS,

    Respondent.

_____/

Case No. 07-BG-530
Applicant File No. 35882

JUN - 6 2007

**PETITION FOR REVIEW**

1.     This petition involves Respondent's refusal to process Petitioner's application for a license to practice law until Petitioner concludes his pending federal civil rights litigation against Michigan attorney licensing officials (Exhibit 1, Letter from Mark S. Carlin). For the reasons set forth herein, Petitioner requests that this Court direct Respondent to provide Petitioner a hearing within 30 days.

2.     This petition for review is brought solely based upon District of Columbia law. Petitioner, in no way, asserts any federal claims or defenses in this action. Petitioner reserves his federal claims and defenses and he intends to litigate them in a federal forum following this Court's decision in the matter sub judice. England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 11 L. Ed. 2d 440, 84 S. Ct. 461 (1964).

3.     On or about May 16, 2006, Petitioner filed his application for a license to practice law in the District of Columbia.

4.     The Committee accepted Petitioner's submissions, and then notified him that he was scheduled to attend and take the July 25th and 26th District of Columbia Bar Examination.

Petitioner passed that exam, and by reason thereof, the Committee has no present reason to question Petitioner's educational fitness to practice law in the District of Columbia.

5.    When Petitioner applied for a license to practice law in the District of Columbia, he simultaneously had an application for a law license pending before the Michigan Board of Law Examiners. However, on June 22, 2006, Petitioner was notified by the Michigan Board of Law Examiners, in a final administrative decision, that his application for a license was denied. Because the adverse Michigan decision was in violation of Petitioner's protected First Amendment activities, he retained counsel and on September 8, 2006, he brought a <u>Dubuc</u> action against the Michigan officials in the United States District Court for the Western District of Michigan. See, <u>Dubuc v. Mich. Bd. of Law Examiners,</u> 342 F.3d 610 (6th Cir. 2003).

6.    On December 14, 2006, the Michigan federal case was dismissed, <u>Lawrence v. Berry,</u> 2006 WL 3694631 (W.D.Mich. 2006); 2006 U.S. Dist. LEXIS 90283 (W.D. Mich. 2006), and on December 15, 2006, Petitioner filed a notice of appeal to the United States Court of Appeals for the Sixth Circuit. <u>Lawrence v. Berry,</u> Sixth Circuit No. 07-1026. The appeal is still pending.

7.    On December 26, 2006, Petitioner sent a letter to the Respondent Committee, which requested that it either certify him for admission or provide Petitioner a hearing on or before January 26, 2007. The Committee refused to do either. On January 24, 2007, the Committee informed Petitioner by letter, *inter alia*, that the Committee would hold Petitioner's application in abeyance pending the conclusion of his litigation against the Michigan officials.

8.    District of Columbia Court of Appeals Rule 46(f)(1), states:

> In determining the moral character and general fitness of an applicant for admission to the Bar, the Committee may act without requiring the applicant to appear before it to be sworn and interrogated. <u>If the Committee is unwilling to certify an applicant, it shall notify the applicant of the choice of withdrawing the application or requesting a hearing.</u> (emphasis added)

9.    In this matter, Petitioner requests that this Court resolve an unsettled issue of District of Columbia law, namely, whether District of Columbia Court of Appeals Rule 46(g), which requires "extraordinary circumstances" to invoke this Court's interlocutory review of agency action, permits Petitioner to bring this action to require Respondent to provide him a hearing. There is no known precedent on this exact issue. However, Respondent recently advanced the position that an applicant's claim of unreasonable administrative delay does not constitute "extraordinary circumstances" authorizing judicial review. See, In re Philip J. Stoddard, D.C.C.A. No. 07-BG-148.

9.    After Petitioner's application has now been pending in the District of Columbia for nearly 13 months, Respondent is "unwilling to certify" Petitioner for a license. See, District of Columbia Court of Appeals Rule 46(f)(1).

10.    On February 7, 2007, Petitioner sued Committee on Admissions Chairman, Mark Carlin, and Committee Attorney, Alan Kent, in the United States District Court for the District of Columbia, seeking equitable relief and damages. Lawrence v. Carlin, et. al., No. 07-288 (RCL). That action is still pending.

11.    This Court may be interested in knowing that Committee Chairman Carlin and Committee Attorney Kent were recently caught making false statements to a federal judge. In defending themselves in the federal suit mentioned in paragraph 10 above, Carlin and Kent told United States District Court Judge Royce Lamberth that the reason they were holding Petitioner's application in abeyance was because Petitioner had a "pending application" in Michigan (an undeniably false statement). Specifically, in a stunning breach of candor required of litigants, Carlin and Kent stated to the federal court "...the COA is holding his application in abeyance not because he sued Michigan Bar officials, but because his application for admission

3

is pending in that jurisdiction ..." (emphasis added). Motion to Dismiss, Docket # 13, p. 31, Lawrence v. Carlin, No. 07-288 (RCL), U. S. District Court for the District of Columbia.

12.    After Petitioner brought to U. S. District Judge Royce Lamberth's attention that Committee Chairman Carlin and Committee Attorney Kent had been advancing false statements to the Court, Carlin and Kent then decided it was time to apologize for their breach of candor:

> The defendants did, unfortunately, mistakenly indicate that plaintiff's application to the Michigan Bar is pending. That application has, in fact, been denied, and the defendants apologize for any confusion engendered by that remark.

(Exhibit 2, attached hereto)

13.    Unlike Committee Chairman Carlin and Committee Attorney Kent, Petitioner has never been required to apologize to a federal judge for making false statements to a court. One would expect that Mark Carlin, the Chairman of the Committee on Admissions, would have taken extra measures to ensure that his litigation statements were fair, open and honest. He did not.

14.    A review of Committee Chairman Carlin's and Committee Attorney Kent's litigation papers in In re Philip J. Stoddard, D.C.C.A. No. 07-BG-148, reveals that they responded to Mr. Stoddard's claims of unreasonable administrative delay with unproven ad hominem attacks and pejorative allegations of unfitness – all at the same time that Carlin and Kent were refusing Mr. Stoddard the opportunity to defend those same allegations at a hearing. This Court should be wary of such tactics. It is beyond peradventure that even an unfit applicant is entitled to a hearing.

14.    There is no promulgated rule or policy that permits Respondent to hold in abeyance an applicant's application for a license to practice law, for an indefinite period of time, to await the outcome of an unrelated civil rights suit.

4

15.    Petitioner is entitled to a hearing, now.  See, District of Columbia Court of Appeals Rule 46(f)(1).  This Court should so rule.


WHEREFORE, Petitioner requests the following relief:

(a)    Resolve an unsettled issue of District of Columbia law, namely, whether District of Columbia Court of Appeals Rule 46(g), which requires "extraordinary circumstances" to invoke this Court's interlocutory review of agency action, permits Petitioner to bring this action to require Respondent to provide him a hearing; and

(b)    Order Respondent to provide Petitioner a hearing within 30 days.


Dated:  June 4, 2007

Respectfully submitted:

Frank J. Lawrence, Jr.
Petitioner, Pro Se
941 Westview Road
Bloomfield Hills, MI  48304
(248) 722-2560


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 4, 2007, a true and correct copy of the foregoing document, with supporting Exhibits, was mailed to Jacqueline Smith, c/o Committee on Admissions, 500 Indiana Avenue N.W., Room 4200, Washington, D.C. 20001, via the United States Postal Service, by First Class mail, postage prepaid.


Dated:  June 4, 2007

Respectfully submitted:

Frank J. Lawrence, Jr.


