RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

2007 AUG 10  PM 5: 48

NANCY M.
MAYER-WHITTINGTON
CLERK

| | | |
|---|---|---|
| FRANK J. LAWRENCE, JR. | : | |
| | : | Civil Action |
| v. | : | |
| | : | 07-cv-0288 (RCL) |
| MARK S. CARLIN, *et al.* | : | |

### DR. ELIZABETH PAWLAK'S MOTION TO INTERVENE PURSUANT TO FED.R.CIV.P. 24 (A) OR, IN THE ALTERNATIVE, FED.R.CIV.P. 24 (b)

**NOW COMES** Elizabeth J. Pawlak, JD., Ph.D, D.Sc. ("Dr. Pawlak") and, for the reasons stated in her within memorandum of law, hereby moves this Court to grant her leave to intervene in this case, including for the purpose of filing a complaint, a copy of which is annexed hereto as Exhibit A (incorporated herein). Dr. Pawlak respectfully submits that permitting her to intervene in this action will not prejudice any party or otherwise adversely delay or affect the administration of this action in any way.

**WHEREFORE,** Dr. Pawlak respectfully requests this Honorable Court grant her leave (1) to intervene as a plaintiff-intervenor for limited purposes in this lawsuit, (2) to file the pleading attached as their complaint in this action, and enter an Order of the substance submitted herewith, and grant her such other relief that the Court deems appropriate under the circumstances.

Respectfully submitted,

*Elizabeth Pawlak* 08/10/07

Elizabeth Pawlak, J.D., D.Sc.
U.S.PTO Reg. # 34,520

Mailing address: Pawlak & Associates
P.O. Box 1049
Alexandria, VA 22313
phone: 954-921-6878
email: pawlakpatent@yahoo.com

**RECEIVED**

AUG 1 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

## CERTIFICATE OF SERVICE 2007 AUG 10 PM 5: 43

NANCY M.
I certify that on August 10, 2007, I caused a true and complete copy of the within Dr.
CLERK

Elizabeth Pawlak's Motion to Intervene Pursuant to Fed. R. Civ. P. 24 and all accompanying

documents to be served upon those listed below:

(a) sent electronically to flawrence1@hotmail.com, and sent by U.S. Mail, first-class,

postage-prepaid, to:

> **FRANK J. LAWRENCE, JR.**
> 941 Westview Road
> Bloomfield Hills, MI 48304

(a) sent electronically to andy.saindon@dc.gov and delivered by hand by to:

> **ANDREW J. SAINDON**
> Assistant Attorney General
> Equity I Section
> 441 Fourth Street, N.W., 6th Floor South
> Washington, D.C. D.C. 20001

_08/10/02_

Elizabeth Pawlak, J.D., D.Sc.
U.S.PTO Reg. # 34,520

2

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA 07 AUG 10 PM 5: 43

NANCY M.
MAYER-WHITTINGTON
CLERK

FRANK J. LAWRENCE, JR.　　　　　　　　:
　　　　v.　　　　　　　　　　　　　　　　:　　Civil Action
　　　　　　　　　　　　　　　　　　　　　:
MARK S. CARLIN et al.,　　　　　　　　　:　　07-cv-0288 (RCL)

*"To force the Bar to become a group of thoroughly orthodox, time-serving, government-fearing individuals is to humiliate and degrade it.*

*Justice Hugo Black in In re Anastaplo, 366 U.S. 82 , 115-116 (1961)*

### MEMORANDUM IN SUPPORT OF DR. PAWLAK'S MOTION TO INTERVENE

**I.    SUMMARY**

Dr. Pawlak moves to intervene and she should be permitted to intervene of right because:

(a)    Her motion is timely;

(b)    She has a cognizable interest in the case - the  interest is **not** simply an interest of a general and indefinite character;

(c)    The threat that her interests will be impaired or affected is manifest from the face of the Complaint; and

(d)    No other plaintiff has the interests Dr. Plaintiff has, and hence the representation of her interests in this case is inadequate as a matter of law.

Alternatively, Dr. Pawlak should be permitted to intervene permissively because the defense of her interests necessarily includes resolution of facts and law common to existing parties' claims and defenses. If permitted to intervene, Dr. Pawlak immediately will move to have numerous parts of  Rule 46 (Admission to the Bar) of the Rules of the District of Columbia Court of Appeals declared unconstitutional, on its face and as applied.

1

## II.    RELIEF SOUGHT

Dr. Pawlak seeks to intervene in this case as of right pursuant to Fed. R. Civ. P. 24(a)(2),

including to file a complaint for declaratory relief (annexed as Exhibit A). Alternatively, Dr.

Pawlak seeks to intervene in this case permissively pursuant to Fed. R. Civ. P. 24(b)(2),

including to file a complaint for declaratory relief (annexed as Exhibit A).

## III.    DECISIONAL STANDARD

Rule 24 of the Federal Rules of Civil Procedure governs an applicant's intervention into a

federal case. A nonparty may intervene in a pending action in either of two ways: (1) as of right

(subpart a), or (2) permissively(subpart b). *Fed. R. Civ. P. 24.* That rule reads in pertinent part:

> (a) Intervention of Right. Upon timely application anyone shall be permitted to
> intervene in action: ... (2) when the applicant claims an interest relating to the
> ...transaction which is the subject of the action and the applicant is so situated
> that the disposition of the action may as a practical matter impair or impede the
> applicant's ability to protect that interest, unless the applicant's interest is
> adequately protected by existing parties.
> (b) Permissive Intervention. Upon timely application anyone may be permitted to
> intervene in an action: ... (2) when an applicant's claim or defense and the main
> action have a question of law or fact in common. ... In exercising its discretion
> the court shall consider whether the intervention will unduly delay or prejudice
> the adjudication of the rights of the original parties. *Fed. R.Civ.P. 24.*

The decision to grant any motion to intervene is committed to the court's discretion. *E.g.,*

*Harris v. Pernsley,* 820 F.2d 592, 597 (3d Cir. 1987). The court has more discretion in deciding

whether to grant a motion to intervene permissively. Compare Rule 24(a) (intervention of right

("[u]pon timely application anyone **shall** be permitted to intervene in an action [] when . . . .")

(emphasis supplied)) with Rule 24(b) (permissive intervention ("[u]pon timely application

anyone **may** be permitted to intervene in an action [] when . . . .") (*emphasis supplied*)). It is also

well-established that Rule 24 is to be given a liberal construction in favor of the potential

intervenor. *7C Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d* § 1904 (1986).

/A

Furthermore, "[w]hen considering a motion to intervene, the burden of proof rests with those opposing intervention." *Horizon Lines, LLC v. U.S,* 2005 U.S. Dist. LEXIS at p.3. And lastly, in evaluating whether to grant intervention, courts must accept as true the allegations in the applicant's motion and pleadings and must resolve any doubts in favor of the intervenor. *See, e.g., Foster v. Gueory,* 655 F.2d 1319, 1324 (D.C. Cir. 1981); *see also* 6 *James Wm. Mooreet al., Moore's Federal Practice* § 24.03[l][a], n. 3.1 (Matthew Bender 3d ed. 2004).

