UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRANK J. LAWRENCE, JR., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MARK S. CARLIN, *et al.*, )<br>)<br>Defendants. )<br>) | Civil Action No. 07-288 (RCL) |

### MEMORANDUM OPINION

This matter comes before the Court on defendants' motion to dismiss [7] plaintiff's amended complaint [6] for want of subject matter jurisdiction and failure to state a claim. The Court has considered the parties' filings, the applicable law, and the entire record herein. For the reasons set forth below, the Court will abstain from exercising jurisdiction over plaintiff's claims at present and will stay this litigation pending final adjudication of plaintiff's application for admission to the District of Columbia Bar.

### BACKGROUND

Plaintiff Frank J. Lawrence, Jr. ("Lawrence") graduated from an accredited Michigan law school in 2001 and subsequently applied for bar admission in Michigan. (Am. Compl. Ex. at 1.) He withdrew his application the following year but reapplied in August 2004. (*Id.*) Although he had achieved a passing score on the bar examination, a district-level committee recommended against his admission on character and fitness grounds. (*Id.* at 1-2.) When the Michigan Board of Law Examiners considered this recommendation and voted to accept it, Lawrence requested and was afforded a hearing. (*Id.* at 2.) In a lengthy and detailed opinion, the Board concluded

1

that Lawrence had failed to demonstrate his character and fitness to practice law by the requisite "clear and convincing evidence" standard and thus denied his application, but it ordered that his bar examination score would remain valid for fourteen months to permit him to reapply.  (*See id.* at 19.)  Believing the Board had discriminated against him for exercising his constitutional right to free speech, Lawrence sued, but the U.S. District Court for the Western District of Michigan dismissed his complaint.  (Am. Compl. ¶¶ 19, 20.)  Lawrence appealed, and the Court of Appeals for the Sixth Circuit heard oral argument in the case on November 29, 2007.  (Am. Compl. ¶ 20; Praecipe of Oct. 23, 2007 [32].)

Meanwhile, in May 2006, before Michigan had denied him admission, Lawrence applied to the District of Columbia Bar.  (Am. Compl. ¶ 3.)  The Committee on Admissions ("Committee"), a division of the District of Columbia Court of Appeals ("DCCA"), prescribes rules for bar admission in the District, and like many states, it measures both an applicant's education and his character and fitness to practice law.  D.C. Code § 11-2501(a); D.C. Ct. App. R. 46.[1]  To fulfill the former requirement, Lawrence sat for the July 2006 bar examination.  (Am. Compl. ¶ 18.)  As part of his character and fitness evaluation, he informed the Committee when

---

[1] According to Rule 46(d), "[n]o applicant shall be certified for admission by the Committee until the applicant demonstrates good moral character and general fitness to practice law."  D.C. Ct. App. R. 46(d).  "The applicant shall have the burden of demonstrating, by clear and convincing evidence, that the applicant possesse[s] good moral character and general fitness to practice law in the District of Columbia."  D.C. Ct. App. R. 46(e).

In making its certification decision, the Committee may, in its discretion, require the applicant to appear before it.  D.C. Ct. App. R. 46(f)(1).  In any event, "[i]f the Committee is unwilling to certify an applicant, it shall notify the applicant of the choice of withdrawing the application or requesting a hearing."  *Id.*  After conducting such a hearing, the Committee must deliver a report of its findings and conclusions to DCCA, and if DCCA concurs with the recommendation against admission, the applicant has an additional opportunity to show cause why his application should not be denied.  D.C. Ct. App. R. 46(g).

he filed suit in Michigan and provided periodic updates as that litigation progressed. (*Id.* ¶ 21.)

By December 2006, Lawrence had learned he had attained a passing score on the District of Columbia bar examination, but he had heard nothing more from the Committee. (Am. Compl. ¶ 22.) He wrote to the Committee requesting either immediate certification for admission, or a hearing on or before January 26, 2007.[2] (*Id.*) On January 24, 2007, Lawrence received a response: the Committee informed him it would hold his application in abeyance until his Michigan litigation concluded. (*Id.*) This lawsuit followed two weeks later.

Lawrence named as defendants Mark S. Carlin ("Carlin"), Chairman of the Committee, in his official capacity; Alan H. Kent ("Kent"), a Committee member and its general counsel, in his individual capacity; and three Committee investigators whose names remain unknown, in their individual capacities. (*Id.* ¶¶ 4-6.)

