UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRANK J. LAWRENCE, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-00288 (RCL) |
| ) | |
| MARK S. CARLIN, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## STATUS REPORT

Pursuant to the Order of this Court dated March 31, 2008, the defendants herein provide a status report on this matter.

On Friday, May 23, 2008, the undersigned received a telephone call from plaintiff, in which he revealed that the Michigan Board of Law Examiners—in a decision dated May 19, 2008—again denied his application for admission. Apparently, plaintiff had applied again, while a decision from the 6th Circuit on his previous litigation is still pending (oral argument was heard there in November of last year).

At plaintiff's request, the undersigned conveyed this information to defendants, as well as a letter to defendant Carlin (as chair of the Committee on Admissions), with various documents (copies attached).

The Committee will take this information into consideration in its decision-making process concerning plaintiff's pending application.

DATE: May 30, 2008            Respectfully submitted,

                              PETER J. NICKLES
                              Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

    /s/ Ellen A. Efros
ELLEN A. EFROS, D.C. Bar No. 250746
Chief, Equity Section I
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 442-9886
Facsimile: (202) 727-0431

    /s/ Andrew J. Saindon
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity I Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 727-0431
andy.saindon@dc.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on May 30, 2008, copies of the foregoing Status Report and all accompanying documents were filed with the Court's Electronic Case Filing system, sent electronically to flawrence1@hotmail.com, and sent by U.S. Mail, first-class, postage-prepaid, to:

    Frank J. Lawrence, Jr.
    941 Westview Road
    Bloomfield Hills, MI 48304

    /s/ Andrew J. Saindon
ANDREW J. SAINDON, D.C. Bar No. 456987

# Saindon, Andy (OAG)

| | |
|---|---|
| **From:** | Frank Lawrence [flawrence1@hotmail.com] |
| **Sent:** | Monday, May 26, 2008 1:04 PM |
| **To:** | Saindon, Andy (OAG); coa@dcca.state.dc.us |
| **Subject:** | Letter to Mr. Carlin |
| **Attachments:** | Letter to Carlin for Status Report.pdf |



Letter to Carlin for Status Re...

Mr. Saindon,

Attached is a letter to Mr. Carlin.  Please see that he receives it and I respectfully request that it be included in your client's upcoming status report to Hon. Royce Lamberth.

You will notice that the attached affidavit has my old Michigan case caption on it (Lawrence v Berry, W.D. Mich. No. 5:06-cv-134).  That is because on Friday, my attorney filed a Rule 60(b)(6) motion in the lower court for the issuance of an advisory opinion to the panel that is presently viewing the case in the U.S. Court of Appeals for the Sixth Circuit.  Oral argument was heard by the appellate panel in November, 2007.

We are planning a three-front challenge.  First, we filed the Rule 60(b)(6) motion on Friday.  Second, we are going to file a new federal lawsuit in the Western District of Michigan.  With the complaint, we are going to file a motion to stay that action while we pursue an Application for Writ of Superintending Control in the Michigan Supreme Court.  Third, we are going to file that Application in the Michigan Supreme Court and then attempt to return to federal court following the Michigan Supreme Court's decision.  This likely will take years.

In any event, I will not be requesting a hearing before the Michigan Board, in part because there is no authority for the Board to hold one.  Notice that the Board cites Rule 2(C) as the authority for a hearing "within 60 days".  First, Rule 2(C) places no time limits on when a hearing can be requested.  Second, the rule only provides for review after an adverse decision of the Standing Committee ("If the committee report shows that an applicant lacks the necessary character and fitness, the Board will review the application, record, and report.").

It is my position that a court challenge is the only viable option, given that the Board cannot permissibly do what it is doing.

Thank you,

Frank Lawrence

May 26, 2008

Frank J. Lawrence, Jr.
941 Westview Road
Bloomfield Hills, MI  48304
(248) 722-2560

Mark S. Carlin, Chairman
Committee on Admissions
District of Columbia Court of Appeals
500 Indiana Avenue N.W., Room 4200
Washington, D.C., 20001

Re:    Applicant # 35882

Dear Mr. Carlin:

I request that you include this letter as part of your upcoming status report to Judge Royce Lamberth.

