UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

FRANK J. LAWRENCE, JR.

      Plaintiff,                           Civil No.07-288-RCL

v.

                                     **Expedited Consideration Requested**

MARK S. CARLIN, ET. AL.,

      Defendants.

_____/

## PLAINTIFF'S MOTION TO LIFT STAY,
## OR IN THE ALTERNATIVE,
## TO CERTIFY ABSTENTION QUESTION PURSUANT TO 28 U.SC. 1292(b)

1.     Pursuant to the facts and law contained in Plaintiff Frank Lawrence's attached memorandum of points and authorities, Lawrence respectfully requests that this Court lift its March 31, 2008 stay, or in the alternative, certify the following two questions for interlocutory appeal, pursuant to 28 U.S.C. 1292(b):

> 1.    Is the "ongoing state proceeding" component of Younger v. Harris, 401 U.S. 37 (1971) applicable to an attorney licensing applicant who has been advised that his pending application will remain "in abeyance" by state officials for an indefinite period, when the purpose of the federal suit is to challenge on constitutional grounds the state officials' decision to cease processing the application?

> 2.    Should a district court abstain pursuant to Younger v. Harris, 401 U.S. 37 (1971), when the federal plaintiff is responsible for bringing the state proceedings, the federal plaintiff can end the state proceedings at any time he chooses, there has been no substantial activity in the state proceedings in over two years, and the ongoing state proceedings are completely non-coercive in nature?

2.     Lawrence has contacted the opposing counsel in this matter, seeking concurrence in the relief sought, but concurrence was denied.

3.      Additionally, Lawrence seeks expedited consideration of this motion because if this Court grants the requested relief and permits an appeal, the appellate process will likely take over a year.  Defendants have already stated that they intend to argue that this matter is moot once *they decide* to remove Lawrence's application from abeyance. (Docket #7, p. 7, "The COA could recommend plaintiff's admission, at which time his claims would be moot.").   Prompt consideration will allow the parties to expeditiously begin the appellate process.


        **WHEREFORE**, Lawrence respectfully requests that this Court either lift the stay or certify its abstention decision for an interlocutory appeal.

Dated:  August 28, 2008                              Respectfully submitted:

                                                     __s/Frank J. Lawrence, Jr._____
                                                     Frank J. Lawrence, Jr.
                                                     Plaintiff, Pro Se
                                                     941 Westview Road
                                                     Bloomfield Hills, MI  48304
                                                     (248) 722-2560


                          **CERTIFICATE OF SERVICE**

        I HEREBY CERTIFY that on August 28, 2008, a true and correct copy of the foregoing document was electronically sent to opposing counsel, Andrew J. Saindon, at his CM/ECF designated e-mail address, andy.saindon@dc.gov, via the Court's ECF electronic notice filing system.

Dated:  August 28, 2008                              Respectfully submitted:


                                                     __s/Frank J. Lawrence, Jr._____
                                                     Frank J. Lawrence, Jr.
                                                     Plaintiff, Pro Se
                                                     941 Westview Road
                                                     Bloomfield Hills, MI  48304
                                                     (248) 722-2560

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

FRANK J. LAWRENCE, JR.

      Plaintiff,                                Civil No.07-288-RCL

v.

MARK S. CARLIN, ET. AL.,

      Defendants.

_____/

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION TO LIFT STAY,
OR IN THE ALTERNATIVE,
TO CERTIFY ABSTENTION QUESTION PURSUANT TO 28 U.SC. 1292(b)**

I.      STATEMENT OF FACTS

      This case was brought by Plaintiff Frank Lawrence to enjoin the Defendants from continuing to hold in abeyance his May 17, 2006 application for a license to practice law. The March 31, 2008 published opinion of this Court at Lawrence v. Carlin, et. al., 541 F. Supp. 2d 189 (D.D.C., 2008) provides the factual background leading up to this Court's decision to abstain based on Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971).

      This Court's March 31st opinion and order (Dockets #34, #35), required Defendants to file status reports every 60 days, and since that time Defendants have filed two (Dockets #38 and #40), with the third one due at the end of September. Those status reports indicate that Lawrence's application remains in abeyance.

      On June 3, 2008, the United States Court of Appeals for the Sixth Circuit issued its decision in Lawrence's federal challenge against the Michigan Board of Law Examiners. Lawrence v. Welch, 531 F.3d 364 (6th Cir. 2008) (Docket #39). That decision makes it clear that

Lawrence's Michigan litigation has nothing to do with his character and fitness in the District of Columbia, but rather, it concerns federal jurisdiction (the <u>Rooker-Feldman</u> doctrine and ripeness) and federal immunity from damages. This undermines Defendants' contention that holding in abeyance Lawrence's District of Columbia application serves any legitimate purpose.

Lawrence has maintained from this case's inception that the decision to place his application in abeyance was in bad faith, and this Court's March 31st decision rejected that argument. Lawrence respectfully requests that this Court now take a second look because recent developments in the Philip Stoddard case establish that Defendants have been less than candid in their litigation statements as to their true motives. This Court is familiar with Mr. Stoddard because he once sought to intervene in this case after the Defendants told him that his federal litigation against the Florida Bar officials warranted "hold-in-abeyance" status (Docket # 17). In defending their decision to hold Mr. Stoddard's application in abeyance, Defendants stated:

> [U]ntil there is finality to the Florida Bar's decision not to admit Stoddard on character and fitness grounds, the Committee is not in a position to determine to what extent it may rely on findings of fact in the Florida proceedings. Therefore, the Committee reasonably is waiting for Stoddard's current Florida federal litigation to be concluded.

(Docket #13 (Part 3), Exhibit 1, p. 3)

Defendants' basis for holding Stoddard's application in abeyance is illegitimate, as demonstrated by comparing two pieces of evidence. First, the "current Florida federal litigation" that Defendants referred to above was <u>Stoddard v. Fla. Bd. of Bar Examiners</u>, 509 F. Supp. 2d 1117 (N.D. Fla., 2006), which ended on **July 20, 2007**, when the Eleventh Circuit Court of Appeals affirmed that decision at 229 Fed. Appx. 911. Stoddard did not seek <u>certiorari</u>. The second piece of evidence is a letter that Stoddard received on **August 12, 2008**, stating that Stoddard's application "has continued to be held in abeyance…" (Exhibit 1, attached hereto).

2

Therefore, over one year after Stoddard's federal litigation came to an end, his District of Columbia Bar application "continued to be held in abeyance". The Defendants' conduct in the Stoddard case establishes their intention to use delay as a retaliation tool against applicants who sue licensing officials; it has nothing to do with measuring present character and fitness.