5

# Exhibit
# 1



**District of Columbia Court of Appeals**
Committee on Admissions
500 Indiana Avenue, N.W. — Room 4200
Washington, D. C. 20001
202 / 879-2710

March 9, 2007

Frank J. Lawrence, Jr.
941 Westview Road
Bloomfield Hills, MI 48304

RE:  E35882

Dear Mr. Lawrence:

The Committee appreciates the updated information you
recently provided concerning the status of the Florida
application.  The Committee will continue to hold your
application in abeyance until the conclusion of the Michigan
litigation.  The Committee will consider the issue of financial
responsibility, as well as your response to our January 24, 2007
letter, at such time as we consider the application in its
entirety.

Sincerely,

Mark S. Carlin, Esq.
Chairman

# Exhibit
# 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRANK J. LAWRENCE, JR., )<br><br>Plaintiff, )<br><br>v. )<br><br>MARK S. CARLIN, *et al.*, )<br><br>Defendants. ) | Civil Action No. 07-00288 (RCL) |

## DEFENDANTS' REPLY TO PLAINTIFF'S SECOND SUPPLEMENTAL BRIEF

Pursuant to LCvR 7(d), defendants hereby briefly reply to plaintiff's "Response to Defendants' Motion to Dismiss" and his "Reply to Defendants' Response [sic] to Plaintiff's Motion for Preliminary Injunction."[1]

Plaintiff's filing is rife with non-controlling, outdated, or simply inapposite case law. Plaintiff has not distinguished any of the controlling cases cited by the defendants. Plaintiff has not cited any case supporting his position that the completely justifiable postponement here in processing his bar application violates his constitutional rights.

Plaintiff also engages in needlessly inflammatory rhetoric, repeatedly accusing defendants and counsel—without factual basis—of serious misconduct.

---

[1]    Plaintiff's document is captioned as a "Response" and a "Reply." Consequently, because plaintiff did not file "in opposition to" defendants' dispositive motion, that motion may be treated as conceded. *See* LCvR 7(b).

*The Michigan Litigation and the First Amendment*

The defendants did, unfortunately, mistakenly indicate that plaintiff's application to the Michigan Bar is pending. That application has, in fact, been denied, and the defendants apologize for any confusion engendered by that remark. *See* Plaintiff's Exhibit No. 1 (to the Complaint). The defendants had intended to convey that plaintiff's challenge to the denial of his application is still pending before the courts.

The decision by the Michigan Board of Law Examiners indicated that plaintiff had "not sustained his burden that he currently possesses the requisite character and fitness to become a member of the Michigan Bar." *Id.* at 1. Attached is a letter dated January 24, 2007, from the D.C. Committee on Admissions ("COA") to plaintiff. In it, the COA notes that, as part of its investigation of "an applicant's general fitness and moral character," it must consider his then-pending litigation against bar officials in other jurisdictions which directly implicate that very issue. The COA letter specifically notes that "[s]ince both of your lawsuits are still under appeal, the Michigan and Florida decisions cannot be considered as final." Plaintiff subsequently informed the COA that the Florida litigation was concluded. *See also* Defendants' Motion to Dismiss at n.10.[2]

Because plaintiff has challenged the Michigan decision in federal court, it is not final, and the COA has repeatedly informed plaintiff that this lack of finality is the reason his D.C. Bar

---

[2]    The COA letter is presented solely to demonstrate the legal status of plaintiff's Michigan application, *i.e.*, the decision on that application is not final pending the outcome of the Sixth Circuit litigation and any further appeal or litigation proceedings. There are no material facts in dispute here, and plaintiff cannot suggest otherwise. *See, e.g., Baker v. Henderson*, 150 F.Supp.2d 17, 19 n.1 (D.D.C. 2001) (court may consider documents "attached to or incorporated in the complaint . . . without converting the motion to dismiss into one for summary judgment.") (citations omitted). *See also Anderson v. Wiggins*, 460 F.Supp.2d 1, 6 (D.D.C. 2006) (when a motion pursuant to Fed. R. Civ. P. 12(b)(1) "focuses on the Court's power to hear the claim . . . 'the Court may give the plaintiff's factual allegations closer scrutiny and may consider matters outside the pleadings.'") (citations omitted).

# Exhibit
# 2

DISTRICT OF COLUMBIA COURT OF APPEALS



NO. 07-BG-530

IN RE: FRANK J. LAWRENCE, JR.,
                    *Petitioner.*

## RECOMMENDATION OF THE COMMITTEE ON ADMISSIONS

The petitioner, Frank J. Lawrence, Jr. ("Lawrence"), is an applicant for admission to the District of Columbia Bar upon examination. In October 2006, the Committee on Admissions (the "Committee") notified him that he passed the D.C. bar examination. However, there are multiple, serious character and fitness issues raised in Lawrence's application and in his voluminous file. These, and other circumstances, discussed below, impact the Committee's investigation and the time it needs to determine its position with respect to the application. Nevertheless, Lawrence's petition for review seeks an order requiring the Committee to hold a Rule 46(f) formal hearing "within 30 days." *See*, Pet. at 1, ¶1; and 5. For the reasons discussed herein, the Committee recommends that the instant petition, and the petitioner's motion for expedited consideration, be denied.

## DISCUSSION

Lawrence's impatience with the Committee's regular procedures does not constitute the "extraordinary circumstances" that are required by the rules for court review of the Committee's processing of his bar application in the regular course of the Committee's operations. *See*, D.C. App. R. 46 (g)(3).[1] In this regard, as shown herein, the Committee has acted reasonably. And, for the reasons discussed *infra* at 5, Lawrence's contention (apparently based on his inference) that the Committee made a determination that it "is unwilling to certify" him, is simply wrong.

---

[1] D.C. App. R. 46(g), provides, in pertinent part, as follows:

(3) Except for the review by the court provided in this section (g) [relating to Committee reports after formal hearings], no other review by the court of actions or proceedings before the Committee shall be had except upon a showing (1) of extraordinary circumstances for instituting such review and (2) that an application for relief has previously been made in the first instance to the Committee and been denied by the Committee, or that an application to the Committee for relief is not practicable. [Emphasis added.]

As to Lawrence's motion for expedited consideration, the petition fails to show any undue prejudice to Lawrence by the court's processing and considering the instant petition in the regular course of the court's operations.

In February 2007, Lawrence filed a federal lawsuit against the Committee Chairman, Committee Counsel, and other Committee personnel, for declaratory and injunctive relief and (as to Committee Counsel in his individual capacity) for money damages. The action is currently pending in the U.S. District Court for the District of Columbia. A copy of the federal Amended Complaint (without its exhibits) is appended hereto as Exhibit A. The defendants' motion to dismiss was argued before Judge Lamberth on May 11, 2007, and currently is *sub judice*.[2]

The instant petition for review involves the same underlying issues that are currently pending in Lawrence's earlier-filed federal lawsuit against Committee personnel. In essence, Lawrence is litigating in two different courts on the same issues at the same time. Accordingly, in addition to the other reasons stated herein, the instant petition should be denied for reasons of judicial economy, to avoid the possibility of inconsistent results, and to otherwise allow for the earlier adjudication of the issues currently pending in the earlier-filed federal case.[3]

The Committee now turns to the merits of the instant petition. In October 2006, the Committee declared Lawrence successful on the previous D.C. bar exam. However, there are multiple, serious character and fitness issues raised in Lawrence's application and in his

---

[2] Following oral argument on May 11, 2007, Judge Lamberth dismissed Lawrence's motion for a preliminary injunction.