## IV.    PERTINENT FACTS

1.    Dr. Pawlak, who graduated from Georgetown University Law Center one year before her classmates (J.D. '92) and has been admitted to practice patent law before the United States Patent and Trademark Office since 1990,[1] and who took and passed the MPRE exam in March of 1992 (designated jurisdiction: District of Columbia, annexed as Exhibit B), sat for the July, 1992 Pennsylvania bar examination for the purpose of (1) fulfilling the U.S. PTO requirement of being a "member of any state bar;" (2) becoming a member of the bars of the U.S. Court of Federal Appeals and the U.S. District Courts in the District of Columbia and Pennsylvania, and (3) becoming a member of the District of Columbia bar as her office of the patent law firm she was associated with at that time was located Washington, D.C. At no time the Pennsylvania Board of Law Examiners ("the PBLE") questioned Dr. Pawlak's "character and fitness." During the MBE exam she had an unexpected coughing attack and was absent from the room for over one hour: she missed the "automatic" pass by three points.

2.    Dr. Pawlak timely re-applied for permission to sit for the February '93 Pennsylvania bar exam. At once she was unconstitutionally and unlawfully prevented from

---

[1] For Dr. Pawlak's resume and qualifications, see http://www.pawlakpatent.com/patent_law_practice_people.htm

2

sitting for that exam and from becoming a member of the Pennsylvania bar. As a result she became --overnight-- unemployed and unemployable.[2] Any and all attempts at amicable resolution of the matter (the latest attempt was undertaken *pro bono* in 2002 by a seasoned legal team from Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, PA) were stonewalled by the PBLE. The criminal and unconstitutional (not to mention groundless) nature of the PBLE actions is easily ascertainable from the publicly-available Appendix to the Petition for a Writ of Certiorari to the Supreme Court of Pennsylvania, No. 93-7488; October Term 1993.[3] For a brief synopsis of the illegality and unconstitutionality of Dr. Pawlak's bar admission proceedings in Pennsylvania, see http://www.secretjustice.org/christinedonohue4superiorcourt.com.htm.[4] In

---

[2] Harry Waldman, Counsel for Nathan Willner stated in his Brief of Petitioner-Appellant, in Opposition to Motion to Dismiss (a petition for a writ of certiorari) in *Willner v. Committee on Character and Fitness (For opinion see: 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963))*

> *"Willner was entitled to admission to the Bar, when he first applied, in 1937. He has been denied admission for a quarter of a century, suffering aggravation, humiliation and financial losses over the years. His family has suffered, as well. To indulge in a colloquialism, "he has been given a raw deal". He is now on the shady side of life, 61, and in the interests of justice, admission to the Bar should not be delayed, but directed forthwith."*

In his Brief in Reply to Respondent's Brief he stated in the section titled "This Proceeding Is a Battle for Human Rights" the following:

> *"Though coram nobis is invoked only in criminal eases, it could well apply to this proceeding, which, after all, is one to right a wrong. So far as the record shows, the petitioner was entitled to admission to the Bar when he first applied. ... He has tried for almost a quarter of a century to gain admission, but the Committee has coldly ignored his efforts, refusing to appear in any of the proceedings, a course of conduct tolerated by the local courts. Since no opinion or memorandum was ever handed down by any court, he is still unaware of the reasons for his rejection.*
>
> *As pointed out in his petition to the Appellate Division, the report of the Committee that he was unfit to be a lawyer, affected adversely his practice as a Certified Public Accountant, for a cautious business man will hesitate to entrust the custody of his records for audit to one deemed unfit, because of lack of good character to be a member of the Bar. In a sense, his position is no better than that of an ex convict. Even time has not erased the smudge of rejection"(emphasis added).*

The same is fully applicable to Dr. Pawlak's bar admission affair.

[3] Dr. Pawlak filed on May 21, 1993 a petition for review of the denial of permission to sit for the February '93 bar examination. All federal constitutional claims were reserved under *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

[4] The section " What is that case?" reads:

3

view of the fact that the attempts reopen this fifteen-year long matter are in progress, no

additional details concerning the "Pennsylvania bar admission affair" are not provided. Rulings

in three federal cases (Nos. 93cv-1993; 93vc2724 and 95cv5265; all PAED; DuBois, J.)

---

*"It is a case decided in a backroom deal between the Executive Director of the Pennsylvania Board of Law Examiners (Patrick Tassos), the Prothonotary of the Supreme Court of Pennsylvania (Charles W. Jones) and Chief Legal Counsel, Administrative Office of Pennsylvania Courts (Howard M. Holmes). They have been masterful at keeping it secret for the past 15 years.*

*It is a case of a cold-blooded frame-up with an intent to destroy reputation and livelihood of a respected professional by the Executive Director of the Pennsylvania Board of Law Examiners that has long been known for his intimidation, retaliation, and abuse of his position.*

*It's a case built solely on fantastic lies -out of whole cloth- and self-serving hearsay on the part of the Executive Director of the Pennsylvania Board of Law Examiners that has long been known as a pathological liar.*

*It is a case in which a member of the Board (Donohue) reduced herself to a willing accomplice of that pathological liar (the Executive Director of the Pennsylvania Board of Law Examiners) by supplying her manufactured inculpatory testimonial "evidence" in an attempt to give credibility and fill in the numerous gaps in his internally-inconsistent testimony. As a result, the testimonies of both complaining "witnesses" were downright unbelievable as a whole.*

*It is a case showing the impossibility of proving the negative and how hard it is to dislodge lies, especially when they are being told by powerful cohorts sitting in their own judgment.*

***It is a case in which letters written by (1) the late Judge Giles Sutherland Rich of the U.S. Court of Appeals for the Federal Circuit; (2) Peter B. Edelman, a former Associate Dean of Georgetown University Law Center and Counselor to the Secretary of the U.S. Department of Health and Human Services, and (3) Dr. Bernhard D. Saxe, a partner at Foley & Lardner stunningly never made to the applicant's official file though they were in the Board's possession.***

*It's a case saturated with criminal wrongdoing on the part of the members and employees of the Pennsylvania Board of Law Examiners. The space does not permit us to cover all of the crimes that they committed. **Destroying the records is a crime. Falsifying the records is a crime. Falsifying transcripts is a crime. Manufacturing "evidence" is a crime, as is obstruction of justice. Withholding exculpatory evidence is a crime, and conspiring to withhold evidence simply adds to the list.***

*It's a case of Alice-in-Wonderland justice in which the accused is innocent, but the accusers are the criminals.*

*It's a case ripping apart the myth that the mission of Pennsylvania Board of Law Examiners is to "preserve the integrity of the legal system, and to protect all individuals seeking legal representation from unethical or incompetent lawyers."*

*It's a case built on egregious violations of law, the Pennsylvania Constitution and the United States Constitution.*

*It's a case that proves to the world that "justice" in Pennsylvania is completely turned on its head, and that the Supreme Court of Pennsylvania no longer is a body that has any right to dispense "justice."*

*It's abuse of power and authority at its worst.*

*It is Dr. Pawlak's case ( No. 46 ED Misc. Dkt of 1993, Supreme Court of PA).*

4

concerning various aspects and stages of this one of the most disgraceful cases (if not the most disgraceful case) in the history of bar admission scandals are subject to an Independent Action for Relief from Judgment To Remedy Fraud Upon The Court Committed By The Officers Of The Court (*in preparation*).