Lawrence alleges the Committee has held his application in abeyance to compel him to abandon his Michigan litigation, and he contends this conduct violates his constitutional rights to free speech, due process, and equal protection. (*Id.* ¶¶ 28-42.) He further asserts the delay in processing his application has been so unreasonable as to offend procedural due process. (*Id.* ¶¶ 38-39.) Against Carlin, Lawrence seeks declaratory relief and a permanent injunction prohibiting the Committee from holding his application in abeyance. (*Id.* ¶¶ 42, 54.)

Lawrence further contends the three investigators "placed Plaintiff's application in abeyance in bad faith and for the purposes of harassing Plaintiff by chilling his federal rights." (*Id.* ¶ 46.) He declares on information and belief that Kent provided unconstitutional legal

---

[2] Lawrence demanded – and still demands – a hearing pursuant to D.C. Ct. App. R. 46(f)(1), which provides that an applicant may receive a hearing on request "[i]f the Committee is unwilling to certify [the] applicant."

advice that prompted the three investigators to place his application on hold. (*Id.* ¶ 50.) Against these defendants, Lawrence seeks compensatory and punitive damages. (*Id.* ¶¶ 52, 53.)

Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b) for want of subject matter jurisdiction and failure to state a claim. On May 11, 2007, this Court heard oral argument on the motion and on plaintiff's request for a preliminary injunction. In denying the latter motion, the Court noted that Lawrence had not sought review of the Committee's actions by DCCA but had instead proceeded straight to federal court. At the Court's suggestion, Lawrence later filed a petition for review in DCCA. He relied on that court's Rule 46(g)(3), which permits review of the Committee's interlocutory decisions on

> a showing (1) of extraordinary circumstances for instituting such review and (2) that an application for relief has previously been made in the first instance to the Committee and been denied by the Committee, or that an application to the Committee for the relief is not practicable.

D.C. Ct. App. R. 46(g)(3). Expressly reserving his federal claims and defenses, Lawrence asked DCCA to determine whether his circumstances were so "extraordinary" as to permit interlocutory review under the rule, and to order the Committee to afford him a hearing within thirty days. (Renewed Mot. for Prelim. Inj. Ex. 1 at 5.) In a tersely worded order, DCCA denied Lawrence's petition and his motion for expedited consideration. (Praecipe of July 16, 2007 [19], Ex. 1 at 1.)

In light of these various developments, the Court now addresses defendants' motion to dismiss, which has been *sub judice* since oral argument last May.

## **DISCUSSION**

Although defendants' motion also attacks Lawrence's complaint on the merits, the Court must first address its argument that it should abstain from exercising jurisdiction based on

*Younger v. Harris*, 401 U.S. 37 (1971).  Indeed, *Younger* abstention is a threshold question which a court may address even before confirming federal subject matter jurisdiction.  *Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005); *Worldwide Moving & Storage, Inc. v. District of Columbia*, 445 F.3d 422, 423 n.1 (D.C. Cir. 2006).

Except in extraordinary circumstances, the *Younger* doctrine precludes federal courts from intervening in ongoing state proceedings that are judicial in nature and that involve important state interests.³  *JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1120 (D.C. Cir. 2004).  When, however, the state proceedings offer no adequate opportunity to raise constitutional challenges, or when other exceptional circumstances exist – when, for example, the state proceeding was initiated in bad faith or to harass the plaintiff – federal court intervention may be nonetheless appropriate.  *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 435-37 (1982).

The *Younger* doctrine rests on the notion of comity, which dictates that federal courts maintain

> "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."  Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights.

*Middlesex County Ethics Comm.*, 457 U.S. at 431 (quoting *Younger*, 401 U.S. at 44) (citation omitted).  When important state interests are involved, even civil judicial proceedings – such as

---

³ While *Younger* speaks only of "states," our Court of Appeals has held its rule applies with equal force to judicial proceedings in the District of Columbia.  *JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1120-25 (D.C. Cir. 2004).

5

those "[p]roceedings necessary . . . for the functioning of the state judicial system" – implicate these policies. *Id.* at 432. Unsurprisingly, then, states have "an extremely important interest" in regulating and "assuring the professional conduct" of licensed attorneys – persons intimately involved with the states' judicial systems' operation. *Id.* at 434.

Given this clearly established state interest in its subject matter, abstention in this case turns on: (1) whether Lawrence's bar admission proceeding is judicial in nature;[4] and (2) whether extraordinary circumstances weighing against abstention – such as inability to raise federal claims in the ongoing state proceeding – are present.