As I reported to you in March, I filed a third application for a Michigan license to practice law in January, 2008. On May 19, 2008, the application was denied by the Michigan Board of Law Examiners. Although I could further appeal that decision, I have elected not to do so. Rather, I will be filing a new federal action that seeks prospective relief regarding my future reapplication, which I was advised could be filed on May 19, 2010.

My most recent Michigan application was denied for three reasons: (1) My lawsuit against you that is presently before Judge Lamberth; (2) A June 19, 2006 letter that I sent to a member of the Michigan Civil Rights Commission (enclosed); and (3) my picketing of a Michigan Board member's law office with a sign that said "I do not recommend attorney Gerald Marcinkoski". I have enclosed an affidavit to that effect, given that the Board declined to put its reasons in writing.

I am concerned that my new federal action will trigger the District of Columbia Committee on Admissions to continue to hold my D.C. application in abeyance pending the outcome of that action, leading to years of further delay. Please provide the Court and me with your position on how my challenge to the Michigan Board's May 19, 2008 denial will affect the time in which my D.C. application will be reviewed by the Committee. Thank you.

Sincerely,

Frank J. Lawrence, Jr.

encls.

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

FRANK J. LAWRENCE, JR.

    Plaintiff,

v.

JOHN T. BERRY, ET. AL.,

    Defendants.

Civil No. 5:06-cv-134
Hon. Richard Alan Enslen

_____/

### AFFIDAVIT OF PLAINTIFF FRANK J. LAWRENCE, JR.

State of Michigan      )
                                  )
County of Oakland      )

I, Frank J, Lawrence, Jr., hereby certify the following as being a true and complete representation of fact:

1. I am the plaintiff in this matter. In January, 2008, I reapplied for a Michigan license to practice law.

2. Around April 10, 2008, I received notice that the State Bar of Michigan had issued a favorable determination on my character and fitness.

3. Around May 19, 2008, I received notice that the Michigan Board of Law Examiners had rejected the State Bar's favorable decision. No reasons were given to me for the Board's decision and I was not provided a prior opportunity to appear in writing or in person to challenge why the Board's proposed action should not be taken. Attached to this Affidavit is a copy of that letter.

4. On May 22, 2008, I called the office of the Michigan Board of Law Examiners and I spoke with Board Assistant Secretary Timothy Raubinger. I asked him for the reason why my character had been questioned and he stated that it was because:

    (1)    My picketing of Board Member Gerald Marcinkoski's office;

 (2) My June 19, 2006 letter to a member of the Michigan Civil Rights Commission, which complained about Board Member Linda Parker; and

 (3) My recent lawsuit in Lawrence v. Carlin, 2008 U.S. Dist. LEXIS 25839 (D.D.C. Mar. 31, 2008).

5. Mr. Raubinger said that if I do not further challenge the Board's determination, I would be provided no additional information on the reasons for the adverse decision and the May 19, 2008 letter I received would be the Board's final communication on the matter.

6. Mr. Raubinger said that based upon his experience, I am the first person in Michigan history to have a favorable State Bar staff-level character determination be rejected by the Board.

## VERIFICATION PURSUANT TO 28 U.S.C. §1746

I verify under penalty of perjury that the foregoing is true and correct.

Executed on: May 23, 2008

                *Frank J. Lawrence* (signature)
                Frank J. Lawrence, Jr.



## Michigan Supreme Court
## BOARD OF LAW EXAMINERS
Michigan Hall of Justice
P.O. Box 30104
Lansing, MI 48909

*Phone:* (517) 373-4453
*Fax:* (517) 373-5038
*E-mail:* ble-info@courts.mi.gov

May 19, 2008

Mr. Frank Lawrence, Jr.
941 Westview Road
Bloomfield Hills, MI 48304

RE:  Character & Fitness

Mr. Lawrence:

This will advise you that the Board of Law Examiners has voted, with member Chabot not participating, to reject the Standing Committee on Character and Fitness recommendation that you be found to possess the requisite character and fitness to practice law in Michigan. The Board notes that in making such a determination, it may properly consider conduct reflecting on an applicant's character and fitness notwithstanding First Amendment considerations. *In re Converse*, 258 Neb 159; 602 NW2d 500 (1999); *In re Eicher*, 2003 SD 40; 661 NW2d 354 (2003); and, *In re Hoffman*, 2005 ND 171; 704 NW2d 810 (2005). Consideration of such conduct is necessary in order for the Board to ensure that applicants for admission to the bar have good moral character.