Defendants have set forth no legitimate basis to hold Lawrence's application in abeyance, especially after the Sixth Circuit's June 3rd decision makes it clear that the issues Lawrence will present to the Supreme Court of the United States have nothing to do with his present fitness to practice law. Attached is a copy of Lawrence' pending Petition for Rehearing <u>En Banc</u>, which outlines the issues [Exhibit 2, attached hereto]. How those issues form a basis to hold Lawrence's application in abeyance in the District of Columbia is impossible to discern.

## II.    ARGUMENT

### THIS SHOULD LIFT THE STAY, OR IN THE ALTERNATIVE, CERTIFY FOR APPEAL ITS DECISION TO ABSTAIN

This Court's March 31, 2008 Opinion and Order states that "If prior to the admissions proceeding's natural termination, plaintiff becomes able to demonstrate extraordinary circumstances meriting federal court intervention despite <u>Younger</u>, he may ask this Court to lift the stay." Lawrence asserts that an extraordinary circumstance now exists given that his District of Columbia application has now been pending for nearly 2 ½ years, coupled with the fact that the legitimacy of the Defendants' "hold-in-abeyance" rationale has been undermined by the June 3rd decision of the Sixth Circuit Court of Appeals.

Second, this Court has the authority, pursuant to 28 U.S.C. §1292(b), to certify its abstention decision for an interlocutory appeal. <u>Singh v. George Washington Univ.</u>, 383 F.

Supp. 2d 99, 103-105 (D.D.C., 2005).  For the reasons set forth below, Lawrence seeks such

relief.

    A.    THIS COURT SHOULD LIFT THE STAY BECAUSE THE JUNE 3RD
DECISION OF THE SIXTH CIRCUIT COURT OF APPEALS, AND THE
JURISDICTIONAL ISSUES THAT LAWRENCE WILL TAKE TO THE
SUPREME COURT, HAVE NOTHING TO DO WITH MEASURING
PRESENT CHARACTER AND FITNESS.

Defendants' story has changed over time.  For example, on March 27, 2008 Defendants

stated to this Court that Plaintiff's application for a Michigan law license is "pending" (Docket

#7, p. 31 "…the COA is holding his application in abeyance not because he sued Michigan Bar

officials, but because his application for admission is pending in that jurisdiction …").  However,

after Lawrence proved that he did not have a "pending" application in Michigan, on April 20,

2007, Defendants admitted to making inaccurate litigation statements to this Court. (Docket #15,

p. 2, "The defendants did, unfortunately, mistakenly indicate that plaintiff's application to the

Michigan Bar is pending. That application has, in fact, been denied, and the defendants apologize

for any confusion engendered by that remark.").

On June 13, 2007, Defendant Carlin stated to the District of Columbia Court of Appeals

that Lawrence's application would be processed "following final adjudication of Lawrence's

pending federal court challenge to the denial of his Michigan bar application on character and

fitness grounds" (Docket #22, Exhibit 2, p. 6).  Carlin also took this position in the Stoddard case

(Docket #17-4, p. 9).  However, what calls into question Carlin's candor is that once the

Eleventh Circuit Court of Appeals issued its decision in Stoddard (in July, 2007), over a year

later, Stoddard's application "continued to be held in abeyance" (Exhibit 1, attached hereto).

Attached hereto as Exhibit 2 is Lawrence's Petition for Rehearing En Banc, which is pending in the United States Court of Appeals for the Sixth Circuit. There are three issues involved in that case:

I.     The Rooker-Feldman doctrine does not bar the action because the BLE is an administrative body and its decision was never reviewed by a state court;

II.    Lawrence's request for prospective relief is ripe; and

III.   State Bar investigators without adjudicative authority are not entitled to absolute immunity from suit.

The issues above have no bearing on Lawrence's present character and fitness in the District of Columbia, yet the Defendants have refused Lawrence's requests to remove his application from "abeyance" status (after the Sixth Circuit's decision, Lawrence spoke with opposing counsel as well as Committee Director Jacqueline Smith).   Lawrence intends to take the case to the Supreme Court, and how Lawrence's Michigan litigation has anything to do with his fitness in the District of Columbia is impossible to understand.  Defendants' conduct is clearly retaliatory.  There is no legitimate basis for "hold-in-abeyance" status any longer.

Therefore, Lawrence requests that this Court find that the lack of a reasonable basis for Defendants' continued delay is an extraordinary circumstance, warranting a lift of the stay.

B.     PURSUANT TO 28 U.S.C. §1292(b), THIS COURT SHOULD CERTIFY ITS ABSTENTION ORDER FOR APPEAL GIVEN THAT THERE EXISTS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION, AN INTERLOCUTORY APPEAL ON THE ABSTENTION QUESTION WOULD MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION, AND THE INABILITY OF LAWRENCE TO APPEAL COULD MOOT THE QUESTION.

28 U.S.C. §1292(b) grants district courts discretion to issue interlocutory orders when an issue or issues involve "[1] controlling questions of law [2] as to which there is substantial ground for difference of opinion and that [3] an immediate appeal from the order may materially

advance the ultimate termination of the litigation." Lawrence seeks certification of the following

two questions:

> 1.  Is the "ongoing state proceeding" component of <u>Younger v. Harris</u>, 401 U.S. 37 (1971) applicable to an attorney licensing applicant who has been advised that his pending application will remain "in abeyance" by state officials for an indefinite period, when the purpose of the federal suit is to challenge on constitutional grounds the state officials' decision to cease processing the application?

> 2.  Should a district court abstain pursuant to <u>Younger v. Harris</u>, 401 U.S. 37 (1971), when the federal plaintiff is responsible for bringing the state proceedings, the federal plaintiff can end the state proceedings at any time he chooses, there has been no substantial activity in the state proceedings in over two years, and the ongoing state proceedings are completely non-coercive in nature?

> 1.    <u>Substantial Ground for Difference of Opinion</u>

The United States Supreme Court has consistently held that federal courts should only

abstain from deciding a case under <u>Younger</u> when doing so would interfere with a state criminal

proceeding or a state civil or administrative proceeding *that is akin to a criminal one*. See, e.g.,

<u>Middlesex County Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 436-37, 102 S. Ct.