[3] Digressing from the issues at bar in this court, Lawrence fulminates at length over an unwitting and obvious fact error in defendants' motion to dismiss the federal lawsuit. *See*, Pet. at 3-4. That motion mistakenly had indicated that Lawrence's Michigan bar application is still pending, rather than that Lawrence's court challenge to the denial of that application is still pending. The defendants' attorney promptly acknowledged, corrected and apologized for, that error. *See*, Pet., Exh.2. Nevertheless, Lawrence, in his petition, uses charged rhetoric to exaggerate and mischaracterize the error, attempting to impugn the integrity of the Committee Chairman and Counsel. *See*, Pet. at 3-4.

Apparently for the same purposes, Lawrence mischaracterizes the Committee's filings in *In re Stoddard*, No. 07-BG-148. *See*, Pet. at 4. The court denied Stoddard's petition for review. Stoddard had requested, as does Lawrence now, a court order accelerating the Committee's character and fitness determination. Stoddard's petition ignored, as Lawrence's petition attempts to ignore, the circumstances reflecting both the prematurity and unreasonableness of such request, as well as the impracticality of such acceleration. The court should deny Lawrence's petition for the same reasons that it had denied Stoddard's petition. See discussion *infra* at 5-6.

voluminous file. These include, among other things, a 2002 criminal conviction, a variety of unpaid and defaulted debts and unpaid judgments, and multiple other reasons for which the bar admissions authorities (and the respective Supreme Courts) in both Michigan and Florida denied him admission on character and fitness grounds.

In 2001, Lawrence had applied for admission to the Florida Bar on examination. On February 18, 2005, following an investigation and a formal hearing, the Florida Board of Bar Examiners issued findings of fact, conclusions of law, and a recommendation that Lawrence's Florida bar application be denied on character and fitness grounds. On Lawrence's petition for review, the Florida Supreme Court denied his application for admission on December 19, 2005.[4]

In August 2004, Lawrence had applied for admission to the Michigan Bar on examination.[5] There was an investigation and formal hearings before both a Character Committee and the Michigan State Board of Law Examiners. On June 14, 2006, the Michigan State Board issued a 21-page Opinion, with findings of fact, concluding that Lawrence's Michigan bar application be denied on, among other things, character and fitness grounds.

On September 9, 2006, Lawrence filed a federal lawsuit against the Michigan Bar authorities. The action was filed in the U.S. District Court for the Western District of Michigan. The lawsuit challenges the denial of Lawrence's Michigan bar application.[6] That litigation is still pending. After the district court dismissed the suit, Lawrence appealed to the U.S. Court of Appeals for the Sixth Circuit on December 15, 2006. *See,* Pet. at 2, ¶ 6. The Committee is awaiting the finality of that litigation as a necessary part of its character and fitness investigation, as discussed in more detail *infra.*

---

[4]  Lawrence had filed a federal lawsuit against the Florida Bar authorities and the Chief Justice of the Florida Supreme Court. In 2005, the U.S. District Court (N.D. Fla.) dismissed the suit. On September 21, 2006, the U.S. Court of Appeals for the 11th Circuit affirmed the dismissal.

[5]  Lawrence previously had applied to the Michigan Bar in 2001. However, his bar exam results were not certified because he had not obtained character and fitness clearance from the State Bar of Michigan Standing Committee Character and Fitness. He withdrew his application in October 2002. In August 2004, Lawrence reapplied for admission in Michigan. *See, In re Lawrence,* Opinion by the State of Michigan Board of Law Examiners, June 14, 2006, at 1.

[6]  Lawrence had filed an earlier federal action in Michigan against the Michigan Bar authorities and the justices of the Michigan Supreme Court. In 2003, the U.S. District Court (W.D. Mich.) dismissed the action. In 2006, the U.S. Court of Appeals for the 6th Circuit court affirmed the ruling of the district court.

Laurence's assertion that his bar application here "has lingered since its filing in May 2006," (*see* Motion at 1, ¶2), is misleading. Passing the bar examination is a prerequisite to the Committee's detailed investigation of an exam applicant's character and fitness. Lawrence was not even declared successful on the D.C. bar examination until October 2006. The Committee members first saw his file around the most recent Christmas-New Year holiday period. Thereafter the Committee responded in detail to Lawrence's various requests, and it requested additional information and documents from Lawrence. *See*, Committee letter to Lawrence, January 24, 2007, a copy of which is appended hereto as Exhibit B.

The record before the Florida and Michigan bar authorities, and the related litigation, alone, is voluminous. The Committee, with its limited resources, will be required to devote substantial time and effort to review and analyze these records, together with the other voluminous documents already in its file. In this regard, Lawrence has hindered the Committee's character and fitness investigation by refusing the Committee's formal request that he provide certain relevant litigation documents in a format other than on a compact disk ("CD").[7]  (*See*, Exh. B hereto, Committee letter, Jan. 24, 2007, at page 2.)[8]  This, also, has hindered the Committee in determining, preliminarily, Lawrence's present moral character and fitness to practice law, and whether or not the Committee is willing to certify him for admission.

Perhaps most significantly, there is not yet any finality to Lawrence's pending court challenge to the Michigan Bar's decision denying Lawrence admission to its Bar on character and fitness grounds. Consequently, the Committee is not in a position to determine the extent to which it may rely on findings of fact in the Michigan proceedings. Therefore, the Committee reasonably is waiting for Lawrence's current Michigan federal litigation to be concluded.

---

[7]  The Committee, as an arm of the Court of Appeals, accepts documents in the same format as is required by the court. In this regard, the Clerk of Court has advised that the court accepts filings and documentary evidence only in hard copy form. The Committee has followed suit. This is particularly important since the Committee must submit to the court a paginated written record, in hard copy format, following the Committee's formal hearings.

[8]  Lawrence apparently believes, mistakenly, (1) that the electronic filing procedures of the D.C. Superior Court apply to the Court of Appeals, and (2) that the Committee has accepted for consideration documents submitted in electronic format (CD) from another applicant. *See* note 7 *supra*.

In his petition, Lawrence attempts to shoehorn his case prematurely into the ambit of Rule 46(f)(1), which states, in pertinent part, as follows:

> **** If the Committee is unwilling to certify an applicant, it shall notify the applicant of the choice withdrawing the application or requesting a hearing. [Emphasis added..]

Laurence contends that he presently is entitled to a Rule 46(f) hearing, arguing (apparently based solely on his own inference) that the Committee has determined that it "is unwilling to certify" him. *See*, Pet at 3, ¶ 9. That is incorrect. The Committee has not completed its character and fitness investigation, and therefore it has not made – and indeed cannot yet make - a preliminary determination as to its position on his application. That is because, among other things, the final outcome of Lawrence's Michigan Bar litigation – now pending in the federal courts – will significantly affect the Committee's preliminary determination whether or not to certify Lawrence.

Curiously, Lawrence cites a bar admission case that cuts against his own arguments, *i.e.*, *In re Stoddard*, DCCA No. 07-BG-148. *See*, Pet. at 4. The similarities between the two cases are striking:

- Like Lawrence, Stoddard is an applicant for admission to the D.C. Bar on examination.
- Like Lawrence in Florida and Michigan, Stoddard had been denied admission to the Florida Bar on character and fitness grounds.
- Like Lawrence in Florida and Michigan, Stoddard filed a federal lawsuit challenging Florida's denial of his bar application.
- Like Lawrence's Michigan federal litigation, Stoddard's Florida federal litigation is still pending.
- Like Lawrence, Stoddard filed a petition seeking the Committee's immediate decision on his bar application before his federal litigation was finally adjudicated and before the Committee had determined its preliminary position on his application.

On May 2, 2007, the court denied Stoddard's petition for review. Like cases should be treated alike. On the same basis that the court denied Stoddrad's similar petition, it should deny

5

Lawrence's petition.