3.    On or about March 18, 1993, Dr. Pawlak delivered by hand to the PBLE her application for permission to sit for the **July '93 bar exam**.[5] In accordance with the Executive Director's letter of February 4, 1993, no new application fee has been enclosed. Few days later Counsel for the PBLE wrote a letter that reads in pertinent part:

> "you submitted an application for permission for the July 1993 Pennsylvania Bar Examination... **This application is being returned to you.** The Board does not accept re-applications until the prior application has been finally disposed of; in your case, this would be after the appeal process to the Pennsylvania Supreme Court has been completed." (*emphasis added*).

On or about August 17, 1993, plaintiff made a request by telephone for an application form for permission to sit for the **February '94 bar exam**.[6] On the same day, Dr. Pawlak received a telephone call from Counsel for the PBLE who informed her that although applicants may request forms by telephone, she cannot do so because she is "suing the Board." In a follow-ip letter dated August 17, 1993, Counsel stated in pertinent part:

> "As we discussed, I enclose a copy of an application form... I also advised you that at present time, since the denial of your previous application for admission is still on appeal [*sic*], you are not entitled to file another application for permission to sit for the bar examination. Any additional requests for documents or forms must be submitted to this office in writing."

---

[5] The early filing deadline for submission of written applications to sit for the July '93 bar exam was March 22, 1993. A final filing deadline for submission of these applications was May 12, 1993.

[6] It was both a custom and a practice of the PBLE that applicants may request forms by telephone.

5

Every page of the enclosed "copy" of an application form was mutilated diagonally - in approximately one-inch-tall letters and in red ink - "sample."

4.    In July of 1993, Dr. Pawlak applied for permission to sit for one-day examination (essay part only) of the bar of the State of Montana (her MBE score was accepted).  On May 3, 1993, the Executive Assistant of the Character and Fitnees Committee "advised" Dr. Pawlak that:

> "The Committee on Character and Fitness met on April 28, 1993, and reviewed your application. **The Committee has concerns about the "civil suit"** [*Pawlak v. Nix, 93cv1998, PAED*] **referred to in your application, as well as the denial by the Pennsylvania Board of Bar Examiners of your request to re-take the exam.** Please be advised that the Committee cannot certify you for admission to practice law in Montana at this time. ... "the revelation or discovery of any of the following will be treated by the Committee as cause for further inquiry ..." Those items include, but are not limited to:
>     6. Abuse of legal process;
>     12. Denial of admission to the bar in another jurisdiction on character and fitness gounds.
> If you wish, you may appear in person for an informal hearing as provided in Section 5(c)" (*emphasis added*).

Once Dr. Pawlak requested a public and formal (*in lieu of* "informal") hearing at the expense of the Committee, she was stonewalled. Dr. Pawlak refused to participate in any type of closed-door "informal" hearings and "interrogations" and did not sit for the July '93 bar exam.

5.    In Spring of 1994, Dr. Pawlak submitted (delivered by hand) an application for admission to the bar of the State of Maryland along with a request for a public "character and fitness" hearing at the expense of the Committee prior to taking a bar examination.  That application has yet to be docketed by the Maryland State Board of Law Examiners.

6.    In Fall of 1994, Dr. Pawlak filed in the U.S. District Court of the Eastern District of Pennsylvania her Petition for an Order Waiving in Part Local Rule 11(a) and Permitting Application to Be Made under Said Rule. Citing *Ex parte Burr, Chambers v. NASCO*

6

and the *Theard-In re Ruffalo-Selling* trilogy,[7] she urged the court to apply federal disbarment

procedures to her case and to engage in an independent, de novo and intrinsic review of the state

court record on the following grounds:

> " 1. That the state procedure from want of notice or opportunity to be heard was
> wanting in due process; 2, that there was such an infirmity of proof as to facts
> found to have established the want of fair private and professional character as to
> give rise to a clear conviction on our part that we could not, consistently with our
> duty accept as final the conclusion on that subject; or 3, that some other grave
> reason exist... under the principles of right and justice" *Selling*, 243 U.S. at 50.

The petition was denied in 1996. The court's opinion reads in pertinent part:

> "Petitioner explicitly urges this court to exercise its discretion and conduct an
> independent inquiry into the state court's decision not to permit her to sit for the
> February, 1993, and July, 1993 bar examinations.   For the same reasons that this
> Court will not make an independent inquiry into the petitioner's fitness to practice
> law, it also refuses to conduct an independent review of the Board's decisions.
> **This Court might have been more likely to apply the standards set forth in
> Rule II(D) to review the petitioner's failure to meet the threshold admission
> requirements had the petitioner passed the bar examination, but been denied
> admission to the Pennsylvania bar based on the Board's assessment of her
> character**" (*emphasis added*).

The author of the opinion was fully aware that,

> "Absence of prior conduct by the applicant which in the opinion of the Board
> indicates character and general qualifications (other than scholastic) incompatible
> with the standards expected to be observed by members of the bar of this
> Commonwealth" *B.A.R. 203(a)(3),*

was the prerequisite for permission to sit for (and pass) the bar examination! Motion for

reconsideration was denied in 1996 as well.  That ruling is also subject to the above-mentioned

Independent Action for Relief from Judgment.

      7.     On October 26, 1995, Dr. Pawlak submitted (by hand delivery) a motion for both

---

[7] *Ex parte Burr*, 9 Wheat. 529, 531 (1824);  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)("a federal court has
the power to control admission to its bar.."); *Theard v. United States*, 354 U.S. 278, 28(1957)("The two judicial
systems of courts, the state judicatures and the federal judiciary, have autonomous control over the conduct of their

a public "character and fitness" hearing and a report of the COA's findings so that the District of

Columbia can issue the court shall issue an order to the applicant to show cause why the

application should not be denied. [8] That motion has yet to be docketed by the Committee on

Admissions.

8.      On October 26, 1995, Dr. Pawlak submitted (by hand delivery) a motion for

admission to the bar of the United States Court of Appeals for the Federal Circuit. Even though

that motion (annexed as Exhibit C, without attachments) was endorsed by Dr. Berhnard D. Saxe,

a patent lawyer and partner in Foley & Lardner, Washington, D.C. and the one who attempted,

*pro bono*, to amicably settle[9] Dr. Pawlak's federal cases Nos. 93cv-1993 and 93vc2724, PAED),

---

officers, among whom, in the present context, lawyers are included."); *In re Ruffalo*, 390 U.S. 544, 547 (1968); *Selling v. Radford*, 243 U.S. 46 (1917).