First, Lawrence characterizes the admissions process as "administrative" and maintains that because it is non-coercive, it cannot be "judicial in nature." (Mem. Opp. 10.) But the Supreme Court's reasoning in *Middlesex County* cuts against his position. There, the Court observed that the New Jersey Supreme Court had delegated its state constitutional duty to regulate persons authorized to practice law to local District Ethics Committees, which it deemed "arm[s] of the court" for performing this function. *Id.* at 433. Because "[i]t [was] clear beyond doubt that the New Jersey Supreme Court consider[ed] its bar disciplinary proceedings as 'judicial in nature' . . . the proceedings [were] of a character to warrant federal-court deference." *Id.* at 433-34. Similarly, here, DCCA has delegated its statutory duty to regulate bar admissions to the Committee. *See* D.C. Code § 11-2501(a) (2008); D.C. Ct. App. R. 46. Further, the court

---

[4] Lawrence insists "there are no on-going proceedings before the COA," given that "the purpose of this lawsuit is to get the COA proceedings moving." (Mem. Opp. 10.) He does not dispute, however, that the Committee has received his application and has not rendered a final decision thereon. Logically, then, the admissions process must be ongoing. Lawrence asks this Court to compel the Committee to act more rapidly rather than to enjoin it from acting, but in light of the policies underlying the *Younger* doctrine, this is a distinction without a difference.

6

evidently considers the Committee's conduct of admissions proceedings as an extension of the court's judicial duties. *See Teare v. Comm. on Admissions*, 566 A.2d 23, 29 (D.C. 1989) (District of Columbia has "substantial interest in establishing standards for licensing of attorneys who will practice in the jurisdiction"); *J.H. Marshall & Assocs., Inc. v. Burleson*, 313 A.2d 587, 591 (D.C. 1973) ("a court has an inherent right to make rules governing the practice of law before it," and District of Columbia courts have thus "promulgated rules concerning who may practice law before them").

More to the point, in the District of Columbia, while the Committee on Admissions does engage in some ministerial functions, in "judging the fitness of applicants to practice law," its members "perform a judicial function on behalf of the District of Columbia Court of Appeals." *Powell v. Nigro*, 601 F. Supp. 144, 148 (D.D.C. 1985) (Smith, J.). Indeed, the Committee's moral character and fitness evaluations involve factual investigation and the application of pre-existing standards to individual circumstances. *See* D.C. Ct. App. R. 46; *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226 (1908) ("A judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist."). Hence, the Court concludes such proceedings are inherently "judicial in nature" and worthy of federal deference under *Younger*.

Second, Lawrence insists "extraordinary circumstances" exist that nonetheless warrant this Court's intervention. While he asserts he lacks an adequate opportunity to raise his federal claims in the ongoing admissions proceeding, he offers no factual or legal basis for this

proposition,[5] and the Court cannot credit his contention in the face of clearly contrary authority. *See Teare*, 566 A.2d at 27-30 (examining and rejecting on their merits petitioners' constitutional arguments for District of Columbia bar admission).[6]

Lawrence also points to bad faith and harassment in the admissions proceeding as extraordinary circumstances warranting federal intervention. (Mem. Supp. Mot. 11.) Yet the Supreme Court has found abstention appropriate even when, as here, a plaintiff avers the ongoing

---

[5] Lawrence's arguments on this point reflect a fundamental error in logic. (*See* Mem. Supp. Mot. 10-11.) Specifically, defendants' argument to DCCA – whether in Lawrence's case or in another – that administrative delay is not an "extraordinary circumstance" meriting interlocutory review under Rule 46 *is not inconsistent with* defendants' present assertion that Lawrence will have an opportunity to raise his federal claims before DCCA in his admissions proceeding. Rather, it conflicts only with Lawrence's desire to raise those claims *now*.

*Younger* abstention requires that a plaintiff have an opportunity, at some point in the state proceeding, to raise his federal claims; it does *not* require that such an opportunity occur *immediately*. *See Middlesex County Ethics Comm.*, 457 U.S. at 432, 435-36, 437. If and when the Committee recommends denial of Lawrence's application, he will be entitled to a hearing. D.C. Ct. App. R. 46(f)(1).

Moreover, it is unclear that Lawrence may not immediately bring his claims before DCCA. That court denied Lawrence's petition for interlocutory review, but in his petition, he *did not argue* that the Committee's actions had violated his constitutional rights. (Renewed Mot. for Prelim. Inj. Ex. 1 at 5.) Thus, at most, DCCA's order can be read as holding that a delay of roughly nine months in rendering a moral character and fitness determination is not an "extraordinary circumstance" under Rule 46(g)(3). (*See* Praecipe of July 16, 2007 [19], Ex. 1 at 1.) And "when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil v. Texaco, Inc.*, 481 U.S. 1, 15 (1987).