Additionally, the Board has determined that your April 22, 2008 request for the release of your grades is moot. You previously received your grades in 2001.

Pursuant to Rule 2(C) of the Rules for the Board of Law Examiners, you are entitled to a hearing before the Board and may use the Board's subpoena power. You must request a hearing within sixty (60) days of the date of this notification or the Board's determination of this matter will become final.

Very truly yours,

Timothy J. Raubinger,
Assistant Secretary

TJR:sla

cc: Committee on Character & Fitness

June 19, 2006

Frank Lawrence, Jr.
941 Westview Road
Bloomfield Hills, MI 48304
(248) 722-2560

Albert Calille, Esq.
SBC Michigan
444 Michigan Ave # 1750
Detroit, MI 48226

Dear Mr. Calille:

It is my understanding that you are a member of the Michigan Civil Rights Commission. I would like to share with you a recent troubling experience that I had with Department of Civil Rights Director Linda V. Parker, and how she used her position on the Michigan Board of Law Examiners to deny me the ability to earn a living in my chosen profession.

I graduated from the University of Detroit-Mercy School of Law in 2001, and immediately thereafter, I multi-stated and passed the Michigan Bar Examination. Although passing the Bar Exam is the final step for most individuals seeking a law license, it was not for me. I was targeted by Michigan licensing officials because of my outspokenness about government corruption, and for the past 5 years I have been denied the right to work as an attorney. In December 2003, the Michigan Bar Journal published an article by civil rights attorney Robert D. Horvath, explaining how the State Bar had "grossly misused" its admission process to exclude me from the Bar (enclosed).

On June 14, 2006, Ms. Parker denied me a license to practice law. Specifically, she denied me admission for making statements concerning the manner in which I was treated by State Bar investigators. According to Ms. Parker, my communications were a verbal assault on two investigators who previously reviewed my application for admission. Conspicuously absent from Ms. Parker's opinion is any claim that my statements were *false*. To the contrary, Ms. Parker validated my statements by her decision to reject all of the recommendations made by the two investigators. Also, although my statements were all *truthful*, Ms. Parker found that my decision to peacefully protest outside of the licensing review process was grounds for denial.

Ms. Parker's decision is disingenuous. She chose not to solely stay within the appellate review process on June 12, 2006, when she used a state-run web site to influence public opinion and cast aspersions against those involved in the Michigan Civil Rights Initiative (MCRI). She said that the MCRI's efforts "rest on a foundation of fraud and misrepresentation ... [and] ...blatant dishonesty". Apparently, Ms. Parker finds it permissible to make defamatory statements about a legitimate initiative; yet I am precluded from making *truthful* statements protesting the manner in which State Bar investigators violated my constitutional rights.

I have noticed that this type of hypocrisy is commonplace among many black civil rights activists. They believe that they have the right to speak out, but for everyone else, there exists a double standard. I truly believe that if I were black, I never would have been treated this way.

Page Two
June 19, 2006
To:   Albert Calille, Esq.

    Perhaps Ms. Parker should read the case of Dean v. Byerley, 354 F.3d 540 (6th Cir. 2004), wherein Mr. Dean decided to take his protests about the way he was treated by State Bar investigators to the neighborhood of (now former) State Bar Regulation Counsel Thomas Byerley. The recent decision in that landmark federal opinion rocked the Michigan attorney licensing community. I intend to file a similar lawsuit against Ms. Parker, and my attorneys are preparing it now. Under a functional analysis, because the licensing statute and rules require Ms. Parker to commingle *investigative* and adjudicative functions, I highly doubt that she will be given absolute or quasi-judicial immunity from suit for my monetary damages claims.