2515, 2523-24, 73 L. Ed. 2d 116 (1982) (state bar disciplinary proceedings); <u>Huffman v. Pursue,

Ltd</u>., 420 U.S. 592, 604, 95 S. Ct. 1200, 1208, 43 L. Ed. 2d 482 (1975) (state nuisance

proceedings); <u>Younger v. Harris</u>, 401 U.S. 37, 53-54, 91 S. Ct. 746, 755, 27 L. Ed. 2d 669 (1971)

(state criminal proceedings). This is not one of those cases. None of the above cases were

brought by federal plaintiffs who were voluntarily in a state proceeding and who could withdraw

at any time they chose to do so. None of the above cases involved federal plaintiffs who brought

suit in federal court to get the state proceedings moving, like the matter <u>sub judice</u>.

There are some Bar admission cases where the district court judges elected to abstain under Younger. For example, in Otrompke v. Chairman of the Comm. on Character & Fitness, 2004 U.S. Dist. LEXIS 6367 (N.D. IL. 2004), the district judge abstained, violating the law of his own Circuit. Six years *earlier,* the Seventh Circuit Court of Appeals made it clear that Younger was applicable only when the state proceedings were coercive in nature. Majors v. Engelbrecht, 149 F.3d 709, 712 (7th Cir. 1998). The decision in Otrompke failed to address, let alone mention, the Circuit precedent in Majors. Northern District of Florida Judge Robert Hinkle also abstained in Lawrence v. Schwiep, 2005 U.S. Dist. LEXIS 35471 (N.D. Fla., 2005). However, two years later, Lawrence received an anonymous and stunning telephone call from someone familiar with Judge Hinkle, reporting that Judge Hinkle kept secret the fact that he was former counsel for the Florida Board of Bar Examiners just before he was made a federal judge. This information turned out to be accurate. See, e.g., Sondel v Florida Board of Bar Examiners, N.D. Fla. No. 4:95-cv-40184-WS (docket sheet).

There exists a substantial difference in opinion whether state proceedings, judicial or otherwise, are subject to Younger if they are non-coercive in nature. This was made clear in Independence Public Media, Inc. v. Pennsylvania Public Television Network Com., 813 F. Supp. 335 (E.D. PA. 1993), where the Court correctly stated:

> In the Opinion, I found that in considering plaintiff's request for network interconnection and funding, the PPTNC was and **is acting in a judicial capacity**, subject, therefore, to the due process requirement of impartiality. * * * **That is not the end of the Younger inquiry, however**.

> In summary, I believe that when read together, Dayton and Patsy **limit the application of the Younger principle** in a section 1983 case to those circumstances **where the federal plaintiff is seeking relief from a coercive state proceeding**.

Independence Public Media, 813 F. Supp. at 342-343 (emphasis added). See also, Torres v. Carrion, 376 F. Supp. 2d 209, 213 (D.P.R. 2005).

Lawrence's position that <u>Younger</u> is limited to ongoing state proceedings that are coercive finds support in the above authority. Therefore, the first element for certification has been met. Lawrence understands that "A mere claim that the district court's ruling was incorrect does not demonstrate a substantial ground for difference of opinion." <u>Singh</u>, 383 F. Supp. 2d at 104, <u>citing</u> <u>Wausau Business Int'l Co. v. Turner Construction Co.</u>, 151 F. Supp. 2d 488, 491 (S.D.N.Y 2001). Here, Lawrence has provided this Court with support from case law that a substantial difference of opinion exists on the coercive/non-coercive issue.

Also, the unpromulgated rule that Defendants are using to hold Lawrence in abeyance is legislative, executive or ministerial in nature, not adjudicative. It is questionable whether <u>Younger</u> abstention can even apply in this circumstance. <u>See</u>, <u>e.g.</u>, <u>New Orleans Pub. Serv., Inc. v. Council of City of New Orleans</u>, 491 U.S. 350, 367, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989) ("it has never been suggested that <u>Younger</u> requires abstention and deference to a state judicial proceeding reviewing legislative or executive action.").

Finally, a substantial difference of opinion exists whether <u>Younger</u> even applies when the purpose of the federal suit is to get state proceedings moving. In <u>Middlesex</u> and <u>Younger</u>, the federal plaintiff wanted *to stop* the *ongoing* state proceedings.

2.    Materially Advance the Ultimate Termination of the Litigation

This Court denied certification in <u>Singh</u> because the "trial of this matter would not occupy more than several days of the Court's time. After that trial, the School and Singh would be free to appeal from a final judgment and benefit from consolidating all appealable issues into one appeal. With this litigation poised for a relatively short, limited trial, it would not materially advance the termination of the litigation to authorize a piecemeal appeal." <u>Singh</u>, 383 F. Supp. 2d at 105.

Here, the Defendants have not even filed an answer to Lawrence's complaint. There has been no trial scheduled. There has not even been any discovery conducted. There would be no prejudice to the parties if an appeal were authorized.

Lawrence has been relatively patient. He waited for two 60-day status reports to get filed, with a third due soon. Since passing the July, 2006, D.C. Bar Exam, Lawrence has been unable to earn a living in his chosen profession, while he has over $100,000.00 in student loans he is required to repay. The reasons given to him and this Court for the delay were, first false (he has a "pending" application in Michigan, Docket #7, p. 31), and then once corrected, difficult to discern (the result of the Michigan federal litigation will play a role in determining his fitness for licensure in D.C. (Docket #22, Exhibit 2, p. 6). Yet when Stoddard's federal appeal ended in July, 2007, Defendants maintained 13 months later that his application was still "in abeyance".

Case in point, the reasons given by Defendants for their "hold-in-abeyance" status are illegitimate and if the United States Court of Appeals for the D.C. Circuit agrees, the decision will materially advance the ultimate termination of this case.

### 3.    The Questions Presented Could Become Moot

If Lawrence is denied an appeal, Defendants will allege that the questions raised herein are moot once Defendants decide when to take his application out of abeyance. They have already stated to this Court their intent to do so (Docket #7, p. 7 "The COA could recommend plaintiff's admission, at which time his claims would be moot.").

Until recently, Lawrence was unaware that this Court's March 31, 2008 decision was a published opinion. Respectfully, Lawrence believes that it sets a bad precedent because it stands for the proposition that the fundamental right of a bar applicant to due process of law must yield to Defendants' "important" state interests, whatever those interests are in holding in abeyance the

application process.  The Court's opinion does not indicate why the "hold-in-abeyance" status serves a legitimate interest, likely because Defendants have never offered a credible explanation. This Court's decision needs appellate review.

Lawrence should be permitted to appeal so these important questions can be resolved and to avoid any mootness issues.

**WHEREFORE**, Lawrence respectfully requests that this Court either lift the stay or certify its abstention decision for an interlocutory appeal.