As to the investigation of the issues arising from Lawrence's bar application, the Committee is proceeding reasonably, in its regular order, within the constraints of its limited resources.[9]  In view of the panoply of character and fitness factors arising from Lawrence's application, each of which the Committee needs to investigate and analyze, the Committee submits that Lawrence's impatience with the Committee's regular process is unfounded. That process is not yet complete, since the Committee is awaiting the final adjudication of Lawrence's Michigan court proceedings regarding his bar application there. Therefore, as discussed above, the Committee reasonably has not yet determined its preliminary position on his application. Accordingly, Lawrence presently is not entitled to a Rule 46(f) formal hearing.

## CONCLUSION

The Committee intends to investigate and analyze all of the issues raised in the petitioner's bar application, and to make a determination as to its preliminary position on them, as soon as it is able to do so.  This will be done within the framework of the Committee's regular operations and workload circumstances, following final adjudication of Lawrence's pending federal court challenge to the denial of his Michigan bar application on character and fitness grounds.  The instant petition is unfounded and, at best, grossly premature.

For the reasons stated herein, the Committee recommends that the relief sought in the petition, and in the motion for expedited consideration, be denied.

---

[9]  The Committee currently is investigating and determining character and fitness issues on a large number of other cases pre-dating the relatively recent Lawrence matter.

Respectfully submitted,

_____

Mark S. Carlin
Chairman
Committee on Admissions
500 Indiana Avenue, NW, Room 4200
Washington, DC  20001
202/879-2710

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was mailed this filing date to Frank J. Lawrence, 941 Westview Road, Bloomfield Hills, MI 48304.

_____

Mark S. Carlin
Chairman
Committee on Admissions

7

# Exhibit
# 3

DISTRICT OF COLUMBIA COURT OF APPEALS

RECEIVED

JUN 2 1 2007

DISTRICT OF COLUMBIA
COURT OF APPEALS

FRANK J. LAWRENCE, JR.,

        Petitioner,

           Case No. 07-BG-530
           Applicant File No. 35882

v.

DISTRICT OF COLUMBIA COURT OF APPEALS,
COMMITTEE ON ADMISSIONS,

        Respondent.

_____/

## PETITIONER'S REPLY TO THE COMMITTEE ON ADMISSIONS' RECOMMENDATION (RESPONSE) TO PETITIONER'S PETITION FOR REVIEW

I.    CARLIN'S BASIS FOR THE "HOLD-IN-ABEYANCE" STATUS IS ILLEGITIMATE

It is not until page five of Committee Chairman Carlin's Recommendation that he finally provides the reason for holding Petitioner's application in abeyance: "...the final outcome of Lawrence's Michigan Bar litigation – now pending in the federal courts – will significantly affect the Committee's preliminary determination whether or not to certify Lawrence." (emphasis added). The utter frivolousness of Carlin's argument is discernable by comparing two published decisions of this Court, namely, In re Levi, 853 A.2d 702 (D.C., 2004) and In re Ramos, 860 A.2d 843 (D.C., 2004). The lesson of these two cases is clear: the decision to deny an applicant admission to the District of Columbia Bar must be made independently, regardless of whether the applicant received a favorable recommendation in another jurisdiction (Levi), or an unfavorable recommendation (Ramos).

The first four pages of Carlin's Recommendation are irrelevant to the present dispute because even assuming arguendo that Petitioner has "multiple, serious character and fitness

issues", Petitioner is still entitled to a hearing. Notably, Carlin's argument today is not the same position that he took before he learned that Petitioner had sued Michigan licensing officials. Specifically, on October 6, 2006, Carlin fostered Petitioner's expectancy interest by publicly announcing, in Carlin's own words:

> **It is expected that** [Frank Lawrence] will be administered the oath of admission at a formal ceremony before a panel of Judges of the District of Columbia Court of Appeals <u>on Monday, November 6, 2006</u>, in the Court of Appeals Courtroom on the sixth level of the District of Columbia Courthouse at 500 Indiana Avenue NW.

Mark S. Carlin, Chairman<br>October 6, 2006

Exhibit 1, Carlin's October 6, 2007 Notice (emphasis added)

However, Carlin now takes the opposite position, arguing that Petitioner has no expectation to be administered the oath of admission forthwith. In doing so, Carlin carefully makes two material omissions. First, he fails to disclose that Petitioner is now eligible to reapply for admission in Michigan (as well as in Florida)[1]. (Exhibit 2, Michigan Board's opinion). If Petitioner were to abandon his federal civil rights suit and simply reapply in Michigan, as he is now permitted to do, then what would Carlin do?

Second, Carlin fails to disclose that Petitioner's litigation is *a federal civil rights suit*, not a Michigan Supreme Court petition for review challenging the Michigan Board's adverse

---

[1] Petitioner is presently assembling a legal team in Florida to initiate and represent him in a second federal lawsuit against the Florida Board of Bar Examiners. The impending suit will be a prospective challenge regarding Petitioner's future reapplication process. Presumably, Carlin will use that case to continue holding Petitioner's application in abeyance because that federal suit will similarly challenge the denial of Petitioner's prior Florida application. While the relief granted under <u>Ex parte Young</u>, 209 U.S. 123, 52 L. Ed. 714, 28 S. Ct. 441 (1908), may only be prospective, "proof for the claim necessitating relief can be based on historical facts, and most often will be". <u>Entergy Ark., Inc. v. Nebraska</u>, 210 F.3d 887, 898 (8th Cir. 2000); <u>Edelman v. Jordan</u>, 415 U.S. 651, 39, Ed. 2d 662, 94 S. Ct. 1347 (1974). Therefore, unless Carlin's malfeasance is stopped, it is possible that he will continue to hold Petitioner's application in abeyance for as long as Petitioner litigates with sister-states' licensing officials.

character decision. That is an important difference. Although Petitioner challenges the basis for the Michigan decision in that federal suit, he also seeks *prospective relief* regarding his reapplication process in Michigan (whenever Petitioner decides to reapply). A fortiori, Petitioner has already lost his Michigan federal civil rights suit, the dismissal of which occurred six months ago. Carlin is now free to do whatever he wants with the adverse decision of the Michigan Board. What legitimate basis does Carlin have in continuing to hold Petitioner's application up during the lengthy federal appellate process, especially since Petitioner is now eligible to reapply in Michigan?

Carlin appears to be saying that if Petitioner loses his federal civil rights appeal, then Petitioner should expect trouble in the District of Columbia, but if Petitioner wins his appeal, then the adverse Michigan decision will not "significantly affect the Committee's preliminary determination whether or not to certify Lawrence." (Carlin's Recommendation, p. 5). As noted above, however, Carlin's position would result in a highly inappropriate consequence to the pronouncements of this Court in Levi, supra, and Ramos, supra. Petitioner is entitled to an independent decision of whether he meets the criteria for licensure in the District of Columbia. The lengthy delay at issue here is completely unauthorized by Court Rule, statute, binding case law, dicta or otherwise. See, e. g., Henderson v. District of Columbia, 493 A.2d 982, 996 (D.C. 1985) (finding that a 13-month administrative delay, while the plaintiff was suspended without pay, was unreasonable.)[2]

---

[2] Petitioner continues to reserve his federal claims and defenses for adjudication in a federal forum. Carlin erroneously suggests that this petition for review was voluntarily brought to duplicate litigation. That is false. This petition was brought because Judge Lamberth suggested that it would be appropriate to allow this Court to first address these issues before Petitioner returns to federal court. Judge Lamberth also suggested that Petitioner may be able to renew his motion for preliminary injunction if this Court does not grant the relief requested. That is why Petitioner did not appeal Judge Lamberth's Order denying the injunction.