[8]Rule 46 of Rules of the District of Columbia Court of Appeals governs an admission to the District of Columbia Bar. Admission may be obtained of in either two ways: (1) either by taking a D.C. Bar Examination, or by membership in a bar of another jurisdiction. Under either procedure, "[n]o applicant shall be certified for admission by the [Committee On Admission] until the applicant demonstrates good moral character and general fitness to practice law." *Id.* at 46(d). That rule reads in pertinent part:

> *"(d) Moral Character and General Fitness to Practice Law. No applicant shall be certified for admission by the Committee until the applicant demonstrates good moral character and general fitness to practice law...*
> *(e) Quantum and Burden of Proof. The applicant shall have the burden of demonstrating, by clear and convincing evidence, that the applicant possessed good moral character and general fitness to practice law in the District of Columbia.*
> *(f) Hearing by the Committee.*
> *(1) In determining the moral character and general fitness of an applicant for admission to the Bar, the Committee may act without requiring the applicant to appear before it to be sworn and interrogated. If the Committee is unwilling to certify an applicant, it shall notify the applicant of the choice of withdrawing the application or requesting a hearing. ...If the applicant requests a hearing within the 30-day period, the request shall be granted and the hearing shall be conducted by the Committee under the following rules of procedure:*
> ...
> *(3) The hearing before the Committee shall be private **unless the applicant requests that it be public**. The hearing shall be conducted in a formal manner; however, the Committee shall not be bound by the formal rules of evidence. It may, in its discretion, take evidence in other than testimonial form and determine whether evidence to be taken in testimonial form shall be taken in person at the hearing or by deposition. The proceedings shall be recorded and the applicant may order a transcript at the applicant's expense.*
> *(4) If after the hearing the Committee is of the opinion that an adverse report should be made, it shall serve on the applicant a copy of the report of its findings and conclusions ... If the applicant elects not to withdraw, the Committee shall deliver a report of its findings and conclusions to the court with service on the applicant." (emphasis added)*

[9]  As for some unexplainable reasons, the dockets sheets the civil cases Nos. 93cv-1993 and 93vc2724 include only entries in the first round of settlement negotiations (with a former Secretary and counsel of the PABLE, Susan L. Anderson, a court-appointed negotiator) but omit all entries concerning the second round of settlement negotiations

and even though Dr. Pawlak was a former member of the Giles Sutherland Rich American Inn of Court (from its inception), that motion has yet to be docketed by the Clerk of the Court.

9.    Dr. Pawlak applied for admission to practice before the District Court for the District of Maryland in 1994.  That application was destroyed by an employee of the Clerk's Office. Dr. Pawlak was later told: "we do not have any procedure for processing it."  Dr. Pawlak filed her second application in 2000.  That application was "denied" in a letter signed by a Deputy Clerk, Richard Goodier, said letter being prepared by and dictated to Mr. Goodier by the plaintiff(!). Armed with that denial letter, Dr. Pawlak filed civil action No. 02-cv-2704 in the United States District Court for the District of Maryland in 2002  in which, citing the *Theard-In re Ruffalo-Selling* trilogy, *supra*, she requested an independent, de novo and intrinsic consideration of the state court record on the grounds:

> "Ms. Pawlak is not eligible for admission to the bar of this Court because she is not a member of the bar of any state or the District of Columbia. The requirement that a person be a member of a state bar in order to be eligible to be a member of the bar of a federal court is a reasonable exercise of a federal court's authority to regulate membership in its bar. (citing  *In re Pawlak*, 1995 WL 723177).

> To the extent that Ms. Pawlak is attempting to relitigate her claims that she was improperly denied admission to the Pennsylvania bar, such claims appear barred by the doctrine of collateral estoppel in light of her litigation of these claims in the Eastern District of Pennsylvania."

10.    On March 22, 2000, the District of Columbia issued *In re Lindmark*. 747 A.2d 1148 (2000). On or about 2001, Dr. Pawlak reviewed Mr. Lindmark's appellate file No. 99-BG-229 and discovered that Mr. Lidmark applied for admission without examination to the District of Columbia bar in September of 1992 (File No. 40232). The COA held a "character and fitness" hearing in 1996 -- four years after filing his application. Three years after the hearing the COA

---

(with Dr. Saxe and Maj. Kimberley K. Power, Esq as pro bono negotiators for Dr. Pawlak), Dr. Saxe's report to the court is annexed as Exhibit D.

9

rendered its report in 1999 recommending that the application be denied.  The COA's primary ground for recommending a denial of admission centered on Mr. Lindmark's conduct during the proceedings before the PBLE, namely his accusation that the PBLE knowingly and intentionally violated the Constitution and the law in denying his application and maliciously retaliated against him for his condemnation of the PBLE's actions, practices, unwritten policies and procedures.[10] In the meantime, the COA processed at least ten thousands of other applications – all of which were accepted for processing after Mr. Lindmark's application– and held hearings and rendered its reports. *See, e.g.*, NO. 98-BG-1817 (In re Jefferey C. Zander, the COA file No. E29151);  No. 99-BG-737 (In re John D. Burns, the COA file No. 48415).

## V.    ARGUMENT

### A.    Applicant Intervenor Dr. Elizabeth Pawlak Is Entitled To Intervene As A Matter Of Right

In the D.C. Circuit, the four recognized requirements for intervention as of right are: (1) timeliness; (2) a cognizable interest; (3) impairment of that interest; and (4) lack of adequate representation by existing parties. *See, e.g., Fund for Animals v. Norton,* 322 F.3d 728, 731 (D.C.Cir.2003); *Smoke v. Norton,* 252 F.3d 468, 470 (D.C. Cir. 2001). In addition, the D.C. Circuit requires intervenors to have standing under Article III of the Constitution. *See Jones v. Prince George's County,* 348 F.3d 1014, 1017 (D.C. Cir. 2003). As shown below, Dr. Pawlak satisfies each of these requirements.