[6] *Cf. In re Chris H. Asher*, 772 A.2d 1161, 1165 (D.C. 2001) (considering attorney's allegation that denial of request for continuance and conduct of disciplinary proceeding in his absence violated his due process rights); *In re Ronald R. Benjamin*, 698 A.2d 434, 441 (D.C. 1997) (weighing reciprocally disciplined attorney's argument that disciplining state's proceeding violated his free speech rights).

state proceeding "chills" his free expression.[7] *See Younger*, 401 U.S. at 42, 54. And the factually unsupported, conclusory allegations of bad faith in Lawrence's complaint will not compel intervention where abstention is otherwise required.[8]

Furthermore, Lawrence points to no authority whatsoever that supports a refusal to abstain under circumstances analogous to those present here. Because the ongoing bar admissions proceeding implicates the *Younger* doctrine, and Lawrence has not shown extraordinary circumstances countering the rationale for its application, this Court must abstain

---

[7] Lawrence's complaint contends, *inter alia*, that "[d]efendants' conduct of holding Plaintiff's application in abeyance burdens Plaintiff's First Amendment right to petition the federal courts for redress of grievances" and that "Defendant Carlin's practices have chilled Plaintiff's rights and [] would cause a person of ordinary firmness to cease engaging in federally secured activities." (Am. Compl. ¶ 29.)

[8] Federal courts require a very strong factual showing of extraordinary circumstances when abstention is otherwise appropriate. *Compare Lewellen v. Raff*, 843 F.2d 1103, 1110 (8th Cir. 1988) (intervention proper where complaint's allegations "painted a picture of pervasive racism and discriminatory treatment of blacks in the Lee County court system"), *and Shaw v. Garrison*, 328 F. Supp. 390, 400 (E.D. La. 1971) (intervention in perjury prosecution was proper where prosecutor had never before charged a defendant who testified in his own defense and was acquitted, offered no explanation for this irregularity, and had a significant financial interest in the prosecution), *with Pincham v. Ill. Judicial Inquiry Bd.*, 872 F.2d 1341, 1350 (7th Cir. 1989) (abstention proper where Illinois judge claimed selective prosecution and retaliation after being disciplined for giving political speech but failed to allege disciplinary agency knowingly and intentionally failed to discipline other judges who did the same because it approved their speeches' content). *See also Otrompke v. Chairman of the Comm. on Character and Fitness for the First Judicial Dist. of Ill.*, No. 03 C 7198, 2004 U.S. Dist. LEXIS 6367, at *11-12 (discussing "high threshold required to overcome abstention").

In his complaint, Lawrence claims the Committee's placing his application in abeyance implicates the "unconstitutional condition doctrine because approval is linked (implicitly if not explicitly) to whether the Defendants subjectively agree with the content of an applicant's protected expression in a civil rights lawsuit." (*Id.* ¶ 32.) Later, he repeatedly refers to defendants' "decision" to hold his application in abeyance "because of" or "on account of" his Michigan lawsuit. (*E.g.*, *id.* ¶¶ 37, 41, 46.) But *factually*, Lawrence alleges only that the Committee has stated it plans to hold his application in abeyance pending resolution of his Michigan litigation. He offers no facts indicating this decision rested on a desire to dissuade him from pursuing that litigation or to punish him for bringing it.

9

from exercising jurisdiction over his claims. When, as in a bar admissions proceeding, a plaintiff may not seek money damages in the state action, a stay – rather than dismissal – is appropriate. *Deakins v. Monaghan*, 484 U.S. 193, 202-03 (1988) (adopting rule requiring federal court to stay rather than dismiss claims not cognizable in parallel state proceeding).

## **CONCLUSION**

For the forgoing reasons, this Court concludes it must abstain from exercising jurisdiction over plaintiff's claims at this time. Nonetheless, a stay, rather than dismissal, is appropriate. Hence, defendants' motion to dismiss will be denied, and this case will be stayed pending final adjudication of plaintiff's application for admission to the District of Columbia Bar. If prior to the admissions proceeding's natural termination, plaintiff becomes able to demonstrate extraordinary circumstances meriting federal court intervention despite *Younger*, he may ask this Court to lift the stay.

A separate order shall issue this date.


Signed by United States District Judge Royce C. Lamberth, March 31, 2008.