    When enacting the First Amendment, our founding fathers knew that free speech could be used as a weapon. Our laws provide that so long as speech is *truthful*, it is absolutely protected. Ms. Parker's statements on her web site about the MCRI demonstrate her desire to publicly speak-out against what she perceives as dishonesty, bias and corruption. She should not have punished me for doing the same.

                                      Sincerely,

                                        Frank Lawrence, Jr.

encls.

# MICHIGAN
# Bar Journal

December 2003

inside
Genesee County Courthouse
Pro Bono Project a Winner

# Real Property Law

Evictions **20**
Construction Liens **26**
Eminent Domain **34**

facts in the Michigan admissions cases, Mr. Ault has failed to rebut the principle, approved by seven of the nine justices of the U.S. Supreme Court, that diversity in higher education remains a compelling governmental interest.

Reginald M. Turner, Jr.
Detroit

## Character and Fitness Review—Is the Process Fit?

**To the Editor:**

In his July 2003 column, the executive director defends the current licensing procedure and says it works well. I disagree. Based on just a few examples from recent litigation, which Mr. Berry fails to mention, it is apparent that the process has significant problems and that administrators, unfortunately, cling to practices that are illegal. We must assure the fitness of the licensing procedure.

No one disputes the goal of assuring the suitability of law school graduates for their future role as lawyers. One key function is serving as a critical buffer between the power of the state and the individual. *Johnson v City of Cincinnati*, 310 F3d 484, 498 (CA 6, 2002). Character fitness should not be a sieve through which administrators filter sharp or questioning personalities or views. Lawyers may be officers of the court, but they are not servient to it.

Administrative decision-making is subject to basic principles of fairness. Written and practical standards must both confine the exercise of administrative discretion and afford reasonable notice to applicants of disqualifying conduct. In addition, governmental decision-making at every level must abide by legal or constitutional limits.

My principal concern is that character-fitness review has been used to scrutinize lawful activities of applicants without any limiting principle (whether by statute, rule or practice) for administrative evaluation of the act itself. As a result, there is no place in the current process where decision-makers (whether State Bar staff, State Bar committee or Board of Law Examiners) ever consider if the scrutinized act is protected by law. Quite frankly, this practice has led to abuses.

And because fitness review is confidential, said to be for the "protection" of the applicant, there is no public record that exposes the use of improper considerations. What is gleaned from the process arises indirectly, as noted below. The absence of published decisions protects current practice, not the applicants. Transparency should be a universal principle of governmental decision-making.

The tangible deficiencies in the current process have been exposed in a number of recent lawsuits in federal court. One, *Stephen Dean v Thomas Byerley*, U.S. District Court, Western District of Michigan, Case No. 5:01 cv-40, establishes the State Bar's illegal practice of using protected acts against applicants under the guise of "character." In defending comments allegedly made by regulation counsel Thomas Byerley to Stephen Dean, which threatened character rejection because Mr. Dean had picketed the State Bar building, or elsewhere, the State Bar asserted:

> *Although an individual may have a constitutional right to engage in a certain activity under certain circumstances, the activity may constitute a basis on which an applicant is denied admission to the Bar. On occasion, Bar applicants have been denied admission for activity that is lawful, but that reflects poorly on the applicant's suitability to practice law.*
>
> *The Bar has had several applicants who exercised free speech in a fashion that contributed to a recommendation of denial.*

Thus, the State Bar asserts that *lawful* acts may provide a reason for rejection of an applicant on character grounds, notwithstanding constitutional protection for the act.

The State Bar's position is illegitimate. There are well-established rules for administrative decision-making, which the State Bar chooses to ignore. One notable example comes from judicial disciplinary proceedings concerning Judge John Chmura.

Applying established First Amendment principles, the Michigan Supreme Court held that Judge Chmura could not be punished for campaign statements that had been characterized as racist despite the state of Michigan's very considerable interest in having "fit" judicial officers. *In re Chmura*, 461 Mich 517 (2000). Notably, the state was required to prove that the activity in question was unprotected, under a rigorous constitutional measure. *In re Chmura*, 464 Mich 58, 71–72 (2001). This is distinctly unlike the current licensing procedure, where the applicant carries the burden whenever the State Bar says there is a problem with "character."