Dated:  August 28, 2008                               Respectfully submitted:


                                                       __s/Frank J. Lawrence, Jr._____
                                                       Frank J. Lawrence, Jr.
                                                       Plaintiff, Pro Se
                                                       941 Westview Road
                                                       Bloomfield Hills, MI  48304
                                                       (248) 722-2560


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 28, 2008, a true and correct copy of the foregoing document was electronically sent to opposing counsel, Andrew J. Saindon, at his CM/ECF designated e-mail address, andy.saindon@dc.gov, via the Court's ECF electronic notice filing system.

Dated:  August 28, 2008                               Respectfully submitted:


                                                       __s/Frank J. Lawrence, Jr._____
                                                       Frank J. Lawrence, Jr.
                                                       Plaintiff, Pro Se
                                                       941 Westview Road
                                                       Bloomfield Hills, MI  48304
                                                       (248) 722-2560

**INDEX OF EXHIBITS**

| | |
|---|---|
| Exhibit 1 | Letter of August 12, 2008, from the D.C. Committee on Admissions to Philip J. Stoddard. |
| Exhibit 2 | Lawrence's Petition for Rehearing <u>En</u> <u>Banc</u> in the United States Court of Appeals for the Sixth Circuit |
| Exhibit 3 | Proposed Order |

# Exhibit 1



### District of Columbia Court of Appeals
#### Committee on Admissions
500 Indiana Avenue, N.W. — Room 4200
Washington, D. C. 20001
202 / 879-2710

August 12, 2008

Philip J. Stoddard
258 Laguna Court
St. Augustine, FL 32086

    RE:  E35780

Dear Mr. Stoddard:

    The Committee on Admissions (Committee) is in receipt of your August 6, 2008 letter, inquiring into the status of your application for admission to the DC Bar.

    While your application has continued to be held in abeyance, the Committee is scheduled to continue the discussion from the July meeting, and perhaps, finalize deliberations at their meeting in early September.  You will be notified as soon as the members complete this process and advise me of a decision.

               Sincerely,

               Jacqueline M. Smith
               Director

# Exhibit

# 2

No. 07-1026

In The

# United States Court of Appeals

### for the Sixth Circuit

_____

FRANK J. LAWRENCE, JR.

*Plaintiff – Appellant,*

v.

JANET K. WELCH, *ET. AL.*,

*Defendants – Appellees.*

_____

**On Appeal from the United States District Court
for the Western District of Michigan
Southern Division**

_____

**APPELLANT'S AMENDED PETITION FOR REHEARING *EN BANC***

_____

Dennis B. Dubuc (P67316)
Essex Park Law Office, P.C.
12618 10 Mile Rd.
South Lyon, MI  48178
(248) 486-5508

*Counsel for Plaintiff-Appellant
Frank J. Lawrence, Jr.*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . ii

TABLE OF CASES, CITATIONS, AUTHORITIES. . . . . . . . . . iii

STATEMENT OF ISSUES AND THEIR IMPORTANCE. . . . . . . . 1

STATEMENT OF PROCEEDINGS AND THE CASE. . . . . . . . . 3

ARGUMENT. . . . . . . . . . . . . . . . . . . . . 7

I.    THE ROOKER-FELDMAN DOCTRINE DOES NOT BAR THIS ACTION
      BECAUSE THE BLE IS AN ADMINISTRATIVE BODY AND ITS
      DECISION WAS NEVER REVIEWED BY A STATE COURT. . . . . 6

II.   LAWRENCE'S REQUEST FOR PROSPECTIVE RELIEF IS RIPE. . . 9

III.  STATE BAR INVESTIGATORS WITHOUT ADJUDICATORY
      AUTHORITY ARE NOT ENTITLED TO ABSOLUTE IMMUNITY
      FROM SUIT. . . . . . . . . . . . . . . . . . . 13

CONCLUSION AND RELIEF REQUESTED . . . . . . . . . . . .15

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . 16

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . 17

## TABLE OF CASES, CITATIONS, AUTHORITIES

**FEDERAL CASES:**

ASARCO Inc. v. Kadish,
    490 U.S. 605, 109 S. Ct. 2037, 104 L. Ed. 2d 696 (1989) . . . . . . . .7

Barnes v. McDowell, 848 F.2d 725 (6th Cir. 1988) . . . . . . . . . . .5, 8, 9

Buckley v. Fitzsimmons,
    509 U.S. 259, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993) . . . . . . . 13

Burns v. Reed, 500 U.S. 478, 114 L. Ed. 2d 547, 111 S. Ct. 1934 (1991). . . 2, 14

Butz v. Economou, 438 U.S. 478, 57 L. Ed. 2d 895, 98 S. Ct. 2894 (1978) . . 2, 13

City of Chicago v. Int'l College of Surgeons,
    522 U.S. 156, 118 S. Ct. 523, 139 L. Ed. 2d 525 (1997) . . . . . . . . 6, 7

Dean v. Byerley, 354 F.3d 540 (6th Cir. 2004) . . . . . . . . . . . . . . 14

District of Columbia Court of Appeals v. Feldman,
    460 U.S. 462, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983) . . . . . . *passim*

DLX, Inc. v. Kentucky, 381 F.3d 511 (6th Cir. 2004) . . . . . . . . . .5, 8, 9

Dubuc v. Mich. Bd. of Law Examiners, 342 F.3d 610 (6th Cir. 2003) . . . . 2, 12

Edelman v. Jordan, 415 U.S. 651, Ed. 2d 662, 94 S. Ct. 1347 (1974) . . . . . .9

Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed. 2d 547 (1976) . . . . . 12

Entergy Ark., Inc. v. Nebraska, 210 F.3d 887 (8th Cir. 2000) . . . . . . . .9

Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,
    544 U.S. 280, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005) . . . . . *passim*

Fieger v. Ferry, 471 F.3d 637 (6th Cir. 2006) . . . . . . . . . . . . . 2, 13

G & V Lounge v. Michigan Liquor Control Comm'n,
     23 F.3d 1071 (1995) . . . . . . . . . . . . . . . . . . 1, 11

In re Grand Jury, 932 F.2d 481 (6th Cir. 1991) . . . . . . . . . . . . . 14

Lawrence v. Berry, 2008 U.S. Dist. LEXIS 44435 (W.D. Mich. June 5, 2008) . 10

Lawrence v. Chabot, 182 Fed. Appx. 442 (6th Cir. 2006) . . . . . . . . 2, 4

Liberty Mut. Ins. Co. v. Wetzel,
     424 U.S. 737, 47 L. Ed. 2d 435, 96 S. Ct. 1202 (1976). . . . . . . . 12