II.    PETITIONER'S PETITION FOR REVIEW EXPLAINED CARLIN'S FALSE
LITIGATION STATEMENTS IN FEDERAL COURT BECAUSE IT WAS LIKELY
THAT CARLIN WOULD DO THE SAME THING HERE. AND CARLIN DID.

Carlin's Recommendation is riddled with misrepresentations, which demonstrates his
repeated lack of candor to the Court. These distortions are far too plentiful to discuss in detail
here. However, one in particular is relevant to the matter <u>sub judice</u>:

Carlin states that the Committee is awaiting "certain relevant litigation documents" from
Petitioner's Michigan and Florida federal litigation, and he contends that Petitioner's refusal to
produce them in paper form is "hindering" the Committee (Carlin's Recommendation, p. 4).
This representation is misleading in a compound way. First, it was only after Petitioner
*voluntarily produced* the entire set of litigation documents (thousands of pages) on a CD Rom
without any prior Committee request, that Carlin then "formally requested" those same
documents on paper. In other words, those documents were unimportant to the Committee until
it became clear that reproducing them in paper format would create a substantial hardship for
Petitioner.

Second, Carlin again misrepresents facts when he states that the Committee is awaiting
"<u>certain relevant</u> litigation documents" (Carlin's Recommendation, p. 4, emphasis added). In
fact, Petitioner is, and always has been, willing to produce "certain relevant" litigation
documents. But that is not what Carlin requested, and his suggestion to this Court otherwise is,
in a word, false. Carlin wants the complete set of thousands of pages, and Petitioner admittedly
will not produce them.

Third, the entire set of litigation documents is readily accessible on the federal courts'
EM/ECF system (electronic filing system available to any member of the public with PACER
access). Notice that Carlin's Exhibit A, which is Petitioner's Amended Complaint, has the

EM/ECF designation at the top of each page. Therefore, Carlin must have PACER access, and accordingly, he has complete access to all of Petitioner's federal litigation documents from Michigan and Florida.

Fourth, it is disingenuous for Carlin to allege that Petitioner's refusal to produce the thousands of pages of documents has anything to do with the present dispute because Carlin's March 9, 2007 correspondence (attached as Exhibit 1 to Petitioner's Petition for Review), clearly indicates that the pending federal civil rights suit – not Petitioner's refusal to produce documents – is the cause for the delay.

There are other examples of Carlin's smoke and mirrors, which are irrelevant to the relief sought herein. For example, Carlin refers to a "criminal conviction", which actually is a local ordinance violation that stemmed from events in August, 2000. While Petitioner did disclose that fine-only conviction as a "criminal" offense on his D.C. application (in order to error on the safe side), there is some debate about whether such a violation is "criminal" at all. See, Gora v. City of Ferndale, 456 Mich. 704, 718; 576 N.W.2d 141 (1998) ("this Court has long recognized that prosecutions for violations of ordinances are in a sense criminal, but that such violations are not criminal cases within the meaning of the statutes and rules for review by this Court."). Carlin also indicates that Petitioner has various unpaid debts. That is true. However, notice that Carlin does not allege that Petitioner could have paid the debts, but did not. Merely falling upon hard times does not equate to financial irresponsibility.

III.    CONCLUSION

This Court should normally be able to rely upon litigation statements advanced by the Chairman of the Committee on Admissions. That is not the case here. His litigation statements

5

combine pomposity with distortion, while he has yet to produce one legitimate reason for holding Petitioner's application in abeyance.

Carlin devotes considerable space in his brief suggesting innuendo in an effort to show that Petitioner has character problems, and if Carlin is correct, then a character denial is in order. Case in point, Petitioner is entitled to that denial, so that he can press forward.

WHEREFORE, Petitioner requests the following relief:

    (a)    Resolve an unsettled issue of District of Columbia law, namely, whether District of Columbia Court of Appeals Rule 46(g), which requires "extraordinary circumstances" to invoke this Court's interlocutory review of agency action, permits Petitioner to bring this action to require Respondent to provide him a hearing; and

    (b)    Order Respondent to provide Petitioner a hearing within 30 days.

Dated: June 18, 2007

Respectfully submitted:

Frank J. Lawrence, Jr.
Petitioner, Pro Se
941 Westview Road
Bloomfield Hills, MI 48304
(248) 722-2560

6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 18, 2007, a true and correct copy of the foregoing document, with supporting Exhibits, was mailed to Jacqueline Smith, c/o Committee on Admissions, 500 Indiana Avenue N.W., Room 4200, Washington, D.C., 20001, via the United States Postal Service, by First Class mail, postage prepaid.

Dated:  June 18, 2007

Respectfully submitted:

Frank J. Lawrence, Jr.

7

**INDEX OF EXHIBITS**

Exhibit 1     Carlin's October 6, 2007 Notice to the Public

Exhibit 2     Opinion of Michigan Board of Law Examiners

Exhibit 3     <u>Character and Fitness Review – Is the Process Fit?</u>, 82 Michigan Bar Journal 9 (December, 2003).

# Exhibit
# 1



# NOTICE OF THE JULY 2006 BAR EXAMINATION RESULTS

Notice is hereby given that the list published herewith contains the names of 173 successful applicants of the District of Columbia Bar Examination administered on July 25th and 26th, 2006, to 352 applicants. This represents a 76.3 percent pass rate among first-time takers or an overall pass rate of 49.1 percent.

The members of the Committee on Admissions request that any information tending to affect the eligibility of any of these applicants on moral or ethical grounds be furnished to the Committee on Admissions on or before Friday, November 3, 2006.

It is expected that these applicants will be administered the oath of admission at a formal ceremony before a panel of Judges of the District of Columbia Court of Appeals on Monday, November 6, 2006, in the Court of Appeals Courtroom on the sixth level of the District of Columbia Courthouse at 500 Indiana Avenue NW.

                              Mark S. Carlin, Chairman
                              October 6, 2006

Adams, Tashiana R.
Aitken, Natalie Diana Elvie
Aleo, Michael E.
Auerbach, Donald Carl
Batipps, Mark Jeffrey
Bocanegra, Lauren Isela
Bromeland, Matthew John
Bronk, Jennifer-Joy
Brown, Lisa Marie
Brown, Robert D.
Brown, Turkessa Lynn
Burgess, Mary J.
Calvo, Paul Anthony
Carpenter, Krista Lynn
Catlett, Cynthia Nesanovis
Chan, Vichet J.
Chang, Karl Shih
Choe, Jay Joon
Chu, Daniel Young
Cohen, Andrew Laurence
Cohen, Jeremy T.
Collins, Chris William
Collins, Michael Garrett
Conlon, Phillip Gregory
Cook, James Kent
Corkran, Kelsi Brown
Cotca, Ramona Raula
Crowell, Lee M.
Daugirdas, Kristina B.
Davis, Mark Christopher
Davis, Kelly Jo
De la gueronniere, Gabrielle
Delgadillo, Gabriela Margarita
Diggs, Damien Marcus
Dillon, George Tsakoff
Donovan, Brian Michael
Dunlap, Andrew Lawson
Dunlap, Robyn Elaine
Dunlop, Kimberlee M.
Duran, Cecilia Maria
Ellis, Carrie Elizabeth
Escudero, Maria Luisa
Fahrenholz, Kimberly Kay
Farmer, Stacey J.
Feierabend, Allison Victoria
Feinberg, Robert Saul
Fisher, Danielle Kathleen
Fisher, Christy Ann
Fisler, Whitney CaLeen
Fletcher, Amy Frances