---

[10] On May 19, 1992, Mr. Lindmark wrote a letter to the justices of the Supreme Court of Pennsylvania that reads in pertinent part:

> *"... I seriously request that this Court set in motion an investigation of the Board and/or its Executive Director to ensure that the rights of all Bar applicants are being protected and that the Constitutional standards for bar applications/ admissions are being observed so that other applicants are not subjected to the harassment and violations of personal rights and due process as I have endured."*

10

### 1.    Dr. Pawlak's Motion Is Timely

This Circuit has stated that,

> ""timeliness is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *United States v. AT&T*, 642 F.2d 1285, 1295 (D.C. Cir. 1980),

wherein "[t]imeliness is measured from when the prospective intervener 'knew or should have known that any of its rights would be directly affected by the litigation." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C.Cir.2003), cert. denied, 542 U.S. 915, 124 S.Ct. 2836, 159 L.Ed.2d 287 (2004). The instant action was filed in mid-February of this year. Plaintiff Lawrence filed his repeated motion for a preliminary injunction less than two weeks ago. Counsel for Defendants only recently filed its responsive Motion to Dismiss Plaintiff's Complaint. Movant do not intend to seek any delay of any planned discovery, if any, or any other deadlines set by the Court or established by the parties. As such, this case is in its infant stages and therefore the parties are not prejudiced by Dr. Pawlak's timely intervention. Dr. Pawlak's motion is timely-filed.

### 2.    Dr. Pawlak Has Cognizable Interest in This Litigation and Her Interest Will Be Impaired or Affected by Disposition off This Action

To be granted intervention, the intervenor of right "must have an interest relating to the ... transaction which is the subject of the action," *Fed. R.Civ.P. 24(b)(2).*, Thus, "[a]s [Rule 24(a)'s] plain text indicates, intervenors of right need only an 'interest' in the litigation--not a 'cause of action' or 'permission to sue.'" *Jones v. Prince George's County, Maryland,* 348 F.3d 1014, 1018 (D.C. Cir. 2003). Intervention aims to protect interests which are "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation

11

and effect of the judgment." *Smith v. Gale*, 144 U.S. 509, 518 (1892) *(quoted in U.S. v. American Tel. and Tel. Co.,* 642 F.2d 1285, 1292 (D.C. Cir. 1980)).

Dr. Pawlak's recognized interest in this litigation cannot be reasonably disputed. Firstly, Dr. Pawlak graduated from Georgetown University Law Center with a J.D. degree in May of 1992. Plaintiff was admitted to practice patent law before the United States Patent and Trademark Office in 1990 and remains in good standing; her registration number is 34,520. She submitted her motion for both a public "character and fitness" hearing and a report of the COA's findings in October of 1995. She has been waiting for **any** kind of action on the part of the COA since then! Secondly, federal district courts have jurisdiction to hear challenges to bar rules promulgated, applied and enforced in a non-judicial capacity. Here, Mr. Lawrence has challenged some aspects of Rule 46 of the Rules of the District of Columbia Court of Appeals in the context of the COA's stonewalling of his application. This challenge clearly affects Dr. Pawlak's interest. Dr. Pawlak has also a special interest in presenting discrete evidence (a) on the COA's interpretation and enforcement of Rule 46, which she alleges to be a major cause of stonewalling on the part of the COA, and (b) on the many adverse consequences that stem from that stonewalling.

To establish the impairment the applicant must demonstrate and (s)he "would suffer harm from an adverse decision on the merits." *DSMC, Inc. v. Convera Corp.*, 273 F.Supp.2d 14, 25 (D.C.Cir.2002) *(quoting Alaska v. Federal Energy Regulatory Comm'n*, 980 F.2d 761, 763 (D.C.Cir.1992)). In view of all of the foregoing there should be no doubt that Dr. Pawlak will suffer harm from any adverse decision on the merits in Mr. Lawrence's litigation.

12

### 4.    Inadequate Representation of Dr. Pawlak's Interest By Parties

The requirement that a would-be intervenor show it is not adequately represented by the existing parties to the action is hardly onerous. The applicant need only show 'that the representation of his interest may be' inadequate. *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n.10 (1972)). In this Circuit, and in others, "the burden is on those opposing intervention to show that representation for the absentee will be adequate." *United States v. AT&T,* 642 F.2d 1285, 1293 (D.C. Cir. 1980); *Smuck v. Hobson,* 408 F.2d 175, 181 (D.C. Cir. 1969); see also, Caterino v. Barry, 922 F.2d 37, 42, n. 4 (1st Cir. 1990).

Dr. Pawlak's interests are not entirely consonant with the interests of Mr. Lawrence in this litigation. Mr. Lawrence seeks only a narrow relief and thus must avoid advocating the protection of Dr. Pawlak's interests in this case. Now of course that is not to say that Mr. Lawrence may express a theory that would not benefit Dr. Pawlak incidentally. But that is not the test. And in any event, Dr. Pawlak certainly may not be forced to rely, exclusively, on an expectancy that she incidentally might benefit from some theory Mr. Lawrence could press.

### 5. Standing

The District of Columbia Circuit has held that "any person who satisfies Rule 24(a) will also meet Article III's standing requirement." *Roeder v. Islamic Republic of Iran,* 333 F.3d 228, 233 (D.C.Cir.2003). *See also, Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005).

### 6. Summary

Dr. Pawlak's circumstances satisfy the criteria required to intervene. This intervention request is timely, and in addition, Dr. Pawlak has a substantial interest that could be impaired. Finally, some of these interests are distinct and separate from those of Plaintiff Lawrence.

13

**B.    In the Alternative, Dr. Pawlak Is Entitled to Permissive Intervention**

An applicant for permissive intervention under Rule 24(b) establishes the threshold requirements of (1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim that has a question of law or fact in common with the main action. Fed. R. Civ. P. 24(b). Dr. Pawlak  also asserts claims against present parties to the above-captioned action that involve questions "of law or fact common to that which will be decided in the action." Id. As such,  she also meet the requirements of Fed.R.Civ.P. 24(b).

## CONCLUSION

For all of the foregoing reasons, Applicant Dr. Pawlak respectfully requests this Court to grant her Motion to Intervene.

**NOTE**: this memorandum has pages "1 and "1A" due to a printer error.

Respectfully submitted

08/10/07

Elizabeth Pawlak, J.D., D.Sc.
U.S.PTO Reg. # 34,520
mailing address:
    Pawlak & Associates
    P.O. Box 1049
    Alexandria, VA 22313
phone: 954-921-6878
email: pawlakpatent@yahoo.com

14

## CERTIFICATE OF SERVICE

I certify that on August 10, 2007, I caused a true and complete copy of the within Dr.

Elizabeth Pawlak's Motion to Intervene Pursuant to Fed. R. Civ. P. 24 and all accompanying

documents to be served upon those listed below:

(a) sent electronically to flawrence1@hotmail.com, and sent by U.S. Mail, first-class,

postage-prepaid, to:

> **FRANK J. LAWRENCE, JR.**
> 941 Westview Road
> Bloomfield Hills, MI 48304

(a) sent electronically to andy.saindon@dc.gov and delivered by hand by to:

> **ANDREW J. SAINDON**
> Assistant Attorney General
> Equity I Section
> 441 Fourth Street, N.W., 6th Floor South
> Washington, D.C. D.C. 20001

> Elizabeth Pawlak, J.D., D.Sc.
> U.S.PTO Reg. # 34,520

# EXHIBIT  A

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

707 AUG 10 PM 5: 43

MAYER-WHITTINGTON
CLERK

DR. ELIZABETH J. PAWLAK,

                Plaintiff/Intervenor

v.