It is eminently clear that the state cannot use protected acts against an individual. In addition, the *Chmura* decisions say there are both substantive and procedural safeguards for any process of governmental decision-making, especially where the First Amendment is implicated. See also *Feiger v Michigan Attorney Grievance Commission*, 74 F3d 740, 747 (CA 6, 1996).

Yet, Mr. Berry's article avoids any statement about controlling legal limits and utterly fails in squaring the current licensing process with known legal parameters. Mr. Berry says that an applicant's "lack of candor" is the most common reason for rejection. But he offers no administrative practice for this determination, other than saying it exists.

The regulations themselves do not mention or define this deficiency or how it is determined. Nowhere is it stated as a standard of decision-making. In view of the State Bar's acknowledgment in the *Dean/Byerley* litigation, it is clear that applicants have been rejected for "candor" when the State Bar disagrees with the expression of an open and honestly held view. This is not fitness review. It is censorship or illegitimate paternalism at best. (There is a troubling Board of Law Examiners' memorandum from a few years ago suggesting that administrators rejected applicants merely because they did not like them.)



(888) 737-3636
www.ewiassociates.com
EWI & Associates, Inc.
ELECTRONIC COUNTERMEASURES & INVESTIGATIVE SERVICES

Mr. Berry cannot cure the defects in the current process by referring to "abuse" or other claim of "egregious" behavior attributed to the applicant. Judge Chmura was not subject to discipline although the Judicial Tenure Commission felt it was warranted due to unseemly public behavior. Since the law protected his conduct, that was the end of the matter.

In contrast to Judge Chmura's situation, the Board of Law Examiners withheld character approval (acting on a recommendation from the State Bar) in the case of one applicant (Dennis Dubuc) because of his statements about a sitting judge. The Board of Law Examiners said those remarks were "of primary concern" to the licensing decision. Yet, the Board did not apply controlling First Amendment principles to Dubuc's statements, as set out by the *Chmura* decisions. (Dubuc's battle with the licensing authorities is reported in *Dubuc v Googasian*, ___ F3d ___; 2003 WL 22047344 (2003).)

Furthermore, Judge Chmura suffered no disability while litigating those important constitutional issues. That is markedly different from the State Bar's treatment of applicant, Frank Lawrence, Jr. His example shows that the "character" process has been grossly misused.

Lawrence's application was placed in administrative purgatory because he was involved in proceedings arising from his prosecution under a Bloomfield Township ordinance for interfering with a police officer. The State Bar refused to finalize his fitness evaluation even though prior administrative practice showed that such a simple ordinance charge (whatever its outcome) would not lead to "character" rejection. Nonetheless the State Bar refused to recommend certification of Mr. Lawrence, saying it had to await the final outcome of the ordinance violation.

The ordinance under which Lawrence was prosecuted seems overly broad or indefinite akin to disorderly conduct laws that fail basic due process. However, ex-State Bar president Thomas J. Ryan prosecuted the matter. Lawrence defended the charge and also challenged the ordinance in federal court, seeking monetary damages. After the local judge refused to dismiss the charges, Lawrence went to trial and was convicted. He appealed, and his appeal is pending (it has gone through a number of procedural twists). Lawrence's federal action for damages is stayed pending the final outcome of the state prosecution.

Bloomfield Township said it would accept dismissal of Mr. Lawrence's civil lawsuit (the damages claim) in exchange for dismissal of the ordinance violation. Lawrence refused that quid pro quo, an equation that has the State Bar working with the township on a de facto basis.

Lawrence's application for membership in the State Bar is hostage to his legitimate fight for justice. The State Bar refuses to recognize that litigation *with* government is protected by the First Amendment, under both the Speech and Petition Clauses. Facing continued deferral of his application, Lawrence sued the State Bar (and others) over its refusal to

> The State Bar's practice in "character" review has been to take as much latitude as possible, despite known and controlling legal limits.

process his application. That lawsuit is pending in federal court in the Western District of Michigan. It seeks to adjudicate the State Bar's use of an applicant's lawful acts to assessment of character-fitness.