Levin v. Harleston, 966 F.2d 85 (2d Cir. 1992) . . . . . . . . . . . . .11

Marks v. Newcourt Credit Group, Inc., 342 F.3d 444 (6th Cir. 2003) . . . . . 11

NAACP v. Button, 371 U.S. 415, 9 L. Ed. 2d 405, 83 S. Ct. 328 (1963) . . . . 11

Norfolk & W. R. Co. v. Public Utilities Com.,
     926 F.2d 567 (6th Cir. 1990) . . . . . . . . . . . . . . . . 8, 9

Patsy v. Board of Regents,
     457 U.S. 496, 73 L. Ed. 2d 172, 102 S. Ct. 2557 (1982) . . . . . 9, 14, 15

Raymond v. Moyer, 501 F.3d 548 (6th Cir. 2007) . . . . . . . . . .2, 8, 12

Rooker v. Fidelity Trust Co.,
     263 U.S. 413, 68 L. Ed. 362, 44 S. Ct. 149 (1923) . . . . . . . . *passim*

Thomas v. Texas State Bd. of Medical Examiners,
     807 F.2d 453 (5th Cir. 1987) . . . . . . . . . . . . . . . . 8, 9

Wooley v. Maynard, 430 U.S. 705, 97 S. Ct. 1428, 51 L. Ed. 2d 752 (1977). . . 9

**FEDERAL STATUTES:**

28 U.S.C. § 1257. . . . . . . . . . . . . . . . . . . . . . . . 7

**MICHIGAN CASES:**

Griev. Adm'r v. Fieger, 476 Mich. 231; 719 N.W.2d 123 (2006) . . . . . . . 3

State Bar of Michigan v. Galloway,
    124 Mich. App. 271; 335 N.W.2d 475 (1983) . . . . . . . . . . . 3

**MICHIGAN STATUTES:**

MCL 600.922. . . . . . . . . . . . . . . . . . . . . . . .1, 3

**MICHIGAN COURT RULES:**

MCR 7.304(A) . . . . . . . . . . . . . . . . . . . . . . .4

## STATEMENT OF THE ISSUES AND THEIR IMPORTANCE

Under <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284;

125 S. Ct. 1517; 161 L. Ed. 2d 454 (2005), application of the <u>Rooker-Feldman</u>

doctrine[1] is "confined" to litigants "complaining of injuries caused by state-**court**

judgments" (emphasis added).   The panel erred where it applied the doctrine to

Plaintiff-Appellant Lawrence's case because:  first, the Michigan Board of Law

Examiners (hereinafter "BLE") is a creature of the Michigan Legislature,

specifically MCL 600.922 (an administrative agency, not a court); second, the

challenged BLE decision is mere agency action because is presently reviewable

through a petition for superintending control in the Michigan Supreme Court; and

finally, <u>Exxon Mobil</u> sanctions federal review of unreviewed state agency final

orders ("an insurance policy").  The panel's decision turns the clock back to a day

in which "the doctrine ha[d] sometimes been construed to extend far beyond the

contours of the <u>Rooker</u> and <u>Feldman</u> cases", <u>Exxon</u>, 544 U.S. at 284, by applying it

to an unreviewed decision of a state agency.

Also, the decision that the prospective relief claim is not ripe conflicts with

<u>G&V Lounge v. Michigan Liquor Control Comm'n</u>, 23 F.3d 1071, 1076 (6th Cir.

1995), which held that a chilling effect on one's constitutional rights constitutes a

---

[1] <u>See</u> <u>Rooker v. Fidelity Trust Co</u>., 263 U.S. 413, 68 L. Ed. 362, 44 S. Ct. 149
(1923) and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 75 L.
Ed. 2d 206, 103 S. Ct. 1303 (1983).

present injury in fact.  In Lawrence's prior appeal to this Court, Judge John Rogers wrote that Lawrence's *pre-denial* challenge was not ripe. <u>Lawrence v. Chabot</u>, 182 Fed. Appx. 442 (6th Cir. 2006).   Now, Judge Rogers, joined by Judge Jeffrey Sutton, have held that Lawrence's *post-denial* challenge is not ripe.  Because the record contains sworn evidence that "it is a certainty" that Lawrence will reapply for a license, the panel's decision conflicts with <u>Fieger v. Ferry</u>, 471 F.3d 637, 644 (6th Cir. 2006), where it was "likely, rather than speculative, that Fieger will again face the recusal issue that he has faced in past cases…".  It also conflicts with other bar admission cases that sanction federal prospective relief to enjoin future unconstitutional denials. <u>Dubuc v. Mich. Bd. of Law Examiners</u>, 342 F.3d 610 (6th Cir. 2003); <u>Raymond v. Moyer</u>, 501 F.3d 548 (6th Cir. 2007).

The panel's final conflict is with a line of Supreme Court cases stemming from <u>Butz v. Economou</u>, 438 U.S. 478, 513, 57 L. Ed. 2d 895, 98 S. Ct. 2894 (1978) which includes <u>Burns v. Reed</u>, 500 U.S. 478, 495, 114 L. Ed. 2d 547, 111 S. Ct. 1934 (1991).  These cases hold that absolute immunity is limited to duties that are "functionally comparable to that of a judge."   The complaint, taken as true for purposes of this appeal, shows that Appellees, Baum, Mithani and Musbach are agency officials engaged in *investigative activities*, and they are two administrative agency levels below any adjudicative decision-makers.  The panel failed to perform a "<u>Butz</u>" functional analysis in immunizing these individuals.

En banc consideration of this case is necessary to resolve these conflicts.

## STATEMENT OF PROCEEDINGS AND THE CASE

A.    Licensing Framework

Michigan regulates the practice of law, as with other professions and occupations, by requiring a license as a condition of practice. An applicant for a law license must meet certain eligibility requirements, which are divided generally between integrity fitness (evaluated by review of "good moral character") and education fitness (evaluated by written examination of familiarity with standard legal concepts). The State Bar of Michigan first formulates a recommendation concerning an applicant's moral character, which is then transmitted to the BLE.

In MCL 600.922, the Michigan Legislature created the BLE, the administrative agency that rendered the decision at issue in this litigation. Under Michigan law, a state agency such as the BLE does not exercise "judicial power" and it is not part of the "judicial branch of our government" Griev. Adm'r v. Fieger, 476 Mich. 231, 253; 719 N.W.2d 123 (2006).

In Michigan, the state Supreme Court only has the power to control the practice of law and procedure *in the courts*. Elsewhere, the Michigan Legislature has the power to regulate. State Bar of Michigan v. Galloway, 124 Mich. App. 271, 280; 335 N.W.2d 475 (1983), afrm'd 422 Mich. 188 (1985). Therefore, the state

Supreme Court and the Legislature both share control over the practice of law in Michigan.