Gelston, Jennifer Barley
Goldin, Alicia Fagen
Gowel, Katherine Scott
Gowel, John Joseph
Green, Stuart Cotter
Grewal, Amandeep
Gripp, David Arden
Halbert, Jessica Lee McHugh
Halbert, Jason Herman
Hansen, Sandra Luz
Hayes, Mark L.
Hayes, Sean Andrew
Himowitz, Joseph Isaac
Holdheim, Sylvia Margaret
Hopkins, Gabrielle T.
Hoverter, Terence Francis
Howald, Blake Stephen
Hranek, Melissa Susan
Imam, Ali Mohammed
Jacobs, Rebecca Elizabeth
Jenkins, Paul Daniel
Jensen, Lars M.
Jimenez, Julio Manuel
Jones, Adrienne Antoinette
Judkins, Quo Mieko S.
Kagle, Killian Bach
Kang, Min Gu
Katz, Paula Rebecca
Kilday, Lisa Anne
Kramer, Kai Robert
Krasovsky, Gregory
Lane, Takeshia A.
Lara, Juan
Lawrence, Frank Joseph
Leavitt, Michael Smith
Lee, Jason Tremain
Lee, Scott Wai-Hong
Lefeve, Donald Arthur
Legaspi, M. Bryan P.
Li wai suen, Rachel Sharon
Lieberman, Ross Jeffrey
Maltz, Gideon Daniel
Marie, Caroline Suzanne
Masi, Brina Rose
Matamoros-Indorf, Marcela A.
Mathis, Paulette Evelyn
Maurer, Jeannette Hargrove
McDuffie, Shannon Daspit
Mejia, Austin Lee
Mignano, Joseph Flanigan

# Exhibit 2

*****NOTE*****

Exhibit 2 is the Opinion of the Michigan Board of Law Examiners. It has already been filed with the United States District Court as an exhibit to the Complaint. To save resources, it has been omitted here for the purposes of the present successive motion for preliminary injunction.

# Exhibit
# 3

Case 1:07-cv-00288-RCL     Document 22-4     Filed 07/26/2007     Page 15 of 18

# MICHIGAN
# Bar Journal

December 2003





## inside

Genesee County Courthouse
Pro Bono Project a Winner

# Real Property
# Law

Evictions **20**
Construction Liens **26**
Eminent Domain **34**

facts in the Michigan admissions cases, Mr. Ault has failed to rebut the principle, approved by seven of the nine justices of the U.S. Supreme Court, that diversity in higher education remains a compelling governmental interest.

Reginald M. Turner, Jr.
Detroit

## Character and Fitness Review— Is the Process Fit?

To the Editor:

In his July 2003 column, the executive director defends the current licensing procedure and says it works well. I disagree. Based on just a few examples from recent litigation, which Mr. Berry fails to mention, it is apparent that the process has significant problems and that administrators, unfortunately, cling to practices that are illegal. We must assure the fitness of the licensing procedure.

No one disputes the goal of assuring the suitability of law school graduates for their future role as lawyers. One key function is serving as a critical buffer between the power of the state and the individual. *Johnson v City of Cincinnati*, 310 F3d 484, 498 (CA 6, 2002). Character fitness should not be a sieve through which administrators filter sharp or questioning personalities or views. Lawyers may be officers of the court, but they are not servient to it.

Administrative decision-making is subject to basic principles of fairness. Written and practical standards must both confine the exercise of administrative discretion and afford reasonable notice to applicants of disqualifying conduct. In addition, governmental decision-making at every level must abide by legal or constitutional limits.

My principal concern is that character-fitness review has been used to scrutinize lawful activities of applicants without any limiting principle (whether by statute, rule or practice) for administrative evaluation of the act itself. As a result, there is no place in the current process where decision-makers (whether State Bar staff, State Bar committee or Board of Law Examiners) ever consider if the scrutinized act is protected by law. Quite frankly, this practice has led to abuses.

And because fitness review is confidential, said to be for the "protection" of the applicant, there is no public record that exposes

the use of improper considerations. What is gleaned from the process arises indirectly, as noted below. The absence of published decisions protects current practice, not the applicants. Transparency should be a universal principle of governmental decision-making.

The tangible deficiencies in the current process have been exposed in a number of recent lawsuits in federal court. One, *Stephen Dean v Thomas Byerley*, U.S. District Court, Western District of Michigan, Case No. 5:01 cv-40, establishes the State Bar's illegal practice of using protected acts against applicants under the guise of "character." In defending comments allegedly made by regulation counsel Thomas Byerley to Stephen Dean, which threatened character rejection because Mr. Dean had picketed the State Bar building, or elsewhere, the State Bar asserted:

> Although an individual may have a constitutional right to engage in a certain activity under certain circumstances, the activity may constitute a basis on which an applicant is denied admission to the Bar. On occasion, Bar applicants have been denied admission for activity that is lawful, but that reflects poorly on the applicant's suitability to practice law.
>
> The Bar has had several applicants who exercised free speech in a fashion that contributed to a recommendation of denial.

Thus, the State Bar asserts that *lawful* acts may provide a reason for rejection of an applicant on character grounds, notwithstanding constitutional protection for the act.

The State Bar's position is illegitimate. There are well-established rules for administrative decision-making, which the State Bar chooses to ignore. One notable example comes from judicial disciplinary proceedings concerning Judge John Chmura.

Applying established First Amendment principles, the Michigan Supreme Court held that Judge Chmura could not be punished for campaign statements that had been characterized as racist despite the state of Michigan's very considerable interest in having "fit" judicial officers. *In re Chmura*, 461 Mich 517 (2000). Notably, the state was required to prove that the activity in question was unprotected, under a rigorous constitutional measure. *In re Chmura*, 464 Mich 58, 71–72 (2001). This is distinctly unlike the current licensing procedure, where the applicant car-

ries the burden whenever the State Bar says there is a problem with "character."

It is eminently clear that the state cannot use protected acts against an individual. In addition, the *Chmura* decisions say there are both substantive and procedural safeguards for any process of governmental decision-making, especially where the First Amendment is implicated. See also *Feiger v Michigan Attorney Grievance Commission*, 74 F3d 740, 747 (CA 6, 1996).

Yet, Mr. Berry's article avoids any statement about controlling legal limits and utterly fails in squaring the current licensing process with known legal parameters. Mr. Berry says that an applicant's "lack of candor" is the most common reason for rejection. But he offers no administrative practice for this determination, other than saying it exists.

The regulations themselves do not mention or define this deficiency or how it is determined. Nowhere is it stated as a standard of decision-making. In view of the State Bar's acknowledgment in the *Dean/Byerley* litigation, it is clear that applicants have been rejected for "candor" when the State Bar disagrees with the expression of an open and honestly held view. This is not fitness review. It is censorship or illegitimate paternalism at best. (There is a troubling Board of Law Examiners' memorandum from a few years ago suggesting that administrators rejected applicants merely because they did not like them.)



(888) 737-3636
www.ewiassociates.com

EWI
& Associates, Inc.

ELECTRONIC COUNTERMEASURES & INVESTIGATIVE SERVICES

OPINION AND DISSENT

DECEMBER 2003

◆

MICHIGAN BAR JOURNAL

Mr. Berry cannot cure the defects in the current process by referring to "abuse" or other claim of "egregious" behavior attributed to the applicant. Judge Chmura was not subject to discipline although the Judicial Tenure Commission felt it was warranted due to unseemly public behavior. Since the law protected his conduct, that was the end of the matter.