MARK S. CARLIN, in his personal and official capacity
as Chairman of the Committee on Admissions
of the District of Columbia Court of Appeals ;
           and
JOE & JOHN DOES 1-10, UNKNOWN INVESTIGATORS
OF THE COMMITTEE ON ADMISSIONS,
in their personal capacities.
                Defendants.

:
:
Civil Action
:
:
07-cv-288 (RCL)
:
:
:
:
:
:
:
:
:

**INTERVENOR'S VERIFIED COMPLAINT FOR DECLARATORY RELIEF**

       Plaintiff/Intervenor, Dr. Elizabeth Pawlak, sues the defendants, jointly and severally, and avers as follows:

I.  INTRODUCTION

This lawsuit seeks a declaration from this Court that certain provisions of Rule 46 of the Rules of the District of Columbia Court of Appeals are constitutionally invalid.

II.  JURISDICTION

1.     Jurisdiction of this Court is also invoked pursuant to Title 28 U.S.C. §§2201 and 2202, this suit being for injunctive and declaratory judgment of the constitutionality of Rule 46 of the Rules of the District of Columbia Rules as enforced, interpreted and applied by the defendants. Federal district courts have jurisdiction over general attacks on the constitutionality of bar admission rules. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983).

2.     Jurisdiction of this Court is also based upon diversity of citizenship, 28 U.S.C. §1332.

3.     There is no pending judicial proceeding concerning the issues presented in this suit.

III.    VENUE

4.    The principal place of business of the Committee on Admission (hereinafter "the COA") is in the District of Columbia. Pursuant to 28 U.S.C. 1391(b), venue is proper in the United States District Court for the District of Columbia.

IV.    PARTIES

5.    Plaintiff, Dr. Elizabeth J. Pawlak, is a citizen of the United States. Her mailing address is P. O. Box 1049, Alexandria, Va 22313. She has been a de facto applicant for admission to the practice of law in the District of Columbia since 1995.

4.    Defendant Mark S. Carlin is the Chairman of the District of Columbia Court of Appeals Committee on Admissions (hereinafter " the COA").

5.    Defendants "Joe & John Does 1-10, Unknown Investigators of the Committee on Admissions" are agents of the COA who perform ministerial, administrative and investigative functions.

V.    GENERAL ALLEGATIONS

A. PERTINENT PARTS OF PUBLISHED RULES PERTAINING TO ADMISSION TO THE BAR OF THE DISTRICT OF COLUMBIA

6.    "The court shall appoint a standing committee known as the Committee on Admissions (hereafter the Committee) consisting of seven members of the Bar of this court, one of whom shall serve as counsel to the Committee.... Subject to the approval of the court, the Committee shall adopt such rules and regulations as it deems necessary to implement the provisions of this rule. " D.C. R.App.Ct 46 (a)

7.    "No applicant shall be certified for admission by the Committee until the applicant demonstrates good moral character and general fitness to practice law." D.C. R.App.Ct 46 (d)

2

8.    "The applicant shall have the burden of demonstrating, by clear and convincing evidence, that the applicant possessed good moral character and general fitness to practice law in the District of Columbia." D.C. R.App.Ct 46 (e)

9.    "(1) In determining the moral character and general fitness of an applicant for admission to the Bar, the Committee may act without requiring the applicant to appear before it to be sworn and interrogated. If the Committee is unwilling to certify an applicant, it shall notify the applicant of the choice of withdrawing the application or requesting a hearing... Within 30 days from the date of the notice, the applicant may file with the Committee a written request for a hearing. If the applicant fails to file a timely request for a hearing, the applicant's application shall be deemed withdrawn. If the applicant requests a hearing within the 30-day period, the request shall be granted and the hearing shall be conducted by the Committee under the following rules of procedure:

(2) The Director shall give the applicant no less than 10 days' notice of:

(i) The date, time, and place of the hearing;

(ii) The adverse matters upon which the Committee relied in denying admission;

(iii) The applicant's right to review in the office of the Director those matters in the Committee file pertaining to the applicant's character and fitness upon which the Committee may rely at the hearing;

(iv) The applicant's right to be represented by counsel at the hearing, to examine and cross-examine witnesses, to adduce evidence bearing on moral character and general fitness to practice law and, for such purpose, to make reasonable use of the court's subpoena power.

3

(3) The hearing before the Committee shall be private unless the applicant requests that it be public. The hearing shall be conducted in a formal manner; however, the Committee shall not be bound by the formal rules of evidence. It may, in its discretion, take evidence in other than testimonial form and determine whether evidence to be taken in testimonial form shall be taken in person at the hearing or by deposition. The proceedings shall be recorded and the applicant may order a transcript at the applicant's expense.

(4) If after the hearing the Committee is of the opinion that an adverse report should be made, it shall serve on the applicant a copy of the report of its findings and conclusions and permit the applicant to withdraw an application within 15 days after the date of the notice. The Committee may, in its discretion, extend this time. If the applicant elects not to withdraw, the Committee shall deliver a report of its findings and conclusions to the court with service on the applicant." D.C. R.App.Ct 46 (f).

10.    "The Committee shall deliver a report of its findings and conclusions to the court for its approval in the case of any applicant for admission after a formal hearing." D.C. R.App.Ct 46 (g)(1).

11.    The District of Columbia Court of Appeals is authorized "to make such rules as it deems proper respecting the examination, qualification, and admission of persons to membership in its bar and their censure, suspension, and expulsion." D.C. Code § 11-2501(a). In turn, Rule 46 (a) commands that the COA "shall adopt such rules and regulations as it deems necessary to implement the provisions of this rule. " D.C. R.App.Ct 46 (a).

4

COUNT I - DECLARATORY RELIEF

12.    Plaintiff–Intervenor hereby incorporates and re-alleges paragraphs 1 through 11, as though fully set forth herein.

13.    Plaintiff-Intervenor avers that Rule 46(e) is unconstitutional because it is devoid of any standards of "good moral character and general fitness to practice law."

14.    Plaintiff-Intervenor avers that Rule 46(f) is unconstitutional because it vests in the members of the COA and its servants unfettered discretion, free of guiding standards, to determine when and why the COA "may act without requiring the applicant to appear before it to be sworn and interrogated."

15.    Plaintiff-Intervenor avers that Rule 46(f) is unconstitutional because it vests in the members of the COA and its servants unfettered discretion, free of guiding standards, to determine when   the COA   "shall notify the applicant of the choice of withdrawing the application or requesting a hearing."

17.    Plaintiff-Intervenor avers that Rule 46(f) is unconstitutional because it vests in the members of the COA and its servants unfettered discretion, free of guiding standards, to determine when and why the COA "may act without requiring the applicant to appear before it to be sworn and interrogated."

18.    Plaintiff avers that the provisions Rule 46(f) may be used as a powerful tool to deprive applicants their liberty and property interests in an arbitrary and capricious manner and without notice and a hearing in a meaningful time and in a meaningful manner.