It is apparent that Lawrence's lawsuit has legitimate grounds substantively, as demonstrated by the State Bar's comments in the *Dean/Byerley* litigation, noted above, and by the procedural history of his own licensing attempt. It is procedurally proper since one may challenge a defect of "process" without exhausting administrative proceedings or receiving a final decision. *Bowers v Flint*, 325 F3d 758, 762 (CA 6, 2003).

These examples illustrate the State Bar's practice in "character" review has been to take as much latitude as possible, despite known and controlling legal limits.

Those responsible for character-review must do one thing first. They must acknowledge that the law applies to their *own* acts during the review process. The State Bar's avowed position—expressed in court papers—is that it is above the law. Such a viewpoint is hardly good public policy.

Of further significance is the fact that the State Bar's litigation statements have not been forthcoming. The State Bar led one federal court (Judge Nancy Edmunds) to believe that it did not consider First Amendment activities. Yet, its expressed position in the *Dean/Byerley* litigation was exactly the contrary, as quoted above.

The State Bar did not tell Judge Edmunds that it rejected applicants because of First Amendment activities. Rather, it shaped its arguments to further its procedural position in order to gain dismissal on non-meritorious grounds, i.e., that plaintiffs lacked standing and the lawsuit was not ripe for judicial review. The Sixth Circuit, unfortunately, affirmed Judge Edmunds in a brief unpublished opinion (*Roe/Doe v State Bar of Michigan*, 2003 WL 219491187), repeating her wrongly induced finding that the State Bar does not scrutinize First Amendment activities. ("[P]laintiffs lack standing to challenge the statute because they failed to demonstrate a realistic danger that the statute will be applied so as to compromise their First Amendment rights.") Unfortunately, counsel—the undersigned—did not know of the State Bar's litigation comments in the *Dean/Byerley* lawsuit until afterwards.

The State Bar is entitled to advance its interests zealously. I suggest, however, that the State Bar's foremost responsibility is fidelity to the law, not preservation of administrative latitude. There is much to be gained by self-examination and the State Bar's governors need to examine a great deal. What do commissioners or members of the Representative Assembly know of these lawsuits and the State Bar's positions and administrative practices?

I also suggest that someone outside the present embattled lawsuit circumstances take a look at Frank Lawrence's situation and do the right thing. It is neither fair nor right that lawyers are stopping a person from becoming a lawyer because of a legitimate choice to fight for legal principle. The State Bar should not be used as a lever to extract a lawsuit settlement.

Equal access to justice applies to those who *seek* to become lawyers, as well as to lawyers who are sitting judges or important politicians. (Mr. Ryan, the prosecutor of Frank Lawrence, represents a well-known lawyer and elected official recently charged with dangerous public behavior. The disciplinary authorities have not questioned the fitness of Mr. Ryan's client and he continues to serve in an important governmental role. I do not quarrel with that circumstance, but simply note the disparity with Frank Lawrence's situation.)

What bar-applicants have now is neither equality nor justice. In addition, the public is not served by shrouded decision-making that preserves bureaucratic latitude at the price of constitutional principles.

Deemed public necessity and constitutional rights are frequently at odds. The State Bar of Michigan should be a leading advocate of constitutional principles, even where its own prerogatives are at issue. Unfortunately, the State Bar has used its considerable state power to injure, rather than honor, basic constitutional guarantees.

The *Dubuc* lawsuit, to which I referred earlier, was remanded by the Sixth Circuit for further proceedings, overruling Mr. Berry's argument that he could not be sued over State Bar licensing practices claimed to be unconstitutional. As counsel for Mr. Dubuc I was pleased in that result, but dismayed that it took a trip to Cincinnati to get recognition of basic legal principles. State officials are not above the law. See *Republican Party of Minnesota v White*, 536 US 765, 122 S Ct 2528, 153 L Ed 2d 694 (2002), *Glassroth v Moore*, ___ F3d ___; 2003 WL 21499258 (CA 11, 2003), or *Spargo v New York State Com'n on Judicial Conduct*, 244 F Supp 2d 72 (ND NY, 2003).