Pursuant to MCR 7.304(A), a complaint for writ of superintending control may be brought in the Michigan Supreme Court to challenge an adverse decision of the BLE. There are no time limits on when the complaint may be brought, and therefore, the BLE's adverse decision that is at issue in this litigation could now be challenged in state court if Lawrence desired to do so. There has never been a "state court judgment" regarding Lawrence's application for a license to practice law.

B.    Lawrence's Application Process

Lawrence's first application was addressed by this Court's decision in Lawrence v. Chabot, 182 Fed. Appx. 442 (6th Cir. 2006), wherein Judge John Rogers wrote that Lawrence's as-applied claims were not ripe, but noted "…if and when Lawrence's claim is ripe (and in all ways suitable for judicial review), he may reassert this claim". When Lawrence's second application for a license was denied on First Amendment grounds, he brought this lawsuit.

During Lawrence's second application process, he was questioned about his political viewpoints and he responded by voicing his belief that the federal courts are the "guardians of the constitution" and that the state courts fail to adequately protect federal rights. He never stated that he had "little respect" for the state court

system. Rather, that was the panel's interpretation of what he said. Lawrence was ultimately denied admission by the BLE because of his public criticism of Appellees, Baum, Mithani and Musbach, who were requested by the State Bar to investigate Lawrence's moral character and provide a recommendation to the State Bar Standing Committee on Character and Fitness.

Importantly, during Lawrence's application process, he repeatedly advised the licensing officials that he reserved his federal claims and defenses for adjudication in a federal forum pursuant to <u>DLX, Inc. v. Kentucky</u>, 381 F.3d 511, 523 fn.9 (6th Cir. 2004) and <u>Barnes v. McDowell</u>, 848 F.2d 725, 732 (6th Cir. 1988) (JA at 18, ¶ 22).

C.    <u>The Allegations in Lawrence's Complaint</u>

Lawrence's complaint asserted "General Constitutional Claims" (JA at 22), and it contained three counts for relief.

In Count I, the complaint challenged on First Amendment grounds the unreviewed administrative decision of the BLE. The relief sought in connection with Count I was a declaration that the BLE's administrative decision violated the First Amendment rights of Lawrence and that he was entitled to a license to practice law.

Count II was pleaded in the alternative. It sought prospective relief to enjoin the BLE from using protected First Amendment activities as a basis for denying

Lawrence's next application. Importantly, the sworn evidence in the record is that it is "a certainty" that Lawrence will reapply for a license and that he is experiencing a chilling effect on his First Amendment rights (JA at 93, ¶ 5)[2].

Count III was brought against State Bar *investigators* Baum, Mithani and Musbach, who retaliated against Lawrence for his political belief that the federal courts are the guardians of the constitution and that the state courts do not adequately protect federal rights. Lawrence sued Baum, Mithani and Musbach for conduct that occurred before they referred Lawrence's application to the adjudicative decision-makers at the BLE.

## ARGUMENT

I.    THE ROOKER-FELDMAN DOCTRINE DOES NOT BAR THIS ACTION BECAUSE THE BLE IS AN ADMINISTRATIVE BODY AND ITS DECISION WAS NEVER REVIEWED BY A STATE COURT.

As the Supreme Court of the United States held in City of Chicago v. Int'l College of Surgeons, 522 U.S. 156; 118 S. Ct. 523; 139 L. Ed. 2d 525 (1997), "federal jurisdiction generally encompasses judicial review of state administrative decisions." 522 U.S. at 169. The Rooker-Feldman doctrine "interprets 28 U.S.C. § 1257 as ordinarily barring direct review in the lower federal courts of a decision reached by the highest state court, for such authority is vested solely in this Court."

---

[2] The opinion of Judges Rogers and Sutton unfortunately overlooks this fact in order to conclude that Lawrence's case is not ripe ("At this juncture, we do not know whether Lawrence will file another Bar application").

<u>ASARCO Inc. v. Kadish</u>, 490 U.S. 605, 622; 109 S. Ct. 2037; 104 L. Ed. 2d 696 (1989). <u>City of Chicago</u> makes clear that <u>Rooker-Feldman</u> is inapplicable to the circumstances presented here. The doctrine applies to situations where a state court renders a final judgment; in such circumstances, Congress intends that the sole avenue into federal court should be a petition for <u>certiorari</u> invoking the explicit authority of the Supreme Court to review the judgments of "the highest court of a State in which a decision could be had." 28 U.S.C. § 1257(a). But § 1257 makes no mention of administrative agencies, and <u>City of Chicago</u> itself involved administrative determinations made pursuant to established standards; both the determinations and the standards were said to violate the federal constitution. Whether or not administrative action involves an adjudicative function, and whether or not such action is subject to review in state court, a federal forum is available for claims that such administrative action has violated federal law.

On March 30, 2005, because "the doctrine ha[d] sometimes been construed to extend far beyond the contours of the <u>Rooker</u> and <u>Feldman</u> cases," the Supreme Court of the United States clarified how the doctrine should be applied:

> The Rooker-Feldman doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-**court** losers complaining of injuries caused by state-**court** **judgments** rendered before the district court proceedings commenced and inviting district court review and rejection of those **judgments**.

Exxon Mobil, 544 U.S. at 284 (double emphasis added).

Because Lawrence has not presented his claims to any Michigan *court*, this case is unlike Feldman, and the Rooker-Feldman doctrine cannot apply.  Also, Lawrence was not required to seek state judicial review.  This is supported by Patsy v. Board of Regents, 457 U.S. 496, 73 L. Ed. 2d 172, 102 S. Ct. 2557 (1982) and this Circuit's decision in Norfolk & W. R. Co. v. Public Utilities Com., 926 F.2d 567, 572 (6th Cir. 1990), which cited Thomas v. Texas State Bd. of Medical Examiners, 807 F.2d 453 (5th Cir. 1987).

Assuming arguendo that the Rooker-Feldman doctrine is applicable to administrative decisions, the doctrine would still be inapplicable here because of Lawrence's reservation of federal claims and defenses.  (JA at 18, ¶¶ 22, 29, 46).  A valid reservation precludes application of the Rooker-Feldman doctrine. DLX, 381 F.3d at 523 fn.9; Barnes, 848 F.2d at 732.

The panel's decision simply cannot be reconciled with Exxon Mobil, given that no state court ever reviewed the BLE's decision[3].