In contrast to Judge Chmura's situation, the board of Law Examiners withheld character approval (acting on a recommendation from the State Bar) in the case of one applicant (Dennis Dubuc) because of his statements about a sitting judge. The Board of Law Examiners said those remarks were "of primary concern" to the licensing decision. Yet, the Board did not apply controlling First Amendment principles to Dubuc's statements, as set out by the *Chmura* decisions. (Dubuc's battle with the licensing authorities is reported in *Dubuc v Googasian*, ___ F3d ___; 2003 WL 22047344 (2003).)

Furthermore, Judge Chmura suffered no disability while litigating those important constitutional issues. That is markedly different from the State Bar's treatment of applicant, Frank Lawrence, Jr. His example shows that the "character" process has been grossly misused.

Lawrence's application was placed in administrative purgatory because he was involved in proceedings arising from his prosecution under a Bloomfield Township ordinance for interfering with a police officer. The State Bar refused to finalize his fitness evaluation even though prior administrative practice showed that such a simple ordinance charge (whatever its outcome) would not lead to "character" rejection. Nonetheless the State Bar refused to recommend certification of Mr. Lawrence, saying it had to await the final outcome of the ordinance violation.

The ordinance under which Lawrence was prosecuted seems overly broad or indefinite akin to disorderly conduct laws that fail basic due process. However, ex-State Bar president Thomas J. Ryan prosecuted the matter. Lawrence defended the charge and also challenged the ordinance in federal court, seeking monetary damages. After the local judge denied to dismiss the charges, Lawrence went to trial and was convicted. He appealed, and his appeal is pending (it has gone through a

number of procedural twists). Lawrence's federal action for damages is stayed pending the final outcome of the state prosecution.

Bloomfield Township said it would accept dismissal of Mr. Lawrence's civil lawsuit (the damages claim) in exchange for dismissal of the ordinance violation. Lawrence refused that quid pro quo, an equation that has the State Bar working with the township on a de facto basis.

Lawrence's application for membership in the State Bar is hostage to his legitimate fight for justice. The State Bar refuses to recognize that litigation *with* government is protected by the First Amendment, under both the Speech and Petition Clauses. Facing continued deferral of his application, Lawrence sued the State Bar (and others) over its refusal to

**The State Bar's practice in "character" review has been to take as much latitude as possible, despite known and controlling legal limits.**

process his application. That lawsuit is pending in federal court in the Western District of Michigan. It seeks to adjudicate the State Bar's use of an applicant's lawful acts to assessment of character-fitness.

It is apparent that Lawrence's lawsuit has legitimate grounds substantively, as demonstrated by the State Bar's comments in the *Dean/Byerley* litigation, noted above, and by the procedural history of his own licensing attempt. It is procedurally proper since one may challenge a defect of "process" without exhausting administrative proceedings or receiving a final decision. *Bowers v Flint*, 325 F3d 758, 762 (CA 6, 2003).

These examples illustrate the State Bar's practice in "character" review has been to take as much latitude as possible, despite known and controlling legal limits.

Those responsible for character-review must do one thing first. They must acknowl-

edge that the law applies to their *own* acts during the review process. The State Bar's avowed position—expressed in court papers—is that it is above the law. Such a viewpoint is hardly good public policy.

Of further significance is the fact that the State Bar's litigation statements have not been forthcoming. The State Bar led one federal court (Judge Nancy Edmunds) to believe that it did not consider First Amendment activities. Yet, its expressed position in the *Dean/Byerley* litigation was exactly the contrary, as quoted above.

The State Bar did not tell Judge Edmunds that it rejected applicants because of First Amendment activities. Rather, it shaped its arguments to further its procedural position in order to gain dismissal on non-meritorious grounds, i.e., that plaintiffs lacked standing and the lawsuit was not ripe for judicial review. The Sixth Circuit, unfortunately, affirmed Judge Edmunds in a brief unpublished opinion (*Roe/Doe v State Bar of Michigan*, 2003 WL 21949187), repeating her wrongly induced finding that the State Bar does not scrutinize First Amendment activities. ("[P]laintiffs lack standing to challenge the statute because they failed to demonstrate a realistic danger that the statute will be applied so as to compromise their First Amendment rights.") Unfortunately, counsel—the undersigned—did not know of the State Bar's litigation comments in the *Dean/Byerley* lawsuit until afterwards.

The State Bar is entitled to advance its interests zealously. I suggest, however, that the State Bar's foremost responsibility is fidelity to the law, not preservation of administrative latitude. There is much to be gained by self-examination and the State Bar's governors need to examine a great deal. What do commissioners or members of the Representative Assembly know of these lawsuits and the State Bar's positions and administrative practices?

I also suggest that someone outside the present embattled lawsuit circumstances take a look at Frank Lawrence's situation and do the right thing. It is neither fair nor right that lawyers are stopping a person from becoming a lawyer because of a legitimate choice to fight for legal principle. The State Bar should not be used as a lever to extract a lawsuit settlement.

Equal access to justice applies to those who *seek* to become lawyers, as well as to lawyers who are sitting judges or important politicians. (Mr. Ryan, the prosecutor of Frank Lawrence, represents a well-known lawyer and elected official recently charged with dangerous public behavior. The disciplinary authorities have not questioned the fitness of Mr. Ryan's client and he continues to serve in an important governmental role. I do not quarrel with that circumstance, but simply note the disparity with Frank Lawrence's situation.)

What bar-applicants have now is neither equality nor justice. In addition, the public is not served by shrouded decision-making that preserves bureaucratic latitude at the price of constitutional principles.

Deemed public necessity and constitutional rights are frequently at odds. The State Bar of Michigan should be a leading advocate of constitutional principles, even where

its own prerogatives are at issue. Unfortunately, the State Bar has used its considerable state power to injure, rather than honor, basic constitutional guarantees.

The *Dubuc* lawsuit, to which I referred earlier, was remanded by the Sixth Circuit for further proceedings, overruling Mr. Berry's argument that he could not be sued over State Bar licensing practices claimed to be unconstitutional. As counsel for Mr. Dubuc I was pleased in that result, but dismayed that it took a trip to Cincinnati to get recognition of basic legal principles. State officials are not above the law. See *Republican Party of Minnesota v White*, 536 US 765, 122 S Ct 2528, 153 L Ed 2d 694 (2002), *Glassroth v Moore*, ___ F3d ___; 2003 WL 21499258 (CA 11, 2003), or *Spargo v New York State Com'n on Judicial Conduct*, 244 F Supp 2d 72 (ND NY, 2003).

Robert D. Horvath
Troy

### From the Editor:

Strict confidentiality rules imposed by the Michigan Supreme Court make it impossible to respond to these specific disagreements on how the State Bar is conducting its character and fitness reviews. The Bar takes its responsibility to screen the character and fitness of every applicant to the Bar very seriously. If the Bar is to protect the public from individuals who lack the requisite character and fitness to practice law in this state, it must diligently and professionally investigate all applications received. It is understood that some applicants find this process intrusive or unnecessary. It is noteworthy, however, that no court has found that the State Bar's character and fitness process violates anyone's constitutional rights.

Thomas K. Byerley
Director of Professional Standards

# In Memoriam

Hon. Fred J. Borchard, P11002, of Saginaw died September 29, 2003. He was born June 10, 1914, graduated from the University of Michigan Law School, and was admitted to the Bar in 1943.

Milton W. Bush, P11469, of Port Huron died September 24, 2003. He was born April 4, 1911, graduated from the Detroit College of Law/MSU, and was admitted to the Bar in 1934.

John S. Clark, P11931, of Petoskey died October 7, 2003. He was born January 27, 1912, graduated from the University of Michigan Law School, and was admitted to the Bar in 1936.

Donald G. Corley, P12229, of Lynn, NC died June 30, 2003. He was born February 13, 1929 and was admitted to the Bar in 1954.