19.    Plaintiff avers that the provisions of Rule 46(f) are capable of wide and varying interpretations at the whim of the COA and its servants.

5

20.   Plaintiff avers that the broad and fluid definitions of Rule 46(d-f) provide absolutely no

ascertainable standard, whatsoever, for either acceptance or denial of applications by the Board's

servants.

21.   Plaintiff avers that the broad and fluid definitions of Rule 46(d-f) are impermissibly

vague.

22.   Plaintiff avers that the broad and fluid definitions of Rule 46(d-f) are unconstitutional

because they bear neither any rational relation to any legitimate state interest nor serve any

substantial state interest: the state's interest in regulating the practice of law can be accomplished

in a less restrictive way

23.   Plaintiff avers that Rule 46(d-f) as interpreted by the COA violates applicants' rights to

meaningful and effective access to the courts.

WHEREFORE, plaintiff respectfully prays that this Honorable Court:

(a)   ASSUME JURISDICTION over the cause of action I

(b)   DECLARE that the provisions d-f of Rule 46 are unconstitutional under the First, Fifth

and Fourteenth Amendments to the Constitution of the United States, and

(c )   AWARD such other and further relief as may be just and proper.

Respectfully submitted,

_08/10/07_

Elizabeth Pawlak, J.D., D.Sc.
U.S.PTO Reg. # 34,520

Mailing address: Pawlak & Associates
P.O. Box 1049
Alexandria, VA 22313
phone: 954-921-6878
email: pawlakpatent@yahoo.com

6

## VERIFICATION

Pursuant to U.S.C. §1746, Plaintiff-Intervenor solemnly affirms under the penalties of perjury that the statements above are true and correct to the best of her knowledge, information and belief, and are made upon personal knowledge of same.

Dated: August 10, 2007                      Elizabeth Pawlak

7

# EXHIBIT  B



# National Conference of Bar Examiners
MULTISTATE PROFESSIONAL RESPONSIBILITY EXAMINATION

## EXAMINEE'S REPORT OF SCORES

Please review carefully all information printed below. If any data are incorrect or incomplete, contact the board of bar examiners in the jurisdiction to which your scores were reported.

| RAW SCORE | SCALED SCORE | TEST DATE | SOCIAL SECURITY NUMBER* |
|---|---|---|---|
| C35 | 086 | C3/13/92 | 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 |

*If you did not indicate a Social Security number on your answer sheet, an identification number was assigned to your record for processing purposes.

PAWLAK, ELIZABETH J
7534 MANDAN RD
GREENBELT, MD   20770

Your scores (shown above) were reported to the following jurisdiction as you requested in Block J of your answer sheet:

DISTRICT OF COLUMBIA

This jurisdiction requires a minimum passing **scaled** score of:

075

Each jurisdiction has the authority to determine its own passing score. If the jurisdiction you chose does not list a passing score, check with the board of bar examiners in that state to determine the passing score.

## EXPLANATION OF SCORES

Your **RAW SCORE** is the number of test questions that you answered correctly in the examination. The lowest possible raw score is 0; the highest is 50.

**SCALED SCORES** are standard scores that range from 50 (low) to 150 (high). The original mean (average) scaled score was established at 100. The conversion of raw scores to scaled scores involves a statistical process that adjusts for variations in difficulty of different forms of the examination so that any particular scaled score will represent the same level of knowledge from test to test. For instance, if this test were more difficult than previous forms, then your scaled score would be adjusted upward to account for this difference. If this test were easier than previous forms, then your scaled score would be adjusted downward to account for this difference. The purpose of these adjustments is to help ensure that no examinee is unfairly penalized (or rewarded) for taking a harder (or easier) form of the test.

## ADDITIONAL SCORE REPORT REQUESTS

If, after the examination, you decide that you would like to have your scores sent to one or more boards of bar examiners in addition to the jurisdiction you indicated on your answer sheet, you may do so by writing to the address below. Your request should include your name, address, Social Security number, date of birth, test date, your signature, and each board of bar examiners you wish to receive a copy of your scores. Enclose $5.00 for each board of bar examiners you request. Payment must be in the form of a cashier's check or money order made payable to the National Conference of Bar Examiners. No cash, business checks, or personal checks will be accepted.

Duplicate score reports may also be requested by following this procedure.

## REQUESTS FOR RECHECKING OF ANSWER SHEETS

A request to have your answer sheet rechecked must be made within two months of the original test date. The request should include your name, Social Security number, date of birth, test date, and your signature, and should be sent to the address below.

Multistate Professional Responsibility Examination
Records Department
P.O. Box 451, Iowa City, Iowa 52243
Telephone: (319) 337-1004

# EXHIBIT  C

United States Court of Appeals for the Federal Circuit

## APPLICATION FOR ADMISSION TO THE BAR

I, _Elizabeth Julia PAWLAK_ whose mailing
(Please print)

address is _7534 MANDAN Road_
(City, State, ZipCode) _GREENBELT MD 20770_ _301-441-3888_ do hereby apply for
(Street Address / P.O. Box) (Phone Number)

admission to the bar of the United States Court of Appeals for the Federal Circuit. My personal statement showing my eligi-
bility for membership is as follows: I am admitted to practice in the following court (or courts):
_Hill, Sycamarion Hanwardum filed with the Court of 26th 1995_

_Oct 26 1995_
Date

## MOTION OF SPONSOR

I, _BRENHARD D SAXE_ a member of the bar of this Court, do
hereby move for admission for the above attorney.

_Oct 26 1995_
Date

_Signature of Applicant_

(The motion of a sponsoring member of the bar is not required if the applicant attaches a certificate of good standing as
described in Fed. Cir. R. 46(b).)

_Signature of Sponsor_

## OATH OF ADMISSION

(Execute the oath unless arrangements have been made to have the oath administered in open court.)

I, _Elizabeth Julia PAWLAK_, do solemnly swear (or affirm)
that I will comport myself as an attorney and counsellor of this Court, uprightly and according to law, and that I will support
the Constitution of the United States of America.