Robert D. Horvath
Troy

**From the Editor:**

*Strict confidentiality rules imposed by the Michigan Supreme Court make it impossible to respond to these specific disagreements on how the State Bar is conducting its character and fitness reviews. The Bar takes its responsibility to screen the character and fitness of every applicant to the Bar very seriously. If the Bar is to protect the public from individuals who lack the requisite character and fitness to practice law in this state, it must diligently and professionally investigate all applications received. It is understood that some applicants find this process intrusive or unnecessary. It is noteworthy, however, that no court has found that the State Bar's character and fitness process violates anyone's constitutional rights.*

Thomas K. Byerley
Director of Professional Standards

## In Memoriam

**Hon. Fred J. Borchard**, P11002, of Saginaw died September 29, 2003. He was born June 10, 1914, graduated from the University of Michigan Law School, and was admitted to the Bar in 1943.

**Milton W. Bush**, P11469, of Port Huron died September 24, 2003. He was born April 4, 1911, graduated from the Detroit College of Law/MSU, and was admitted to the Bar in 1934.

**John S. Clark**, P11931, of Petoskey died October 7, 2003. He was born January 27, 1912, graduated from the University of Michigan Law School, and was admitted to the Bar in 1936.

**Donald G. Corley**, P12229, of Lynn, NC died June 30, 2003. He was born February 13, 1929 and was admitted to the Bar in 1954.

**Benjamin L. Crossley**, P26178, of Lansing died October 3, 2003. He was born October 2, 1924, graduated from the University of Michigan Law School, and was admitted to the Bar in 1953.

**Robert W. Daley**, P12453, of Novi died June 30, 2003. He was born January 26, 1929 and was admitted to the Bar in 1971.

**John M. Dell'Orco**, P25429, of Savannah, GA died September 20, 2003. He was born February 23, 1947, graduated from the Detroit College of Law/MSU, and was admitted to the Bar in 1975.

**Geraldine B. Ford**, P13564, of Detroit died October 5, 2003. She was born November 5, 1926 and was admitted to the Bar in 1952.

**Hon. Thomas L. Gadola**, P13781, of Flint died September 27, 2003. He was born January 6, 1933, graduated from the University of Michigan Law School, and was admitted to the Bar in 1957.

**Fredrick M. Goldsmith**, P14122, of Southfield died September 4, 2003. He was born December 3, 1939, graduated from Wayne State University Law School, and was admitted to the Bar in 1964.

**Jack J. Kraizman**, P16198, of Detroit died September 20, 2003. He was born March 1, 1910 and graduated from the University of Michigan Law School.

**Willard L. Mikesell**, P17712, of Charlotte died September 30, 2003. He was born April 18, 1925, graduated from Wayne State University Law School, and was admitted to the Bar in 1953.

**Fred Morganroth**, P17964, of Franklin died September 30, 2003. He was born March 26, 1938, graduated from Wayne State University Law School, and was admitted to the Bar in 1961.

**Nathan S. Peterman**, P18816, of West Bloomfield died September 14, 2003. He was born December 31, 1924, graduated from the University of Michigan Law School, and was admitted to the Bar in 1949.

**Abraham Satovsky**, P19905, of Southfield died September 20, 2003. He was born October 15, 1907 and graduated from the University of Michigan Law School.

**William F. Schumaker**, P20105, of Dearborn died October 19, 2003. He was born July 4, 1909, graduated from the Detroit College of Law/MSU, and was admitted to the Bar in 1949.

**Clyde T. Strickland**, P32447, of Jacksonville, FL died September 25, 2003. He was born June 15, 1947, graduated from the Detroit College of Law/MSU, and was admitted to the Bar in 1981.

**James D. Tracy**, P21531, of Detroit died July 22, 2003. He was born June 9, 1914 and was admitted to the Bar in 1940.

**Loyall G. Watson**, P22034, of Port Huron died June 6, 2003. He was born June 22, 1917, graduated from the University of Michigan Law School, and was admitted to the Bar in 1942.

**Mark E. Weiss**, P22146, of Chicago, IL died July 4, 2003. He was born April 17, 1944 and was admitted to the Bar in 1969.

**Henry Nicholas Winters**, P61636, of Dearborn died August 8, 2003. He was born September 6, 1953 and was admitted to the Bar in 2000.