---

[3] The panel incorrectly refers to Raymond, 501 F.3d 548, as a "similar" case.  By contrast, Lawrence's case centers on an unreviewed administrative decision of a state administrative agency, not a decision of a court.  Also, Lawrence reserved his federal claims for adjudication in a federal forum.  The panel failed to address Lawrence's reservation, although it was part of the "questions presented" in Lawrence's appellate brief.

Finally, although the opinion of Judge William Bertelsman, applying the Rooker-Feldman doctrine to Count II of the complaint, was rejected by Judges Rogers and Sutton in their concurrence/majority opinion on ripeness, Judge Bertelsman's decision conflicts with Wooley v. Maynard, 430 U.S. 705, 711, 97 S. Ct. 1428, 51 L. Ed. 2d 752 (1977), where the Supreme Court stated:

> [T]he suit is in no way designed to annul the results of a state trial since the relief sought is wholly prospective, to preclude further prosecution under a statute alleged to violate appellees' constitutional rights… The Maynards seek only to be free from prosecutions for future violations of the same statutes.

In summary, the panel's decision applying the Rooker-Feldman doctrine to Count I of Lawrence's complaint conflicts with Exxon because the BLE's decision has never been touched by a state *court*. Lawrence was not required to appeal the BLE's decision to a state court pursuant to Patsy, Norfolk and Thomas, and Lawrence was entitled to reserve his federal claims pursuant to DLX and Barnes. To the extent that Judge Bertelsman's opinion applies Rooker-Feldman to Count II, it conflicts with Wooley, which permits constitutional challenges to "preclude further prosecutions under … the same statutes" used to convict the federal plaintiff on a prior occasion.

## II.    LAWRENCE'S REQUEST FOR PROSPECTIVE RELIEF IS RIPE.

To reiterate, the concurring opinion of Judges Rogers and Sutton rejected applying Rooker-Feldman to Lawrence's prospective claims in Count II, but

affirmed on ripeness grounds. Their decision would essentially have this litigation go on forever, with Lawrence being required to file an endless cycle of applications. Had the defendants filed an answer to the complaint, they likely would have readily admitted that they use First Amendment activities (i.e., picketing and criticizing BLE members) as a basis for character rejection. Importantly, Lawrence's complaint specifically alleged that he was suffering a chilling effect on his First Amendment rights because he had been warned to stop his public criticism of the character and fitness officials (JA at 21, ¶¶ 33, 61).

What makes the ripeness analysis of Judges Rogers and Sutton even more troubling is that after oral argument in this appeal, the BLE again rejected Lawrence's third application on First Amendment grounds [Exhibit 1, attached hereto].[4]

The opinion of Judges Rogers and Sutton also conflicts with the record evidence in this case. For example, the opinion states "At this juncture, we do not know whether Lawrence will file another Bar application", yet the sworn testimony before the trial court was that it was "a certainty" that Lawrence would do so (JA at 93, ¶ 5). The opinion of Judge Bertelsman acknowledges this fact:

> Lawrence has indicated a clear intent to reapply and, as the
> record reflects, has persisted in the same expressive activity that

---

[4] This document is part of the lower court record and it was the subject of the lower court's opinion at Lawrence v. Berry, 2008 U.S. Dist. LEXIS 44435 (W.D. Mich. June 5, 2008).

> allegedly resulted in the first denial. Defendants, likewise, have clearly indicated that they consider such activity to render Lawrence of unfit character for admission.

Lawrence, slip opinion at p. 5

In reviewing the trial court's pre-answer dismissal, Judges Rogers and Sutton should have accepted all of Lawrence's factual allegations as true. <u>Marks v. Newcourt Credit Group, Inc</u>., 342 F.3d 444, 451-452 (6th Cir. 2003). They did not.

The decision of Judges Rogers and Sutton omits any analysis of Lawrence's First Amendment claim that he is experiencing a chilling effect. It is well-settled that a chilling effect on one's constitutional rights constitutes a present injury in fact. <u>G & V Lounge</u>, 23 F.3d at 1076; <u>Levin v. Harleston</u>, 966 F.2d 85, 89-90 (2d Cir. 1992), <u>NAACP v. Button</u>, 371 U.S. 415, 433, 9 L. Ed. 2d 405, 83 S. Ct. 328 (1963) ("The threat of sanctions may deter [the exercise of First Amendment freedoms] almost as potently as the actual application of sanctions."). The State Bar has admitted that "The bar has had several applicants who exercised free speech in a fashion that contributed to a recommendation of denial", and that merely picketing the State Bar Building is grounds for denial of a license to practice law (JA at 331-332). Judge Bertelsman's opinion acknowledges that "Defendants, likewise, have clearly indicated that they consider such activity…" (As stated above, after oral argument in this case, the BLE again rejected Lawrence on First Amendment grounds). Such a threat to First Amendment rights constitutes

irreparable loss, <u>Elrod v. Burns</u>, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed. 2d 547 (1976), and an irreparable injury certainly constitutes a hardship.    Therefore, Lawrence's prospective claims were clearly ripe for review.

In <u>Dubuc</u>, this court held that a Bar applicant's declaratory and injunctive relief claims could proceed where the applicant sought a prohibition against these same defendants from denying him in the future based upon protected First Amendment conduct.  Although this Court's opinion in <u>Dubuc</u> did not address the issue of ripeness, it is well established that "an appellate court has a duty to consider <u>sua</u> <u>sponte</u> whether appellate jurisdiction is properly invoked". <u>Liberty Mut. Ins. Co. v. Wetzel</u>, 424 U.S. 737, 740, 47 L. Ed. 2d 435, 96 S. Ct. 1202 (1976).    However, in both <u>Dubuc</u> and <u>Raymond</u>, the panels endorsed the availability of prospective relief after an applicant suffers an unconstitutional licensing denial.  In fact, in <u>Raymond</u>, this Court stated:

> If Raymond plans to apply again for admission to practice law in Ohio without examination, and is denied, he can likely establish standing to bring a general challenge to the rules and practices of the Ohio Supreme Court, and nothing in our decision today should be read to imply that the Rooker-Feldman doctrine, res judicata principles, judicial immunity, or any other defense would prevent Raymond from bringing such a challenge.

<u>Raymond</u>, 501 F.3d at 555

The panel's decision also conflicts with <u>Fieger</u>, 471 F.3d at 644, where the case was allowed to proceed because it was "likely, rather than speculative, that

Fieger will again face the recusal issue that he has faced in past cases…".  Because

Lawrence's complaint alleges that his criticism of the defendants is ongoing, and

because "Defendants, likewise, have clearly indicated that they consider such

activity to render Lawrence of unfit character for admission", this case is akin to

<u>Fieger</u> and the panel's decision is inconsistent with the <u>Fieger</u> analysis.