Benjamin L. Crossley, P26178, of Lansing died October 3, 2003. He was born October 2, 1924, graduated from the University of Michigan Law School, and was admitted to the Bar in 1953.

Robert W. Daley, P12453, of Novi died June 30, 2003. He was born January 26, 1929 and was admitted to the Bar in 1971.

John M. Dell'Orco, P25429, of Savannah, GA died September 20, 2003. He was born February 23, 1947, graduated from the Detroit College of Law/MSU, and was admitted to the Bar in 1975.

Geraldine B. Ford, P13564, of Detroit died October 5, 2003. She was born November 5, 1926 and was admitted to the Bar in 1952.

Hon. Thomas L. Gadola, P13781, of Flint died September 27, 2003. He was born January 6, 1933, graduated from the University of Michigan Law School, and was admitted to the Bar in 1957.

Fredrick M. Goldsmith, P14122, of Southfield died September 4, 2003. He was born December 3, 1939, graduated from Wayne State University Law School, and was admitted to the Bar in 1964.

Jack J. Kraizman, P16198, of Detroit died September 20, 2003. He was born March 1, 1910 and graduated from the University of Michigan Law School.

Willard L. Mikesell, P17712, of Charlotte died September 30, 2003. He was born April 18, 1925, graduated from Wayne State University Law School, and was admitted to the Bar in 1953.

Fred Morganroth, P17964, of Franklin died September 30, 2003. He was born March 26, 1938, graduated from Wayne State University Law School, and was admitted to the Bar in 1961.

Nathan S. Peterman, P18816, of West Bloomfield died September 14, 2003. He was born December 31, 1924, graduated from the University of Michigan Law School, and was admitted to the Bar in 1949.

Abraham Satovsky, P19905, of Southfield died September 20, 2003. He was born October 15, 1907 and graduated from the University of Michigan Law School.

William F. Schumaker, P20105, of Dearborn died October 19, 2003. He was born July 4, 1909, graduated from the Detroit College of Law/MSU, and was admitted to the Bar in 1949.

Clyde T. Strickland, P32447, of Jacksonville, FL died September 25, 2003. He was born June 15, 1947, graduated from the Detroit College of Law/MSU, and was admitted to the Bar in 1981.

James D. Tracy, P21531, of Detroit died July 22, 2003. He was born June 9, 1914 and was admitted to the Bar in 1940.

Loyall G. Watson, P22034, of Port Huron died June 6, 2003. He was born June 22, 1917, graduated from the University of Michigan Law School, and was admitted to the Bar in 1942.

Mark E. Weiss, P22146, of Chicago, IL died July 4, 2003. He was born April 17, 1944 and was admitted to the Bar in 1969.

Henry Nicholas Winters, P61636, of Dearborn died August 8, 2003. He was born September 6, 1953 and was admitted to the Bar in 2000.

OPINION AND DISSENT

DECEMBER 2003

MICHIGAN BAR JOURNAL

# Exhibit
# 4

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

FRANK J. LAWRENCE, JR.

     Plaintiff,                                          Civil No.07-288 RCL

v.

MARK S. CARLIN, ET. AL.,

     Defendants.

_____/

## AFFIDAVIT OF PLAINTIFF

County of Oakland   )
                )
State of Michigan     )

1.    I am the Plaintiff in this lawsuit.  Following this Court's May 11, 2007 oral argument in this case, I filed a petition for interlocutory review in the District of Columbia Court of Appeals.  In doing so, I asserted a reservation of federal claims and defenses, and I thereafter omitted raising any federal claims or defenses in the DCCA proceeding.

2.    The June 14, 2006 decision of the Michigan Board of Law Examiners stated that I would be eligible to reapply for a Michigan law license on June 14, 2007.  I am now eligible to reapply in Michigan, although I have decided not to do so until my pending appeal in the United States Court of Appeals for the Sixth Circuit has concluded.  Lawrence v. Berry, 6th Cir. No. 07-1026.

3. My pending appeal in the Sixth Circuit has not yet been scheduled for oral argument. I have been advised by the Clerk of the Sixth Circuit that a notice for oral argument is generally sent to the parties 60 days before the actual hearing. I was also told that October or November would be the earliest that my case would be heard by a Sixth Circuit panel. After submission, there are no time limits on how long a panel has to issue a decision.

4. E. Stephen Dean's Sixth Circuit appeal is illustrative as to how long it takes the Sixth Circuit to issue a decision. See, Dean v. Byerley, 354 F.3d 540 (6th Cir. 2004). Mr. Dean filed his complaint against the State Bar of Michigan's Regulation Counsel on April 4, 2001. The complaint was thereafter dismissed. Mr. Dean's appeal to the Sixth Circuit took the following route:

| | |
|---|---|
| April 9, 2002 | Mr. Dean's appeal was docketed. |
| August 1, 2003 | Oral Argument |
| January 8, 2004 | Opinion filed |
| January 21, 2004 | State Bar's petition for rehearing *en banc* |
| March 10, 2004 | Order denying *en banc* rehearing |
| March 18, 2004 | Mandate issued |

5. In addition, there were subsequent trial court proceedings. The trial was held from October 20, 2004 through October 25, 2004. The subsequent appeal to the Sixth Circuit was decided on August 17, 2005, and the Supreme Court of the United States denied certiorari on March 20, 2006. The proceedings in Mr. Dean's case concluded on March 20, 2006, nearly five years after the case was filed.

6.    As described in my Amended Complaint, I have a legitimate claim of present right to admission to the District of Columbia Bar. However, Defendant Carlin is refusing to further process my application until I conclude my pending civil rights litigation against Michigan licensing officials. As illustrated in paragraphs 4 and 5 above, it likely will be years before that litigation is concluded.

7.    Defendant Carlin's conduct has caused me to be torn between litigating constitutional issues in my Michigan civil rights case, on the one hand, or dismissing those claims in exchange for a decision on my application in the District of Columbia, on the other hand.

8.    This has placed me in a predicament and it is chilling my desire to litigate my constitutional claims in the Michigan litigation. Defendant Carlin is unfairly pressuring me to drop the Michigan appeal, although I do not want to do so. However, I also have an immediate need to become licensed in the District of Columbia so that I can begin earning a living in my chosen profession. The absence of a license is causing my family and me financial hardship.

## VERIFICATION OF AFFIDAVIT
## PURSUANT TO 28 U.S.C. §1746

I verify under penalty of perjury that the foregoing is true and correct.

Executed on:  July 24, 2007

Respectfully submitted:

Frank J. Lawrence, Jr.
Plaintiff, Pro Se
941 Westview Road
Bloomfield Hills, MI  48304
(248) 722-2560

# Exhibit
# 5

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

FRANK J. LAWRENCE, JR.

    Plaintiff,

                                    Civil No.07-288-RCL

v.

MARK S. CARLIN, ET. AL.,

    Defendants.

_____/

### ORDER

Upon consideration of the Plaintiff's Successive Motion for Preliminary Injunction, the Defendant's Response thereto, and the entire record herein, it is hereby: ORDERED,

1.     that Plaintiff's Successive Motion for Preliminary Injunction be, and hereby is, granted;

2.     that Defendant Carlin, and all persons acting in concert or participation with him, shall be enjoined from holding in abeyance Plaintiff's application for a license to practice law; and

3.     that Defendant Carlin, and all persons acting in concert or participation with him, shall either certify Plaintiff for admission to the District of Columbia Bar within 30 days, or pursuant to District of Columbia Court of Appeals Rule 46(f)(1), provide Plaintiff a hearing within 30 days.

SO ORDERED.

DATE: _____

                                      _____
                                      ROYCE C. LAMBERTH
                                      United States District Judge