Subscribed and sworn to before me this _14th_ day of _OCTOBER_ , 19 _95_
(Over)

My commission expires on _8/14/98_ , 19 _98_
[SEAL]

_Signature of Notary_

WENDY HUBER
A Notary Public of District of Columbia
My Commission Expires August 14, 1998

# EXHIBIT  D

# FOLEY & LARDNER

ATTORNEYS AT LAW

MILWAUKEE
MADISON
CHICAGO
ANNAPOLIS
JACKSONVILLE
ORLANDO
TALLAHASSEE
TAMPA
WEST PALM BEACH

WASHINGTON HARBOUR
SUITE 500
3000 K STREET, N.W.
WASHINGTON, D.C. 20007-5109
TELEPHONE (202) 672-5300
TELEX 904136
FOLEY LARD WASH
FACSIMILE (202) 672-5399
WRITER'S DIRECT LINE

A MEMBER OF GLOBALEX
WITH MEMBER OFFICES IN

BERLIN
BRUSSELS
DRESDEN
FRANKFURT
LONDON
PARIS
SINGAPORE
STUTTGART
TAIPEI

(202) 672-5427

May 19, 1994

## VIA FACSIMILE AND FEDERAL EXPRESS

Honorable Jan E. DuBois
U.S. District Court for the
   Eastern District of PA
U.S. Courthouse, Room 12613
601 Market Street
Philadelphia, PA 19106-1797

Re:  Pawlak v. PA Board of Law Examiners
      U.S.D.C.,E.D.PA No. 93 CV 1998

     Pawlak v. Nix et al.
     U.S.D.C.,E.D.PA No. 93 CV 2724

Dear Judge DuBois:

In the very short time Ms. Power and I have been associated with this matter an atmosphere of tension and mistrust has been generated that has poisoned the settlement process. Regardless of plaintiff's prior actions, we have entered upon her representation without any animosity towards Mr. Holmes but he has not reciprocated.  You will recall his angry interruption of the very first sentence I uttered at the status conference.

Because we believe that Mr. Holmes does not want this matter to be settled and has not presented our settlement proposals to the Board of Law Examiners in a context that would contribute to objective consideration, and because Mr. Holmes has refused even to present our proposals to the Justices of the Supreme Court of Pennsylvania, we have requested you to take action that would insure impartial presentation of our proposals to defendants and that would provide us some assurance that they had considered the proposals, as well as giving us some idea

Honorable Jan E. DuBois
Page 2

of their thinking on the issue of settlement.

 With regard to the specific actions we have requested, our reasons are as follows:

1. We requested the Court to communicate to Chief Justice Nix and his fellow Justices of the Supreme Court of Pennsylvania a summary of plaintiff's proposed elements of a resolution of this matter and to solicit their comments and counter-proposals. Mr. Holmes has systematically refused our urgent requests that he present our proposals to the Justices of the Supreme Court of Pennsylvania, without providing any reason for his refusal other than his unsupported assertion that no purpose would be served at this time by so doing. Your Honor should note that our agreement to an extension of time for a joint report included the caveat that our proposals were to be presented to the Justices so that we could evaluate their comments and counter-proposals along with those of the Board prior to reporting the status of the settlement negotiations to the Court. Since the Supreme Court of Pennsylvania has the power to admit a candidate to the bar notwithstanding a negative recommendation of the Board, and since they are also defendants and parties to the action now pending, they should be informed that settlement negotiations are in progress, that specific proposals for settlement have been offered by plaintiff in a good faith effort to resolve the matter, and that their comments and any counter-proposals were earnestly solicited by plaintiff. We do not believe that no purpose is served by withholding their proposals from the Justices other than that of delaying and obstructing progress in settlement negotiations, to the great detriment of plaintiff and contrary to what we understood to be both the letter and spirit of your Orders.

2. We requested the Court to determine whether there was an April meeting of the Board of Law Examiners subsequent to the April 11, 1994 status conference and to ascertain why Mr. Holmes did not communicate our proposals for resolving these matters to the Board of Law Examiners until May 12, 1994. Your Honor will note that Ms. Power and Dr. Pawlak attempted to determine if a meeting of the Board had been held in April at which our proposals could have been discussed, in order to shed light on this question, an attempt mischaracterized in a highly offensive manner by Mr. Holmes. It is likely that Mr. Holmes' delay until May 12, 1994 in presenting plaintiff's proposals to the Board could have been avoided, either by communicating them in written form or by telephone, even if no meeting were held in April. If, however, there was an April meeting on a date subsequent to the status conference, his delay was a deliberate act of obstruction designed to cause hardship to plaintiff. Only the Court's impartial inquiry can resolve this question.

Honorable Jan E. DuBois
Page 3

3.    We requested the Court to communicate to the Board of Law Examiners our proposed elements of a resolution of this matter and to solicit their written comments and counter-proposals. Not only has plaintiff provided specific proposals for the elements of a settlement, but we have provided repeated assurances that no element of those proposals was non-negotiable and that plaintiff was open to any counter-proposals the Board might wish to advance. Your Honor will recognize that Mr. Holmes has resisted every attempt by us to obtain specific comments from any of the defendants on any proposed element of a settlement and has not provided any counter-proposals. He provided his opinion prior to meeting with the Board that our proposals would be unacceptable, but did not provide any inkling after meeting with the Board of what proposals they might have for settlement. We believe that such an attitude has been prejudicial to settlement and that only the impartial enquiry of the Court can provide a true response as to whether or not settlement is ultimately possible, and on what terms.

4.    If the Court declines to take the actions requested in paragraphs 1-3, we requested the Court to summon at least one member of the Board and at least one of the Justices to a conference in chambers so that counsel for plaintiff can make a final attempt at a direct approach to settlement. We frankly do not believe that either the Board or the Justices wish to see this matter proceed to trial and cannot provide some basis for negotiating a settlement. If the Court does not wish to act as the direct agent for negotiation, we ask you at the very least to bring the parties themselves to the table for one last attempt to bridge the gap between their respective perceptions of the case and requirements for its resolution.

5.    We requested the Court to extend the time for plaintiff to respond to defendants' Motion to Dismiss the Consolidated Actions until further efforts to settle have proved futile. As I mentioned at the status conference, Ms. Power and I intend to ask leave of the Court to withdraw in the event that settlement is not possible, after which Dr. Pawlak intends to respond to the Motion to Dismiss.

Honorable Jan E. DuBois
Page 4


     We earnestly hope that the Court will grant our requests and will work with us to develop the basis for a settlement of this matter and to avoid a burdensome trial. We have not burdened the Court with copies of the correspondence between counsel since the status conference but we stand ready to provide such copies so that you can, if you wish, gain a further appreciation of what has motivated our requests.

                        Respectfully yours,

                        Bernhard D. Saxe


cc:    Howard M. Holmes, Esq.
        Kimberley Klein Power, Esq.
        Dr. Elizabeth Pawlak

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FRANK J. LAWRENCE, JR.         :
                                :    Civil Action
        v.                   :
                                :    07-cv-0288 (RCL)
MARK S. CARLIN, *et al.*         :

## **O R D E R**

AND NOW, this _____ day of _____, 2007, upon consideration of Dr. Pawlak's Motion

Motion to Intervene pursuant to Fed. R. Civ. P. 24, opposition thereto, and the record as a whole,

it is hereby

ORDERED that said Motion to Intervene (Docket No. _____) is GRANTED.

AND IT FURTHER IS ORDERED that, with the entry hereof, the Clerk of Court SHALL

CAUSE the above-captioned docket to reflect the intervention of Dr. Elizabeth J. Pawlak in this

matter.

                                     FOR THE COURT

                                     ROYCE C. LAMBERT,  U.S.D.J.