According to the decision of Judges Rogers and Sutton, because Lawrence's

pre-denial challenge was not ripe, and because Lawrence's post-denial challenge is

not ripe, Lawrence will likely never be able to establish the ripeness necessary stop

future First Amendment violations.  This results in a highly inappropriate

consequence to federal authority and deprives civil rights litigants the right to have

a federal forum adjudicate these important, and cherished, constitutional interests.

III.  STATE BAR INVESTIGATORS WITHOUT ADJUDICATORY
      AUTHORITY ARE NOT ENTITLED TO ABSOLUTE IMMUNITY
      FROM SUIT.

Appellees Baum, Mithani and Musbach are *investigators* that "perform[] the

investigative functions normally performed by a detective or police officer" such

as "searching for clues and corroboration that might give [them] probable cause" to

recommend proceedings before the BLE. <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259,

273, 276-78, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993).

The panel's decision that absolute immunity is applicable to State Bar

investigators who have no adjudicatory authority, and who are two administrative

layers removed from the members of the BLE, conflicts with <u>Butz</u>, <u>supra</u>, which held that absolute immunity is limited to duties that are "functionally comparable to that of a judge."  <u>See also</u>, <u>Burns</u>, 500 U.S. at 495.  <u>In re Grand Jury</u>, 932 F.2d 481, 487 (6th Cir. 1991) (Michigan Bar administrative hearings before a panel of private attorneys are not judicial proceedings.)  The panel failed to perform a "<u>Butz</u>" functional analysis.

The panel's decision indicates that because Baum's, Mithani's and Musbach's duties relate to the ultimate decision whether or not an applicant is fit to be licensed, they should enjoy absolute immunity.  However, an analogous argument was rejected by the Supreme Court in <u>Burns</u>, <u>supra</u>:

> Almost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive.

<u>Burns</u>, 500 U.S. at 495.

In <u>Dean v. Byerley</u>, 354 F.3d 540 (6th Cir. 2004) this Court accurately stated:

> Because Byerley has failed to demonstrate in any way that he  was engaged in an adjudicative function when he allegedly retaliated against Dean, Byerley is not entitled to summary judgment based upon the defense of absolute immunity.

<u>Id.</u> 354 F.3d at 555-557 (6th Cir. 2004).

During the entire time that Lawrence's application to practice law was in the hands of Appellees Baum, Mithani and Musbach, the application had never

reached any *adjudicative* stage.  The application was only in the *investigative* stage.  These investigators are not entitled to absolute immunity from suit.

## CONCLUSION AND RELIEF SOUGHT

Congressional intent behind § 1983 was to "throw open the doors of the United States courts" to individuals who were threatened with or who had suffered, the deprivation of constitutional rights. <u>Patsy</u>, 457 U.S. at 504 (quoting remarks of Rep. Lowe).  The panel's decision will undoubtedly have the effect of closing those doors unless <u>en banc</u> review is granted by the Court.  The Supreme Court has made it clear:

> The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights -- to protect the people from unconstitutional action under color of state law, whether that action be executive, legislative, or judicial.

<u>Patsy</u>, 457 U.S. at 503.

**WHEREFORE**, this Court should grant <u>en banc</u> review and reaffirm the principle that the federal courts are the guardians of the constitution.

Dated:  June 26, 2008                          Respectfully submitted:


                                               _____
                                               Dennis B. Dubuc (P67316)
                                               Attorney for Appellant Lawrence

15

## CERTIFICATE OF COMPLIANCE

I certify that this Petition is in compliance with FRAP 32(a)(7)(C) and it is 15 pages in length (14 point, Times New Roman font, MS Word application), excluding the Table of Authorities and this Certificate.


Dated:  June 26, 2008                              Respectfully submitted:


                                                   _____
                                                   Dennis B. Dubuc (P67316)
                                                   Counsel for Appellant
                                                   Essex Park Law Office, P.C.
                                                   12618 10 Mile Rd
                                                   South Lyon, MI  48178
                                                   (248) 486-5508

## CERTIFICATE OF SERVICE

I hereby certify that, on this 26th day of June, 2008, I have caused one copy of the foregoing Petition to be served by United States first-class mail, postage prepaid, on the following:

John R. Oostema (P26891)                    Denise C. Barton (P41535)
Richard C. Kraus (P27553)                    Assistant Attorney General
Smith, Haughey, Rice & Roegge, P.C.          Public Employment, Elections
250 Monroe Avenue, NW, Suite 200             & Tort Division
Grand Rapids, MI  49503                      P.O. Box 30736
(616) 774-8000                               Lansing, MI  48909-8236
                                             (517) 373-6434


Dated:  June 26, 2008                        Respectfully submitted:


                                             _____
                                             Dennis B. Dubuc (P67316)
                                             Counsel for Appellant
                                             Essex Park Law Office, P.C.
                                             12618 10 Mile Rd
                                             South Lyon, MI  48178
                                             (248) 486-5508

17

# Exhibit 3

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

FRANK J. LAWRENCE, JR.

      Plaintiff,                                       Civil No.07-288-RCL

v.

MARK S. CARLIN, ET. AL.,

      Defendants.

_____/

**ORDER**

Upon consideration of the Plaintiff's Motion to Lift Stay, or in the Alternative, Certify Abstention Order Pursuant to 28 U.S.C. §1292(b), the Defendant's Response thereto, and the entire record herein, it is hereby: ORDERED,

1.      that Plaintiff's motion to lift the stay is denied; and

2.      that Plaintiff's motion for certification is granted.  This Court certifies for interlocutory appeal the following two questions:

      1.      Is the "ongoing state proceeding" component of <u>Younger v. Harris</u>, 401 U.S. 37 (1971) applicable to an attorney licensing applicant who has been advised that his pending application will remain "in abeyance" by state officials for an indefinite period, when the purpose of the federal suit is to challenge on constitutional grounds the state officials' decision to cease processing the application?

      2.      Should a district court abstain pursuant to <u>Younger v. Harris</u>, 401 U.S. 37 (1971), when the federal plaintiff is responsible for bringing the state proceedings, the federal plaintiff can end the state proceedings at any time he chooses, there has been no substantial activity in the state proceedings in over two years, and the ongoing state proceedings are completely non-coercive in nature?

SO ORDERED.

DATE: _____          _____
                                   ROYCE C. LAMBERTH
                                   United States District Judge